UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION (KNOXVILLE)

| | |
|---|---|
| THE WILBERFORCE ACADEMY OF KNOXVILLE,<br><br>                           Plaintiff,<br>v.<br>KNOX COUNTY BOARD OF EDUCATION and JOHN BUTLER, ANNE TEMPLETON, PATRICIA FONTENOT-RIDLEY, KATHERINE BIKE, LAUREN MORGAN, BETSY HENDERSON, STEVE TRIPLETT, TRAVIS WRIGHT, and KRISTI KRISTY, all in their official capacities as members of the Knox County Board of Education,<br><br>                          Defendants. | **COMPLAINT**<br><br>Civil Action No. 3:25-cv-584 |

      1.      Thanks to the Free Exercise Clause, governments must treat their citizens "without regard to their religious belief." *Everson v. Bd. of Educ.*, 330 U.S. 1, 16 (1947). "Catholics, Lutherans, Mohammedans, Baptists, Jews, Methodists, Non-believers, Presbyterians, or the members of any other faith, because of their faith," cannot be excluded from "receiving the benefits of public welfare legislation." *Id.*

      2.      Unfortunately, Tennessee's charter-school program does just that. Tennessee lets private organizations operate charter schools and extends those schools "maximum flexibility" to develop unique approaches to improving student outcomes. Tenn. Code §49-13-102(b). But religious organizations need not apply. All "religious" and "sectarian" schools are categorically ineligible for the charter program. *See* §49-13-111(a)(2).

      3.      The First Amendment forbids this open and explicit discrimination against religion. Tennessee need not establish a charter-school program. But because it has, it cannot exclude some participants "solely because they are religious." *Carson v. Makin*, 596 U.S. 767, 785 (2022).

## PARTIES

4. Plaintiff, The Wilberforce Academy of Knoxville, is a nonprofit corporation formed to operate a Christian charter school in Knox County, Tennessee. Wilberforce Academy has applied to the IRS for recognition as a tax-exempt charitable organization under I.R.C. §501(c)(3). It is incorporated in Tennessee, with its headquarters in Knoxville.

5. Defendant Knox County Board of Education approves and rejects applications to establish charter schools in Knox County.

6. Defendants John Butler, Anne Templeton, Patricia Fontenot-Ridley, Katherine Bike, Lauren Morgan, Betsy Henderson, Steve Triplett, Travis Wright, and Kristi Kristy are the members of the Knox County Board of Education. They vote on charter-school applications submitted to the Board. They are sued in their official capacities.

## JURISDICTION AND VENUE

7. This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. §1983.

8. This Court has subject matter jurisdiction under 28 U.S.C. §1331 and §1343.

9. Venue is proper in this district under 28 U.S.C. §1391(b) because Defendants reside here and a substantial part of the events or omissions giving rise to the claim occurred here.

## FACTUAL ALLEGATIONS

**I. The First Amendment guarantees equal treatment based on religion.**

10. The Free Exercise Clause protects religious believers from all forms of discrimination, not simply outright coercion. *Carson*, 596 U.S. at 778. A State "violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Id.* If a State chooses to "subsidize private education," it cannot exclude any recipients "solely because they are religious." *Espinoza v. Mont. Dep't of Rev.*, 591 U.S. 464, 487 (2020).

11. In line with these principles, American governments have long provided financial and other support to religious schools. In the founding era and early 19th century, the federal, state, and

local "governments provided financial support to private schools, including denominational ones." *Id.* at 480. "Far from prohibiting such support, the early state constitutions and statutes actively encouraged this policy." *Id.*

12. "After the Civil War, Congress spent large sums on education for emancipated freedmen, often by supporting denominational schools in the South through the Freedmen's Bureau." *Id.* at 481. And "Congress paid churches to run schools for American Indians through the end of the 19th century." *Id.*

13. In the 20th century, the Supreme Court consistently recognized the right of religious believers to receive public benefits free from discrimination. In its first case applying the Establishment Clause, the Court upheld a state program to aid religious schools, affirming that the right to "free exercise" prohibited States from preventing any individuals "from receiving the benefits of public welfare legislation" "because of their faith." *Everson*, 330 U.S. at 16. The Court reaffirmed that principle many times. *E.g.*, *Thomas v. Rev. Bd.*, 450 U.S. 707, 716 (1981); *Sherbert v. Verner*, 374 U.S. 398, 410 (1963).

14. Finally, in recent years, the Supreme Court has consistently struck down State efforts to exclude religious schools from participating in state programs to support private schools, including tuition assistance payments paid directly to the schools themselves. *See Carson*, 596 U.S. 767; *Espinoza*, 591 U.S. 464; *Trinity Lutheran Church of Columbia v. Comer*, 582 U.S. 449 (2017).

**II. Tennessee's charter-school program discriminates based on religion.**

15. Tennessee prides itself on its "long history" of "publicly supported educational freedom," with the legislature recently affirming that "parents should be free to choose the school that best fits the educational needs of their specific child." *Education Freedom Act of 2025*, Pub. Ch. 7, 114th Tenn. General Assembly, 1st Extraordinary Sess., p. 1. The State has made good on its commitment to publicly supporting school choice by funding charter schools and its Education Freedom

Scholarship Program, which provides scholarships for students to attend private schools (including religious ones). *See* Tenn. Code §§49-6-3501, -13-101.

16. Yet despite its general commitment to school choice, Tennessee excludes religious groups from participating in its charter-school program.

17. In Tennessee, as elsewhere, charter schools are publicly funded, privately operated schools open to the general public. Tennessee charter schools are generally operated by private, non-profit 501(c)(3) organizations. The nonprofit selects the members of the school's governing board. §§49-13-109, -111(a)(1). Charter schools receive public funding from their local county board of education. §§49-13-111(a)(4), -112. In exchange, they are generally prohibited from charging tuition and are required to be open to all students in the public-school district where they operate. §§49-13-106(e), -113(b).

18. To establish a charter school, the prospective governing board of the school, known as its "sponsor," must sign a "charter agreement" with the local board of education outlining "the rights, responsibilities, and performance expectations of each party." §§49-13-104(5), -110(a). To obtain such an agreement, the sponsor must first submit a "letter of intent" to the local school board. §49-13-107(a). After at least 60 days have passed, the sponsor must then file an application to the local board. §43-13-107(b). By statute, the sponsor's application must include 22 categories of information, including the school's mission and academic focus, its budget and operational plans, and its compliance with various state and federal law requirements. §49-13-107(b).

19. The local board of education must then approve or deny the sponsor's application within 90 days. §49-13-108(b)(2). If the board approves the application, it will sign a charter agreement with the sponsor based on the representations in the sponsor's application. §49-13-110(a). If it denies the application, it must specify "objective reasons for the denial" in writing. §49-13-108(b)(3).

20. A sponsor must submit its application by "February 1 of the year preceding the year in which the proposed public charter school plans to begin operation." §49-13-107(b). Thus, to begin operating in the 2027-2028 school year, a sponsor must submit a letter of intent by December 3, 2025, and an application by February 1, 2026.

21. Charter schools retain significant autonomy that ordinary public schools do not. The school's private governing board is vested with "control of instruction." §§49-13-104(5), -110(a). Each charter school defines its own "academic focus," allowing for a wide variety of schools. §49-13-107(b)(2). A charter school can specialize in a particular subject, like "math," "science," or the "arts," or it can devote itself to "an instructional program such as Montessori or Paideia." §49-13-104(1). The ChattAcademy Community School, for instance, is a bilingual English-Spanish immersion school, while Nashville Classical Charter School centers its curriculum on the great books of Western Civilization. An "opportunity" charter school can cater specifically to "at risk" students. §§49-13-104(13), -133. And a charter school can even choose to be single sex, §49-13-107(b)(9), or, in some cases, a boarding school, §§49-13-104(13)(B), -107(b)(22).

22. State and local officials retain broad discretion to approve proposed charter schools that do not meet all the state-law requirements. In particular, the Tennessee Commissioner of Education or relevant county school board can waive "any state board rule or statute that inhibits or hinders the proposed public charter school's ability to meet the school's goals or comply with the school's mission statement." §49-13-111(p). Only a handful of requirements, such as those related to "Federal and state civil rights," fall outside this waiver authority. *Id.*

23. But despite Tennessee's general commitment to charter-school autonomy, state law makes clear that religious groups cannot participate in the charter-school program. State law requires charter schools to be "nonsectarian" and "nonreligious." §49-13-111(a)(2). And a charter school sponsor cannot "promote the agenda of any religious denomination or religiously affiliated entity." §49-

- 5 -
Case 3:25-cv-00584-CEA-DCP    Document 1    Filed 11/30/25    Page 5 of 16    PageID #: 5

13-104(16)(B). This latter requirement prohibits religious organizations from operating a charter school even if they are willing to operate it as a "nonsectarian, non-religious school." Tenn. Op. Att'y Gen. No. 03-046, 2003 WL 21030186, *3 (Apr. 17).

24. State officials enforce these discriminatory requirements. Charter-school sponsors must submit their applications on the forms created by the Commissioner of Education. Tenn. Comp. R. & Regs. §520-14-01-.01(1)(a). The current form includes among the "required application components" a "Statement of Assurances." Tenn. State Bd. of Educ., *Charter School Application* 10 (2025), perma.cc/6RPW-ZT4Q. In that statement, the sponsor must "affirm" that its charter school will operate as a "nonsectarian, non-religious" school. *Id.* at 14. The form further specifies that a qualifying sponsor must "not promote the agenda of any religious denomination or religiously affiliated entity." *Id.* at 44.

25. Local officials similarly enforce these anti-religion requirements. As relevant here, the Knox County Board of Education has published guidance indicating that every charter school under its authority must operate as a "nonsectarian, nonreligious school" and "comply with all applicable state … laws." *Knox County Schools: Charter School Handbook* 8-9 (2025), perma.cc/HK3S-2Y9T (*Handbook*). The board has even adopted the position that the First Amendment *prohibits* the creation of religious charter schools. Under state law, each local school board must adopt its own performance framework for charter schools within its jurisdiction. Tenn. Code §49-13-143(b). According to Knox County's framework, a charter school does not meet required performance standards and fails to protect students' rights if it does not follow "the Establishment Clause restrictions prohibiting public schools from engaging in religious instruction." Knox County School Board, *Knox County Schools Charter Performance Framework* 19 (2022), perma.cc/5YQH-NHMW (*Performance Framework*).

26. Both the Commissioner of Education and the Knox County Board of Education thus maintain that they will not approve any religious charter school.

27. This enshrined hostility to religious charter schools stands in marked contrast to Tennessee's recent support of religious schools through its Education Freedom Scholarship Program. For the 2025-2026 school year, that program provided 20,000 students with tuition assistance at the private school of their choice. *See* Tenn. Dep't of Educ., *TDOE Announces Successful Implementation of Education Freedom Scholarship Program* (Sept. 19, 2025), perma.cc/665Z-KTBH. The "majority" of schools benefiting from the program had "religious affiliations." M. Brown, Chalkbeat, *Tennessee House Speaker Cameron Sexton Wants to Double Private School Voucher Program* (Oct. 9, 2025), perma.cc/S597-5HRK. Far from this being an unwelcome outcome, Governor Lee and the State's legislative leaders support *doubling* the program to 40,000 students. *Id.*

### III. Tennessee's discrimination harms Plaintiff.

28. Wilberforce Academy intends to open a charter school to help meet the pressing demand for more school choice in Knox County. But because Wilberforce is unapologetically Christian and the Knox County Board of Education enforces Tennessee's discriminatory restrictions, Wilberforce has no fair opportunity to establish a charter school.

29. Knox County is one of the fastest-growing regions in the country. The county's population is expected to increase by more than 75,000 residents by 2040. Many schools in the county are operating near, at, or above capacity. Pressure on existing schools will only continue to rise as the county's population grows.

30. Wilberforce Academy, a private, non-profit organization, aims to help alleviate that pressure by establishing a K-8 charter school to serve as an additional, high-quality educational choice for families in the county.

31. Christianity lies at the center of Wilberforce's mission. Wilberforce's corporate charter defines its purpose as providing "Christian educational services" and operating a "Christian charter

school." Ex. A, §8(b). Wilberforce's charter "affirms the truth of the Apostles' Creed and the inerrancy and infallibility of the Holy Bible." *Id.*

32. The leadership of Wilberforce Academy has the experience and knowledge needed to establish a thriving charter school. Wilberforce's Executive Director is a principal at an existing Christian school in Knox County. Other board members include a former chair of the Knox County Board of Education; a board member of an existing charter school in Knox County; and business and civic leaders.

33. Wilberforce Academy intends to open its school in Cedar Bluff, a centrally located community in Knox County easily accessible by both I-40 and U.S. Route 221.

34. Wilberforce Academy aims to unite high-quality academics with a strong biblical foundation. In particular, it seeks to restore the proven principles that shaped America's earliest and most successful schools: teacher-led, direct instruction; a culture of disciplined learning; and high expectations for every student. Above all, Christ serves as the cornerstone of Wilberforce Academy's mission, guiding the formation of students who are academically prepared, spiritually grounded, and equipped to lead lives of purpose. Wilberforce exists so that students can come to a saving faith in Jesus Christ, grow in a personal relationship with Him, and be equipped to make Him known wherever God leads them.

35. Wilberforce Academy plans to imbue its school with three key characteristics.

    a. **Biblical foundation**: Inspired by *The New England Primer*, the primary textbook of the American colonies, students will develop early biblical literacy in grades K-2, primarily walking through *The Biggest Story* Bible and curriculum. Building on that early foundation, students will continue in grades 3, 4 and 5 with catechisms, another key element found in *The New England Primer*. Students will walk through *The New City Catechism*, memorizing key

biblical truths. Each morning, all grades will begin their day with a morning assembly where students will hear Scripture read, participate in prayers, recite creeds and confessions, and sing.

  b. **Civics education**: Wilberforce Academy is named in honor of William Wilberforce, the Christian leader and slavery abolitionist whose faith inspired his commitment to public service. Following his example, Wilberforce will emphasize strong civic engagement and social responsibility. Students will receive lessons on Tennessee history and government, hold mock elections, and participate in a school-wide monthly town hall featuring celebrations, speakers, and community-building activities. Wilberforce will aim to qualify for the Governor's Civics Seal, an award given to schools that "implement high-quality civic education programs." Tenn. Code §49-6-1018(a).

  c. **Entrepreneurial program**: Wilberforce Academy aims to inspire the next generation of thoughtful, purpose-driven innovators through a dynamic, hands-on entrepreneurial program. Grounded in Christian values such as integrity, stewardship, and service, students will explore early financial literacy, gain awareness of meaningful career pathways, and develop an entrepreneurial mindset shaped by character and responsibility. By middle school, learners won't just *study* business; they'll *build* it. By engaging instruction in key entrepreneurial concepts, students will design, launch, and operate their own in-school, student-led ventures. Along the way, they will practice sound decisionmaking, responsible resource management, and leadership that puts people first. This experience will empower students to create value, contribute positively to their communities, and pursue their future callings with confidence and purpose.

36. Wilberforce Academy anticipates enrolling 100 K-1 students in its first year of operation, 300 K-5 students by its fifth year, and ultimately 450 K-8 students.

37. Although Wilberforce Academy believes strongly in the importance of providing an explicitly biblical and Christian education, it also believes strongly in opening its doors to all. Wilberforce intends to make its school open to all students eligible to attend charter schools, regardless of faith background. No student will be required to affirm Christian doctrine or engage in Christian worship, or be penalized for failing to do so.

38. To ensure that biblical Christian faith is truly integrated into the curriculum and life of the school, Wilberforce Academy believes it is critical to hire faculty who share its belief in the Apostles' Creed and the inerrancy and infallibility of the Bible. *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732 (2020). Wilberforce would be less effective at its mission of providing religious instruction if it had to accept faculty who disagreed with its fundamental religious tenets. But if it were truly impossible to hire only mission-aligned faculty, Wilberforce Academy would still establish a religious charter school in Knox County.

39. Similarly, Wilberforce Academy believes that explicit Christian instruction and practice are critical to a good education, and that a purely secular education is necessarily an inferior one. But if it lacks the right to operate a charter school in a religious manner, Wilberforce would apply to establish a nonreligious, nonsectarian charter school instead before the next deadline for the next school year. Wilberforce believes that helping students succeed academically and learn good habits is an important act of Christian charity, even if accomplished through a secular education. Wilberforce further believes that a strong character-forming nonreligious education can prepare students to receive the gospel at a later time or outside of school. In Wilberforce's view, providing a good nonreligious education would still glorify God by preparing students' hearts and minds to serve God, though in a lesser way that falls short of a proper, explicitly Christian education.

40. Tennessee law prevents Wilberforce Academy from accomplishing its plans. Because a charter school must be "nonreligious" and "nonsectarian," §49-13-111(a)(2), Wilberforce cannot open a charter school dedicated to providing an explicitly Christian education.

41. Tennessee law further prevents Wilberforce Academy from operating a charter school of any kind by prohibiting any sponsor that "promote[s] the agenda of [a] religious denomination or religiously affiliated entity." §49-13-104(16)(B).

42. Under these laws and policies, the Knox County Board of Education cannot, and will not, give Wilberforce an equal chance to become a charter school.

43. On the morning of November 25, 2025, Wilberforce Academy submitted a letter of intent to the board indicating its intent, if permitted, to open a charter school in the 2027-2028 school year. Ex. B. In the letter and accompanying executive summary, Wilberforce made clear that it intends to operate an explicitly Christian school. Ex. C at 1.

44. But that letter, which must be submitted on the State's form, makes clear that Wilberforce cannot and will not be allowed to open or apply to open a charter school. *See* Tenn. Comp. R. & Regs. §520-14-01-.01(1)(b). The "Sponsor Eligibility" section of the mandatory form states that a sponsor must meet the eligibility requirements established by the Tennessee Charter Schools Act. Ex. B. at 5 & n.3 (citing Tenn. Code §§49-13-101 to -145). So Wilberforce's letter had to admit that it does not meet those requirements because it "does 'promote the agenda of any religious denomination or religiously affiliated entity.'" *Id.* at 5 (quoting Tenn Code §49-13-104(16)).

45. In addition, Wilberforce cannot take the next step of submitting an application to open a charter school in the 2027-2028 school year, because the mandatory application form requires Wilberforce to "affirm" that its charter school will operate as a "nonsectarian, non-religious school." *Charter School Application* 14; *supra* ¶24.

46. Wilberforce Academy is able and ready to apply for charter status, once a court orders Defendants to stop discriminating against religious schools and sponsors. If a court ordered adequate relief, Wilberforce would immediately apply to sponsor a Christian charter school for the earliest school year it could open. If a court ordered only partial relief, Wilberforce would immediately submit its letter of intent and application to sponsor a secular charter school for the earliest school year it could open.

47. Wilberforce Academy's right to operate and apply to operate a religious charter school cannot be secure until it wins judicial relief. National secularist groups like the Freedom from Religion Foundation, Americans United for the Separation of Church and State, and the American Civil Liberties Union are committed to bringing legals challenges to any religious charter school that gets approved or opens its doors. When Oklahoma approved a religious charter school, for instance, these organizations sued the following month alleging violations of the Establishment Clause. *See* ACLU, *Oklahomans File Lawsuit to Stop State From Sponsoring Nation's First Religious Public Charter School* (July 31, 2023), perma.cc/M9T9-BXG2. Without judicial confirmation of its rights, no religious charter school can safely apply, open, or operate without an inevitable lawsuit by outside groups or a cutoff of funding by the State.

**CLAIM FOR RELIEF**
**Violation of the First Amendment**
**(Free Exercise Clause)**

48. Wilberforce repeats and incorporates each of its prior allegations.

49. The Free Exercise Clause, applicable to the States through the Fourteenth Amendment, prohibits the government from "prohibiting the free exercise" of "religion." U.S. Const., amend. I.

50. The Knox County Board of Education's enforcement of Tennessee law and its own policies against religious charter schools violates this guarantee for three independent reasons.

51.     ***First***, Tennessee law and the board's policies "expressly discriminat[e] against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character." *Carson*, 596 U.S. at 779. They expressly discriminate against religious organizations by prohibiting the creation of religious charter schools that engage in religious instruction. *See* Tenn. Code §49-13-111(a)(2); *Handbook* 8-9; *Performance Framework* 19.

52.     Tennessee law and the board's policies further discriminate against religious organizations by prohibiting organizations that "promote the agenda of any religious denomination or religiously affiliated entity" from establishing any charter school. *See* Tenn. Code §49-13-104(16)(B); *Handbook* 8.

53.     Because they expressly discriminate, Tennessee's restrictions and the board's policies "must be subjected to 'the strictest scrutiny.'" *Carson*, 596 U.S. at 780. "To satisfy strict scrutiny, government action must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." *Id.* (cleaned up). The board cannot satisfy this onerous standard.

54.     The Establishment Clause cannot justify board's discrimination. Although state law and the board's policies label charter schools as "public" schools, Tenn. Code §49-13-111(a)(2); *Handbook* 9, that label is not dispositive for purposes of the First Amendment. *See Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) ("the character of a legal entity" as a state or private actor under the federal Constitution is not "determined" by its "characterization in statutory law"). From the standpoint of the Constitution, charter schools are private entities that receive public funding pursuant to a contract with the local board of education; they are not government entities. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 839-43 (1982). If Tennessee law did not discriminate against religious organizations, its charter-school program would simply be "a neutral benefit program in which public funds flow to religious organizations through the independent choices of" parents; such a program "does not offend the Establishment Clause." *Carson*, 596 U.S. at 781.

55. The board similarly does not have a compelling interest in promoting the separation of church and state beyond what the Establishment Clause requires. Such an interest "cannot qualify as compelling in the face of the infringement of free exercise." *Id.* Even if it could, the board cannot prove narrow tailoring. Tennessee's broad and growing support for religious schools in its Education Freedom Scholarship Program undermines any claim that funding religious schools undermines anti-establishment interests. *Cf. Fulton v. Philadelphia*, 593 U.S. 522, 542 (2021).

56. Nor can the board claim, in circular fashion, that the benefits extended by Tennessee's charter school program are support for *secular* education. To claim that a state benefit is "limited to private secular education is just another way of saying that" the State does not extend benefits to "religious schools." *Carson*, 596 U.S. at 784. The Board cannot evade its obligations under the First Amendment "simply by redefining" the benefit supported by Tennessee's charter-school program as "a secular education." *Id.* at 785.

57. **Second**, the board categorically refuses to authorize religious charter schools even though Tennessee "has in place a system of individual exemptions." *Fulton*, 593 U.S. at 534.

58. By statute, the Knox County Board of Education has broad authority to waive "any state board rule or statute that inhibits or hinders the proposed public charter school's ability to meet the school's goals or comply with the school's mission statement." §49-13-111(p).

59. Tennessee's prohibitions on religious charter schools totally inhibit Wilberforce's Academy's goals and mission statement.

60. Because the board has authority "to grant exemptions based on the circumstances underlying each application," the First Amendment requires it to extend an exemption to Wilberforce Academy absent a "compelling reason" to the contrary. *Fulton*, 593 U.S. at 534.

61. The board insists that religious schools—and even secular schools sponsored by religious organizations—are categorically ineligible to participate in the charter program. Yet it has no

compelling reason for doing so. *Supra* ¶¶54-56. The Free Exercise Clause does not tolerate this arbitrary hostility toward religious claims.

62. **Third**, Tennessee's requirement that charter schools be "nonsectarian," §49-13-111(a)(2), is based on animosity toward religion. A law enacted with "hostility" that is "inconsistent with the First Amendment's guarantee" of neutrality toward religion "must be invalidated." *Masterpiece Cakeshop v. Colo. C.R. Comm'n*, 584 U.S. 617, 640 (2018). The "historical background" of a law can prove the existence of illicit hostility. *Id.* at 619.

63. State provisions prohibiting aid to "sectarian" institutions date back to the 1870s. *See Espinoza*, 591 U.S. at 482. It was an "open secret" at the time that the term "sectarian" was "code" for Catholics, Jews, and other religious groups falling outside of mainline Protestantism. *Id.*; *id.* at 504-05 (Alito, J., concurring). Such provisions, "born of bigotry," are presumptively unconstitutional acts of religious hostility to religion. *Id.* at 482 (majority opinion).

64. More recent enactments limiting aid to "nonsectarian" schools, like Tennessee's, carry the same taint. Although the term "sectarian" "could, on its face, describe the school of any religious sect," the Supreme Court's 1970s-era jurisprudence made clear that term continued to operate as a code for "Catholic parochial schools." *Mitchell v. Helms*, 530 U.S. 793, 829 (2000) (plurality opinion). Thus, like earlier no-aid provisions, Tennessee's charter school funding limitations target schools falling outside mainline Protestantism in a way the First Amendment prohibits.

65. Tennessee's laws and the board's policies restricting religious charter schools harm Wilberforce. Although Wilberforce was willing and able to submit an application by February 1, 2026, state law and the board's policies prevent it from doing so. As a result, Wilberforce will not be able to obtain a charter agreement in time to begin operations in the 2027-2028 school year. Even if Wilberforce receives prospective relief and promptly receives approval, Wilberforce will have to wait until a later school year to begin operating, educating students, and receiving federal, state, and local funding.

66. The board adopted these unconstitutional policies and took these unconstitutional actions while acting under color of state law. 42 U.S.C. §1983.

## PRAYER FOR RELIEF

**WHEREFORE**, Wilberforce Academy respectfully requests that this Court enter judgment in its favor and against Defendants and provide the following relief:

A. A declaratory judgment that Tenn. Code §49-13-104(16)(B), Tenn. Code §49-13-111(a)(2), and all other policies promulgated or enforced by Defendants prohibiting religious charter schools and religious charter-school sponsors violate the First and Fourteenth Amendments, both facially and as applied to Wilberforce Academy;

B. A permanent injunction prohibiting Defendants from enforcing Tenn. Code §49-13-104(16)(B), Tenn. Code §49-13-111(a)(2), and all other policies prohibiting religious charter schools and religious charter-school sponsors against Wilberforce Academy;

C. Actual and nominal damages from Defendant Knox County Board of Education;

D. Wilberforce Academy's reasonable costs and expenses of this action, including attorney's fees, in accordance with 42 U.S.C. §1988 and all other applicable laws; and

E. All other further relief to which Wilberforce Academy might be entitled.

Dated: November 30, 2025

Respectfully submitted,

*/s/ Cameron T. Norris*

Cameron T. Norris (TN Bar #33467)
Ryan M. Proctor*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com
ryan@consovoymccarthy.com

*Pro hac vice forthcoming*