# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## NORTHERN DIVISION (KNOXVILLE)

------------------------------------------------------ X

THE WILBERFORCE ACADEMY OF
KNOXVILLE,

    *Plaintiff*,

  -against-

KNOX COUNTY BOARD OF
EDUCATION and JOHN BUTLER, ANNE
TEMPLETON, PATRICIA FONTENOT-
RIDLEY, KATHERINE BIKE, LAUREN
MORGAN, BETSY HENDERSON, STEVE
TRIPLETT, TRAVIS WRIGHT, and KRISTI
KRISTY, all in their official capacities as
members of the Knox County Board of
Education,

    *Defendants.*

------------------------------------------------------

REV. DR. RICHARD COBLE, AMANDA
COLLINS, KERRY DOOLEY, ELIZABETH
PORTER, and REV. DR. KATINA SHARP,

    *Intervenors.*

------------------------------------------------------ X

Case No. 3:25-cv-00584 (CEA) (DCP)

# MEMORANDUM IN SUPPORT OF
# PROPOSED INTERVENOR-DEFENDANTS' MOTION FOR LEAVE TO INTERVENE

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

    I.     PROPOSED INTERVENORS' RELATIONSHIP TO KNOX COUNTY
         PUBLIC EDUCATION AND THEIR INTERESTS IN THIS CASE. ................. 2

    II.    WILBERFORCE'S PROPOSED CHARTER SCHOOL ..................................... 3

    III.   THE KNOX COUNTY BOARD OF EDUCATION'S ROLE AS LOCAL
         CHARTER-SCHOOL AUTHORIZER. ............................................................... 4

LEGAL STANDARD .......................................................................................................... 4

ARGUMENT ....................................................................................................................... 5

    I.     PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS
         OF RIGHT UNDER RULE 24(a)(2). ................................................................... 5

        A.     Proposed Intervenors' Motion Is Timely. .................................................. 5

        B.     Proposed Intervenors Have Substantial Interests in This Case ................. 8

        C.     Proposed Intervenors' Interests Will Be Impaired by an Adverse
            Ruling Authorizing State-Funded Religious Charter Schools. ................ 10

        D.     Proposed Intervenors' Interests Will Not Be Adequately
            Represented by the Existing Parties, as the Board Does Not Plan to
            Defend the Case on the Merits ................................................................. 11

    II.    ALTERNATIVELY, THE COURT SHOULD GRANT PERMISSIVE
         INTERVENTION UNDER RULE 24(B). .......................................................... 12

        A.     Proposed Intervenors' Defenses Share Common Questions of Law
            and Fact with the Main Action ................................................................ 13

        B.     Permissive Intervention Will Not Unduly Delay or Prejudice
            Adjudication ............................................................................................ 14

         C.     Permissive Intervention Is Warranted to Streamline Adjudication
            and to Ensure Proposed Intervenors' Distinct Interests Are Heard. ........ 14

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Atheists v. City of Detroit Downtown Dev. Auth.*,
567 F.3d 278 (6th Cir. 2009) ...................................................................11

*Arizona Christian Sch. Tuition Org. v. Winn*,
563 U.S. 125 (2011)..............................................................................9

*In re Auto. Parts Antitrust Litig., End-Payor Actions*,
33 F.4th 894 (6th Cir. 2022) ...................................................................5

*Berger v. N.C. State Conf. of the NAACP*,
597 U.S. 179 (2022)..............................................................................12

*Brewer v. Republic Steel Corp.*,
513 F.2d 1222 (6th Cir. 1975) ...........................................................13, 15

*Buck v. Gordon*,
959 F.3d 219 (6th Cir. 2020) ..........................................................4, 14, 15

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006)..............................................................................9

*Flast v. Cohen*,
392 U.S. 83 (1968)................................................................................9

*Grubbs v. Norris*,
870 F.2d 343 (6th Cir. 1989) ...................................................................7

*Grutter v. Bollinger*,
188 F.3d 394 (6th Cir. 1999) ................................................................8, 9

*Jansen v. City of Cincinnati*,
904 F.2d 336 (6th Cir. 1990) .........................................................5, 6, 7, 15

*League of Women Voters of Mich. v. Johnson*,
902 F.3d 572 (6th Cir. 2018) ......................................................5, 14, 15, 16

*Lee v. Weisman*,
505 U.S. 577 (1992)..............................................................................10

*Linton by Arnold v. Comm'r of Health & Env't, State of Tenn.*,
973 F.2d 1311 (6th Cir. 1992) ...................................................................6

*Purnell v. City of Akron*,
925 F.2d 941 (6th Cir. 1991) ..................................................... *passim*

*Roemer v. Bd. of Pub. Works*,
426 U.S. 736 (1976) ..........................................................................11

*Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*,
641 F.3d 197 (6th Cir. 2011) .............................................................8

*Stupak-Thrall v. Glickman*,
226 F.3d 467 (6th Cir. 2000) ............................................................5

*United States v. BASF–Inmont Corp.*,
No. 93–1807, 1995 WL 234648 (6th Cir. Apr. 18, 1995) ....................7

*United States v. City of Detroit*,
712 F.3d 925 (6th Cir. 2013) ............................................................6

*United States v. Michigan*,
424 F.3d 438 (6th Cir. 2005) ............................................................4

*United States v. Michigan*,
68 F.4th 1021 (6th Cir. 2023) ...........................................................7

*Vassalle v. Midland Funding LLC*,
708 F.3d 747 (6th Cir. 2013) .......................................................4, 13

*Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*,
41 F.4th 767 (6th Cir. 2022) ..................................................... *passim*

**Statutes**

Tenn. Code Ann. §§ 49-13-104, 111 ........................................... *passim*

Federal Rule of Civil Procedure 24 ............................................. *passim*

## INTRODUCTION

Proposed Intervenors—Rev. Dr. Richard Coble, Amanda Collins, Kerry Dooley, Elizabeth Porter, and Rev. Dr. Katina Sharp—are Knox County taxpayers, including public-school parents and faith and community leaders. They have direct and substantial interests in preventing (1) unlawful spending of their tax payments in support of religion, (2) diversion of tax funds from Knox County's secular public schools, and (3) authorization of religious public schools.

Plaintiff, the Wilberforce Academy of Knoxville ("Wilberforce"), is a religious educational organization that is seeking to establish a public charter school—funded by taxpayers—that explicitly advances a specific form of Christianity. Defendants, the Knox County Board of Education ("Board") and its members, have not yet filed a responsive pleading. Nor has any discovery taken place. Yet Wilberforce already filed a summary judgment motion seeking an early merits ruling that threatens to upend decades of precedent under the First Amendment's Establishment Clause prohibiting public schools from promoting particular religious doctrines.

Under Federal Rule of Civil Procedure 24(a), Proposed Intervenors have a right to participate because they have a direct, protectable interest in ensuring that their tax dollars support a secular system of public education rather than being diverted for religious instruction. This motion is timely, and resolution of this action threatens, as a practical matter, to impair Proposed Intervenors' ability to protect those interests because Defendants are not positioned to do so. Indeed, in their January 23, 2026, response to Wilberforce's summary judgment motion, Defendants acknowledged that they "will most likely not take an official position" on the constitutionality of the challenged statutory and regulatory scheme. Accordingly, only intervention will ensure a meaningful merits defense addressing the critical constitutional issues at stake in this case.

## BACKGROUND

I.  **PROPOSED INTERVENORS' RELATIONSHIP TO KNOX COUNTY PUBLIC EDUCATION AND THEIR INTERESTS IN THIS CASE.**

Proposed Intervenors have different beliefs and backgrounds, but they share two core convictions: public-education dollars must not fund religious instruction, and a public school must not be religious. Kerry Dooley raises a nonreligious child currently enrolled in a Knox County non-charter public elementary school. Dooley Decl. ¶¶ 2–3, 5. Amanda Collins is a Knox County resident and retired school psychologist who spent 20 years serving students and has three children who attend or have attended Knox County's non-charter public schools. Collins Decl. ¶¶ 1–3. Elizabeth Porter is a nonreligious Knox County Schools graduate who is now raising a child who attends a Knox County non-charter public elementary school. Porter Decl. ¶¶ 2–3, 5–6. Reverend Dr. Katina Sharp pastors Powell Presbyterian Church, graduated from Knox County Schools, and now raises a child attending a non-charter public school in the district. Sharp Decl. ¶¶ 2–6. Reverend Dr. Richard Coble pastors Westminster Presbyterian Church and is also a Knox County public-school parent. Coble Decl. ¶¶ 2–3.

Each Proposed Intervenor pays taxes to Knox County and Tennessee that are used to fund public schools, including charter schools, and would be used to fund Wilberforce Academy if it is allowed to operate as a public charter school. All the Proposed Intervenors object to unlawful use of their tax payments, including for religious instruction—in general or in support of religious beliefs that they do not hold—in public schools. The Proposed Intervenors who have children in Knox County public schools further object to public funds being diverted from their nonreligious public schools—which already are battling serious resource limitations—to Wilberforce Academy, a school that Proposed Intervenors could not send their children to because it promotes religious doctrines to which they do not subscribe. *See* Collins Decl. ¶¶ 5, 7–8; Dooley Decl. ¶¶ 3–7; Coble Decl. ¶¶ 4–8; Porter Decl. ¶¶ 3–7; Sharp Decl. ¶¶ 4–7.

Defendants consent to Proposed Intervenors' intervention in this action. Sanders Decl. ¶ 14, Dkt. No. 19-2. In fact, Defense counsel explained that he does "not anticipate that the current

Defendants . . . will take an official position" on the constitutional merits and that the issue "deserves a thorough examination by the federal courts." *Id*. In doing so, Defendants underscore the need for intervention: without Proposed Intervenors, the constitutionality of the Tennessee law at issue will not receive the thorough, adversarial examination it warrants.

The disposition of this action will, as a practical matter, determine whether a charter school that promotes a particular religion may operate as a public school within Tennessee's public charter-school framework and receive public funding. Proposed Intervenors therefore seek to participate as defendants to ensure that the Court hears fully developed defenses of the challenged requirement that charter schools be nonreligious, including that charter schools are governmental entities that have no rights under the First Amendment's Free Exercise Clause to teach a religious curriculum, and that the First Amendment's Establishment Clause bars the operation of a religious public charter school. Further, Proposed Intervenors also intend to assert their rights under Tennessee law in preventing unlawful public expenditures that violate state constitutional and statutory limits on public funding of religion.

## II. WILBERFORCE'S PROPOSED CHARTER SCHOOL.

Wilberforce's governing documents state that the corporation's specific purposes include providing "Christian educational services" and operating a "Christian charter school." Verified Amended Complaint ("FAC") ¶ 31, Dkt. No. 10; Ex. A § 8(b), Dkt. No. 10-1. Those same corporate documents state that Wilberforce "affirms the truth of the Apostles' Creed and the inerrancy and infallibility of the Holy Bible." FAC ¶ 31; Ex. A § 8(b). Wilberforce also wants to condition its faculty employment decisions on adherence to defined religious doctrine, as it "believes it is critical to hire faculty who share its belief in the Apostles' Creed and the inerrancy and infallibility of the Bible." FAC ¶ 38; *see also* Ex. C at 4, Dkt No. 10-3.

On November 25, 2025, Wilberforce submitted a charter-school letter of intent to the Board. FAC ¶ 43; Ex. B, Dkt. No. 10-2. The submission described the proposed school as explicitly religious. FAC ¶¶ 35, 44; Exs. B–C. Wilberforce's verified amended complaint further alleges that, on December 2, 2025, a Board representative informed Wilberforce that the letter of

intent was incomplete. FAC ¶ 45; Ex. D, Dkt. No. 10-4. On December 5, 2025, a Board representative sent another email, however, clarifying that Wilberforce could proceed with the application process despite the deficiency in its letter of intent. Wishart Decl. Ex. 2 at 1–2, Dkt. No. 14-3. In a January 23, 2026, filing, a Board representative reiterated that Wilberforce could proceed with its application, stating, "I look forward to receiving an application from Wilberforce Academy of Knoxville." Nixon Decl. ¶¶ 10–13, Dkt. No. 19-1. But Wilberforce has not submitted an application to operate a charter school as of this writing. FAC ¶¶ 44–46.

Instead, Wilberforce filed this lawsuit, shortly after submitting its letter of intent, to challenge Tennessee's nonsectarian charter-school restrictions and related Board requirements, contending those restrictions illegally prevent it from applying to operate the proposed charter school and are unlawful. FAC ¶¶ 50–68.

## III. THE KNOX COUNTY BOARD OF EDUCATION'S ROLE AS LOCAL CHARTER-SCHOOL AUTHORIZER.

The Knox County Board of Education is the local public body responsible for administering Tennessee's charter-school program within Knox County. FAC ¶ 5. In that role, the Board receives letters of intent and charter applications, evaluates submissions against statutory criteria enacted by the Tennessee General Assembly, and determines whether to approve or deny completed applications in accordance with state law. FAC ¶¶ 18–19. The Board is also responsible for the oversight of the operation of public charter schools in the county, ensuring that the public charter schools comply with state-level mandates. Tenn. Code Ann. § 49-13-111(a)(2).

## LEGAL STANDARD

"Rule 24 is broadly construed in favor of potential intervenors." *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991). To intervene as a matter of right, a proposed intervenor must establish that: "(1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect that interest may be impaired in the absence of intervention; and (4) the parties already before the

court may not adequately represent the proposed intervenor's interest." *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005); Fed. R. Civ. P. 24(a)(2).

Permissive intervention is warranted upon timely motion when a movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). When evaluating a motion for permissive intervention, the court "must consider two factors: (1) whether the proposed intervenor 'has a claim or defense that shares with the main action a common question of law or fact'; and (2) 'whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 760 (6th Cir. 2013) (quoting Fed. R. Civ. P. 24(b)). However, "[a] 'district court operates within a "zone of discretion" when deciding whether to allow intervention under Rule 24(b)[.]'" *Buck v. Gordon*, 959 F.3d 219, 224 (6th Cir. 2020) (quoting *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 577 (6th Cir. 2018)). Judicial economy and the avoidance of duplicative litigation weigh strongly in favor of permissive intervention. *Id.*

## ARGUMENT

## I.    PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT UNDER RULE 24(A)(2).

Proposed Intervenors are entitled to intervene as of right because (1) this motion is timely, as the case is in its infancy; (2) as Knox County taxpayers, including public-school parents and faith and community leaders, Proposed Intervenors have substantial legal interests that will be directly impacted by the outcome of this case; (3) their ability to protect those interests will be impaired if they cannot intervene; and (4) the Knox County Board of Education will not adequately represent Proposed Intervenors' interests, as it has already stated that it likely will not take a position on the merits of the case.

### A.    Proposed Intervenors' Motion Is Timely.

This motion is timely because it was filed at the case's inception, before any prejudice to the parties could occur, and Proposed Intervenors' participation is necessary to fully address the high-impact constitutional questions raised by Plaintiff's accelerated merits posture.

Timeliness is assessed "in the context of all relevant circumstances." *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990). Courts look beyond the "absolute measure of time" and focus on the "litigation continuum." *Stupak-Thrall v. Glickman*, 226 F.3d 467, 475 (6th Cir. 2000). In doing so, courts evaluate (1) the suit's progression, (2) the purpose of intervention, (3) the intervenors' actual or constructive notice period, (4) any "prejudice to the original parties" from delay, and (5) the presence of unusual circumstances. *Jansen*, 904 F.2d at 340. Here, each factor weighs toward timeliness.

First, this case is at its inception: Plaintiff filed its initial Complaint on November 30, 2025, followed by an Amended Complaint on December 5, 2025, and then moved for summary judgment on January 2, 2026. Proposed Intervenors move at the outset of the case—before Defendants' responsive pleadings are even due, before entry of a scheduling order, and before any discovery has occurred. *See* Defs.' Mot. for Denial of Pl.'s Mot. for Summ. J. at 2, 4, Dkt. No. 19. When a case is in its infancy—"no scheduling order [is] in place and discovery [has] not yet begun"—intervention is timely under both Rules 24(a) and 24(b). *Johnson*, 902 F.3d at 578–79.

Second, the purpose of this intervention also supports timeliness. Under Sixth Circuit precedent, courts assess this factor by considering whether the intervenors' purpose is legitimate or, in the alternative, whether the movants acted promptly in light of that purpose. *In re Auto. Parts Antitrust Litig., End-Payor Actions*, 33 F.4th 894, 902 (6th Cir. 2022). Under either inquiry, Proposed Intervenors' reason for participation supports timeliness. Plaintiff's motion asks the Court to decide now whether taxpayers can be compelled to fund a religious public charter school. FAC ¶¶ 1–3. Proposed Intervenors' purpose in intervening—to defend their protectable interests in ensuring that scarce public-education tax funds are used lawfully and not to inculcate religion— directly overlaps with this expedited merits motion. *Cf. Linton by Arnold v. Comm'r of Health & Env't, State of Tenn.*, 973 F.2d 1311, 1318 (6th Cir. 1992) (purpose legitimate where intervenors sought judicial review of a newly adopted provision that materially affected their rights).

Third, the notice-period factor favors timeliness because Proposed Intervenors moved once they knew (or reasonably should have known) that their interests were at stake—just days after

Defendants submitted a filing making clear that they are unlikely to defend the case on the merits, and less than two months after this case was filed. *See Jansen*, 904 F.2d at 341 (no delay where motion to intervene was filed four months after a complaint). Further, the purpose of the timeliness inquiry is to prevent interested parties from "join[ing] at a late stage and re-litigat[ing] issues that they watched from the sidelines." *United States v. City of Detroit*, 712 F.3d 925, 932 (6th Cir. 2013). Proposed Intervenors' prompt motion, filed just two business days after Defendants publicly stated they do not intend to present a substantive defense to Plaintiff's early summary judgment motion, is precisely the prompt intervention Rule 24 encourages.

Fourth, intervention now poses no prejudice to the original parties and would not disrupt the progress of the litigation. *See United States v. Michigan*, 68 F.4th 1021, 1028 (6th Cir. 2023) (citing *United States v. BASF–Inmont Corp.*, No. 93–1807, 1995 WL 234648, at *2 (6th Cir. Apr. 18, 1995) (per curiam)). There has been no document discovery, no depositions, no scheduling order, and no status conference with the Court. Plaintiff has no pending charter application. Proposed Intervenors filed this Motion to ensure that the Court can consider all affected interests before ruling on summary judgment. Rather than "derailing a lawsuit" nearing its conclusion, intervention now enhances the proceedings by bringing all relevant issues to the Court's attention at the outset. *BASF–Inmont Corp.*, 1995 WL 234648, at *2 (affirming that the timeliness inquiry intends to prevent "'a tardy intervenor from derailing a lawsuit within sight of the terminal.'") (quoting *United States v. South Bend Community Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983)).

Finally, unusual circumstances support concluding that intervention is timely in this case. *Jansen*, 904 F.2d at 340. Wilberforce seeks accelerated merits relief by rapidly moving for summary judgment (without any discovery) after filing its Complaint. That unusual tactic is disfavored in this Circuit, where courts frequently deny summary judgment motions filed before the close of discovery—and particularly before discovery has commenced—as premature. *See McKinley v. City of Mansfield*, 404 F.3d 418, 443 (6th Cir. 2005) (summary judgment motions are often found premature when discovery has not yet commenced); *Marvaso v. Sanchez*, No. CV

18-12193, 2019 WL 3003681, at *1 (E.D. Mich. July 10, 2019) ("Motions for summary judgment filed before the close of discovery are often denied as premature in this Circuit.").

Defendants have stated that they plan to present only procedural defenses and not defend the case on the merits. Sanders Decl. ¶ 14. Absent prompt intervention, the Court could decide high-impact constitutional issues before Proposed Intervenors can be heard, and before anyone presents a defense on the merits. Allowing Plaintiff to fast-track merits adjudication against Defendants who plan to only make procedural arguments, while also denying intervention, would incentivize strategic filing practices designed to exclude intervenors whose interests are most at stake. These unusual circumstances weigh decisively in favor of deeming intervention timely.

**B.      Proposed Intervenors Have Substantial Interests in This Case.**

Proposed Intervenors plainly possess "significantly protectable" interests in this litigation as taxpayers and public-school parents. *Grubbs v. Norris*, 870 F.2d 343, 346 (6th Cir. 1989). The Sixth Circuit does not require a "specific legal or equitable interest." *Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 771–72 (6th Cir. 2022) (quoting *Purnell*, 925 F.2d at 948). Instead, the Sixth Circuit takes a "rather expansive notion" of what constitutes a sufficient interest for purposes of Rule 24(a)(2). *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). An intervenor has a sufficient interest when the lawsuit's impact is concrete, and the intervenor has more than a "general ideological interest" in the lawsuit's outcome. *Wineries*, 41 F.4th at 773 (citation omitted). Further, intervenors need not establish Article III standing to demonstrate a substantial interest. *See Purnell*, 925 F.2d at 948. Finally, if the question is close, it ought to "be resolved in favor of recognizing an interest under Rule 24(a)." *Miller*, 103 F.3d at 1247.

Here, Proposed Intervenors' interests are fundamental. As local and state taxpayers whose taxes fund Knox County schools, Proposed Intervenors have a substantial interest in preventing unlawful use of those funds. Tennessee charter schools are funded through a mix of state, local, and (where applicable) federal education dollars. *See* Tenn. Code Ann. § 49-13-111(a)(4). In Knox County, the local share of school funding is driven largely by allocations of county

property-tax revenues and local option sales tax receipts.  *See* Knox Cnty. Schs., *Proposed FY 2026 Budget* 16 (2025), https://resources.finalsite.net/images/v1747162935/knoxschoolsorg/krqv 3gpgt6tvkupp5arg/FY26BudgetBook_Final.pdf (last visited Jan. 25, 2026).  Proposed Intervenors directly contribute to these local funding sources through the property and sales taxes they pay in Knox County.  Proposed Intervenors also contribute to the state share of funding through the taxes they pay to the state of Tennessee.

And even though it is not necessary to establish Article III standing on a Rule 24 motion (*see, e.g.*, *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999)), Proposed Intervenors' taxpayer stake is concrete and legally cognizable.  Municipal taxpayers have standing in federal court "to challenge any unconstitutional appropriation or expenditure."  *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 211 (6th Cir. 2011).  The federal Establishment Clause prohibits public funding and operation of a religious public charter school.  *Drummond ex rel. State v. Okla. Statewide Virtual Charter Sch. Bd.*, 558 P.3d 1, 13–14 (Okla. 2024), *aff'd by an equally divided court*, 605 U.S. 165 (2025).  Proposed Intervenors also have a right under Tennessee law to challenge unlawful spending in state court—as both local and state taxpayers.  *See Fannon v. City of LaFollette*, 329 S.W.3d 418, 427–28 (Tenn. 2010); *Cobb v. Shelby Cnty. Bd. of Comm'rs*, 771 S.W.2d 124, 126 (Tenn. 1989); *Rutan-Ram v. Tennessee Dep't of Children's Servs.*, 698 S.W.3d 540, 561–67 (Tenn. Ct. App. 2023), *perm. app. denied* (Tenn. May 16, 2024).  Like the federal Establishment Clause, the Tennessee Constitution and Tennessee Code Annotated § 49-13-111(a)(2) bar public funding and operation of a religious public charter school.  *See* Tenn. Const. Art. I, sec. 3; Tenn. Code Ann. § 49-13-111(a)(2) (requiring charter schools to be "nonsectarian" and "nonreligious").

Further, a taxpayer's interest is particularly strong in cases involving public spending in support of religion.  The Supreme Court has long recognized taxpayer challenges as uniquely appropriate where government spending allegedly violates the Establishment Clause.  *See Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132–33 (2011); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 347 (2006); *Flast v. Cohen*, 392 U.S. 83, 102–06 (1968).  The Court has

explained that forcing a taxpayer to fund a religion against their will "coerce[s] a form of religious devotion in violation of conscience." *Winn*, 563 U.S. at 141. This interest is concrete, personal, and constitutionally grounded—not ideological. *See id.* at 140–42; *DaimlerChrysler*, 547 U.S. at 348.

Moreover, as parents of Knox County public-school students, Proposed Intervenors have a substantial interest in the governance of the school district their children attend. An interest in the governance of a public educational entity—including how it admits and treats students and deploys public funds—can constitute a direct and protectable stake in litigation challenging those policies. *See Grutter*, 188 F.3d at 398–400 (finding the intervenors' stake "direct and substantial."). Far from having a mere "ideological interest," intervenor-parents rely on Knox County schools to provide their children a high-quality education, in a secular environment. *See Wineries*, 41 F.4th at 773 (quoting *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 782 (6th Cir. 2007)). When students leave district schools to attend other kinds of schools, the district schools lose state funding, as that funding is based, in part, on a per-pupil formula. *See* Tenn. Code Ann. § 49-3-104 (defining the Tennessee Investment in Student Achievement ("TISA") formula). An adverse ruling authorizing the public funding of a religious charter school would divert funding from the schools that Proposed Intervenors' children attend and thus harm the quality of their education.

### C. Proposed Intervenors' Interests Will Be Impaired by an Adverse Ruling Authorizing State-Funded Religious Charter Schools.

Proposed Intervenors' interests face real impairment if Plaintiff prevails. Rule 24(a)(2) does not require a certainty of impairment; it is enough to show that the disposition of the action "may as a practical matter impair or impede" the intervenor's ability to protect their interest. *See Purnell*, 925 F.2d at 945. This burden is minimal—the intervenor need only demonstrate that a potential for harm exists if intervention is denied. *Miller*, 103 F.3d at 1247. Impairment exists if denying intervention would place Proposed Intervenors at a practical disadvantage in protecting their interests. *Wineries*, 41 F.4th at 774.

An adverse merits judgment here would practically impair Proposed Intervenors' interests as taxpayers by illegally delivering their tax dollars to a religious public charter school. An adverse judgment would further impair Proposed Intervenors' interests as public-school parents by diverting funds from the secular public schools that educate their children. In addition, such a ruling could be invoked to restrict future challenges to the funding and operation of Wilberforce as a public charter school. And if intervention is denied, Proposed Intervenors will face substantial obstacles in any later effort to recoup the funding. *Am. Atheists v. City of Detroit Downtown Dev. Auth.*, 567 F.3d 278, 287 (6th Cir. 2009) (once funds are disbursed to recipients, recovery can be "difficult, if not judicially impossible"). Nor would there be a way to undo harm to the education of Proposed Intervenors' children from the ongoing diversion of public funds away from their schools.

### D. Proposed Intervenors' Interests Will Not Be Adequately Represented by the Existing Parties, as the Board Does Not Plan to Defend the Case on the Merits.

The final requirement—that Proposed Intervenors' interests may not be adequately represented by existing parties—is also met. The burden to show inadequate representation is "minimal." *Wineries*, 41 F.4th at 774. It is not necessary to prove with certainty that existing parties' interests are wholly adverse to proposed intervenors' interests. Rather, showing that an existing party who seeks the same outcome "will not make all of the prospective intervenor's arguments" can establish inadequate representation. *Miller*, 103 F.3d at 1247. Moreover, a presumption of adequate representation applies only where the intervenor's interest is identical to an existing party's. Where interests are similar but not identical, even minimally divergent interests are enough to defeat that presumption. *See Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 197–98 (2022).

Here, adequate representation has been effectively foreclosed. In its January 23rd filing, the Board acknowledged that "[t]he current Defendants will most likely not take an official position concerning the constitutionality of the statutory and regulatory scheme addressed in Plaintiff's Complaint." Defs.' Mot. for Denial of Pl.'s Mot. for Summ. J. at 7. Instead, the Board

plans to raise solely procedural defenses. Sanders Decl. ¶¶ 4–14. And while the Board suggests that the Tennessee Attorney General should participate in this case (Defs.' Mot. for Denial of Pl.'s Mot. for Summ. J. at 5–6), the Attorney General recently issued an opinion arguing that Tennessee's prohibitions against religious charter schools violate the U.S. Constitution (Tenn. Att'y Gen. Op. No. 25-019 (Nov. 25, 2025)). Even if the Attorney General were to join, he cannot be expected to defend the merits of the case. Moreover, further demonstrating that it will not take a position on the merits, the Board plans to vote on a resolution requesting that the Tennessee Commissioner of Education determine whether Wilberforce should be granted a waiver from Tennessee's prohibition against religious charter schools. Sanders Decl. ¶ 15. Unlike the Board, Proposed Intervenors intend to offer a full defense of the constitutionality of Tennessee's prohibitions against state funding and operating of charter schools that teach a religious curriculum.

The Board's disinterest in defending the merits of the case is not surprising, as it has institutional interests that substantially diverge from Proposed Intervenors' interests in ensuring that their tax funds are not used for religious instruction and are not diverted from secular public schools that their children attend. The Board—as a governmental entity—has a mandate to manage the school system districtwide and to advance the State's public-education objectives. As such, the prospect of future lawsuits, liability for attorney's fees, and potential damages may materially influence the Board's litigation and settlement strategy.

As the Board does not plan to defend this case on the merits, the "minimal" inadequacy requirement is plainly satisfied. *Wineries*, 41 F.4th at 774. And since Proposed Intervenors meet Rule 24(a)(2)'s other requirements, the Court should grant intervention as of right.

## II. ALTERNATIVELY, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION UNDER RULE 24(B).

If the Court finds that intervention as of right is not warranted, the Court should still permit Proposed Intervenors to participate in this lawsuit. When evaluating permissive intervention, Sixth Circuit courts consider two factors: (i) whether the proposed intervenor's claim or defense shares

a "common question of law or fact" with the main action; and (ii) whether intervention would "unduly delay or prejudice" the original parties' rights. *Vassalle*, 708 F.3d at 760 (quoting Fed. R. Civ. P. 24(b)). Beyond these considerations, "[a] motion under Rule 24(b) is addressed to the sound discretion of the District Court." *Brewer v. Republic Steel Corp.*, 513 F.2d 1222, 1225 (6th Cir. 1975). Even so, the Sixth Circuit instructs that Rule 24 should be "broadly construed in favor of potential intervenors." *Purnell*, 925 F.2d at 950; *see also City of Cleveland v. Cities Serv. Oil Co.*, 47 F.R.D. 543, 546 (N.D. Ohio 1969) (federal courts generally hold that permissive intervention be "liberally granted, so as to promote the convenient and prompt disposition of all claims in one litigation."). Here, the Court should grant permissive intervention because Proposed Intervenors' defenses present common questions of law with the main action—including whether the Free Exercise Clause compels, or the Establishment Clause forbids, taxpayer-funded religious public schools. Moreover, intervention will not unduly delay or prejudice any party given the case's early posture, and it will promote judicial economy by ensuring these shared constitutional issues are resolved once, on a complete record.

### A. Proposed Intervenors' Defenses Share Common Questions of Law and Fact with the Main Action.

Permissive intervention is warranted under Rule 24(b). The Proposed Intervenors—Knox County taxpayers, including parents of public-school students and local faith and community leaders—assert defenses that "share[] with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Wilberforce asserts that Tennessee's prohibitions on religious charter schools violate the Free Exercise Clause. If permitted to intervene, Proposed Intervenors will mount a merits defense to this claim on multiple grounds, including that: (i) public charter schools are governmental entities and therefore lack rights under the Free Exercise Clause; (ii) even if such rights existed, the Free Exercise Clause does not require Tennessee to authorize religious education in its charter schools; and (iii) the Establishment Clause affirmatively prohibits Tennessee from doing so. Finally, Wilberforce also asserts that this Court has subject-matter jurisdiction over the

case. Proposed Intervenors intend to argue that the Court lacks jurisdiction, because Wilberforce does not have Article III standing and the case is unripe.

### B. Permissive Intervention Will Not Unduly Delay or Prejudice Adjudication.

The final Rule 24(b) factor—whether intervention would cause undue delay or prejudice to the original parties—also favors intervention. Intervention does not unduly delay or prejudice the parties when a case remains "in its infancy," with no scheduling order entered and no discovery begun. *Johnson*, 902 F.3d at 578–79. When assessing undue delay or prejudice, courts must weigh the benefits of resolving common legal questions in a single proceeding against any resulting prejudice. *Buck*, 959 F.3d at 224 (reversing denial of permissive intervention where the lower court "made no apparent effort to weigh the benefits of resolving the common question of law . . . against the risk of undue delay or prejudice to the original parties.").

This case is "in its infancy." *Johnson*, 902 F.3d at 578–79. Proposed Intervenors have moved at the very outset of this case, before any scheduling order has been entered or discovery begun. Allowing intervention now will streamline this case. The Court can resolve the common Free Exercise and Establishment Clause questions once and with all affected interests before it. *See Buck*, 959 F.3d at 224. Consistent with the Sixth Circuit's instruction that Rule 24 be "broadly construed in favor of potential intervenors," the Court should permit intervention here. *Purnell*, 925 F.2d at 950; *see also Jansen*, 904 F.2d at 340.

### C. Permissive Intervention Is Warranted to Streamline Adjudication and to Ensure Proposed Intervenors' Distinct Interests Are Heard.

A motion for permissive intervention under Rule 24(b) is addressed to the sound discretion of the District Court. *Brewer*, 513 F.2d at 1225. However, that discretion is guided by the Sixth Circuit's instruction that Rule 24 be "broadly construed in favor of potential intervenors." *Purnell*, 925 F.2d at 950. In granting a Rule 24(b) motion, courts seek efficiency: intervention can promote "judicial economy" and "avoid multiplicity of litigation." *Buck*, 959 F.3d at 225. Further, Sixth Circuit courts consider whether the proposed intervenors' interest in the litigation is different than that of the existing parties. *See, e.g.*, *Johnson*, 902 F.3d at 579. Where the interests of proposed

intervenors diverge from those of existing parties, intervention ensures that all arguments are fully developed for the Court's consideration.  *See generally id.*

Here, intervention now will ensure efficient adjudication and consideration of Proposed Intervenors' distinct interests.  Denying intervention risks piecemeal litigation, as Proposed Intervenors may then be forced to challenge funding and operation of Wilberforce as a public charter school in one or more separate, future actions.  Permitting intervention now, conversely, consolidates Proposed Intervenors' and the Board's defenses into a single proceeding.  *See Buck*, 959 F.3d at 225.

Moreover, Proposed Intervenors intend to present a full merits defense, unlike the Board.  Granting intervention will therefore ensure that the Court receives a fully developed presentation of the arguments.  *See Johnson*, 902 F.3d at 579.  Finally, Proposed Intervenors' counsel brings substantial experience in church-state, religious freedom, and public education litigation.  Such expertise will sharpen the Court's consideration of the constitutional issues and weighs in favor of granting permissive intervention.   Intervention can thus only aid the Court in making a well-informed decision.

For these reasons, and consistent with the Sixth Circuit's instruction that Rule 24(b) be applied broadly, the Court should exercise its discretion to grant permissive intervention here.  *See Purnell*, 925 F.2d at 950.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors' Motion to Intervene should be granted.

Dated: January 27, 2026

Respectfully submitted,

By: */s/ Lucas Cameron-Vaughn*

Lucas Cameron-Vaughn (BPR# 036284)
American Civil Liberties Union Foundation of
Tennessee
P.O. Box 120160
Nashville, TN 37212
Telephone: 615.645.5067
Email: Lucas@aclu-tn.org

Adam J. Hunt*
Morrison Foerster LLP
250 West 55th Street
New York, NY 10019-9601
Telephone: 212.468.8000
Facsimile: 212.468.7900
Email: AdamHunt@mofo.com

Mitchell E. Feldman*
Morrison Foerster LLP
200 Clarendon Street, Floor 21
Boston, MA 02118
Telephone: 617.648.4759
Facsimile: 617.830.0142
Email: MFeldman@mofo.com

Alex J. Luchenitser*
Luke Anderson*
Americans United for Separation of Church
and State
1310 L Street NW, Suite 200
Washington, DC 20005
Telephone: 202.466.3234
Facsimile: 202.217.3783
Email: luchenitser@au.org
Email: anderson@au.org

Daniel Mach*
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20008
Telephone: 202.675.2330
Facsimile: 202.546.0738
Email: dmach@aclu.org

Samuel T. Grover*
Kyle J. Steinberg*
Freedom From Religion Foundation, Inc.
10 N. Henry St.
Madison, WI 53703
Telephone: 608.256.8900
Email: sam@ffrf.org
Email: steinbergk@ffrf.org

Sophia Mire Hill (BPR# 040755)*
Sam Boyd*
Neil Ranu*
Lauren Winkler*
Michael Tafelski*
Southern Poverty Law Center
150 E. Ponce de Leon, Suite 340
Decatur, GA 30030
Telephone: 504.457.1553
Email: sophia.mire@splcenter.org
Email: sam.boyd@splcenter.org
Email: neil.ranu@splcenter.org
Email: lauren.winkler@splcenter.org
Email: michael.tafelski@splcenter.org

Jessica Levin*
Wendy Lecker*
Patrick Cremin*
Katrina Reichert*
Education Law Center
60 Park Place, Suite 300
Newark, NJ 07102
Telephone: 973.624.1815
Facsimile: 973.624.7339
Email: jlevin@edlawcenter.org
Email: wlecker@edlawcenter.org
Email: pcremin@edlawcenter.org
Email: kreichert@edlawcenter.org

* *Pro hac vice* motion submitted herewith or forthcoming.

*Attorneys for Proposed Intervenors*
*Rev. Dr. Richard Coble, Amanda Collins*
*Kerry Dooley, Elizabeth Porter, Rev. Dr.*
*Katina Sharp*