# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

THE WILBERFORCE ACADEMY OF ) 
KNOXVILLE, ) 
 ) 
   Plaintiff, ) 
 ) 
v. )   No. 3:25-cv-584-CEA-CCP 
 ) 
KNOX COUNTY BOARD OF EDUCATION, et al ) 
   Defendants. ) 

## DEFENDANTS' MOTION TO DISMISS[1]

  Defendants Knox County Board of Education, John Butler, Anne Templeton, Patricia Fontenot-Ridley, Katherine Bike, Lauren Morgan, Betsy Henderson, Steve Triplett, Travis Wright, and Kristi Kristy (collectively "Defendants"), pursuant to Fed. R. Civ. P. 12(b)(1) respectfully request that the Court dismiss Plaintiff The Wilberforce Academy of Knoxville's ("Plaintiff") Amended Complaint. In further support of this Motion, Defendants state as follows:

## Introduction

  This case challenges long-standing Tennessee law regarding the non-sectarian, non-religious character of public schooling and seeks to upend an entire system of State law, regulations, policies and procedures. The Plaintiff seeks to do so without including the State of Tennessee or the Tennessee Commissioner of Education as a party. Moreover, Plaintiff does so before even starting the process for becoming a charter school asserting an injury that is not ripe

---

[1] This Honorable Court requires defendant's counsel to meet and confer with plaintiff's counsel prior to filing a motion to dismiss by outlining deficiencies in the complaint. [Doc. 5]. Undersigned counsel can certify that they spoke to Plaintiff's counsel regarding the perceived deficiencies of the Complaint. The parties did not agree that amendment would resolve the need to file this motion.

and speculative at best. Because Plaintiff's complaint is premature and fails to join a party necessary for the resolution of its claims, the Amended Complaint should be dismissed.

## Governing State Law

*The Public Education System in Tennessee*

The Tennessee Constitution recognizes the importance of a public education system and places the obligation to create and maintain such a system on the General Assembly of Tennessee. Specifically, Article XI of the Tennessee Constitution states:

> The State of Tennessee recognizes the inherent value of education and encourages its support. The **General Assembly** shall provide for the maintenance, **support and eligibility standards** of a system of free public schools. The General Assembly may establish and support such postsecondary educational institutions, including public institutions of higher learning, as it determines.

Tenn. Const. Art. XI, § 12 (bold emphasis added).

In order to effectuate this system of public education in Tennessee, Tennessee law empowers the General Assembly to adopt laws to govern public schools. Tenn. Code Ann. § 49-1-102(a) ("The system of public education in this state is governed in accordance with laws enacted by the general assembly . . ."). In addition, the State Board of Education is responsible for adopting "rules, policies, standards, and guidelines" which "are necessary for the proper operation of public education in pre-kindergarten through grade twelve." *Id.* "The state board shall formulate the rules, policies, standards, and guidelines with assistance from the commissioner of education, as the state board may request." *Id.* The Commissioner of education, in turn, is "responsible for the administration, implementation, supervision, and **enforcement** of the rules, policies, standards, and guidelines of the State Board of Education." Tenn. Code Ann. § 49-1-102(b) (emphasis added). Tennessee law makes clear that the Commissioner "is responsible for the implementation of law or policies established by the general assembly or the State Board of Education." Tenn. Code Ann. § 49-1-201(a). Local public-school systems operate within each county in Tennessee

2

and are administered by the local board of education and the director of schools. Tenn. Code Ann. § 49-1-102(c). However, the State Board of Education "set[s] rules and policies for the review, approval, or disapproval and classification of all public schools" within a local public school system. Tenn. Code Ann. § 49-1-302(a)(7).

*The Charter School Process in Tennessee*

The Tennessee General Assembly enacted the Tennessee Public Charter Schools Act of 2002. Tenn. Code Ann. § 49-13-101. The purpose of the chapter was to provide an "alternative means within the public school system" to achieve a variety of goals including "allowing the establishment and maintenance of public charter schools that operate within a school district structure." Tenn. Code Ann. § 49-13-102. A charter school must have a "governing body" which is the "group of persons who will operate a public charter school or schools by deciding matters, including, but not limited to, budgeting, curriculum, and other operating procedures for the public charter school and by overseeing management and administration of a public charter school." Tenn. Code Ann. § 49-13-104(a)(10). Tennessee law defines the "sponsor" of a proposed charter school as follows:

> Sponsor means a proposed governing body **filing an application** for the establishment of a public charter school, that:
> (A) Is not a for-profit entity; nonpublic school as defined in § 49-6-3001; other private, religious, or church school; or postsecondary institution not regionally accredited; and
> (B) Does not promote the agenda of any religious denomination or religiously affiliated entity.

Tenn. Code Ann. § 49-13-104(16) (emphasis added). In addition to this definition, Tennessee law states "[a] nonpublic school . . . or other private, religious, or church school shall not establish a public charter school pursuant to this chapter." Tenn. Code Ann. § 49-13-106(c).

A proposed charter school must submit a letter of intent sixty days before the application process begins to the Public Charter School Commission and the "Authorizer."[2] The sponsor must prepare an application "using the template developed by the State Board of Education in coordination with the [public school commission]." Tenn. Code Ann. § 49-13-107(b). The completed application must provide twenty-two categories of information including "a proposed academic plan," a "plan for evaluating student achievement," "a plan for evaluating student academic achievement," "an operating budget," "the plan for compliance with the applicably health and safety laws and regulations of the federal government and the laws of the state" and "the plan for transportation for the pupils attending the charter school." Tenn. Code Ann. § 49-13-107(b)(1)-(22). The State Board of Education is responsible for "adopt[ing] quality public charter school authorizing standards based on national best practices" and Authorizers **shall** adopt the authorizing standards approved by the State Board of Education." Tenn. Code. Ann. § 49-13-108(4) (emphasis added).

Once an application has been submitted, the local board of education must decide, via a resolution voted on at a board meeting, to approve or deny a public charter school application. Tenn. Code Ann. § 49-13-108(b)(2). The local board of education must review the application using the scoring rubric established by the State Board of Education. Tenn. R. and R. 0520-14-.01 (1)(j). That vote must take place no later than ninety (90) days after the receipt of the completed application. Tenn. Code Ann. § 49-13-108(b)(2). If a local board of education denies the public charter school application, it must state its reasons in writing. Tenn. Code Ann. § 49-13-108(b)(3). The sponsor then has thirty (30) days to submit an amended application to correct deficiencies. *Id.*

---

[2] "Authorizer" is defined as "the local board of education or the Tennessee public charter school commission that makes decisions regarding the approval, renewal, or revocation of a public charter school application or agreement." Tenn. Code Ann. § 49-13-104(4).

If the sponsor chooses to submit an amended application, the local board of education has sixty (60) days to vote on the amended application. *Id.* If the local board of education denies the application, the sponsor may appeal the decision to the Public Charter School Commission within ten (10) days of such decision. Tenn. Code Ann. § 49-13-108(b)(5)(A). The Public Charter School Commission conducts a *de novo* review of the application and can approve the school without the consent of the local board of education. *Id.* That decision is final. *Id.*

Any public charter school approved under the Tennessee Public Charter School Act shall "[b]e operated by a not-for-profit organization that is exempt from federal taxation under § 501(c)(3) of the Internal Revenue Code (26 U.S.C. § 501(c)(3)." Tenn. Code Ann. § 49-13-111(a)(1). It must "[o]perate as a public, nonsectarian, nonreligious public school." Tenn. Code Ann. § 49-13-111(a)(2). A Charter school receives "state, federal, and local funds from the local board of education." Tenn. Code Ann. § 49-13-111(a)(4). It must "[m]eet the performance standards and requirements of the State Board of Education for public schools." Tenn. Code Ann. § 49-13-111(1)(3). Moreover, it is "subject to all federal and state laws and constitutional provisions prohibiting discrimination on the basis of disability, race, creed, color, national origin, religious, ancestry or need for special education services." Tenn. Code Ann. § 49-13-111(b).

If a public charter school cannot meet a State Board of Education rule or statute, the sponsor may apply for a "waiver" from such statute or rule. Tenn. Code Ann. § 49-13-111(p). Tennessee law makes clear, however, that a waiver will not be granted for regulatory or statutory requirements related to "Federal and state civil rights." *Id.* Pursuant to Tenn. Code. Ann. § 49-13-108(b)-(f), the State Board of Education has adopted application requirements that all Authorizers must follow. Local boards of education must adopt and follow all authorizing criteria established by the State Board of Education. *Id.* Authorizers must follow all the requirements and criteria set

5

forth by the state in both the Tennessee Public Charter Schools Act and the State Board of Education rules. Tenn. Code Ann. § 49-13-145. The state is required to evaluate authorizer quality every two years which includes "determine[ing] authorizer compliance with the requirements of the [Tennessee Public Charter Schools Act] and the rules and regulations of the state board of education." *Id.* An Authorizer who fails to comply is subject to a loss of funding as determined by the State Board of Education. *Id.*

Under State Board of Education rules, "[w]aiver requests from the requirements in the charter school statute, T.C.A. Title 49, Chapter 13, or State Board of Education rules and regulations specific to charter schools shall not be considered." Tenn. R. & Reg. 0520-14-.02. The only person with the authority to waive the State Board of Education rules for a school under Tennessee law is the Commissioner of Education. Tenn. Code Ann. § 49-1-203.

*Wilberforce Academy*

On November 25, 2025, Wilberforce Academy of Knoxville submitted a letter of intent signifying that it would submit an application to become a public charter school. The Plaintiff has made clear that it is an explicitly religious entity, wishing to establish an explicitly religious school in violation of the Tennessee Public Charter School Act, or, in the alternative, wishing to sponsor a school giving a secular education while maintaining its own religious identity, also in violation of the Tennessee Public Charter School Act. [Amended Complaint, Doc. 10, ¶¶ 28-45]. At the time of the filing of the Complaint, the Plaintiff had not submitted an application to the Knox County Board of Education. [*Id.*, ¶ 11]. Also, at the time of the filing of the Complaint, Plaintiff was not a registered 501(c)(3) organization. [Complaint, ¶ 48]. Finally, since the filing of the Complaint, the Plaintiff has failed submit an application to KCBOE and accordingly, cannot be considered for charter school status at this time. [Declaration of Theresa Nixon, Ex. A, ¶ 6].

6

**Argument**

**I. The Court Does Not Have Subject Matter Jurisdiction Over this Matter.**

Article III of the United States Constitution limits federal courts' subject matter jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. Accordingly, federal courts are empowered "to deliver judgments on real disputes, not hypothetical ones, to resolve concrete disputes, not to pronounce judgments on theoretical disputes that may or may not materialize and, if they do, may appear in a variety of forms." *Saginaw Cnty., Mich. v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-03 (1998)). "The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights and has couched the request for forms of relief historically associated with courts of law in terms that have a familiar ring to those trained in the legal process." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1983). Thus, Article III requires that there be a "real, earnest, and vital controversy" between the parties. *Id.* (quoting *Chicago & Grand Trunk R. Co. v. Wellman*, 143 U.S. 339, 345 (1892)).

Moreover, the "judicial power of the United States defined by Article III is not an unconditioned authority to determine the constitutionality of legislative or executive acts." *Valley Forge*, 454 U.S. at 471. "Federal courts do not possess a roving commission to publicly opine on every legal question [and] do not exercise general legal oversight of the Legislative and Executive Branches . . . ." *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). Accordingly, courts must be "especially rigorous" in assessing standing when asked to evaluate the constitutionality of an executive or legislative action. *White v. United States*, 601 F.3d 545, 555 (6th Cir. 2010) (citing *Raines*, 521 U.S. at 820).

7

The fact that the Plaintiff seeks a declaratory judgment does not change the basic standing requirement. The Declaratory Judgment Act permits federal courts to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). It does not modify "the essential requisites for the exercise of judicial power" and does not "otherwise enable federal courts to deliver an expression of opinion about the validity of laws." *Saginaw Cnty.*, 946 F.3d at 954 (internal quotations and citations omitted). Therefore, a party seeking declaratory relief, "must satisfy the prerequisites of the of the Declaratory Judgment Act and Article III's standing baseline." *Id.* Similarly, "[r]equests for prospective injunctive relief are not exempt from Article III's requirements." *See WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 515 (6th Cir. 2021) ("[E]ven if WCI had standing to sue for past harms, it still "must demonstrate separate standing to seek declaratory or injunctive relief focused on prospective harm.").

## A.    Legal Standard

"There are two types of motions to dismiss for lack of subject-matter jurisdiction: facial and factual attacks." *Accord v. Anderson Cnty., Tenn.*, No. 3:21-CV-00077, 2021 WL 6135691, at *1 (M.D. Tenn. Dec. 28, 2021) (citing *Gentek Bldg. Prods., Inc. v. Sherman-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). The applicable legal standard depends on the type of attack:

A facial attack challenges merely the sufficiency of the pleading. When reviewing a facial attack, a district court takes the allegations in the complaint as true. If those allegations establish cognizable federal subject-matter jurisdiction, jurisdiction exists. A factual attack instead raises a factual controversy concerning whether subject-matter jurisdiction exists. Where there is a factual attack on the subject-matter jurisdiction of the court under Fed. R. Civ. P. 12(b)(1), no presumptive truthfulness applies to the complaint's allegations; instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist.

*Transamerica Life Ins. Co. & Transamerica Corp. v. Douglas*, No. 3:21-CV-00194, 2023 WL 2656527, at *3 (M.D. Tenn. Mar. 27, 2023) (quoting *Bush v. Reliant Bank*, No. 3:21-CV-00525, 2022 WL 2359635, at *3 (M.D. Tenn. June 30, 2022), *aff'd*, No. 22-5656, 2023 WL 5275025 (6th Cir. Apr. 10, 2023)). "Courts reviewing factual attacks have 'wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts.' " *Id.* (quoting *Doe v. Lee*, No. 3:21-cv-00809, 2022 WL 1164228, at *4 (M.D. Tenn. Apr. 19, 2022) (citing *Gentek*, 491 F.3d at 330) (footnote omitted)). "And '[a]s always, the party invoking federal jurisdiction has the burden to prove that jurisdiction.'" *Transamerica*, 2023 WL 2656527 at *3 (quoting *Doe*, 2022 WL 1164228 at *4 (citations omitted)). KCBOE brings both a factual and facial attack. In support of its factual attack, KCBOE relies on the declarations of Theresa Nixon, Doc. 19-1 and Exhibit A.

### B. Plaintiff lacks standing to bring this matter.

"One element of the case-or-controversy requirement" is that the plaintiff 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 407 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Standing has three threshold requirements: (1) "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) a likelihood that the "injury will be 'redressed' by a favorable decision.'" *Carman v. Yellen*, 112 F. 4th 386, 399 (6th Cir. 2024) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Standing has a temporal component and must "be determined as of the time the complaint is filed." *Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826, 849 (6th Cir. 2024). Post-filing events cannot grant standing where none existed at the time of filing. "[O]ur equitable discretion to take judicial notice or to expand the record, does not permit the use of post-complaint events to retroactively generate standing." *Id.* Therefore, "if a plaintiff lacks standing at the time the action

9

commences," then that plaintiff is not entitled 'to a federal judicial forum.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000).

### i.    Plaintiff cannot demonstrate an injury-in-fact.

Injury-in-fact is the "first and foremost" standing element. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016). More than "an injury to a cognizable interest" is necessary; the plaintiff must also "be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972). Thus, an injury-in-fact is "an invasion of a legally protected interest" that is (i) "concrete," (ii) "particularized," and (iii) "actual or imminent.") *Lujan*, 504 U.S. at 560. To be "concrete," the injury must be "real," as opposed to abstract, procedural or purely legal. *Spokeo*, 578 U.S. at 340. To be "particularized," the injury "must affect the plaintiff in a personal and individual way." *Id.* at 560, n. 1. Finally, the Article III injury must be "actual or imminent, not speculative." *FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 381 (2024). Thus, the injury "must have already occurred or be likely to occur soon." *Id.* A future injury is *only* sufficient to confer standing if it is "certainly impending" or if there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) (internal quotation marks omitted). This "imminent injury" requirement means a plaintiff "cannot sue simply to avoid a *possible* future injury." *Saginaw Cnty.*, 946 F.3d at 954–55 (emphasis in original).

The crux of Plaintiff's alleged injury is an assertion that the denial of its application is inevitable because Tennessee law restricts the formation of religious charter schools. However, it is apparent both from the face of the Complaint and the record before the Court, that the Plaintiff has not actually submitted an application to become a charter school let alone had their application rejected. Indeed, the Plaintiff filed this complaint prior to the deadline for an application and before the Knox County Board of Education had the opportunity to review its application and vote

on its application, including the requested waiver of the requirements it now challenges. Courts typically do not allow plaintiffs to make challenges to regulatory statutes where the party has not applied for the benefit it seeks. *Miller v. City of Wickliffe*, 852 F.3d 497, 503–04 (6th Cir. 2017) (holding that plaintiff lacked constitutional standing to challenge an ordinance when they had never applied for a permit); *Madsen v. Boise State University*, 976 F.2d 1219, 1221 (9th Cir. 1992) ("[A] plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit."); *see also Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166–71 (1972) (plaintiff who had never applied for membership lacked standing to challenge fraternal organization's discriminatory membership policies); *Lehon v. City of Atlanta*, 242 U.S. 53, 56 (1916) (non-resident who never applied for permit lacked standing to challenge licensing ordinance on grounds that city officials discriminate in favor of residents in awarding licenses); *Oil, Chemical & Atomic Workers Int'l Union v. Gillette Co.,* 905 F.2d 1176, 1177 (8th Cir. 1990) (employee who has not filed benefits claim lacks standing to challenge employer's retirement policy); *Doe v. Blum,* 729 F.2d 186, 189-90 (2d Cir. 1984) (plaintiffs who never requested family planning services may not challenge Medicaid distribution procedures); *Jackson v. Dukakis,* 526 F.2d 64, 65-66 (1st Cir. 1975) (plaintiff who did not apply for employment with state agencies lacks standing to allege discriminatory hiring practices); *Interstate Commerce Comm'n v. Appleyard,* 513 F.2d 575, 577 (4th Cir. 1975) (trucker who has never applied for ICC transportation permit has "suffered no legally cognizable injury" from policy), *cert. denied,* 423 U.S. 840 (1975).

If Plaintiff argues that completing an application would merely be a "futile gesture," *see Teamsters v. United States*, 431 U.S. 324, 365–66 (1977), the Plaintiff must still demonstrate that it was "able and ready" to apply and that a "discriminatory policy" prevented it from doing so on

equal footing from other applicants. *Gratz v. Bolinger*, 539 U.S. 244, 262 (2003). The Supreme Court's decision is *Carney* illustrates the significance of the "able and ready" requirement. In *Carney*, a Delaware lawyer who was a registered political independent challenged a state constitutional provision requiring that judicial appointees to Delaware courts "reflect a partisan balance." *Carney v. Adams*, 592 U.S. 53, 55 (2020). The plaintiff claimed the requirement violated his First Amendment right to freedom of association. *Id.* at 56. Although the plaintiff stated he "would apply" for any judicial position for which is felt he was qualified, the Supreme Court held that he did not have standing because his "few words of general intent" were insufficient to show an injury-in-fact. *Id.* at 63–64.

Here, like the Plaintiff in *Carney*, the Plaintiff has not adequately alleged or demonstrated that it is "able and ready" to apply and thus, its futility argument should fail. By Plaintiff's own admission, it is not "able and ready" to apply to become a charter school in Tennessee. Plaintiff speculates that it would meet all other requirements for a charter school and that "but for" its status as a religious charter school, the Defendants would approve it. But such speculation cannot confer standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) ("Thus, we have repeated reiterated that "threatened injury must be *certainly impending* to constitute injury in fact," and that "[a]llegations of *possible* future injury" are not sufficient.") (emphasis original). There is nothing to support Plaintiff's contention that it would otherwise be entitled to form a charter school under the rigorous requirements of Tennessee law.[3]

---

[3] Plaintiff repeatedly cites KCBOE's response to its letter of intent as proof of the alleged futility of its actions. However, even if KCBOE's response to the letter of intent (which merely pointed out that the form was incomplete) was somehow a deprivation of Plaintiff's rights, past injury "is not an adequate injury in fact to confer standing for declaratory and injunctive relief." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001); *see also Barber v. Miller*, 80 F.3d 840, 849 (6th Cir. 2015) (noting that while a plaintiff may sue under § 1983 for *past harms*, "he must demonstrate separate standing to seek declaratory or injunctive relief focused on prospective harm.").

12

Moreover, it appears that the Plaintiff was *never* "ready" and "able" to apply for charter school status. The Complaint states that it is not operating as a registered 501(c)(3) organization, a fundamental and basic requirement to become a charter school in Tennessee. Tenn. Code Ann. § 49-13-111(a)(1). The Plaintiff has not identified how it intends to fulfill the other twenty-two categories of information that a charter school applicant is required to disclose including its board of directors, its budget, transportation plan, or provisions for services for students under the IDEA, amongst other requirements. In addition, charter schools often require waivers of other State Board of Education rules which either the State or the authorizer might approve. It is extremely speculative to assume that the Plaintiff would meet all requirements and that all of its waiver requests would be granted when there is no application to review. Plaintiff's conclusory allegations that it otherwise meets all of the specific and detailed requirements to become a charter school in Tennessee is insufficient to plausibly assert that its application would be futile. Essentially, the Plaintiff asks the court to assume: (1) it would submit a timely and complete application for review; (2) it would adequately address each of the categories of information required by Tennessee law; (3) it would either not need any other waivers from State Board of Education rules or each waiver would be granted by the State or KCBOE; (4) it would meet the requirements of the scoring rubric created by the State Board of Education; (5) the only impediment to its authorization is the state law which prevents religious charter schools; and (6) the Commissioner of Education would decline to issue a waiver. Given the chain of events which must occur, Plaintiff's injury cannot be "certainly impending." *Clapper* 568 U.S. at 410.

Plaintiff also cannot show an injury-in-fact because there has been no final decision made by the Knox County Board of Education (or even the true enforcer of state education law, the Commissioner of Education). While there is no requirement that a plaintiff exhaust administrative

13

remedies before bringing a § 1983 action, *Patsy v. Fla. Bd. of Regents*, 457 U.S. 596, 507 (1982), "plaintiffs still must answer the conceptually distinct question of whether there is a final decision for this court to review." *Miller v. City of Wickliffe*, 852 F.3d 497, 504 (2017) (citing *Williamson Cty. Reg'l Planning Comm'n. v. Hamilton Bank of Johnson City*, 473 U.S. 172, 192 (1985)). The "finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." *Williamson*, 473 U.S. at 193. In *Miller*, the Sixth Circuit held that the city had never indicated that it would not permit the plaintiff to open their nightclub. *Miller*, 852 F.3d at 505. It had denied their initial occupancy application but offered an alternative route of submitting a conditional-use permit. *Id.* Plaintiffs never did so. *Id.* Thus, there was no final decision for the court to review. *Id.* at 506. Accordingly, the Court lacked subject matter jurisdiction over the case. *Id.*

The record here is similar. Contrary to the allegations of the Complaint, no one at KCS or on the Knox County Board of Education has informed the Plaintiff that they cannot submit an application to become a charter school. [Declaration of Theresa Nixon, Doc. 19-1, ¶ 12]. Rather, the letter of intent was received and noted that it was incomplete. [*Id.*, ¶ 10-b]. However, KCS did not inform the Plaintiff it could not submit an application. [*Id.*, ¶ 12]. The decision is certainly not final as the Board has had no opportunity to consider the Plaintiff's request and cannot because no application was submitted. [Declaration of Theresa Nixon, Ex. A, ¶ 6]. Indeed it is not a "sponsor" under Tennessee law because that term is defined as one "filing an application" to become a charter school which it has not done. Tenn. Code Ann. § 40-13-101. Further, much like the plaintiff in *Miller*, there is an alternative path for the waiver that the Plaintiff requests. Charter schools are permitted to request waivers from either the State or the Authorizer. Tenn. Code Ann. § 49-13-111(p). Tennessee law also permits the Commissioner of Education (and only the Commissioner)

14

to waive State Board of Education rules. Tenn. Code Ann. § 49-1-203. As Plaintiff has pointed out to the Court, the Tennessee Attorney General has recently opined that the law prohibiting religious charter schools is unconstitutional, making it plausible the Commissioner would grant a waiver. Yet, Plaintiff has not availed itself of this remedy.

Furthermore, KCBOE is not the final decision-maker in this process. Should KCBOE elect to deny Plaintiff's eventual application, *for any reason*, state law allows Plaintiff to seek approval from the State of Tennessee:

> A sponsor may appeal a local board of education's decision to deny a public charter school application to the commission no later than ten (10) days after the date of the local board of education's decision. The appeal and review process must be conducted in accordance with this subdivision (b)(5).

Tenn. Code Ann. § 49-13-108(b)(5)(A).

Indeed, Plaintiff's own argument regarding the power of the Knox County Board of Education belies its argument regarding futility and finality. It on one hand argues that KCBOE has the power to "waive" the requirements of Tennessee law (hence its argument for naming KCBOE as yjr defendant in this matter rather than the State of Tennessee or the Commissioner of Education whose duty it is to enforce those laws) while also arguing that its application is futile because KCBOE will not waive the requirement due to state law. If Plaintiff is correct that KCBOE can waive the requirements,[4] it has not shown that it will not, thus creating no final decision from which the Plaintiff may claim constitutional injury. If it cannot waive the requirements due to state law, then it is the incorrect defendant, and as will be discussed, cannot be the cause of the Plaintiff's claimed injury. Plaintiff's own circular logic exemplifies its lack of constitutional injury. For these reasons, Plaintiff does not have standing to pursue its claims.

---

[4] Obviously KCBOE asserts that ignoring the requirements of state law would imperil its own funding. Tenn. Code Ann. § 49-13-145.

### ii. *Causal Connection and Redressability*

Even if Plaintiff could demonstrate that it has suffered a concrete injury, it still cannot satisfy the remaining standing requirements. The second and third requirements that the Plaintiff has the burden of showing at this stage is that its alleged injury "is fairly traceable to the defendant's allegedly unlawful conduct." *Allen v. Wright*, 468 U.S. 737, 751, 757–58  (1984), *abrogated on other grounds by Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) (explaining that it may be "substantially more difficult to meet the minimum requirements of [Article] III" when an injury stems from a third party).  "When a plaintiff's alleged injury is the result of 'the independent action of some third party not before the court,' the plaintiff generally lacks standing to seek its redress." *Crawford v. United States Dep't of the Treasury*, 868 F.3d 438, 455 (6th Cir. 2017) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976)). The Plaintiff's alleged injury is the Tennessee law passed by the Tennessee General Assembly in 2002 and the State Board of Education rules applicable to charter schools, not the actions of the Knox County Board of Education.  Tennessee law prohibits an explicitly religious charter school under Title 49, Chapter 13.  Currently, the State Board of Education rules prevent an Authorizer from considering a request to waive the requirements of the Tennessee Public Charter School Act. Tenn. R. and Reg. 0520-14-02.-.01(2).  The only person with authority to waive that rule is the Tennessee Commissioner of Education. Tenn. Code Ann. § 49-1-203. KCBOE has no authority or discretion under state law to consider the waiver that the Plaintiff seeks or to approve a charter school that is religious in nature. Authorizers such as KCBOE must comply with the requirements of the Act and can face a loss of funding if they do not. Tenn. Code Ann. § 49-13-145.  As such, the Plaintiff cannot trace its injury to KCBOE.  In *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021 (6th Cir. 2022), the Court considered a

challenge to the state law preventing Universal Life-ordained officiants from solemnizing a marriage. The plaintiff brought the action against state officials, local district attorneys, and clerks of court. *Id.* at 1023. The court ultimately dismissed the clerks because they "had no discretion and no authority" under state law to refuse to issue a license because it was solemnized by such officiants. *Id.* at 1038-39. Further, the source of the injury was not traceable or redressable by the clerks because the injury was caused by the underlying statute, not the action of the clerks:

> The marriage licenses and associated marriages are potentially invalid because of the underlying *statute* banning ULC ordination—not because of anything the clerks do. The clerks have no authority to modify or repeal § 36-3-301. That statute would still exist—still impugning the marriages' validity—no matter what relief the district court awarded against the clerks. At least from the three compliant clerks, in other words, there is no behavior modification the court could coerce with an injunction that would redress the "potentially-invalid-license" theory of injury. And there being no jurisdiction for an injunction, there is none for a declaratory judgment either.

*Id.* at 1038–39.

Here, as in *Nabors*, the underlying injury of the Plaintiff is caused by the allegedly unconstitutional series of state statutes and regulations. KCBOE has no authority to modify or repeal those state laws or regulations. Furthermore, contrary to the Plaintiff's assertions, KCBOE is constrained by State Board of Education rules that prohibit it from considering a waiver such as the Plaintiff is requesting. The only individual with the authority to consider the waiver that Plaintiff is requesting is the Commissioner of Education. Thus, any injury alleged by the Plaintiff is not attributable to KCBOE.

## II.     The Plaintiff has failed to join a necessary party.

Necessary parties are those parties who should be joined so that the court may "finally determine the entire controversy, and do complete justice, by adjudicating all the rights involved

17

in it." *Shields v. Barrow*, 58 U.S. 130, 139 (1854). The Commissioner of Education is a necessary party and should be joined.

### A. Legal Standard

Federal Rule of Civil Procedure 19 governs whether a party is indispensable. In determining whether a [party] is an indispensable party under Rule 19, the Sixth Circuit applies a three-step analysis. *See Keweenaw Bay Indian Cmty. v. State*, 11 F.3d 1341, 1345 (6th Cir. 1993). "First, the court must determine whether the person or entity is a necessary party under Rule 19(a)." *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004)." "Second, if the person or entity is a necessary party, the court must then decide if joinder of that person or entity would deprive the court of subject matter jurisdiction." *Id.* "Third, if joinder is not feasible because it will eliminate the court's ability to hear the case, the court must analyze the Rule 19(b) factors to determine whether the court should 'in equity and good conscience' dismiss the case because the absentee is indispensable." *Id.* (quoting *W. M.R. Co. v. Harbor Ins. Co.*, 910 F.2d 906, 961 (6th Cir. 1990)).

### B. The Commissioner of Education is a Proper and Necessary Party.

Because resolution of Plaintiff's central claim that certain Tennessee statutes and regulations are unconstitutional and Plaintiff's requested relief cannot be granted without its involvement, the State of Tennessee is a necessary party under Rule 19(a). Plaintiff has brought both a facial and as-applied challenge to Tenn. Code Ann. 49-13-104, Tenn. Code Ann. § 49-13-111, and "all other policies promulgated or enforced" which restrict the formation of religious charter schools. [Doc. 10, Prayer for Relief]. When a litigant challenges the constitutionality of a Tennessee statute, the Tennessee Attorney General must be notified, and the Court must "suspend proceeding on the constitutional challenge until such notice has been provided and a response from

the Attorney General received." *Johnson v. Tyson Foods, Inc.*, 607 F. Supp. 3d 790 (W.D. Tenn. 2023) (citing *In re Adoption of E.N.R.*, 42 S.W.3d 26, 33 (Tenn. 2001) (citing Tenn. R. Civ. P. 24.04); *see also* Tenn. Code Ann. § 29–14–107(b) ("[I]f the statute, ordinance, or franchise is of statewide effect and is alleged to be unconstitutional, the attorney general and reporter shall also be served with a copy of the proceeding and be entitled to be heard.").[5] Beyond this notice requirement, however, Plaintiff requests both declaratory and injunctive relief, both of which cannot be fully awarded without the state's presence. Each will be discussed in turn.

      i.    *Declaratory Relief*

Under the Federal Declaratory Judgment Act, a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act does not modify the constitutional standards of jurisdiction and standing and would therefore only bind the parties to this action. *See* 28 U.S.C. § 2201; *see also Doe v. Lee*, 102 F.4th 330, 342 (6th Cir. 2024) ("Accordingly, the Court concludes that a declaratory judgment binds the parties, but only the parties, wherever they may be." (quoting *Skyworks Ltd. v. CDC,* 542 F. Supp. 3d 719, 728 (N.D. Ohio 2021)). Here, as in *Lee*, the relevant officials "are nonparties who would not be bound by the judgment" which renders the judgment powerless unless the Commissioner of Education is joined.

In addition, the State generally "has a manifest legal interest in defending the constitutionality of [its] laws." *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199*

---

[5] (b) In addition to the duties described in subsection (a), the attorney general and reporter, or assistants acting at the attorney general and reporter's discretion, has the following duties:
(9) **To defend the constitutionality and validity of all legislation** of statewide applicability, except as provided in subdivision (b)(10), enacted by the general assembly, **except in those instances where the attorney general and reporter is of the opinion that such legislation is not constitutional**, in which event the attorney general and reporter shall so certify to the speaker of each house of the general assembly;

Tenn. Code Ann. § 8-6-109.

19

*v. Blackwell*, 467 F.3d 999, 1007 (6th Cir. 2006). But more specifically, Tennessee law is clear that if a charter school is approved, the local board of education and the State Department of Education must *both* allocate funds directly to the approved charter school. Tennessee Code Annotated § 49-13-112(a)(1)-(2) states:

> **(a)**
> **(1)** A local board of education shall allocate to the public charter school an amount equal to:
>> **(A)** The local student-generated funds for member students in the public charter school for the prior year in alignment with the TISA pursuant to chapter 3, part 1 of this title;
>> **(B)** The average per pupil state and local funds received by the district in the current school year above those required by the TISA for each member student in the public charter school in the prior year;
>> **(C)** The per student state and local funds received by the LEA for member students in the public charter school in the current school year beyond the prior year's membership; and
>> **(D)** All appropriate allocations under federal law or regulation, including, but not limited to, IDEA and ESEA funds.
>
> **(2) The department of education shall disburse directly to the public charter school an amount equal to the state student-generated funds for member students in the public charter school for the prior year in alignment with the TISA pursuant to chapter 3, part 1 of this title.**

(Bold emphasis added).

Accordingly, should this court determine that the Plaintiff is entitled to declaratory relief and declare that the challenged statutes and regulations are facially unconstitutional, the state of Tennessee would be required to fund not only the Plaintiff, but other religious charter schools which may be authorized. This disbursement of state funds is a real interest that the state holds. In recognition of this real interest, Tennessee law requires that the Attorney General appear in cases where, as here, the state has a pecuniary interest:

> The attorney general and reporter **shall attend** in person, or by assistant, **and prosecute or defend**, as the case may be, **any and all suits**, civil or criminal, in the supreme court of the United States, in the United States court of appeals for the judicial circuit of the United States comprising the state of Tennessee, or in any of

20

the district courts of the United States held in the state of Tennessee, **in which suit or suits the state may be a party, or in which the state has or may have interests of a pecuniary nature.**

Tenn. Code Ann. § 8-6-110 (emphasis added).

The case of *Cummings v. Beeler*, 223 S.W.3d 913 (Tenn. 1949) is instructive. In that case, the Tennessee Attorney General issued an opinion that a certain piece of proposed legislation would be unconstitutional. *Id.* at 916. The Tennessee General Assembly passed it despite the Attorney General's opinion which resulted in the Secretary of State having to expend state funds on potentially unconstitutional legislation. *Id.* The Secretary of State sought a declaratory judgment regarding its obligations in light of the potentially unconstitutional proceeding. The Tennessee Supreme Court concluded that this gave the Secretary of State a real interest in the proceeding:

> The Secretary of State is required to spend this State money. . . . **It would therefore clearly appear that the Secretary of State has a real interest, officially, in determining whether or not the legislation is valid before spending these public funds.**

*Id.* (emphasis added)

Here, as in *Beeler*, the State has an interest in a controversy which, if resolved in the Plaintiff's favor, would result in the required expenditure of state funds. Because Plaintiff brings a facial challenge to the state law and regulations, the impact of the Court's decision is not limited to the Knox County Board of Education or just the Plaintiff. The State Department of Education could be faced with providing funds directly to religious charter schools throughout the 95 counties of Tennessee. This fiscal impact is a real, protectible interest and adjudication of this matter requires the joinder of the State.

In addition, "[i]t is well-settled that when a plaintiff seeks to challenge the constitutionality of a state statute, the proper defendant for that suit is the state official or agency that enforced the

allegedly unconstitutional statute against the plaintiff." *Putnam v. Davies*, 169 F.R.D. 89, 98 (S.D. Ohio 1996). Here, the Commissioner of Education is "responsible for the administration, implementation, supervision, and **enforcement** of the rules, policies, standards, and guidelines of the State Board of Education." Tenn. Code Ann. § 49-1-102(b) (emphasis added). Tennessee law makes clear that the commissioner "is responsible for the implementation of law or policies established by the general assembly or the State Board of Education." Tenn. Code Ann. § 49-1-201(a). This enforcement power includes setting the standards for the formation of charter schools and the standards that charter schools must continue to meet once they are formed. Moreover, it is the State Board of Education regulations that restrict local board of educations from providing waivers of the requirements of the Tennessee Public Charter School Act. Tennessee law also requires KCBOE to comply with the requirements or else risk its own funding. Tenn. Code Ann. § 49-13-145. The only person empowered to waive State Board of Education rules is the Commissioner of Education. Tenn. Code Ann. 49-1-203. Accordingly, in order to provide Plaintiff with the complete relief it seeks, the Commissioner of Education or the State of Tennessee must be made a party to this action.

ii.    *Injunctive Relief*

For many of the same reasons, the State of Tennessee is a necessary party to the Plaintiff's claim for injunctive relief as well. First, in order to provide Plaintiff with the injunction that it requests, which would enjoin enforcement of every state law and State Board of Education rule, policy, and procedure that prohibits religious charter schools against the Plaintiff, the Commissioner of Education must be a party to this action. Take for example, the letter of intent form which the Plaintiff has frequently cited in its Amended Complaint. That is a form created by the State Board of Education. KCBOE has no power or authority to revise that form to remove

the section which requires a sponsor to affirm it is not a religious entity.  The application form that charter schools complete before submitting is also a creature of the State Board of Education.   The State Board of Education sets the standards that authorizers must use when evaluating charter school applications. In order to prevent enforcement of those rules, regulations, and policies against the Plaintiff,  the state is a necessary party.

In addition, as the United States Supreme Court has recently emphasized, "[i]t is an elementary principle that a court cannot adjudicate directly upon a person's right without having him either actually or constructively before it. This principle is fundamental." *Trump v. CASA, Inc.*, 606 U.S. 831, 843-44 (2025) (quoting *Gregory v. Stetson*, 133 U.S. 579, 586 (1890)).  In *Trump*, the Supreme Court affirmed that so-called "universal injunctions" exceed the scope of the court's authority.  While not a national injunction, this case does ask that Court enter an injunction preventing the enforcement of all laws and policies related to religious charter schools against the Plaintiff. Such an injunction would require the State whose responsibility it is to establish a system of public education, to take or refrain from certain action. The State is the entity tasked with creating the charter school application forms and determining the charter school authorizing standards. This includes developing the scoring rubric that local boards of education must rely on when evaluating applications. Essentially, the Plaintiff is asking this Court to order the State to alter its laws, its policies, its procedures, and force the state to spend state funds without its being a party to this case. Under the reasoning of *Trump* and *Stetson*, the Court cannot order such action if the State is not before the Court.  *Trump*, 606 U.S. at 843-44.  Without the state as a party, the Court cannot fully adjudicate the Plaintiff's claims or provide it with its requested relief.  Thus, the state is a necessary party to this action.

23

Under the necessary party analysis, if a party is necessary then the Court must evaluate whether joinder of the party would destroy subject matter jurisdiction. *Glancy*, 373 F.3d at 672. If a State has sovereign immunity, it cannot be joined to this federal action. Sovereign immunity generally precludes any private party from naming a nonconsenting state as a defendant in a federal court action. *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267–68, (1997) (citing *Hans v. Louisiana,* 134 U.S. 1, (1890)); *Edelman v. Jordan,* 415 U.S. 651, 662–63 (1974) ("While the [Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."). A state's sovereign immunity also shields "instrumentalities" or "arms" of the state, though this does not include counties or municipalities. *S.J. v. Hamilton County, Ohio,* 374 F.3d 416, 419–20 (6th Cir.2004). Therefore, the successful prosecution of a civil action against a state (or an arm of the state) in federal court without the state's consent requires that Congress have abrogated the state's federal court sovereign immunity for the claim being asserted. However, there is an exception to States' sovereign immunity under the doctrine announced in *Ex parte Young,* 209 U.S. 123 (1908), whereby "a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst State Sch. & Hosp. Halderman,* 465 U.S. 89, 102 (1984). "In order to fall within the *Ex parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law." *Diaz v. Mich. Dep't of Corr.,* 703 F.3d 956, 964 (6th Cir.2013). For these reasons, the Commissioner of Education, as the party tasked with enforcing state education law and policy, should be joined as a party to this action.

## C. This Matter is Moot.

A corollary to this case-or-controversy requirement is that "'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona,* 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975)). If an intervening circumstance deprives the plaintiff of a "personal stake in the outcome of the lawsuit," at any point during litigation, the action can no longer proceed and must be dismissed as moot. *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477–478 (1990) (internal quotation marks omitted). At this time, the Plaintiff has failed to submit an application to become a charter school in Knox County. Even if the Court granted the Plaintiff's relief, Plaintiff will be unable to submit an application until February of 2027. Tenn. Code Ann. § 49-13-108. There is no action that the Court can order KCBOE to take at this point that would provide Plaintiff with an opportunity to open its proposed school for the next school year.

## D. The Individual Board Members Sued in Their Official Capacity Should Be Dismissed.

Finally, the individual board members named in their official capacity only should be dismissed. Official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). As a result, when a § 1983 complaint asserts a claim against a municipal entity and a municipal official in his or her official capacity, federal courts will dismiss the official-capacity claim. *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.,* 103 F.3d 495, 509 (6th Cir.1996)(affirming district court's dismissal of official-

25

capacity suits). While Plaintiff may argue that it is permitted to name a government official who may be responsible for enforcing certain statutes and policies against it, KCBOE acts as a body. No individual board member has the ability to bind the Board to a certain course of action or individually enforce a board policy. Therefore, those members should be dismissed.

Respectfully submitted.

*s/Jessica Jernigan-Johnson*
David M. Sanders (BPR # 016885)
Senior Deputy Law Director
Jessica Jernigan-Johnson (BPR #032192)
Deputy Law Director
Knox County Law Director's Office
400 Main Street, Suite 612
Knoxville, TN 37902
(865) 215-2327
david.sanders@knoxcounty.org
jessica.johnson@knoxcounty.org

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2026, a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

*s/Jessica Jernigan-Johnson*
JESSICA JERNIGAN-JOHNSON