# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| THE WILBERFORCE ACADEMY OF KNOXVILLE, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 3:25-cv-584 |
| v. | ) ) ) | Judge Atchley |
| | ) | Magistrate Judge Poplin |
| KNOX COUNTY BOARD OF EDUCATION, *et al.*, | ) ) ) | |
| *Defendants*. | | |

## ORDER

Before the Court is Proposed Intervenor-Defendants Adrienne Carroll, Ciara Crutcher, Tiffany Nash, Evelyn Henderson, Shakeithia Rice, and Holly Slater's (collectively "Tennessee Families") Motion to Intervene [Doc. 60] seeking to intervene in this matter pursuant to Federal Rule of Civil Procedure 24 to defend the public nature of Tennessee charter schools. For the reasons explained below, Tennessee Families' Motion to Intervene [Doc. 60] will be **GRANTED**.

## I.     BACKGROUND

Plaintiff, The Wilberforce Academy of Knoxville ("Wilberforce"), is a religious organization seeking to establish a charter school in Knox County, Tennessee. [Doc. 10]. Wilberforce's mission is unmistakable: to provide "Christian educational services" by operating a "Christian charter school." [*Id.* at ¶ 31]. As Tennessee law currently provides, however, charter schools are required to operate as "nonsectarian" and "nonreligious." [*Id.* at ¶ 23]; *see also* T.C.A. § 49-12-111(a)(2). For this reason, Wilberforce contends that Defendants Knox County Board of Education and its members (collectively "KCBOE Defendants"), who are responsible for approving or denying charter school applications, will ultimately deny Wilberforce's application

solely on the basis of its religious status. [Doc. 10 at ¶ 25–26].

On November 30, 2025, Wilberforce filed this action against the KCBOE Defendants challenging the nonsectarian requirement of Tennessee's charter-school program, which it believes unlawfully discriminates against religious organizations in violation of the Free Exercise Clause of the First Amendment. [Docs. 1, 10]. Shortly thereafter, a group of Knox County taxpayers, each of whom has children who attend or have attended a Knox County non-charter public school (collectively "Taxpayer Defendants"), moved to intervene, asserting an interest in ensuring that public funds are not used to support religious charter schools. [Docs. 21, 22]. On January 30, 2026, the Court granted their motion, largely on the basis that, absent their participation, no party to the action would defend the constitutionality of Tennessee's charter school framework.[1] [Doc. 41].

On February 17, 2026, the Tennessee Families filed their motion to intervene as defendants in this action, arguing that they have a separate and unique interest from the Taxpayer Defendants. [Doc. 60]. This second group consists of parents of children who attend public charter schools in Memphis, Nashville, and Chattanooga, Tennessee. [Doc. 61 at 1].[2] Many of these children have disabilities and receive accommodations under federal law, while others attend charter schools that receive federal funding to support students from low-income families. [*Id.*]. The Tennessee Families contend that this litigation will necessarily require the Court to determine whether Tennessee charter schools are properly classified as public or private institutions, and they fear that a determination treating such schools as private could jeopardize the public funding and

---

[1] The KCBOE Defendants, in response to Wilberforce's initial motion for summary judgment, represented that they "will most likely not take an official position concerning the constitutionality of the statutory and regulatory scheme addressed in Plaintiff's Complaint." [Doc. 19 at 7].

[2] For consistency and ease of reference, record citations are to the internal pagination of any filed document, not to the CM/ECF-stamped document and page number.

statutory protections upon which their children rely. [*Id.* at 1–2]. As such, the Tennessee Families seek to defend their interest in ensuring that public charter schools in Tennessee remain public.

Plaintiff has filed a response in opposition [Doc. 63], and the Tennessee Families filed a reply [Doc. 68]. The Taxpayer Defendants filed a notice of non-opposition [Doc. 67]. The Motion is now ripe for review.

## II.     ANALYSIS

Federal Rule of Civil Procedure 24 recognizes two forms of intervention: intervention of right and permissive intervention. The Tennessee Families seek both forms. [Doc. 61]. Their asserted interests, while not identical to those of the existing Defendants, substantially overlap. On the one hand, the Taxpayer Defendants are positioned to defend the constitutionality of Tennessee's charter school program through ensuring that tax dollars are not used to support religion; on the other, the Tennessee Families seek to ensure that charter schools remain classified as public institutions so that their children continue to receive the attendant funding and protections. These interests are not coextensive, but they are closely aligned and intersect in meaningful ways—indeed, the Tennessee Families acknowledge as much. [*See* Doc. 61 at 23–24]. The question of whether Tennessee charter schools are public or private is likely one the Taxpayer Defendants would have to grapple with at some point in this litigation to resolve the ultimate issue. Nevertheless, the Court need not resolve whether intervention as of right is warranted. Exercising its discretion, the Court finds that permissive intervention is appropriate and therefore confines its analysis to that basis.

"Rule 24 is to be broadly construed in favor of potential intervenors." *Midwest Realty Mgmt. Co. v. City of Beavercreek*, 93 F. App'x 782 (6th Cir. 2004) (citing *Stupak-Thrall v. Glickman*, 226 F.3d 467 (6th Cir. 2000). Permissive intervention is warranted upon timely motion

when a movant "has a claim or defense that shares with the main action a common question of law or fact." FED R. CIV. P. 24(b)(1)(B). "In deciding whether to allow a party to intervene, 'the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 577 (6th Cir. 2018) (citing Fed. R. Civ. P. 24(b)(3)). A court may not permissively grant intervention to a proposed intervenor who does not have a claim or defense that shares with the main action a common question of law or fact that can be resolved in the existing action. *See Buck v. Gordon*, 959 F.3d 219, 223 (6th Cir. 2020). However, "[a] district court operates within a 'zone of discretion' when deciding whether to allow intervention under Rule 24(b)[.]" *Buck*, 959 F.3d at 224. The strong interest in judicial economy and desire to avoid multiplicity of litigation wherever and whenever possible supports permissive intervention. *Id.*

Here, the Tennessee Families argue that permissive intervention is appropriate because they have moved to intervene in a timely fashion, will raise similar arguments and defenses as the existing Defendants, and will promote efficient adjudication and consideration by ensuring that all relevant issues are resolved in a single proceeding. [Doc. 61 at 24]. Wilberforce opposes permissive intervention, arguing that the inclusion of the Tennessee Families would overly complicate that case by increasing the amount of discovery requests, discovery disputes, motions, and scheduling conflicts in a case where time is of the essence. [Doc. 63 at 5]. Instead, Wilberforce contends that the Tennessee Families are well positioned to make their arguments through an amicus brief rather than as a party to this action. [*Id.*].

   a. *Timeliness*

First, the Court considers whether the Tennessee Families' motion is timely. Courts in this Circuit generally look to the "totality of the circumstances" to determine timeliness. *Davis v.*

*Lifetime Capital, Inc.*, 560 Fed. Appx. 477, 490 (6th Cir. 2014). "While there is no absolute amount of time that makes a motion untimely, permissive intervention is inappropriate where the circumstances show the proposed intervenor should have filed earlier." *Torongo v. United States DOI*, No. 25-11263, 2026 U.S. Dist. LEXIS 43342, at *5 (E.D. Mich. Mar. 3, 2026) (citing *Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 759 (6th Cir. 2018)). Here, the Tennessee Families sought to intervene at the outset of this litigation. Indeed, as of the time of filing their motion, the Court had not entered a scheduling order, resolved any dispositive motions, or set a timeline for discovery. *See Kirsch v. Dean*, 733 Fed. Appx. 268, 275 (6th Cir. 2018) (holding that a motion to intervene was not timely, in part, because the district court had already ruled on dispositive motions); *Priorities USA v. Benson*, 448 F. Supp. 3d 755, 763 (E.D. Mich. Mar. 24, 2020) (finding a motion to intervene as timely because it was before preliminary dispositive motions and discovery). Moreover, as of the date of this Order, the dispositive motion deadline is just under four months away.

Notably, Wilberforce does not meaningfully contest timeliness. As part of its responsive briefing, it also argued that the Tennessee Families are not entitled to intervention as of right, an analysis that also looks at timeliness. [*See* Doc. 63 at 2–4]. While Wilberforce addressed the other elements for intervention as of right, it raised only the cursory assertion that the Tennessee Families timeliness is "suspect," without any developed argument or analysis. [*Id.* at 2]. Wilberforce's failure to substantively challenge this factor weighs in favor of finding the motion timely. *See Eldridge v. Boggs*, No. 23-125-DLB-EBA, 2025 U.S. Dist. LEXIS 103773, at *13 (E.D. Ky. May 31, 2025) (finding that a failure to substantively address arguments in a responsive briefing are deemed as waived). Wilberforce does contend that the Tennessee Families delayed in filing their motion because the original parties had already finished briefing a motion for summary judgment;

however, its argument falls flat. The Court has since denied Wilberforce's initial motion for summary judgment as premature, recognizing the need to allow sufficient time for discovery. [Doc. 64]. And any delay they may have had in filing their motion is understandable, as the Tennessee Families reasonably awaited clarification as to whether the Taxpayer Defendants would adequately represent their interest in light of the parties' respective positions. The Taxpayer Defendants moved to intervene on January 27, 2026, and were granted intervention on January 30, 2026. [Docs. 21, 41]. The Tennessee Families subsequently moved to intervene just under a month later, on February 17, 2026. [Doc. 60]. The Court finds it difficult to imagine how the Tennessee Families delayed filing their motion under these circumstances, especially considering the preparation taken in filing a 21-page brief. [Doc. 61].

Taken altogether, the totality of the circumstances demonstrates that the Tennessee Families' motion was filed in a timely manner.

### b. Common Question of Law or Fact

Second, the Court considers whether the Tennessee Families have a claim or defense that shares common questions of law and fact with the main action. The Sixth Circuit has found this element satisfied when a would-be intervenor shows that he will raise a similar defense as the existing defendants. *See Johnson*, 902 F.3d at 577 (finding a common question of law or fact to exist when the intervenors raised the same defense as the existing defendant). Here, the Tennessee Families' proposed answer [Doc. 60-7] raises the same affirmative defenses as the Taxpayer Defendants do in their Answer [Doc. 54], including failure to state a claim, standing, ripeness, and other constitution arguments. Moreover, the Tennessee Families take issue with the public versus private distinction of Tennessee charter schools. Wilberforce, in its initial motion for summary judgment, plainly argued that "charter-school operators are *private entities* to which the

Establishment Clause does not apply." [Doc. 14 at 12 (emphasis added)]. Conversely, both the KCBOE Defendants and the Taxpayer Defendants have referred to Tennessee charter schools as a form of public school. [*See* Doc. 19 at 2; Doc. 22 at 1]. Based on the briefing before the Court, it appears that the public versus private distinction will be a central issue in this matter and, therefore, presents a common question of law.

As Wilberforce points out, the Sixth Circuit has rejected intervention when a would-be intervenor asserts an interest merely collateral to the main action; however, this is not one of those cases. The facts in *Kirsch* demonstrate as such. In *Kirsch*, the plaintiff filed suit in federal court seeking a declaration that she was a 50% owner in a company called ZFX. *Kirsch*, 733 Fed. Appx. at 270. The defendant filed counterclaims, asserting that the plaintiff violated a Stock Restriction Agreement ("SRA") signed by both parties. *Id.* As the litigation proceeded, a dispute between the parties arose regarding the plaintiff's attorney, and after the district court denied the defendant's motion to disqualify the plaintiff's attorney, ZFX moved to intervene "for the purpose of asserting [the firm's] conflict of interest." *Id*. at 272. The district court ultimately denied the motion, in part, because ZFX did not assert a common question of law or fact. *Id.* at 279. The Sixth Circuit agreed, finding that whether the plaintiff's attorney should be disqualified is "entirely tangential to the SRA-related questions implicated" in the main action. *Id.* In contrast, the public versus private distinction bears directly on the Establishment Clause issue in this case. The Tennessee Families are not seeking to litigate an entirely tangential issue. Their defense revolves around the same questions of law and fact as the claims in the main action.

Accordingly, the Court finds that common questions of both law and fact exist, and permissive intervention is appropriate under this factor.

### c. Undue Delay or Prejudice

Because the Tennessee Families' motion is timely and presents common questions of law and fact, the Court will now address whether allowing them to intervene will cause undue delay or prejudice. Fed. R. Civ. P. 24(b)(3). It does not. There is little risk of undue delay or prejudice given the early stages of this litigation. There is no indication that the Tennessee Families are attempting to "file more claims, amend pleadings further, [or] inject issues that may not lead directly to a resolution of the issues circumscribed by the present pleadings," nor are they raising any unanticipated defenses. *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 784 (6th Cir. 2007). Wilberforce's concern regarding duplicative briefing is unpersuasive, particularly given that the Tennessee Families' arguments and defenses overlap with the existing Defendants. *See Johnson*, 902 F.3d at 578 ("The same logic applies to Plaintiffs—because the issues were identical, Plaintiffs' responsive arguments to Johnson and the Congressmen would likely have been identical as well.") Moreover, Wilberforce's own suggestion that the Tennessee Families could instead file an amicus brief undermines any claim of delay. *See Linney's Pizza, LLC v. Bd. of Governors*, No. 3:22-cv-00071-GFVT, 2025 U.S. Dist. LEXIS 82764, at *17 (E.D. Ky. May 1, 2025) ("The Court will in fact carefully read and consider arguments presented to it in both summary judgment briefs and in amicus briefs, which would appear to flatly contradict Linney's concerns about overly complicating this case.").

Any concerns Wilberforce may have regarding the orderly progression of this litigation are alleviated by the Tennessee Families' representation that they will comply with the Court's current Scheduling Order. [*See* Doc. 68 at 1]. The Court carefully considered the parties' timing concerns in setting that schedule and intends to adhere to it absent extraordinary circumstances.

Wilberforce counters by arguing that the inclusion of the Tennessee Families would

"overly complicate this case" for "virtually no upside" because their arguments "'significant[ly] overlap'" with the existing parties. [Doc. 63 at 5]. While there is some overlap, the parties' interests are not identical and reflect distinct perspectives on the issues presented. The Tennessee Families seek to ensure that Tennessee charter schools are treated as public institutions so that their children, who attend those schools, may continue to receive the attendant benefits, whereas the Taxpayer Defendants focus on preventing the use of public funds to support religious institutions. Critically, these interests are not perfectly aligned—one group could theoretically prevail while the other does not. For example, a finding that charter schools are public institutions would advance the Tennessee Families' interests, even if it does not resolve, or potentially undermines, the Taxpayer Defendants' concerns regarding public finding going to religious institutions. Although the Court need not resolve every statutory implication that the public versus private distinction may have in this case, that classification is intertwined with the core issues at stake, and the participation of both groups will aid in the Court's consideration of those questions.

Based on all the circumstances of this case, the Court finds that the Tennessee Families are entitled to permissive intervention under Federal Rule 24(b).

### d. Conditions for Inntervention

In the alternative, Wilberforce requests the Court to impose "tight conditions" on the Tennessee Families intervention. [Doc. 63 at 6]. At this time, the Court declines to do so. The Tennessee Families are expected to follow the Court's Scheduling Order [Doc. 62]. They have represented that they intend to do so, and this Court will hold them to that commitment. It would also be inappropriate to restrict their briefing or require them to join in the submissions of the other Defendants. As explained above, the parties' interests, while similar, are not identical, and their arguments may diverge in material respects. Imposing such conditions would risk forcing the

Tennessee Families to forgo or concede positions they are entitled to advance. This case involves complex and important constitutional questions, and as another judge in this Circuit has so aptly put it: "[I]nsofar as complexity may cause possible delay in this case, the most apt descriptor of any added complexity presented by additional briefing is 'in for a penny, in for a pound.'" *Linney's Pizza, LLC*, 2025 U.S. Dist. LEXIS 82764, at *17.

Finally, a word on the present posture of this case. With the addition of the Tennessee Families, the litigation now includes four sets of parties represented by ten separate law firms, several of them prominent national firms. While not completely discounting the possibility of further intervention, the Court is satisfied that the parties now before it adequately represents the interests at stake and that the issues are sufficiently joined for resolution. At some point, a case must move from assembling players to playing the game. That point has been reached. The field is set, and it is time for this case to proceed with the parties presently before it.

## III.    CONCLUSION

For the reasons set forth above, the Tennessee Families demonstrate that they are entitled to permissively intervene under Federal Rule 24(b).  Accordingly, their Motion to Intervene [Doc. 60] is **GRANTED**. The Clerk is **DIRECTED** to file the Tennessee Families' proposed answer [Doc. 60-7] as a separate docket entry, and it will now be considered the Tennessee Families operative Answer to Wilberforces's Amended Complaint [Doc. 10].

**SO ORDERED.**

/s/ *Charles E. Atchley, Jr.*   _____
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**