# Exhibit E

No. 24-394; No. 24-396

# In the Supreme Court of the United States

OKLAHOMA STATEWIDE CHARTER SCHOOL BOARD, *et al.*,
*Petitioners*,

*v.*

GENTNER DRUMMOND, ATTORNEY GENERAL OF OKLAHOMA, *ex rel.* OKLAHOMA,
*Respondent*.

ST. ISIDORE OF SEVILLE CATHOLIC VIRTUAL SCHOOL
*Petitioners*,

*v.*

GENTNER DRUMMOND, ATTORNEY GENERAL OF OKLAHOMA, *ex rel.* OKLAHOMA,
*Respondent*.

*On Writ of Certiorari to the Supreme Court of Oklahoma*

**BRIEF OF AMICI CURIAE CONSTITUTIONAL AND EDUCATION LAW SCHOLARS IN SUPPORT OF RESPONDENT**

STEPHAN J. SCHLEGELMILCH
*Counsel of Record*
VALERIE A. ZUCKERMAN
COURTNEY E. BARGER
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004
sjschlegelmilch@debevoise.com
(202) 383-8000

BEATRICE A. WALTON
JOHN HOLLINGSWORTH
WILLIAM F. GONCHER
66 Hudson Blvd.
New York, N.Y. 10001

Case 3:25-cv-00584-CEA-DCP Document 111-5 Filed 08/04/26 Page 2 of 54
PageID #: 3421

**TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES .................................... iii

INTERESTS OF *AMICI CURIAE* ............................. 1

SUMMARY OF ARGUMENT .................................... 2

ARGUMENT .............................................................. 4

I. The Provision of Public Education Is a Core State Obligation Which States Discharge, In Part, Through State-Created Charter Schools. ............................................. 4

A. States Establish and Approve Charter Schools. ....................................................... 6

B. States Operate Charter Schools as Public Schools. ........................................... 9

C. While Charter Schools Enjoy Flexibility in Their Operations, States Engage in Continuing Regulation, Monitoring, and Control of Them. ........... 15

II. The Establishment Clause Prohibits States from Establishing Public Charter Schools for Religious Instruction. .................. 20

A. The Establishment Clause Applies with Particular Force in Public Education. ................................................ 20

B. Approving and Operating Religious Charter Schools Is “State Action.” ........... 22

C. Forcing State Legislatures to Create Religious Charter Schools Would Eviscerate the Wide-Latitude to Which

States Are Entitled in the Design of Public Education Systems. ......................26

CONCLUSION .........................................................29

APPENDIX: List of *Amici Curiae*.............................1a

## TABLE OF AUTHORITIES

### CASES

*Abington Sch. Dist. v. Schempp*,
374 U.S. 203 (1963) .......................................... 21

*Brown v. Bd. of Educ.*,
347 U.S. 483 (1954) ............................................ 4

*Carson as next friend of O. C. v. Makin,* 596
U.S. 767 (2022) .................... 12, 15, 18, 22, 25, 27

*Edwards v. Aguillard*,
482 U.S. 578 (1987) .......................................... 20

*Engel v. Vitale*,
370 U.S. 421 (1962) .......................................... 21

*Epperson v. Arkansas*,
393 U.S. 97 (1968) ............................................ 21

*Espinoza v. Montana Dep't of Revenue*,
591 U.S. 464 (2020) .......................................... 22

*Everson v. Bd. of Educ. of Ewing Tp.*,
330 U.S. 1 (1947) .............................................. 23

*Kennedy v. Bremerton*,
597 U.S. 507 (2022) .................................... 22, 24

*Larkin v. Grendel's Den, Inc.*,
459 U.S. 116 (1982) .......................................... 23

*Lee v. Weisman*,
505 U.S. 577 (1992) .......................................... 24

*Locke v. Davey*,
540 U.S. 712 (2004) .......................................... 26

*Illinois Ex rel. McCollum v. Bd. of Educ.*,
333 U.S. 203 (1948) .................................... 21, 23

*Milliken v. Bradley*,
418 U.S. 717 (1974) .......................................... 26

*Our Lady of Guadalupe Sch. v. Morrisey-Berru*,
591 U.S. 732 (2020) .......................................... 25

*Peltier v. Charter Day Sch.*,
37 F.4th 104 (4th Cir. 2022) ............................ 12

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
411 U.S. 1 (1973) ............................................... 27

*Santa Fe Indep. Sch. Dist. v. Doe*,
530 U.S. 290 (2000) ......................... 20, 23, 24, 25

*Stone v. Graham*,
449 U.S. 39 (1980) ............................................. 21

*Sugar Creek Charter Sch., Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 673 S.E.2d 667
(N.C. App. Ct. 2009) .......................................... 13

*Thomas Jefferson Classical Acad. Charter Sch. v. Cleveland Cnty. Bd. of Educ.*,
243 N.C. App. 797 (2015) .................................. 13

*Wallace v. Jaffree*,
472 U.S. 38 (1985) ........................................ 20, 21

*Wilson v. State Bd. of Educ.*,
89 Cal. Rptr. 2d 745 (Cal. Ct. App. 1999) .. 11, 15

*Zelman v. Simmons-Harris*,
536 U.S. 639 (2002) ................................ 21, 22, 23

*Zorach v. Clauson*,
343 U.S. 306 (1952) ............................................ 23

CONSTITUTIONS

U.S. CONST. amend. I.................................................. 4

ARK. CONST. art. XIV, § 1 ...................................... 12

CAL. CONST. art. IX, § 5 .......................................... 12

COLO. CONST. art. IX, § 2........................................ 12

DEL. CONST. art. X, § 1 ............................................ 12

MINN. CONST. art. XIII, § 1 .................................... 10

N.J. CONST. art. VIII, § IV(1) ................................. 11

N.Y. CONST. art. XI, § 1 .................................... 10, 11

OKLA. CONST. art. XIII, § 1................................. 5, 12

STATUTES

20 U.S.C. § 7221i(2)................................................. 10

Act of Feb. 23, 1870, ch. 19, 16 Stat. 67 .................. 5

Act of Jan. 26, 1870, ch. 10, 16 Stat. 62 .................. 5

Act of Mar. 30, 1870, ch. 39, 16 Stat. 80.................. 5

**STATE STATUTES & REGULATIONS**

Ala. Admin. Code (2024)
r. 290-3-2-.02(2)(a) .......................................... 17
r. 290-3-6-.02(6) ................................................ 8

Ala. Code (2025)
§ 16-6F-2(c) ....................................................... 7
§ 16-6F-4(5) ....................................................... 8
§ 16-6F-4(16) ......................................... 2, 9, 17
§ 16-6F-5(a)(1)–(3) .......................................... 11
§ 16-6F-6(a) ....................................................... 8
§ 16-6F-8 .......................................................... 18
§ 16-6F-8(c)(7) .................................................. 19
§ 16-6F-10(b)(1)(b) .......................................... 13
§ 16-46-3(a)......................................................... 9

Alaska Admin. Code (2025)
tit. 4, § 33.110(a) ............................................. 16
tit. 4, § 33.110(a)(5) ........................................ 16

Alaska Stat. (2024)
§ 14.03.255 ......................................................... 2
§ 14.03.265(b) .................................................. 11
§ 14.03.290(2) .................................................. 10
§ 14.03.290(4) .................................................. 17
§ 14.07.020(10) .................................................... 9
§ 14.33.120 ....................................................... 24

Ariz. Rev. Stat. Ann. (2025)
§ 15-101 .......... 2
§ 15-756.08 .......... 18
§ 15-756.08(A) .......... 18
§ 15-181(A) .......... 9
§ 15-183 .......... 18
§ 15-183(I)(3)(a)–(d) .......... 19
§ 15-184(A) .......... 11

Ark. Code Ann. (2025)
§ 6-23-103 .......... 2
§ 6-23-103(4) .......... 9
§ 6-23-105(a)(1) .......... 19
§ 6-23-302(c)(1) .......... 9
§ 6-23-306(3) .......... 17
§ 6-23-402(a) .......... 11
§ 6-23-501(a)(1) .......... 13

Cal. Educ. Code (West 2024)
§ 47601(e), (g) .......... 2, 10
§ 47602(b) .......... 7
§ 47605 .......... 9
§ 47605(e)(1) .......... 12
§ 47605(e)(2)(B)(iv) .......... 12
§ 47605.6 .......... 9
§ 47605.6(e) .......... 12

Colo. Rev. Stat. (2025)
§ 22-30.5-106(1) .......... 16
§ 22-30.5-106(2) .......... 7
§ 22-30.5-112 .......... 13
§ 22-30.5-507(1)(a) .......... 9

Conn. Gen. Stat. (2025)
§ 10-66aa(1) .................................................. 2, 9
§ 10-66bb(a)(1) .................................................. 9
§ 10-66bb(c)(1)–(2) .......................................... 11
§ 10-66bb(d) .................................................... 16

D.C. Code (2025)
§ 38-651.01(3B) ............................................ 2, 9
§ 38-1802.12 .................................................... 19

D.C. Mun. Regs. (2025)
tit. 5-E, § 915.1 ................................................ 11
tit. 5-E, § 922.1 ................................................ 17
tit. 5-E, § 937 .................................................. 18

Del. Admin. Code § 275(10) (2025) ........................ 18

Del. Code Ann. (2025)
tit. 14, § 154(a) ................................................ 17
tit. 14, § 503 ...................................................... 2
tit. 14, § 512(6) ................................................ 17

Fla. Admin. Code r. 6A-6.0786 (2025) ................... 18

Fla. Stat. (2024)
§ 1002.33(1) .................................................. 2, 9
§ 1002.33(3)(b) .................................................. 7
§ 1002.33(7)(a) .................................................. 8
§ 1002.33(8) .................................................... 19
§ 1002.33(17) .................................................. 13

Ga. Code Ann. (2025)
§ 20-2-2062(1) .................................................... 6
§ 20-2-2062(2) ................................................ 2, 7
§ 20-2-2063.3a .................................................... 7

§ 20-2-2065.b2–b3 .............................................. 7
§ 20-2-2068.1(a) .............................................. 13

Haw. Code R. § 8-54-3 (LexisNexis 2025) ............... 9

Haw. Rev. Stat. (2024)
§ 302A-101 .......................................................... 9
§ 302A-804(b)(1) .............................................. 17
§ 302D-1 ............................................................. 2

Idaho Code (2024)
§ 33-5202A(8) ............................................... 2, 9
§ 33-5202A(2) .................................................... 8
§ 33-5203(4)(a) ................................................... 7
§ 33-5206(1) ..................................................... 12

105 Ill. Comp. Stat. 5/27A-5 (2024) ..................... 2, 9

Ind. Code (2024)
§ 20-24-1-4 ......................................................... 2
§ 20-24-1-2.5(5) .................................................. 8
§ 20-24-2-1.......................................................... 7
§ 20-24-2.1-1(a) .................................................. 8
§ 20-24-3-4(b) ................................................... 16
§ 20-24-8-5(23) ................................................. 17
§ 20-26-12-1(a) ................................................. 17

Iowa Code (2025)
§ 256E.1 ....................................................... 2, 10
§ 256E.6(1) ......................................................... 6
§ 256E.6(2) ....................................................... 19
§ 256E.7(1) ....................................................... 10
§ 256E.10 ......................................................... 18
§ 256E.10(5) ..................................................... 19

Kan. Stat. Ann. (2025)
§ 72-4206(a) .......................................... 2, 10
§ 72-4206(b) .......................................... 17
§ 72-4209 .............................................. 18

Kan. Admin. Regs. (2025)
§ 91-31-32(e) .......................................... 9

La. Stat. Ann. (2024)
§ 17:3973.2a .......................................... 2
§ 17:3983(A)(2) ...................................... 8
§ 17:3991(E)(2) ...................................... 7
§ 17:3992(A)(1) ...................................... 19

La. Admin Code. (2025)
tit. 28, pt. CXXXIX, § 103(A)(2) ......................... 9
tit. 28, pt. CXXXIX, § 515(D)(10) ...................... 17
tit. 28, pt. CXXXIX, § 1101 .............................. 18
tit. 28, pt. CXXXIX, § 1101(A) .......................... 15

Mass. Code Regs. 1.08 (2025) ................................ 18

Mass. Gen. Laws (2024)
ch. 71, § 89 ............................................ 2
ch. 71, § 89(b) ........................................ 7
ch. 71, § 89(c) ........................................ 7, 9

Md. Code Ann., Educ. (West 2024)
§ 7-203 .................................................. 17
§ 9-102 .................................................. 2
§ 9-104(a)(1) .......................................... 8
§ 9-106 .................................................. 17

Me. Stat. (2025)
tit. 20-A, § 2401(3) .................................. 6

tit. 20-A, § 2401(9) .......................................... 2, 9
tit. 20-A, § 2405(1)(A)–(C) .................................. 8
tit. 20-A, § 2412(4)(C) ....................................... 12
tit. 20-A, § 2412(5)(B) ....................................... 17
tit. 20-A, § 2412(5)(J), (L) ................................ 17

Mich. Comp. Laws (2025)
§ 380.501 ............................................................. 2
§ 380.501(2)(a)(iv) .............................................. 8

Minn. Stat. (2024)
§ 124E.03 ............................................................ 2
§ 124E.12 .......................................................... 17

Miss. Code Ann. (2025)
§ 37-13-91(2)(e) ............................................. 9, 10
§ 37-28-5(e) ........................................................ 2

Mo. Rev. Stat. § 160.400(1) (2024)..................... 2, 10

Mont. Code Ann. (2025)
§ 15-30-3102(7)(b)(ii)........................................... 9
§ 20-4-101(1) ..................................................... 17
§ 20-6-803(9) ..................................................... 17
§ 20-6-811(1) ..................................................... 10

N.C. Gen. Stat. (2025)
§ 115C-5(7a) ..................................................... 10
§ 115C-218.1(a) .................................................. 7

N.H. Rev. Stat. Ann. (2025)
§ 194-B:1(IV) ..................................................... 10
§ 194-B:8(III) ..................................................... 24
§ 194-B:16 .......................................................... 18

N.J. Stat. Ann. (West 2025)
§ 18A:36A-3 .......................................................... 2
§ 18A:36A-12(b) ................................................ 13

N.J. Admin. Code § 6A:23A-1.2 (2025) .................. 10

N.M. Stat. Ann. (2025)
§ 22-8B-2(A) .......................................................... 2
§ 22-8B-4(I) ........................................................ 10
§ 22-8E-7 ............................................................ 18

N.Y. Educ. Law (McKinney 2025)
§ 2853 ..................................................................... 2
§ 2856(x) ............................................................. 13

Okla. Admin. Code § 210:40-87-7(c) (2025) ........... 24

Okla. Stat. (2024)
tit. 70, § 3-140(A) .............................................. 11
tit. 70, § 3-140(E) .............................................. 11

Or. Rev. Stat. (2025)
§ 338.005(2) .................................................. 2, 10
§ 338.095(2) ....................................................... 18

24 Pa. Cons. Stat. (2025)
§ 17-1703-A(3) ..................................................... 2
§ 17-1725-A(a)(2) .............................................. 13
§ 17-1729-A(i) .................................................... 19

P.R. Laws Ann. tit. 3, § 9813a (2024) .................... 10

200-20-05 R.I. Code R. § 2.5.3(A)–(C)
(LexisNexis 2025)................................................ 19

16 R.I. Gen. Laws (2024)
§ 16-77-3.1(b) ............................................. 10, 15
§ 16-77.2-5(a) .................................................. 13

S.C. Code Ann. (2024)
§ 59-40-40 ......................................................... 2
§ 59-40-40(2)(a) ............................................... 10
§ 59-40-90 ......................................................... 9
§ 59-40-100 ....................................................... 7
§ 59-40-40(5) ............................................ 17, 18
§ 59-40-50(5) ............................................ 17, 18
§ 59-40-130(A)(1) ...................................... 17, 18

Tenn. Code Ann. (2025)
§ 49-13-104 ........................................................ 2
§ 49-13-104(14) ................................................ 10

Tenn. Comp. R. & Regs. 0520-14-03.02 (2025)...... 16

Tex. Educ. Code Ann. (West 2025)
§ 12.001(a)(2) ................................................... 10
§ 12.105 .............................................................. 2
§ 12.106(a) ....................................................... 13

Utah Code Ann. (West 2025)
§ 53G-5-302 ....................................................... 8
§ 53G-5-401 ....................................................... 2
§ 53G-5-401(1)(a)............................................. 10
§ 53G-5-503(1) ................................................. 19

Utah Admin. Code R277-553-2 (2025).................. 18

Va. Code Ann. (2024)
§ 22.1-212.5 ....................................................... 2

§ 22.1-212.5(B) .......................................... 10
§ 22.1-212.6(A) .......................................... 11
§ 22.1-212.6(E) .......................................... 12
§ 22.1-212.9(A) .......................................... 8

W. Va. Code (2025)
§ 18-5G-2 .......................................... 2
§ 18-5G-3 .......................................... 10
§ 18-5G-3(a)(7) .......................................... 12
§ 126-79-5.4.b.1.A.5 .......................................... 17
§ 18-5G-10 .......................................... 19

Wash. Admin. Code § 108-20-070(2)(a)(ii)
(2025) .......................................... 16, 17

Wash. Rev. Code (2024)
§ 28A.710.010 .......................................... 2
§ 28A.710.160 .......................................... 8

Wis. Stat. (2025)
§ 118.40 .......................................... 2
§ 118.51(2) .......................................... 2
§ 118.40(2m)(a) .......................................... 6

Wyo. Stat. Ann. (2024)
§ 21-3-302(vii), (viii) .......................................... 6
§ 21-3-304 .......................................... 2
§ 21-3-306(b) .......................................... 7
§ 21-3-308(g) .......................................... 17

**RULES**

Sup. Ct. R. 37.6 .......................................... 1

Tenn. Bd. Educ. R. 0520-01-03 (available at https://tinyurl.com/yfhkbcnk) .......................... 16

**ARTICLES**

Ariel Gilreath, *All-Charter No More: New Orleans Opens Its First Traditional Public School in Nearly 2 Decades*, Chalkbeat (Sept. 9, 2024, 6:05 AM), https://tinyurl.com/3ac4fdyk. ......................................... 14

David Osborne & Emily Langhorne, *Analysis: NAEP Scores Show D.C. Is a Leader in Educational Improvement — With Powerful Lessons for Other Cities*, The 74 (Apr. 17, 2018), https://tinyurl.com/256bpmnp .............. 14

Derek W. Black

*The Constitutional Compromise to Guarantee Education*, 70 Stan. L. Rev. 735, 778–81 (2018) ...................................................... 4

*The Fundamental Right to Education*, 94 Notre Dame L. Rev. 1059, 1064 (2019) ............. 5

*Preferencing Educational Choice: The Constitutional Limits*, 103 Cornell L. Rev. 1359, 1361 (2018) ............................................. 14

*Reforming School Discipline*, 111 Nw. U. L. Rev. 1, 10 (2016) ................................................. 4

*Religion, Discrimination, and the Future of Public Education*, 13 U.C. Irvine L. Rev. 805, 811 (2023) ................................................. 23

Dylan Peers McCoy & Stephanie Wang, *How Lewis Ferebee Forged Peace with Charter Competitors to Reshape Indianapolis Schools*, IndyStar (Feb. 7, 2019, 6:00 AM), https://tinyurl.com/56vc9sa6 ............................ 14

*Public Charter School Enrollment*, National Center for Education Statistics (May 2023), https://nces.ed.gov/programs/coe/indicator/cgb/public-charter-enrollment .................... 14

Steven G. Calabresi & Michael W. Perl, *Originalism and* Brown v. Board of Education, 2014 Mich. St. L. Rev. 429, 450-61 (2015) ............................................................. 5

**OTHER AUTHORITIES**

Denver Charter Schools, https://denvercharters.org/ (last visited Apr. 1, 2025) ...................................................... 14

## INTERESTS OF *AMICI CURIAE*[1]

As *Amici Curiae*, the Constitutional and Education Law Scholars listed in the Appendix submit this brief in support of Respondent. *Amici* are immersed in the study of constitutional and education law through their scholarship and teaching and believe in upholding core constitutional rights in the provision of public education. *Amici* are acutely aware of the role public education has historically played in preserving and making possible our democratic system of government. *Amici* seek to assist this Court by explaining how state laws have created charter schools as a means of discharging states' core constitutional obligations to provide public education and how these legal structures relate to issues presented in this case.

[1] Pursuant to Sup. Ct. R. 37.6, counsel for *amici curiae* certify that this brief was not authored in whole or in part by counsel for any party and that no person or entity other than *amici curiae* and its counsel has contributed monetarily to preparing or submitting this brief.

## SUMMARY OF ARGUMENT

Charter schools are state-created public schools. First brought to life by Minnesota with the adoption of the nation's first charter school statute in 1991, today forty-six states and the District of Columbia have enacted similar statutes providing for the creation of charter schools. While the exact structures of charter schools and the regulatory requirements governing their operations vary state-by-state, charter schools across the country share a common structure and function rooted in their very designation as "charters": *the provision of public education on behalf of the state.*[2]

[2] *See* Ala. Code § 16-6F-4(16) (2025); Alaska Stat. § 14.03.255 (2024); Ariz. Rev. Stat. Ann. § 15-101 (2025); Ark. Code Ann § 6-23-103 (2025); Cal. Educ. Code § 47601(e)–(g) (West 2024); Conn. Gen. Stat. § 10-66aa(1) (2025); Del. Code Ann. tit. 14, § 503 (2025); D.C. Code § 38-651.01(3B) (2025); Fla. Stat. § 1002.33(1) (2024); Ga. Code Ann. § 20-2-2062(2) (2025); Haw. Rev. Stat. § 302D-1 (2024); Idaho Code § 33-5202A(8) (2024); 105 Ill. Comp. Stat. 5/27A-5 (2024); Ind. Code § 20-24-1-4 (2024); Iowa Code § 256E.1 (2025); Kan. Stat. Ann. § 72-4206(a) (2025); La. Stat. Ann. § 17:3973.2a (2024); Me. Stat. tit. 20-A, § 2401(9) (2025); Md. Code Ann., Educ. § 9-102 (West 2024); Mass. Gen. Laws ch. 71, § 89 (2024); Mich. Comp. Laws § 380.501 (2025); Minn. Stat. § 124E.03 (2024); Miss. Code Ann. § 37-28-5(e) (2025); Mo. Rev. Stat. § 160.400(1) (2024); N.J. Stat. Ann. § 18A:36A-3 (West 2025); N.M. Stat. Ann. § 22-8B-2(A) (2025); N.Y. Educ. Law § 2853 (McKinney 2025); Or. Rev. Stat. § 338.005(2) (2025); 24 Pa. Cons. Stat. § 17-1703-A(3) (2025); S.C. Code Ann. § 59-40-40 (2024); Tenn. Code Ann. § 49-13-104 (2025); Tex. Educ. Code Ann. § 12.105 (West 2025); Utah Code Ann. § 53G-5-401 (West 2025); Va. Code Ann. § 22.1-212.5 (2024); Wash. Rev. Code § 28A.710.010 (2024); W. Va. Code § 18-5G-2 (2025); Wis. Stat. §§ 118.40, 118.51(2) (2025); Wyo. Stat. Ann. § 21-3-304 (2024).

*Amici* write to call the Court's attention to the implications of this common structure and function of charter schools. Based on the legal framework establishing and governing charter schools across the states, *Amici* agree with the Oklahoma Supreme Court that charter schools teaching religion as truth are impermissible under the U.S. Constitution.

(I) First, charter schools are *public schools* both under the express terms of state law and in respect to their provision of public education services pursuant to authority granted by the state. State and local governments create and enlist charter schools to assist the state in discharging its core constitutional public education responsibilities. Consistent with this state function and responsibility, state laws require that charter schools operate as public schools—invariably mandating that charter schools be free and open to the public, among other requirements of traditional public schools—and integrate charter schools into public education funding schemes. State and local governments likewise exercise control over charter schools throughout their operation, including through continuing monitoring, regulation, and oversight mechanisms that ensure they properly discharge the state's public education function. In short, while states allow charter schools certain flexibility in their operations, acting as an independent private entity is not among those permitted aspects; charter schools instead operate as public schools, within public systems of governance, and in line with public educational objectives. In setting out these core features of charter schools and their administration, Oklahoma's charter school statute aligns with those of numerous states across the country.

(II) Second, because charter schools are public schools in both name and operation, states cannot grant public school charters to entities that would use those charters to teach religion as truth without violating the Establishment Clause. Such state action—both the approval and operation of the religious public charter school, as well as the state's continuing administration of it—plainly runs afoul of the Establishment Clause. *See* U.S. CONST. amend. I.

## ARGUMENT

### I. The Provision of Public Education Is a Core State Obligation Which States Discharge, In Part, Through State-Created Charter Schools.

The provision of public education is "perhaps the most important function of state and local governments." *Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954). Today, the constitutions of all fifty states contain obligations requiring the provision of public education. *See* Derek W. Black, *Reforming School Discipline*, 111 Nw. U. L. Rev. 1, 10 (2016). For some states, these requirements are rooted in Reconstruction, where Congress conditioned the readmission of secessionist states on rewriting their constitutions to conform to a republican form of government, including constitutional guarantees of public education. *See* Derek W. Black, *The Constitutional Compromise to Guarantee Education*, 70 Stan. L. Rev. 735, 778–81 (2018). Under this legislation, Congress readmitted the last three secessionist states on the express condition that their constitutions "shall never be so amended or changed as to deprive any citizen or class

of citizens of the United States of the school rights and privileges secured by the [state] constitution." *See* Act of Mar. 30, 1870, ch. 39, 16 Stat. 80, 81 (Texas); Act of Feb. 23, 1870, ch. 19, 16 Stat. 67, 68 (Mississippi); Act of Jan. 26, 1870, ch. 10, 16 Stat. 62, 63 (Virginia). And since the Civil War, no state has entered the Union without guaranteeing public education in its constitution. *See* Derek W. Black, *The Fundamental Right to Education*, 94 Notre Dame L. Rev. 1059, 1064 (2019).

These education clauses, moreover, were not just a product of Reconstruction, but emerged even earlier in other states. *See* Steven G. Calabresi & Michael W. Perl, *Originalism and* Brown v. Board of Education, 2014 Mich. St. L. Rev. 429, 450–61 (2015). For its part, Oklahoma's constitution, adopted in 1907, follows in the post-Reconstruction trend of requiring the state to "establish and maintain a system of free public schools wherein all the children of the state may be educated." OKLA. CONST. art. XIII, § 1.

In recent decades, states have experimented with charter schools as a novel means of discharging their core public education responsibilities provided for under these constitutions. As of today, some forty-six states have enacted charter school laws. *See supra* n.2. The purpose of such schools is generally to increase flexibility of curriculum, encourage innovation, expand school choice, and, ideally, improve educational performance.

However, while charter schools were designed as a mechanism for increasing choice and innovation *in* public educational systems, they do not, as Petitioners in this case suggest, operate outside of public education systems independent of the state. Consistent with charter schools' role in helping states discharge

their core public education responsibility, states not only consider charter schools as public schools in their authorizing statutes but indeed operate them as such, including by requiring that they remain free and open to all students and by funding them through public-school formulas and appropriations. States also retain and exercise, throughout the life of each charter school, significant mechanisms of oversight, monitoring, and control. Thus, while states invite private actors to submit applications to run charter schools, states never cede ultimate control over the mission or purpose of public charter schools to private actors, nor ultimate responsibility for the education that occurs within those schools.

### A. States Establish and Approve Charter Schools.

As indicated in their very name, "charter" schools are the result of two key state acts: first, the adoption by the state legislature of a statute authorizing charter schools to provide public educational services on behalf of the state, and second, the approval of a proposed charter or charter application by the state or a state-authorized entity.

***Statutory Authorization.*** Charters are statutorily created relationships between the state and the entity applying for a charter to provide state educational services. *See, e.g.*, Ga. Code Ann. § 20-2-2062(1) (2025); Iowa Code § 256E.6(1) (2025); Me. Stat. tit. 20-A, § 2401(3) (2025); Wis. Stat. § 118.40(2m)(a) (2025); Wyo. Stat. Ann. § 21-3-302(vii), (viii) (2024). In Georgia, for instance, a charter, once approved, is a three-party arrangement between the charter petitioner, a local board of education, and the State Board of

Education. Even after its grant, the charter remains under the jurisdiction and oversight of the state and local school board and subject to the limits of the state constitution. *See* Ga. Code Ann. §§ 20-2-2062(2), 20-2-2063.3a, 20-2-2065.b2–b3 (2025). Consistent with states' authorization of charters via state charter statutes, the objective served by each charter arrangement is ultimately that of the state, not that of any private party. As indicated in Indiana's charter statute, for example, the charter is to "[s]erve the . . . needs of *public school* students," "[o]ffer *public school students* . . . choices," "[a]llow *public schools* freedom and flexibility," and "[p]rovide parents, students, community members, and local entities . . . expanded opportunity for involvement in the *public school system*." Ind. Code § 20-24-2-1 (2024) (emphasis added); *see also* Mass. Gen. Laws ch. 71, § 89(b) ("The purposes of establishing charter schools [include] . . . stimulat[ing] the development of innovation within *public education*[.]" (emphasis added)).

Further underscoring the public nature of charter relationships, the vast majority of states allow public schools to convert into charter schools. *See, e.g.*, Mass. Gen. Laws ch. 71, § 89(c) (2024); N.C. Gen. Stat. § 115C-218.1(a) (2025); S.C. Code Ann. § 59-40-100 (2024); Wyo. Stat. Ann. § 21-3-306(b) (2024). By contrast, several states do not permit *private* schools to convert into charter schools and instead limit the practice to existing public schools. *See, e.g.*, Ala. Code § 16-6F-2(c) (2025); Cal. Educ. Code § 47602(b) (West 2024); Colo. Rev. Stat. § 22-30.5-106(2) (2025); Idaho Code § 33-5203(4)(a) (2024); La. Stat. Ann. § 17:3991(E)(2) (2024); Fla. Stat. § 1002.33(3)(b) (2024).

***Charter Approval.*** States impose a variety of conditions and requirements on charter schools seeking approval. Typically, charter applicants are required to set out such details as the terms of the school's mission, curriculum, and student performance standards. *See, e.g.*, Ala. Admin. Code r. 290-3-6-.02(6) (2024); Ala. Code § 16-6F-4(5) (2025); Fla. Stat. § 1002.33(7)(a)(1)–(19) (2024); Utah Code Ann. § 53G-5-302 (West 2025). Government actors—including state or local boards of education, charter school commissions, or other public entities authorized by statute—in turn review and approve charter school applications and terms. *See, e.g.*, Ala. Code § 16-6F-6(a) (2025); Ind. Code § 20-24-2.1-1(a) (2024); La. Stat. Ann. § 17:3983(A)(2) (2024); Me. Stat. tit. 20-A, § 2405(1)(A)–(C) (2025); Md. Code Ann. Educ. § 9-104(a)(1) (West 2024); Va. Code Ann. § 22.1-212.9(A) (2024); Wash. Rev. Code § 28A.710.160 (2024). Michigan, Idaho and Indiana, for example, authorize the governing boards of state public universities or accredited nonprofit universities to approve a charter. *See* Mich. Comp. Laws § 380.501(2)(a)(iv) (2025); Idaho Code § 33-5202A(2) (2024); Ind. Code § 20-24-1-2.5(5) (2024). In each such circumstance, however, the authorizers exercise authority granted to them by state law to execute state policy in the charter approval process.

Consistent with states' intent to ensure that charter schools are public, some state laws also give the public an important role in the final approval of a charter—a role unlike any seen in private contractual relationships. Several states, for example, require a public hearing on the charter application before granting approval, while other states create mechanisms whereby members of the public can formally challenge

a charter. *See, e.g.*, Ark. Code Ann. § 6-23-302(c)(1) (2025); Cal. Educ. Code §§ 47605, 47605.6 (West 2024); Conn. Gen. Stat. § 10-66bb(a)(1) (2025); S.C. Code Ann. § 59-40-90 (2024) (right to appeal a charter grant to an administrative law judge).

These required approval processes, the conditions imposed by states on charters, and the public's interest and role in the chartering process all stand in stark contrast to private schools and entities commonly characterized as "private." *See, e.g.*, Ala. Code § 16-46-3(a) (2025) (exempting private K–12 schools from licensing requirements in Ala. Code § 16-46-5); Alaska Stat. § 14.07.020(10) (2025) (Department of Education may not require private schools to be licensed); Kan. Admin. Reg. § 91-31-32(e) (2025) (accreditation not mandatory for private schools); Mont. Code Ann. § 15-30-3102(7)(b)(ii) (2025) (accreditation not required if written notice provided to parents or legal guardian).

### B. States Operate Charter Schools as Public Schools.

State statutes expressly define charter schools as "public schools," not private schools.[3] Further,

[3] Ala. Code § 16-6F-4(16) (2025); Ariz. Rev. Stat. Ann. § 15-181(A) (2025); Ark. Code Ann. § 6-23-103(4) (2025); Colo. Rev. Stat. § 22-30.5-507(1)(a) (2025); Conn. Gen. Stat. § 10-66aa(1) (2025); D.C. Code § 38-651.01(3B) (2025); Fla. Stat. § 1002.33(1) (2024); Haw. Rev. Stat. § 302A-101 (2024), Haw. Code R. § 8-54-3 (LexisNexis 2025); Idaho Code § 33-5202A(8) (2024); 105 Ill. Comp. Stat. 5/27A-5 (2024); La. Admin Code. tit. 28, pt. CXXXIX, § 103(A)(2) (2025); Mass. Gen. Laws ch. 71, § 89(c) (2024); Me. Stat. tit. 20-A, § 2401(9) (2025); Miss. Code Ann. § 37-13-91(2)(e)

characterizing charter schools as public schools is by no means mere labeling. Throughout the country, states require that charter schools operate as public schools, mandating that they be both free and open to the public and financing them with education tax dollars reserved for public schools.

Under state funding structures, it is beyond the power of several state legislatures, absent constitutional amendment, to operate charter schools as anything *other than* public schools. Indeed, state constitutions routinely mandate a system of *public schools* and set out a governance structure for such schools, reserving public school funds and resources for them. *See, e.g.*, MINN. CONST. art. XIII, § 1 ("[I]t is the duty of the legislature to establish a general and *uniform* system of public schools" (emphasis added)); N.Y. CONST. art. XI, § 1 ("The legislature shall provide for the maintenance and support of a system of free *common* schools, wherein all the children of this state may

---

(2025); Mo. Rev. Stat. § 160.400(1) (2024); Mont. Code Ann. § 20-6-811(1) (2025); N.C. Gen. Stat. § 115C-5(7a) (2025); N.H. Rev. Stat. Ann. § 194-B:1(IV) (2025); N.J. Admin. Code § 6A:23A-1.2 (2025); N.M. Stat. Ann. § 22-8B-4(I) (2025); Or. Rev. Stat. § 338.005(2) (2025); P.R. Laws Ann. tit. 3, § 9813a (2024); 16 R.I. Gen. Laws § 16-77-3.1(b) (2024); S.C. Code Ann. § 59-40-40(2)(a) (2024); Tenn. Code Ann. § 49-13-104(14) (2025); Utah Code § 53G-5-401(1)(a); Va. Code Ann. § 22.1-212.5(B) (2024); W. Va. Code § 18-5G-3 (2025); *see also* Cal. Educ. Code § 47601(e), (g) (West 2024) (providing that charter schools operate "within the public school system"); Alaska Stat. § 14.03.290(2) (2024) (same); Kan. Stat. Ann. § 72-4206(a) (2025) (same); Tex. Educ. Code Ann. § 12.001(a)(2) (West 2025) (same); Iowa Code § 256E.1 ("Charter schools shall be part of the state's program of public education."); Iowa Code § 256E.7(1) (2025) (endowing charter schools with powers to fulfill their "public purpose"); 20 U.S.C. § 7221i(2) ("The term 'charter school' means a public school . . . .").

be educated." (emphasis added)). In this way, charter schools' very access to state resources is contingent on their operation as public schools, with no discretion left to the state legislature to decide otherwise. *Contra* St. Isidore Br. 2; Board Br. 25. The California Court of Appeal, for instance, has upheld charter schools as consistent with the California state constitution precisely because charter schools are "part of California's public school system," remain subject to the legislature's "plenary power over public schools," and fall "under the exclusive control of officers of the public schools." *Wilson v. State Bd. of Educ.*, 89 Cal. Rptr. 2d 745, 751–53 (Cal. Ct. App. 1999).

***Admission.*** In abiding by these obligations, states dictate the terms by which charter schools enroll students, requiring that these procedures align with public schools. *Cf.*, N.J. CONST. art. VIII, § IV, cl. 1 (requiring free public education for "all the children in the State between the ages of five and eighteen years"). Consistent with state constitutional requirements for public schools, states throughout the country make explicit by statute that charter schools, like public schools, must provide open enrollment to all students. *See, e.g.*, Ala. Code § 16-6F-5(a)(1)–(3) (2024); Alaska Stat. § 14.03.265(b) (2024); D.C. Mun. Regs. tit. 5-E, § 915.1 (2025); Okla. Stat. tit. 70, § 3-140(A) (2024); Va. Code Ann. § 22.1-212.6(A) (2024). The only exceptions to this requirement relate to the fact that the state may cap the number of students a charter school is allowed to enroll. *See, e.g.*, Ark. Code Ann. § 6-23-402(a) (2025); Ariz. Rev. Stat. Ann. § 15-184(A) (2025); Conn. Gen. Stat. § 10-66bb(c)(1)–(2) (2025); 70 Okla. Stat. tit. 70, § 3-140(E) (2024). Private schools, by contrast, typically restrict admissions based on numerous other factors completely within

their discretion. *Cf. Carson as next friend of O. C. v. Makin,* 596 U.S. 767, 783 (2022) ("[P]rivate schools are different by definition because they do not have to accept all students. Public schools generally do.").

***Tuition.*** As with traditional public schools, state constitutions and statutes also require that charter schools be free of cost. *See, e.g.*, ARK. CONST. art. XIV, § 1; CAL. CONST. art. IX, § 5; COLO. CONST. art. IX, § 2; DEL. CONST. art. X, § 1; OKLA. CONST. art. XIII, § 1; Cal. Educ. Code §§ 47605(e)(1), 47605.6(e) (West 2024); Idaho Code § 33-5206(1) (2024); Me. Stat. tit. 20-A, § 2412(4)(C) (2025); Va. Code Ann. § 22.1-212.6(E) (2024); W. Va. Code § 18-5G-3(a)(7) (2025); *cf. Carson*, 596 U.S. at 783 (education provided by private schools benefiting from state tuition programs is not "public" because the education provided "is often *not* free"); *Peltier v. Charter Day Sch.*, 37 F.4th 104, 119 (4th Cir. 2022) (observing that considering charter schools as "private" "ignores both the 'free, universal,' nature of this education and the statutory framework chosen by" the legislature in creating charter schools). States take seriously the requirement of free public education and have even instituted guardrails to ensure that charter schools do not indirectly transgress this essential aspect of what it means to be a public school. For instance, in California, the state legislature has prohibited practices mandating that parents perform service work at charter schools as a condition of enrollment, as such practices had the effect of excluding low-income families who lacked the free time to participate. *See* Cal. Educ. Code § 47605(e)(2)(B)(iv) (West 2024).

***Funding.*** States also directly fund charter schools with public education tax dollars. Although

the precise method varies by state, charter schools receive funding through the same or similar mechanisms as traditional public schools. In several states, this means that charter schools are entitled to the same per pupil aid as traditional public schools, *see, e.g.*, Ala. Code § 16-6F-10(b)(1)(b) (2025); Ark. Code Ann. § 6-23-501(a)(1) (2025); Colo. Rev. Stat. § 22-30.5-112 (2025); Fla. Stat. § 1002.33(17) (2024); Ga. Code Ann., § 20-2-2068.1(a) (2025); N.Y. Educ. Law § 2856(x) (McKinney 2025); Tex. Educ. Code Ann. § 12.106(a) (West 2025), and that charters receive these funds via school districts, which are responsible for the apportioning, *see, e.g.*, N.J. Stat. Ann. § 18A:36A-12(b) (West 2025); 24 Pa. Cons. Stat. § 17-1725-A(a)(2) (2025). In other states, local school districts must allocate a pro rata share of local education funds to charter schools. *See, e.g.*, N.J. Stat. Ann. § 18A:36A-12(b) (2025); 16 R.I. Gen. Laws § 16-77.2-5(a) (2024).

Critical to these public funding arrangements is their mandatory nature. In North Carolina, for example, the state appellate court has held that charter schools are even entitled to a portion of surplus funds maintained by local school districts where those funds are unrestricted and included in the fiscal year's current expense funds. *See Thomas Jefferson Classical Acad. Charter Sch. v. Cleveland Cnty. Bd. of Educ.*, 778 S.E.2d 295, 307 (N.C. App. Ct. 2015); *Sugar Creek Charter Sch., Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 673 S.E.2d 667, 676 (N.C. App. Ct. 2009).

***Enrollment.*** Charter schools today are thoroughly integrated in public education systems such that they educate, as of 2021 data, nearly 4 million students, or about 7% of public-school students

nationwide.[4] But even more significant than the total participation of students in charter schools is the role played by charter schools within educational districts, where they have, in some instances, all but supplanted traditional public schools. Until just last year, *all* public schools in New Orleans were charter schools. *See* Ariel Gilreath, *All-Charter No More: New Orleans Opens Its First Traditional Public School in Nearly 2 Decades*, Chalkbeat (Sept. 9, 2024, 6:05 AM), https://tinyurl.com/3ac4fdyk. In Detroit and Washington, D.C., charter-school students constitute half of public-school enrollees, *see* Derek W. Black, *Preferencing Educational Choice: The Constitutional Limits*, 103 Cornell L. Rev. 1359, 1361 (2018),[5] and in Denver one out of every four public schools is a charter school.[6] While the situation in New Orleans is unique, these school systems and numerous others across the country now provide a significant percentage of students public education in charter schools.

---

[4] *See Public Charter School Enrollment*, National Center for Education Statistics (May 2023), https://nces.ed.gov/programs/coe/indicator/cgb/public-charter-enrollment.

[5] *See also* David Osborne & Emily Langhorne, *Analysis: NAEP Scores Show D.C. Is a Leader in Educational Improvement — With Powerful Lessons for Other Cities,* The 74 (Apr. 17, 2018), https://tinyurl.com/256bpmnp.

[6] *See* Denver Charter Schools, https://denvercharters.org/ (last visited Apr. 1, 2025); Dylan Peers McCoy & Stephanie Wang, *How Lewis Ferebee Forged Peace with Charter Competitors to Reshape Indianapolis Schools*, IndyStar (Feb. 7, 2019, 6:00 AM), https://tinyurl.com/56vc9sa6.

### C. While Charter Schools Enjoy Flexibility in Their Operations, States Engage in Continuing Regulation, Monitoring, and Control of Them.

States also subject charter schools to numerous conditions pertaining to their academic functions as well as engage in continuing control and monitoring of their performance and operations. These features further reflect the public nature of charter schools and state control over them. *Cf. Carson* 596 U.S. at 783 (observing that private schools often need not conform with state education requirements); *Wilson*, 89 Cal. Rptr. 2d at 751 ("From how charter schools come into being, to who attends and who can teach, to how they are governed and structured, to funding, accountability and evaluation—the Legislature has plotted all aspects of their existence.").

While states afford charter schools flexibility beyond traditional public schools, that flexibility is carefully and narrowly circumscribed to ensure that charter schools effectively discharge the state's public education function. Rigorous charter application processes, waiver, and renewal systems are designed to promote and supervise innovative implementation of the public education function, rather than to alter the public education mission itself. *See, e.g.*, La. Admin. Code tit. 28, pt. CXXXIX, § 1101(A) (2025) (charter schools are afforded "increased educational and operational autonomy in exchange for accountability for [academic] performance"); *see also* 16 R.I. Gen. Laws § 16-77-3.1(b) (2024) ("Charter public schools are intended to be vanguards, laboratories, and an expression of the on-going and vital state interest in the

improvement of education."). Thus, while charter schools enjoy certain flexibility in how they hire and manage their staff, allocate instructional time across the school day or year, or even experiment with methods of instruction and student engagement, they are not free to teach anything they want, regulate student behavior any way they want, or ignore public education objectives dictated by statute. To ensure as much, the state continually regulates, monitors, and controls charter schools with a particular focus on academic achievement.

***Curricula and Instruction.*** States typically condition the approval of charters in part on a review of the charter school's proposed curriculum. While proposals can vary considerably, curricular details may include proposed subjects, grade-level topics, content standards, required knowledge, textbooks, and assessments. *See, e.g.*, Alaska Admin. Code tit. 4, § 33.110(a) (2025); Colo. Rev. Stat. § 22-30.5-106(1) (2025); Conn. Gen. Stat. § 10-66bb(d) (2025); Ind. Code § 20-24-3-4(b) (2024); *see also* Tenn. Comp. R. & Regs. 0520-14-03.02 (2025) (charters must apply for waivers of "any state board rule"); Tenn. Bd. Educ. R. 0520-01-03 (available at https://tinyurl.com/yfhkbcnk) (setting out academic and instructional requirements). Many states afford charter schools a degree of flexibility as to the precise subjects they teach, however, the decision to approve charter curricular proposals ultimately rests entirely with the state.

Some states also impose baseline curricular or other instructional requirements. *See, e.g.*, Alaska Admin. Code tit. 4, § 33.110(a)(5) (2025) (requiring alignment with state curricular standards); Wash.

Admin. Code § 108-20-070(2)(a)(ii) (2025) (same); Del. Code Ann. tit. 14, § 512(6) (2025) (same); Ind. Code §§ 20-24-8-5(23), 20-26-12-1(a) (2024) (textbooks chosen by local officials); W. Va. Code St. R. § 126-79-5.4.b.1.A.5 (2025) (requiring minimum instructional time); Kan. Stat. Ann. § 72-4206(b) (2025) (requiring that charter schools adopt a "general curriculum appropriate to the grades offered"); La. Admin. Code tit. 28, pt. CXXXIX, § 515(D)(10) (2025) (curricula must meet state grade progression and graduation requirements); Me. Stat. tit. 20-A, § 2412(5)(J), (L) (2025) (charter schools subject to state diploma standards and educator effectiveness requirements); Md. Code Ann., Educ. § 9-106 (West 2024) (state core subject requirements in Md. Code Ann., Educ § 7-203 apply to charter schools). And in many states, charter schools remain subject to statewide assessments of core subjects as a condition of their operation. *See, e.g.*, Ark. Code Ann. § 6-23-306(3) (2025); Del. Code Ann. tit. 14, § 154(a) (2025); D.C. Mun. Regs. tit. 5-E, § 922.1 (2025); Me. Stat. tit. 20-A, § 2412(5)(B) (2025); Wyo. Stat. Ann. § 21-3-308(g) (2024).

Many states also require state licensing of charter school teachers or otherwise impose basic requirements for instructors. *See, e.g.*, Ala. Code § 16-6F-4(16) (2025) (Alabama charter schools are public schools); Ala. Admin. Code r. 290-3-2-.02(2)(a) (requiring certification for public school teachers); Alaska Stat. § 14.03.290(4) (2024); Haw. Rev. Stat. § 302A-804(b)(1) (2024) (requiring hiring of licensed teachers except in emergencies); Minn. Stat. § 124E.12 (2024); Mont. Code Ann. §§ 20-4-101(1) (licensing required for public school teachers), 20-6-803(9) (2025) (charter schools are public schools); *see also* S.C. Code Ann. §§ 59-40-40(5), (6), 59-40-50(5), 59-40-130(A)(1) (2024)

(requiring certification of a percentage of charter school teachers and setting standards by which traditional public school teachers can move between traditional public schools and charter schools). By contrast, states typically do not impose similar requirements for instruction in private schools. *Cf. Carson*, 596 U.S. at 784 (referring to the fact that private schools typically "need not hire state-certified teachers" as a factor distinguishing private and public schools).

***Oversight and Termination.*** In addition to monitoring charter schools' academic performance, states also continue to monitor and regulate the financial, operational, and employment practices of charter schools, including through on-site school visits. *See, e.g.*, Ariz. Rev. Stat. Ann. § 15-756.08 (2025); 14 Del. Admin. Code § 275(10) (2025); D.C. Mun. Regs. tit. 5-E, § 937 (2025); La. Admin Code. tit. 28, pt. CXXXIX, § 1101 (2025); 603 Mass. Code Regs. 1.08 (2025); Or. Rev. Stat. § 338.095(2) (2025); N.M. Stat. Ann. § 22-8E-7 (2025); Utah Admin. Code. R277-553-2 (2025). Various state entities carry out these periodic reviews of charter schools, including departments of education, *see, e.g.*, Ariz. Rev. Stat. Ann. § 15-756.08(A) (2025), school boards, *see, e.g.*, Iowa Code § 256E.10 (2025), and state charter authorizing entities, *see, e.g.*, Ala. Code § 16-6F-8 (2025); Ariz. Rev. Stat. Ann. § 15-183 (2025); Fla. Admin. Code r. 6A-6.0786 (2025); Kan. Stat. Ann. § 72-4209 (2025); N.H. Rev. Stat. Ann. § 194-B:16 (2025).

Importantly, mere compliance with satisfactory performance does not entitle charter schools to indefinite operation. Charter schools' continued operation instead remains entirely contingent on state approval

as set out in the state's statutory charter scheme. In particular, charter schools are subject to a periodic renewal process, often every few years. *See, e.g.*, Iowa Code §§ 256E.6(2), 256E.10(5) (2025); La. Stat. Ann. § 17:3992(A)(1) (2024); 24 Pa. Cons. Stat. § 17-1729-A(i) (2025) ("When a charter is revoked, not renewed, forfeited, surrendered or otherwise ceases to operate, the charter school shall be dissolved.") (West 2025); 200-20-05 R.I. Code R. § 2.5.3(A)–(C) (LexisNexis 2025). Further, because charter schools operate *on behalf of* the state, states may revoke charters for failure to comply with statutory metrics, including failure to make sufficient progress towards performance expectations and proficiency standards, or mismanagement of funds or operations. *See, e.g.*, Ala. Code § 16-6F-8(c)(7) (2025); Ariz. Rev. Stat. Ann. § 15-183(I)(3)(a)–(d) (2025) (charters subject to mandatory review, and the state may revoke charter for inadequate academic achievement as well as failure to meet performance, operational, or financial expectations); Ark. Code Ann. § 6-23-105(a)(1) (2025); D.C. Code § 38-1802.12 (2025); Fla. Stat. § 1002.33(8) (2024); Utah Code Ann. § 53G-5-503(1) (West 2025); W. Va. Code, § 18-5G-10 (2025).

*

In these ways, charter schools are in fact state-created public schools. In treating charter schools as public schools, the Oklahoma Supreme Court and legislature's approach thus falls entirely in line with the practices of states throughout the country, including, but not limited to, statutorily defining charter schools as public schools. *See supra*, n.2. Like Oklahoma, states throughout the country mandate that charter schools provide education that is both free and open to

the public—two defining features of traditional public schools. The mechanisms by which states continue to retain control over charter schools to ensure appropriate provision of public education are also not to be underestimated. From performance, teacher, and curricular requirements to review processes and financing, states remain in control of charter schools throughout their terms of operation and decide whether to renew or terminate approval altogether.

## II. The Establishment Clause Prohibits States from Establishing Public Charter Schools for Religious Instruction.

States cannot establish and operate public charter schools teaching religion as truth without violating core Establishment Clause principles. Were states to approve charters with schools teaching religion as truth, they would promote and establish religion in the provision of public education.

### A. The Establishment Clause Applies with Particular Force in Public Education.

This Court has long recognized that the Establishment Clause applies with particular force in public schools. *Cf. Edwards v. Aguillard*, 482 U.S. 578, 583–84 (1987) ("The Court has been particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools."); *cf. also Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 297 (2000) (public school policy of instituting prayer before football games violated Establishment Clause); *Wallace v. Jaffree*, 472 U.S. 38 (1985) (daily period of

silence for mediation or voluntary prayer); *Stone v. Graham*, 449 U.S. 39 (1980); *Abington Sch. Dist. v. Schempp*, 374 U.S. 203, 205 (1963) (daily Bible reading); *Engel v. Vitale,* 370 U.S. 421, 424 (1962) (daily classroom prayer). Where states adopt policies that endorse a religion or "utilize [the] public school system to aid any or all religious faiths or sects in the dissemination of their doctrines and ideals," they plainly run afoul of the Establishment Clause. *Illinois Ex rel. McCollum v. Bd. of Educ.*, 333 U.S. 203, 211 (1948); *see also Epperson v. Arkansas*, 393 U.S. 97, 106–107 (1968) ("[T]he State may not adopt programs or practices in its public schools or colleges which 'aid or oppose' any religion. This prohibition is absolute." (internal citations omitted)); *Sch. Dist. of Abington Tp., Pa. v. Schempp*, 374 U.S. 203, 220 (1963) (observing that "neither a State nor the Federal Government . . . can constitutionally pass laws or impose requirements which aid all religions as against non-believers . . . [nor] aid those religions based on a belief in the existence of God as against those religions founded on different beliefs[.]" (internal quotations omitted)).

None of the Court's recent decisions involving publicly financed private-school tuition programs alter this basic principle. Indeed, the key consideration in each of the Court's recent cases exempting those tuition programs from Establishment Clause concerns was the Court's conclusion that government funding arrived at private religious schools solely by virtue of independent private decisions rather than by judgment by the state. *Cf. Zelman v. Simmons-Harris*, 536 U.S. 639, 648–49, 653 (2002) (referring to the Court's "consistent distinction between governmental programs that provide aid directly to religious

schools" and programs "in which government aid reaches religious schools only as a result of genuine and independent choice of private individuals"); *Carson*, 596 U.S. at 782–83 (distinguishing state tuition benefits program from provision of "public education" and upholding tuition assistance program where parents "may direct" those resources to schools "of *their* choice"); *Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464, 474 (2020) (Establishment Clause objection "unavailing" because government support reaches religious schools "only as a result of" independent parent choice). Thus, the state support of religion across these cases was indirect, and the instruction occurring therein entirely divorced from the state.

Moreover, in reaching these and related Establishment Clause holdings, the Court has reaffirmed the core principle that there can be no establishment of religion in strictly *public* educational activities and programs. *See, e.g.*, *Carson*, 596 U.S. at 782–85; *see also Kennedy v. Bremerton*, 597 U.S. 507, 540–41 (2022).

### B. Approving and Operating Religious Charter Schools Is "State Action."

Critically, when a state grants a charter to a public school that provides religious instruction, the relevant state action is just that—the *approval*, *operation*, and continuing *administration* of a religious institution. As this Court's precedents have long maintained, government has no business approving or regulating religious instruction or coercing prayer or religious practices in public schools—all of which amount to state action in aid or establishment of

religion. *Cf. Zelman*, 536 U.S. at 650 (distinguishing programs of direct aid to religious schools from incidental support for religious schools as a result of private decisions); *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 305–307 (2000) (school encouragement of religious invocations at football games violated Establishment Clause); *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 123 (1982) ("[D]elegating a governmental power to religious institutions[] inescapably implicates the Establishment Clause."); *Zorach v. Clauson*, 343 U.S. 306, 311, 315 (1952) (no First Amendment violation where no "classrooms were used for religious instruction" and the "force of the public school" was not "used to promote instruction"). *See also* Derek W. Black, *Religion, Discrimination, and the Future of Public Education*, 13 U.C. Irvine L. Rev. 805, 811 (2023) ("[S]tate action *to authorize* a religious charter school is [what is] patently unconstitutional." (emphasis added)).

But where states evaluate charter applications and grant charters to schools teaching religion as truth, this is exactly what the state is doing: bringing to life a religious school through state support and public educational tax dollars. *Cf. Zelman*, 536 U.S. at 661 (distinguishing programs that "direct[ly]" provide money for religious schooling); *McCollum*, 333 U.S. at 209–10 (Establishment Clause violated where the public education system "assists and is integrated with the program of religious instruction carried on by [] religious sects," including through the "utilization of the tax-established and tax-supported public school system to aid religious groups to spread their faith"); *Everson v. Bd. of Educ. of Ewing Tp.*, 330 U.S. 1, 16 (1947) ("No tax in any amount, large or small, can be levied to support any religious activities or

institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion."). Indeed, charter school instructional programs exist solely by virtue of the state's approval of them. Likewise, the resources to which charter schools become entitled, while based on student enrollment, are ultimately the function of state and local policies and appropriations, even if private actors initiate charter applications in some cases. *See supra* Part II.B.

Further, by approving a charter, the state is installing the charter school with the state's coercive power to run a public school and draw on public resources. As with public schools, states generally require mandatory attendance at charter schools, *see, e.g.*, N.H. Rev. Stat. Ann. § 194-B:8(III) (2025); Okla. Admin. Code § 210:40-87-7(c) (2025), as well as permit charter schools to exercise disciplinary authority, *see, e.g.*, Alaska Stat. § 14.33.120 (2024) (requiring charter schools to adopt standards for student behavior and safety policies for the use of reasonable and appropriate force to maintain classroom safety and discipline). Charter schools for religious instruction would thus promote religion in exactly the sort of coercive manner that this Court has long recognized as antithetical to the Establishment Clause and the separation of church and state. *Cf. Kennedy*, 597 U.S. at 537, 542 (recognizing government "coercion" of religious exercise as "among the foremost hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment" (citing *Santa Fe Indep. Sch. Dist.*, 530 U.S. at 294 (2000))); *Lee v. Weisman*, 505 U.S. 577, 592 (1992) (observing that "prayer exercises in public schools carry a particular risk of indirect coercion").

State action would furthermore be inherent in the selection and oversight of a charter school whose instructional mission is religious in nature. *See Our Lady of Guadalupe Sch. v. Morrisey-Berru*, 591 U.S. 732, 746 (2020) ("[A]ny attempt by government to dictate or even to influence ["matters 'of faith and doctrine'"] would constitute one of the central attributes of an establishment of religion."); *Santa Fe Indep. Sch. Dist.*, 530 U.S. at 311 ("[T]he District's decision to hold the constitutionally problematic election [for school prayer] is clearly 'a choice attributable to the State[.]'" (quoting *Lee*, 505 U.S. at 587)). While private parties may initiate the charter school approval process by filing a charter application, the state assesses the curriculum and methods of the applicants and ultimately selects for authorization those it deems sufficiently equipped to carry out the state's educational mission.

As such, even if a state were to structure its charter school system in such a way that the state action in support of religion were less obvious, the very nature of charter schools, including their approval and operation, as well as their ongoing monitoring and oversight would still hopelessly entangle the state in matters of religion and religious instruction deeply unsuited to both the state and religious schools. *See Carson*, 596 U.S. at 787 (noting that state action "scrutinizing whether and how a religious school pursues its educational mission" would "raise *serious concerns* about state entanglement with religion." (emphasis added)).

### C. Forcing State Legislatures to Create Religious Charter Schools Would Eviscerate the Wide-Latitude to Which States Are Entitled in the Design of Public Education Systems.

In deciding to operate public charter schools on a nonsectarian basis, states act in line with this Court's precedents in the cases cited above as well as the discretion afforded to them in discharging their core constitutional responsibility in public education and in the operation of public schools. This Court has long held that state constitutional, statutory, and policy decisions of this sort are ones to which it must defer, lest it upset state and local control over education and the systems of federalism our Constitution establishes. *See, e.g.*, *Milliken v. Bradley*, 418 U.S. 717, 741–42 (1974). No rule would cut deeper into the zone of state autonomy protected by the Constitution than one that deprived states of their right to create, maintain, and structure public education policy in ways that further and protect their constitutional duties in education.

At root of the Court's decisions regarding public education is thus a key factor pointing in favor of Oklahoma's legislative interest in providing for nonsectarian charter school education here: federalism. As explained above, education is a central state constitutional responsibility giving rise to considerable state interest and competence. *Cf. Locke v. Davey*, 540 U.S. 712, 720–23 (2004) ("[W]e can think of few areas in which the State's antiestablishment interests come more into play [than education]."). The Court has accordingly recognized the importance of not unduly

constraining states in their policy and operational decisions as to the provision of public education. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 42–43 (1973) (recognizing public "educational policy" as an area counseling in favor of federal judicial restraint to avoid "imposing on the States inflexible constitutional restraints that could circumscribe or handicap the continued research and experimentation so vital to finding even partial solutions to educational problems[.]").

Similarly, in *Carson*, the Court reasoned that so long as the state stopped short of subsidizing private school programs, which triggered Free Exercise analysis, states retain the authority to "decid[e]," as in the case of charter schools, "to operate schools of [their] *own*." 596 U.S. at 785 (emphasis added). Indeed, states "*may* provide a strictly secular education in [their] *public schools*." *Id.* at 785 (emphasis added). Moreover, states maintain considerable liberty with respect to *how* they choose to set up their public school system and deliver public education: "The State retains a number of options: it could expand the reach of its public school system . . . provide some combination of tutoring, remote learning," or otherwise set up untraditional public educational programs providing "strictly secular education." *Id.* In this way, *Carson* spoke to action of the very sort the Oklahoma Legislature has undertaken here in designing and operating its public education system—the establishment by statute of public charter schools operating on a strictly secular and non-sectarian basis.

By contrast, compelling state legislatures and state and local officers and agents, as Petitioners demand, to bring religious schools into life through state

action and public education dollars would not only violate the Establishment Clause but indeed negate the core sovereignty of states in a setting where they have historically enjoyed considerable discretion.

## CONCLUSION

For the foregoing reasons, *Amici* respectfully urge this Court to affirm the decision of the Oklahoma Supreme Court.

Respectfully submitted,

STEPHAN J. SCHLEGELMILCH
*Counsel of Record*
VALERIE A. ZUCKERMAN
COURTNEY E. BARGER
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004
(202) 383-8000
sjschlegelmilch@debevoise.com

BEATRICE A. WALTON
JOHN HOLLINGSWORTH
WILLIAM F. GONCHER
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001

*Counsel for Amici Curiae*

April 7, 2025

# APPENDIX

## APPENDIX TABLE OF CONTENTS

*Page*

LIST OF *AMICI CURIAE* CONSTITUTIONAL AND EDUCATION LAW SCHOLARS ............................ 1a

## LIST OF *AMICI CURIAE* CONSTITUTIONAL AND EDUCATION LAW SCHOLARS

Derek W. Black
*Professor of Law*
University of Southern Carolina School of Law*

David C. Bloomfield
*Professor of Education Leadership, Law & Policy*
Brooklyn College and The CUNY Graduate Center*

Elise Boddie
*Professor of Law*
University of Michigan Law School*

Jack Charles Boger
*Emeritus Professor of Law*
University of North Carolina School of Law*

Kristine Bowman
*Associate Dean and Professor*
Michigan State University College of Education*

Kevin D. Brown
*Professor of Law*
University of South Carolina School of Law*

Erwin Chemerinsky
*Dean and Professor of Law*
University of California, Berkeley School of Law*

Janet Decker
*Associate Professor*
Indiana University, Bloomington School of Education*

Suzanne Eckes
*Professor*
University of Wisconsin, Madison College of Education*

Aderson B. Francois
*Professor of Law*
Georgetown Law Center*

Rob A. Garda, Jr.
*Professor of Law*
Loyola University New Orleans College of Law*

Preston Green, III
*Professor of Education Leadership and Law*
University of Connecticut NEAG College of Education*

Danielle R. Holley
*President and Professor*
Mount Holyoke College*

Daniel Kiel
*Professor of Law*
University of Memphis School of Law*

Christine Kiracofe
*Professor and Head of Educational Studies*
Purdue University College of Education*

William S. Koski
*Professor of Law*
Stanford University School of Law*

Maria M. Lewis
*Associate Professor of Education*
Pennsylvania State University College of Education*

Julie Mead
*Professor Emeritus*
University of Wisconsin, Madison College of Education*

Caitlin Millat
*Associate Professor of Law*
Arizona State University College of Law*

Raquel Muñiz
*Associate Professor*
Boston College School of Education and Human Development*

David Nguyen
*Associate Professor*
Indiana University-Purdue University, Indianapolis School of Education*

Kimberly Jade Norwood
*Professor of Law*
Washington University School of Law*

Mark Paige
*Associate Professor*
University of Massachusetts, Dartmouth College of Arts and Sciences*

John A. Powell
*Professor of Law*
University of California, Berkeley School of Law*

Matthew Patrick Shaw
*Associate Professor of Law*
Vanderbilt Law School*

Kimberly J. Robinson
*Professor*
University of Virginia School of Law*

Benjamin M. Superfine
*Chair & Professor of Educational Policy Studies*
University of Illinois, Chicago College of Education*

Joshua Weishart
*Professor of Law*
Suffolk Law School*

Kevin Welner
*Professor*
University of Colorado, Boulder School of Education*

Kimberly West-Faulcon
*Professor of Law*
Loyola Law School, Los Angeles*

Erika K. Wilson
*Professor of Law*
University of North Carolina School of Law*

**Institutional Affiliation for Identification Purposes Only*