# SJCIX20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION (KNOXVILLE)

- - - - - - - - - - - - - - - x

THE WILBERFORCE ACADEMY OF KNOXVILLE,

Plaintiffs

VS

CASE NO. 3:25-cv-584(CEA)(DCP)

JUNE 16, 2026

KNOX COUNTY BOARD OF EDUCATION and JOHN BUTLER, ANNE TEMPLETON, PATRICIA FONTENOT-RIDLEY, KATHERINE BIKE, LAUREN MORGAN, BETSY HENDERSON, STEVE TRIPLETT, TRAVIS WRIGHT, and KRISTI KRISTY, all in their official capacities as members of the Knox County Board of Education,

Defendants,

- - - - - - - - - - - - - - -

REV. DR. RICHARD COBLE, AMANDA COLLINS, KERRY DOOLEY, ELIZABETH PORTER, and REV. DR. KATINA SHARP,

Intervenor-Defendants,

- - - - - - - - - - - - - - -

ADRIENNE CARROLL, CIARA CRUTCHER, TIFFANY NASH, EVELYN HENDERSON, SHAKEITHIA RICE, and HOLLY SLATER,

Intervenor-Defendants.

- - - - - - - - - - - - - - -

I think it's a highly pertinent distinction.

MR. McNEAL: Okay. To be honest, I don't really understand your distinction, but that's okay. We'll move on.

BY MR. McNEAL:

Q So what did YOU understand -- well, I'm now talking to you, Mr. Harris.

What did you understand Mr. Wishart was going to do on day-to-day?

A Oh, you said you are talking me now?

Q Yes.

A I mean, he's doing everything. We've empowered him to make practically every decision that needs to be made.

Q And what did understand you were going to do day-to-day?

A Until we get a -- you know, get approval to open, I mean, there was really not a whole lot for the Board to do, I mean, outside of giving him advice if he asked us, but there's really -- there's no operations. There's no ability to open yet.

So we're just standing by, and then

that's when I'll come in with guns blazing with my, you know, gifts and talents to help get this school open and be the best school in Knoxville.

Q Okay. Last question -- last few questions before we break.

I'm going to go back to Exhibit 4 and this is the Bylaws. (Indicating.)

Do you see it in front of you?

A Yes.

Q Has Mr. Wishart ever asked advice from the Board to-date? So from the Board's creation in November to now, has he ever asked for your advice as the Board?

MR. PROCTOR: Objection, vague as to "as the Board".

MR. McNEAL: I'll restate my question.

BY MR. McNEAL:

Q Acting in your capacity as the Board Chair, not personally, has he ever asked for your advice from November until now?

A Regarding the Wilberforce application and process, I don't recall any specific advice that he's asked for.

Q Okay. Here it says in the Bylaws, "the

president shall have and exercise the general powers and duties usually vested in the president of a non-profit corporation," is that correct?

A Yes.

Q Is it your position that you've exercised general control and supervision over Mr. Wishart's charter work?

MR. PROCTOR: Objection, calls for a legal conclusion.

THE WITNESS: Yes.

BY MR. McNEAL:

Q Can you identify any acts showing that you exercised CEO level of control over Mr. Wishart's charter work?

MR. PROCTOR: Objection, calls for a legal conclusion.

THE WITNESS: He's produced an excellent application that was not -- we didn't submit it, but it was an excellent -- and that's one example.

He's also T-- I would consider him the founder.

He's already assembled a really strong Board of Directors.

BY MR. McNEAL:

Q I think -- I don't think you're really answering the question that I asked.
A Okay.
Q Did you identify any act showing that you exercised CEO level control over Mr. Wishart' --
MR. PROCTOR: Objection, calls for a legal conclusion.
THE WITNESS: No, I just -- in my opinion, at least for the application, I gave you an example of something that's been produced, and I'm in -- I'm in charge, so I was very happy with that application.
I think that showed we were exercising control of one of the main documents that would ever be produced for this organization, and he did a phenomenal job with it.
BY MR. McNEAL:
Q What control did you exercise over the application?
MR. PROCTOR: Objection, calls for a legal conclusion.
THE WITNESS: I mean, I don't

micromanage his decisions.

BY MR. McNEAL:

Q That's not really the question that I asked, it was more so: What did you do to exercise CEO level control over the application?

MR. PROCTOR: Objection, calls for a legal conclusion.

THE WITNESS: I think it's a bad question, but I would -- I guess I would say I can't point to any one thing outside of hiring, you know, appointing a really, really qualified executive director that was able to already get us to where we're at.

BY MR. McNEAL:

Q Okay. So your position is that by hiring him, you trusted him to do the application, do the LOI, and pretty much just do what needed to be done?

MR. PROCTOR: Objection, vague as to "do what needed to be done," and calls for a legal conclusion.

THE WITNESS: Yes, I think we've got the right person in place, and he's doing what we've asked and what we need.