**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**NORTHERN DIVISION (KNOXVILLE)**

| | |
|---|---|
| THE WILBERFORCE ACADEMY OF KNOXVILLE,<br>*Plaintiff*,<br>v.<br>KNOX COUNTY BOARD OF EDUCATION,<br>*Defendant*,<br>RICHARD COBLE, et al.,<br>*Intervenor-Defendants*,<br>ADRIENNE CARROLL, et al.,<br>*Intervenor-Defendants*. | Case No. 3:25-cv-584-CEA-DCP<br>District Judge Charles E. Atchley<br>Magistrate Judge Debra C. Poplin |

**APPENDIX TO PLAINTIFF'S POST-DISCOVERY SUMMARY JUDGMENT PAPERS, VOLUME 4 (APP.2010-2295)**

## TABLE OF CONTENTS


Exhibit 1: Declaration of Zachary Wishart ........ App.1

Exhibit 2: Declaration of Douglas Harris ........ App.19

Exhibit 3: Declaration of David Colquitt ........ App.26

Exhibit 4: Deposition of Zachary Wishart ........ App.34

Exhibit 5: Deposition of Douglas Harris ........ App.75

Exhibit 6: Deposition of David Colquitt ........ App.91

Exhibit 7: Email from Zachary Wishart (Jan. 29, 2026) ........ App.109

Exhibit 8: Wilberforce Charter Application ........ App.111

Exhibit 9: Wilberforce Budget ........ App.391

Exhibit 10: Wilberforce Actions of Directors ........ App.398

Exhibit 11: Email from KCBOE (Dec. 2, 2025) ........ App.401

Exhibit 12: Email from KCBOE (Dec. 5, 2025) ........ App.403

Exhibit 13: Email from KCBOE (Feb. 4, 2026) ........ App.406

Exhibit 14: Wilberforce 501(c)(3) Letter ........ App.409

Exhibit 15: *Christian Group Sues KCBOE* ........ App.413

Exhibit 16: ACLU Oklahoma Press Release ........ App.421

Exhibit 17: Wilberforce Board Meeting Minutes (Apr. 3, 2026) ........ App.434

Exhibit 18: Wilberforce Board Meeting Minutes (June 23, 2026) ........ App.437

Exhibit 19: Wilberforce Board Ratification Resolution ........ App.440

Exhibit 20: Deposition of David Denton ........ App.443

Exhibit 21: Email from Joy Lambrecht (Jan. 29, 2026, 5:20 p.m.) ........ App.450

Exhibit 22: Email from Ben Lindquist (Jan. 30, 2026) ........ App.452

Exhibit 23: Email from Joy Lambrecht (Jan. 29, 2026, 1:50 p.m.) ........ App.454

Exhibit 24: KCBOE's Amended R&Os to Wilberforce's RFPs ........ App.457

Exhibit 25: KCBOE's Amended R&Os to Wilberforce's RFAs ........ App.462

Exhibit 26: KCBOE's Amended R&Os to Wilberforce's Second Interrogatories....................App.473

Exhibit 27: Wilberforce Letter of Intent..........................................................................................App.479

Exhibit 28: Wilberforce Letter of Intent Executive Summary.....................................................App.486

Exhibit 29: KCBOE Charter Application Guidance ..................................................................App.491

Exhibit 30: Email from Kristi Kristy (Dec. 2, 2025).....................................................................App.495

Exhibit 31: Emerald Application ....................................................................................................App.498

Exhibit 32: Knoxville Prep Application...........................................................................................App.789

Exhibit 33: Emerald Original Charter Agreement ....................................................................App.1446

Exhibit 34: Emerald Renewal Charter Agreement.....................................................................App.1463

Exhibit 35: KCBOE Board Meeting Minutes (June 5, 2025) ....................................................App.1481

Exhibit 36: Knoxville Prep Charter Agreement ..........................................................................App.1490

Exhibit 37: Memorandum from Jon Rysewyk (May 29, 2014).....................................................App.1507

Exhibit 38: KCBOE Technical Assistance Workshop Video .......................................................App.1512

Exhibit 39: KCBOE Technical Assistance Workshop Slides.........................................................App.1514

Exhibit 40: KCBOE Board Meeting Minutes (Apr. 9, 2026) .......................................................App.1543

Exhibit 41: KCBOE Policy I-450 ....................................................................................................App.1551

Exhibit 42: KCBOE Charter School Handbook............................................................................App.1554

Exhibit 43: KCBOE Charter Performance Framework...............................................................App.1580

Exhibit 44: KCBOE Annual Authorizer Report (2024-25).........................................................App.1608

Exhibit 45: KCBOE Called Board Meeting Video (Feb. 5, 2026)..............................................App.1676

Exhibit 46: KCBOE Called Board Meeting Minutes (Feb. 5, 2026) ..........................................App.1678

Exhibit 47: Tennessee Charter Application Form ........................................................................App.1683

Exhibit 48: Tennessee Charter School Pre-Opening Checklist.....................................................App.1728

Exhibit 49: *Education Freedom Scholarship FAQs* .......................................................................App.1754

Exhibit 50: *Tennessee Education Freedom Scholarship Program* ...........................................App.1774

Exhibit 51: Wooddale Middle School Charter Agreement ....App.1777

Exhibit 52: Wooddale Middle School Charter Application ....App.1801

Exhibit 53: LEAD Neely's Bend Charter Agreement ....App.1822

Exhibit 54: LEAD Neely's Bend Charter Application ....App.1846

Exhibit 55: Tennessee Public Charter School Commission Policy 4804....App.1856

Exhibit 56: Tennessee Public Charter School Commission Charter Performance Framework....App.1858

Exhibit 57: ACLU of Tennessee Amended and Restated Charter ....App.1910

Exhibit 58: Carroll Intervenors' Amended R&Os to Wilberforce's First Interrogatories....App.1916

Exhibit 59: Deposition of Holly Slater....App.1931

Exhibit 60: Deposition of Richard Coble ....App.1946

Exhibit 61: Deposition of Kerry Dooley....App.1955

Exhibit 62: Deposition of Amanda Collins ....App.1963

Exhibit 63: Deposition of Elizabeth Porter ....App.1972

Exhibit 64: Deposition of Katina Sharp ....App.1983

Exhibit 65: Coble Intervenors' Amended R&Os to Wilberforce's RFAs ....App.1992

Exhibit 66: Coble Intervenors' Property Tax Records ....App.2011

Exhibit 67: Email from Erik Twist (Aug. 27, 2025, 3:22 p.m.) ....App.2015

Exhibit 68: Email from Erik Twist (Aug. 27, 2025, 4:11 p.m.) ....App.2017

Exhibit 69: Email to Erik Twist (Sept. 12, 2025) ....App.2020

Exhibit 70: Email from Erik Twist (Oct. 3, 2025) ....App.2023

Exhibit 71: Email from Erik Twist (Oct. 21, 2025) ....App.2027

Exhibit 72: Email from Erik Twist (Oct. 30, 2025) ....App.2031

Exhibit 73: Email from Erik Twist (Nov. 5, 2025) ....App.2033

Exhibit 74: Email from David Denton (Nov. 7, 2025) ....App.2035

Exhibit 75: Arcadia Charter Application Support Proposal ....App.2041

Exhibit 76: Email to David Denton (Nov. 19, 2025) ..................App.2050

Exhibit 77: Email from David Denton (Nov. 20, 2025) ..................App.2055

Exhibit 78: Email to David Denton (Nov. 26, 2025) ..................App.2058

Exhibit 79: Email from Erik Twist (Dec. 3, 2025)..................App.2061

Exhibit 80: Email from Joy Lambrecht (Dec. 3, 2025) ..................App.2063

Exhibit 81: Email from Joy Lambrecht (Dec. 4, 2025) ..................App.2066

Exhibit 82: Email from Joy Lambrecht (Dec. 5, 2025, 11:15 a.m.) ..................App.2068

Exhibit 83: Email from Joy Lambrecht (Dec. 5, 2025, 3:42 p.m.)..................App.2071

Exhibit 84: Email to Joy Lambrecht (Dec. 9, 2025)..................App.2073

Exhibit 85: Email from Joy Lambrecht (Dec. 9, 2025, 12:55 p.m.)..................App.2075

Exhibit 86: Email from Joy Lambrecht (Dec. 9, 2025, 12:56 p.m.)..................App.2077

Exhibit 87: Email from Joy Lambrecht (Dec. 9, 2025, 12:58 p.m.)..................App.2079

Exhibit 88: Email to David Denton (Dec. 11, 2025)..................App.2081

Exhibit 89: Email to David Denton (Dec. 12, 2025)..................App.2083

Exhibit 90: Email from Erik Twist (Dec. 15, 2025)..................App.2085

Exhibit 91: Email from David Denton (Dec. 19, 2025)..................App.2089

Exhibit 92: Email from David Denton (Jan. 5, 2026) ..................App.2093

Exhibit 93: Email to David Denton (Jan. 7, 2026)..................App.2095

Exhibit 94: Email to David Denton (Jan. 10, 2026) ..................App.2098

Exhibit 95: Email from David Denton (Jan. 12, 2026) ..................App.2106

Exhibit 96: Email to David Denton (Jan. 13, 2026) ..................App.2110

Exhibit 97: Email from Mary Kathryn Boucher (Jan. 13, 2026)..................App.2113

Exhibit 98: Email from Amy Frank (Jan. 15, 2026)..................App.2116

Exhibit 99: Email to David Denton (Jan. 16, 2026) ..................App.2119

Exhibit 100: Email from David Denton (Jan. 16, 2026) ..................App.2124

Exhibit 101: Email from David Denton (Jan. 16, 2026) ............................................................ App.2126

Exhibit 102: Email from Amy Frank (Jan. 16, 2026, 8:01 p.m.) ................................................ App.2128

Exhibit 103: Email from Amy Frank (Jan. 16, 2026, 9:00 p.m.) ................................................ App.2130

Exhibit 104: Email from Joy Lambrecht (Jan. 18, 2026) ........................................................... App.2133

Exhibit 105: Email to David Denton (Jan. 20, 2026) ................................................................ App.2138

Exhibit 106: Email from Joy Lambrecht (Jan. 22, 2026) ........................................................... App.2142

Exhibit 107: Email to Joy Lambrecht (Jan. 22, 2026) ................................................................ App.2147

Exhibit 108: Email to Joy Lambrecht (Jan. 23, 2026) ................................................................ App.2150

Exhibit 109: Email to Joy Lambrecht (Jan. 29, 2026, 11:50 a.m.) ............................................. App.2152

Exhibit 110: Email from Joy Lambrecht (Jan. 29, 2026, 2:23 p.m.) .......................................... App.2156

Exhibit 111: Email from Joy Lambrecht (Jan. 29, 2026, 4:20 p.m.) .......................................... App.2160

Exhibit 112: Arcadia R&Os to Coble Intervenors' Subpoena ..................................................... App.2162

Exhibit 113: Email from Parker Bartholomew (Jan. 3, 2026) ..................................................... App.2168

Exhibit 114: Property Analysis Spreadsheet ............................................................................ App.2171

Exhibit 115: Letter from Gov. Bill Lee (Aug. 11, 2026) ............................................................. App.2175

Exhibit 116: Deposition of Zachary Wishart ............................................................................ App.2177

Exhibit 117: Nashville Classical Website ................................................................................. App.2186

Exhibit 118: Libertas School of Memphis Website ................................................................... App.2193

Exhibit 119: Memphis School of Excellence Website ................................................................ App.2198

Exhibit 120: Soulsville Charter School Website ........................................................................ App.2201

Exhibit 121: Tennessee Career Academy Website ..................................................................... App.2208

Exhibit 122: ChattAcademy Website ........................................................................................ App.2215

Exhibit 123: JMCSS Called Board Meeting Video (Apr. 28, 2026) ............................................ App.2219

Exhibit 124: Skillern Elementary Charter Agreement ............................................................... App.2221

Exhibit 125: River's Edge Christian Academy Website ............................................................. App.2246

Exhibit 126: Knox County Schools Meal Prices ............ App.2255

Exhibit 127: KCBOE Initial Disclosures ............ App.2259

Exhibit 128: KCBOE Charter School Application Protocol ............ App.2263

Exhibit 129: KCBOE Board Meeting Minutes (Dec. 1, 2010) ............ App.2269

Exhibit 130: Email from KCBOE (Jan. 16, 2026) ............ App.2276

Exhibit 131: Carroll Intervenors' R&Os to Wilberforce's Second Interrogatories ............ App.2278

Exhibit 132: *Tennessee's Religious Charter School Test* ............ App.2292

Exhibit 133: *Ivy Academy Encouraged to Again Apply as Charter School* ............ App.2296

Exhibit 134: Gabel, *Public Funds for Church and Private Schools* ............ App.2308

Exhibit 135: Jorgenson, *The State and the Non-Public School* ............ App.2327

Exhibit 136: Garrett, *Annual Report of the State Superintendent, 1891* ............ App.2331

Exhibit 137: *The Catholic Encyclopedia* ............ App.2338

Exhibit 138: *Complete Works of the Most Rev. John Hughes* ............ App.2346

Exhibit 139: Knoxville Charter Academy Application ............ App.2357

Exhibit 140: Skillern Elementary Application ............ App.2698

Exhibit 141: Declaration of Zachary Wishart ............ App.2891

# EXHIBIT 66

App.2011

**Account Number : 121GE-002**

**Justin Biggs, Trustee**
**Knox County Trustee**

**109 SPRANKLE DR**

*(C) is for separate City Tax, (C/A) for City Tax Addon*
*(ADD) is for County Tax Addon*
*(BK) for Bankruptcy*
*(CM) for Clerk&Master*
*(AP) for Under Appeal*
*(PP) for Pre-Payments received for future year bill*

| DS | MapNum | CtrlMap | GP | Parcel | I | S-I |
|---|---|---|---|---|---|---|
| 00 | | 121GE | | 2. | R | 000 |

## Owner Information

Owner: DOOLEY KERRY JO

Address: 109 SPRANKLE DR
KNOXVILLE, TN 37919

Land Value: $20,000.00
Improve Value: $235,000.00
Total Value: $255,000.00
Assessment: 25% * $255,000.00 = $63,750.00

## Parcel Details

| Deed Information | Plat Information | Property Information |
|---|---|---|
| Book: Page: Date: | --- | Property Address: 109 SPRANKLE DR |
| --- | --- | Subdivision: DOOLEY AND SHELL PROPERTY LOT: 1 |
| --- | --- | Dimensions: 69.34 X 174.99 X IRR |
| --- | --- | Calculated Acres: 0.0 Deeded Acres: 0.00 |

## Parcel History

| Year | Bill# | Name | Date | Base Tax | Total Paid | Balance Due | Method | Details | Payee |
|---|---|---|---|---|---|---|---|---|---|
| 2025 | 150725 | DOOLEY KERRY JO | 10/08/25 | 991.00 | 991.00 | 0.00 | CHECK | 1010 | LOCKBOX |
| 2024 | 149108 | DOOLEY KERRY JO | 10/30/24 | 991.00 | 991.00 | 0.00 | CHECK | 1156 | DOOLEY KERRY JO |
| 2023 | 147676 | DOOLEY KERRY JO | 02/13/24 | 991.00 | 991.00 | 0.00 | CHECK | 1132 | LOCKBOX |
| 2022 | 146561 | DOOLEY KERRY JO | 10/13/22 | 991.00 | 991.00 | 0.00 | CHECK | 1091 | LOCKBOX |
| 2021 | 5029028 | DOOLEY KERRY JO | 12/07/21 | 450.00 | 450.00 | 0.00 | CHECK | 1058 | FTB LOCKBOX |
| 2020 | 4738761 | DOOLEY KERRY JO | 11/10/20 | 450.00 | 450.00 | 0.00 | CHECK | 240040224 | KNOXVILLE TVA ECU (11/10/2020 , 1 |
| 2019 | 4485469 | DOOLEY KERRY JO | 11/04/19 | 450.00 | 450.00 | 0.00 | CHECK | 240034418 | KNOXVILLE TVA (11/04/2019 , 1 , 8 |
| 2018 | 4318842 | DOOLEY KERRY JO | 11/14/18 | 450.00 | 450.00 | 0.00 | CHECK | 240029265 | KNX TVA ECU (11/14/2018 , 1 , 226 |
| 2017 | 4070891 | DOOLEY KERRY & CASTELANO ANDRE... | 11/22/17 | 450.00 | 450.00 | 0.00 | CHECK | 240024016 | KNOXVILLE TVA ECU (11/21/2017 , 1 |
| 2016 | 3902197 | DOOLEY KERRY & CASTELANO ANDRE... | 11/22/16 | 320.00 | 320.00 | 0.00 | CHECK | 240019873 | KNOXVILLE TVA (11/22/2016 , 1 , 5 |
| 2015 | 3636500 | KELLY KAREN E | 01/27/16 | 320.00 | 320.00 | 0.00 | CHECK | 101231 | SOUTHEAST |
| 2014 | 3471960 | HENRY MARION F SR | 10/07/14 | 320.00 | 320.00 | 0.00 | CHECK | 7057 | REMITTANCE (10/07/2014 , 6 , 104) |
| 2013 | 3271163 | HENRY MARION F SR | 10/08/13 | 320.00 | 320.00 | 0.00 | CHECK | 6855 | REMITTANCE (10/08/2013 , 4 , 46) |
| | | | | 7,494.00 | 7,494.00 | 0.00 | | | |


*Parcel history is for informational use only. This is not a bill. Information subject to change at any time without notice.*

**Account Number : 144EU-006**
**Justin Biggs, Trustee**
**Knox County Trustee**

**8822 SAMUEL ANDREW LN**

*(C) is for separate City Tax, (C/A) for City Tax Addon*
App.2012
*(ADD) is for County Tax Addon*
*(BK) for Bankruptcy*
*(CM) for Clerk&Master*
*(AP) for Under Appeal*
*(PP) for Pre-Payments received for future year bill*

| DS | MapNum | CtrlMap | GP | Parcel | I | S-I |
|---|---|---|---|---|---|---|
| 00 | | 144EU | | 6. | R | 000 |

## Owner Information

Owner: COBLE RICHARD & LINDSEY WILLIFORD

Address: 8822 SAMUEL ANDREW LN
KNOXVILLE, TN 37922

Land Value: $57,500.00
Improve Value: $457,600.00
Total Value: $515,100.00
Assessment: 25% * $515,100.00 = $128,775.00

## Parcel Details

| Deed Information | Plat Information | Property Information |
|---|---|---|
| Book: Page: Date: | --- | Property Address: 8822 SAMUEL ANDREW LN |
| --- | --- | Subdivision: BLUEGRASS BEND LOT: 6 |
| --- | --- | Dimensions: 67.17 X 117.62 X IRR |
| --- | --- | Calculated Acres: 0.0 Deeded Acres: 0.00 |

## Parcel History

| Year | Bill# | Name | Date | Base Tax | Total Paid | Balance Due | Method | Details | Payee |
|---|---|---|---|---|---|---|---|---|---|
| 2025 | 186116 | COBLE RICHARD & LINDSEY WILLIF... | 12/20/25 | 2,001.00 | 2,001.00 | 0.00 | DIRECT | N/A | SERVICEMAC LLC |
| 2024 | 184124 | COBLE RICHARD & LINDSEY WILLIF... | 12/21/24 | 2,001.00 | 2,001.00 | 0.00 | DIRECT | N/A | SERVICEMAC LLC |
| 2023 | 182517 | COBLE RICHARD & LINDSEY WILLIF... | 12/13/23 | 2,001.00 | 2,001.00 | 0.00 | DIRECT | N/A | SERVICEMAC LLC |
| 2022 | 181066 | OGDEN BRANDON G OGDEN ELIZABET... | 12/10/22 | 2,001.00 | 2,001.00 | 0.00 | DIRECT | N/A | NATIONSTAR MTG LLC DBA MR. COOP |
| 2021 | 5063093 | OGDEN BRANDON G OGDEN ELIZABET... | 12/22/21 | 1,754.00 | 1,754.00 | 0.00 | DIRECT | N/A | CENTRAL LOAN ADMINISTRATION |
| 2020 | 4873390 | LOVE MEREDITH VIRGINIA & LOVE ... | 10/20/20 | 1,754.00 | 1,754.00 | 0.00 | CHECK | CRED0294 | ONLINE PAYMENTS (10/20/2020 , 1 , |
| 2019 | 4650353 | LOVE MEREDITH VIRGINIA & LOVE ... | 01/23/20 | 1,754.00 | 1,754.00 | 0.00 | CHECK | CRED0023 | ONLINE PAYMENTS (01/23/2020 , 1 , |
| 2018 | 4345605 | LOVE MEREDITH VIRGINIA & LOVE ... | 11/21/18 | 1,754.00 | 1,754.00 | 0.00 | CHECK | CRED8325 | ONLINE PAYMENTS (11/21/2018 , 1 , |
| 2017 | 4154081 | LOVE MEREDITH VIRGINIA & LOVE ... | 12/20/17 | 1,754.00 | 1,754.00 | 0.00 | CHECK | 0345 | REMITTANCE (12/20/2017 , 1 , 36) |
| 2016 | 3927005 | HEALY HOMES LLC | 02/22/17 | 267.00 | 267.00 | 0.00 | CHECK | 10771 | HEALY HOMES LLC |
| | | | | **17,041.00** | **17,041.00** | **0.00** | | | |


*Parcel history is for informational use only. This is not a bill. Information subject to change at any time without notice.*

**Account Number : 118CE-016**

**Justin Biggs, Trustee**
**Knox County Trustee**

**1312 WILLOW GROVE DR**

*(C) is for separate City Tax, (C/A) for City Tax Addon*
**App.2013**
*(ADD) is for County Tax Addon*
*(BK) for Bankruptcy*
*(CM) for Clerk&Master*
*(AP) for Under Appeal*
*(PP) for Pre-Payments received for future year bill*

| DS | MapNum | CtrlMap | GP | Parcel | I | S-I |
|---|---|---|---|---|---|---|
| 00 | | 118CE | 1 | 6. | R | 000 |

## Owner Information

Owner: SHARP KATINA & CARUTHERS WHITNEY E...

Address: 1312 WILLOW GROVE RD
KNOXVILLE, TN 37932

Land Value: $35,000.00
Improve Value: $315,100.00
Total Value: $350,100.00
Assessment: 25% * $350,100.00 = $87,525.00

## Parcel Details

| Deed Information | Plat Information | Property Information |
|---|---|---|
| Book: Page: Date: | --- | Property Address: 1312 WILLOW GROVE DR |
| --- | --- | Subdivision: SPRING RIDGE S/D LOT: 16 |
| --- | --- | Dimensions: 80 X 125 |
| --- | --- | Calculated Acres: 0.0 Deeded Acres: 0.00 |

## Parcel History

| Year | Bill# | Name | Date | Base Tax | Total Paid | Balance Due | Method | Details | Payee |
|---|---|---|---|---|---|---|---|---|---|
| 2025 | 143134 | SHARP KATINA & CARUTHERS WHITN... | 12/20/25 | 1,360.00 | 1,360.00 | 0.00 | DIRECT | N/A | NATIONSTAR MTG LLC DBA MR. COOP |
| 2024 | 141554 | SHARP KATINA & CARUTHERS WHITN... | 12/21/24 | 1,360.00 | 1,360.00 | 0.00 | DIRECT | N/A | TRUIST COMMERCIAL BANK |
| 2023 | 140107 | SHARP KATINA | 12/13/23 | 1,360.00 | 1,360.00 | 0.00 | DIRECT | N/A | TRUIST COMMERCIAL BANK |
| 2022 | 138990 | SHARP KATINA | 12/10/22 | 1,360.00 | 1,360.00 | 0.00 | DIRECT | N/A | ROUNDPOINT MORTGAGE |
| 2021 | 5021454 | SHARP MICHAEL A & KATRINA | 12/22/21 | 1,153.00 | 1,153.00 | 0.00 | DIRECT | N/A | ROUNDPOINT MORTGAGE |
| 2020 | 4798791 | SHARP MICHAEL A & KATRINA | 12/10/20 | 1,153.00 | 1,153.00 | 0.00 | CHECK | WIRE | CORELOGICE TAX SERVICE (12/10/202 |
| 2019 | 4600598 | SHARP MICHAEL A & KATRINA | 12/13/19 | 1,153.00 | 1,153.00 | 0.00 | CHECK | WIRE TRANSFER | CORELOGIC TAX SERVICE (12/13/2019 |
| 2018 | 4370298 | SHARP MICHAEL A & KATRINA | 12/26/18 | 1,153.00 | 1,153.00 | 0.00 | CHECK | WIRE TRANSFER | CORELOGIC TAX SERVICE (12/27/2018 |
| 2017 | 4183963 | SHARP MICHAEL A & KATRINA | 12/20/17 | 1,153.00 | 1,153.00 | 0.00 | CHECK | WIRE | CORELOGIC TAX SERVICE (12/20/2017 |
| 2016 | 3955976 | SHARP MICHAEL A & KATRINA | 12/15/16 | 1,208.00 | 1,208.00 | 0.00 | CHECK | WIRE | CORELOGIC TAX SERVICE (12/14/2016 |
| 2015 | 3776553 | SHARP MICHAEL A & KATRINA | 12/15/15 | 1,208.00 | 1,208.00 | 0.00 | CHECK | WIRE | CORELOGIC TAX SERVICE (12/15/2015 |
| 2014 | 3586473 | SHARP MICHAEL A & KATRINA | 12/12/14 | 1,208.00 | 1,208.00 | 0.00 | CHECK | WIRE | CORELOGIC TAX (12/12/2014 , 1 , 2 |
| 2013 | 3324485 | SHARP MICHAEL A & KATRINA | 12/16/13 | 1,208.00 | 1,208.00 | 0.00 | CHECK | WIRE | CORELOGIC TAX SERVICE (12/16/2013 |
| | | | | **16,037.00** | **16,037.00** | **0.00** | | | |


*Parcel history is for informational use only. This is not a bill. Information subject to change at any time without notice.*

**Account Number : 145KA-031**

**Justin Biggs, Trustee**
**Knox County Trustee**

**8732 HOLLINGSFIELD DR**

App.2014

*(C) is for separate City Tax, (C/A) for City Tax Addon*
*(ADD) is for County Tax Addon*
*(BK) for Bankruptcy*
*(CM) for Clerk&Master*
*(AP) for Under Appeal*
*(PP) for Pre-Payments received for future year bill*

| DS | MapNum | CtrlMap | GP | Parcel | I | S-I |
|---|---|---|---|---|---|---|
| 00 | | 145KA | 3 | 1. | R | 000 |

## Owner Information

Owner: COLLINS DANIEL CLARK & AMANDA SMIT...

Address: 8732 HOLLINGSFIELD DR
KNOXVILLE, TN 37922

Land Value: $55,000.00
Improve Value: $490,000.00
Total Value: $545,000.00
Assessment: 25% * $545,000.00 = $136,250.00

## Parcel Details

| Deed Information | Plat Information | Property Information |
|---|---|---|
| Book: Page: Date: | --- | Property Address: 8732 HOLLINGSFIELD DR |
| --- | --- | Subdivision: AMBERLEIGH S/D LOT: 31 |
| --- | --- | Dimensions: 92.98 X 167.23 X IRR |
| --- | --- | Calculated Acres: 0.0 Deeded Acres: 0.00 |

## Parcel History

| Year | Bill# | Name | Date | Base Tax | Total Paid | Balance Due | Method | Details | Payee |
|---|---|---|---|---|---|---|---|---|---|
| 2025 (PP) | 189450 | COLLINS DANIEL CLARK & AMANDA ... | | 2,117.00 | 2,117.00 | 0.00 | DIRECT | 000000 | LOANCARE |
| 2024 | 187434 | COLLINS DANIEL CLARK & AMANDA ... | 12/21/24 | 2,117.00 | 2,117.00 | 0.00 | DIRECT | N/A | LOANCARE LLC |
| 2023 | 185766 | COLLINS DANIEL CLARK & AMANDA ... | 12/13/23 | 2,117.00 | 2,117.00 | 0.00 | DIRECT | N/A | LOANCARE LLC |
| 2022 | 184279 | COLLINS DANIEL CLARK & AMANDA ... | 12/10/22 | 2,117.00 | 2,117.00 | 0.00 | DIRECT | N/A | LOANCARE LLC |
| 2021 | 5066305 | COLLINS DANIEL CLARK & AMANDA ... | 12/22/21 | 2,160.00 | 2,160.00 | 0.00 | DIRECT | N/A | LOANCARE LLC |
| 2020 | 4796565 | COLLINS DANIEL CLARK & AMANDA ... | 12/10/20 | 2,160.00 | 2,160.00 | 0.00 | CHECK | WIRE | CORELOGICE TAX SERVICE (12/10/202 |
| 2019 | 4625193 | COLLINS DANIEL CLARK & AMANDA ... | 12/13/19 | 2,160.00 | 2,160.00 | 0.00 | CHECK | WIRE TRANSFER | CORELOGIC TAX SERVICE (12/13/2019 |
| 2018 | 4339874 | COLLINS DANIEL CLARK & AMANDA ... | 12/26/18 | 2,160.00 | 2,160.00 | 0.00 | CHECK | WIRE TRANSFER | CORELOGIC TAX SERVICE (12/27/2018 |
| 2017 | 4157648 | COLLINS DANIEL CLARK & AMANDA ... | 12/20/17 | 2,160.00 | 2,160.00 | 0.00 | CHECK | WIRE | CORELOGIC TAX SERVICE (12/20/2017 |
| 2016 | 3928359 | COLLINS DANIEL CLARK & AMANDA ... | 12/15/16 | 2,194.00 | 2,194.00 | 0.00 | CHECK | WIRE | CORELOGIC TAX SERVICE (12/14/2016 |
| 2015 | 3803174 | COLLINS DANIEL CLARK & AMANDA ... | 12/15/15 | 2,194.00 | 2,194.00 | 0.00 | CHECK | WIRE | CORELOGIC TAX SERVICE (12/15/2015 |
| 2014 | 3602569 | COLLINS DANIEL CLARK & AMANDA ... | 12/12/14 | 2,194.00 | 2,194.00 | 0.00 | CHECK | WIRE | CORELOGIC TAX (12/12/2014 , 1 , 3 |
| 2013 | 3392732 | COLLINS DANIEL CLARK & AMANDA ... | 12/16/13 | 2,194.00 | 2,194.00 | 0.00 | CHECK | WIRE | CORELOGIC TAX SERVICE (12/16/2013 |
| | | | | **28,044.00** | **28,044.00** | **0.00** | | | |



*Parcel history is for informational use only. This is not a bill. Information subject to change at any time without notice.*

# EXHIBIT 67

Gmail

Ryan Proctor <ryan@consovoymccarthy.com>

# Fwd: New School Startup in TN

1 message

**Zach Wishart** <zachwishart@gmail.com> Tue, Jun 2, 2026 at 3:22 PM
To: Cam <cam@consovoymccarthy.com>, Ryan Proctor <ryan@consovoymccarthy.com>

---------- Forwarded message ---------
From: **Erik Twist** <etwist@arcadiaed.com>
Date: Wed, Aug 27, 2025 at 10:42 AM
Subject: New School Startup in TN
To: zachwishart@gmail.com <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>

Hey, Zach.

Thanks for reaching out. How about some time on Tuesday between 11am and 2pm ET?

Looking forward to learning more about what you're hoping to accomplish.

Best,
Erik

---

**From:** Arcadia Education Group <jay@techsurgeons.com>
**Date:** Wednesday, August 27, 2025 at 6:04 AM
**To:** Erik Twist <etwist@arcadiaed.com>
**Subject:** New submission from Zach Wishart

Hello, I am a private school principal in East Tennessee exploring options to expand school choice in the area. More specifically, I am interested in submitting a classical charter application. I recently learned about Arcadia and would like to discuss what services you offer in the application phase of a charter school.

I hope to hear from you soon.

-Zach Wishart ( zachwishart@gmail.com )

# EXHIBIT 68

Gmail

Zach Wishart <zachwishart@gmail.com>

# Intro Call: Zach, David, & Erik

4 messages

**Erik Twist** <etwist@arcadiaed.com> Wed, Aug 27, 2025 at 4:11 PM
To: Zachary Wishart <zachwishart@gmail.com>, David Denton <ddenton@arcadiaed.com>

## Microsoft Teams

Need help?

**Join the meeting now**

Meeting ID: 295 868 621 459 6

Passcode: 4BL9ss9e

For organizers: Meeting options

**invite.ics**
4K

**Zachary Wishart** <zachwishart@gmail.com> Tue, Sep 2, 2025 at 3:11 PM
To: Erik Twist <etwist@arcadiaed.com>
Cc: David Denton <ddenton@arcadiaed.com>

Erik and David,

Thank you for taking the time to connect today. I'll be in touch by the end of the month as we discuss next steps.

In the meantime, please keep the prospective school and it's religious affiliation confidential, particularly as it pertains to possible legal advocacy group involvement.

I hope to have each of you and your team a part of getting this new school started.

Have a great week!

Zach

On Aug 27, 2025, at 4:11 PM, Erik Twist <etwist@arcadiaed.com> wrote:

[Quoted text hidden]
<mime-attachment.ics>

---

**David Denton** <ddenton@arcadiaed.com> Tue, Sep 2, 2025 at 3:32 PM
To: Zachary Wishart <zachwishart@gmail.com>, Erik Twist <etwist@arcadiaed.com>

Thank you, Zach!

It would be an honor to walk alongside you and your (TBD) team in service of your vision. Rest assured, we will indeed keep our conversation confidential and we look forward to reconnecting with you in the near future.

Best,
David

Get Outlook for iOS

---

**From:** Zachary Wishart <zachwishart@gmail.com>
**Sent:** Tuesday, September 2, 2025 2:11 PM
**To:** Erik Twist <etwist@arcadiaed.com>
**Cc:** David Denton <ddenton@arcadiaed.com>
**Subject:** Re: Intro Call: Zach, David, & Erik

[Quoted text hidden]

---

**Erik Twist** <etwist@arcadiaed.com> Tue, Sep 2, 2025 at 3:41 PM
To: David Denton <ddenton@arcadiaed.com>, Zachary Wishart <zachwishart@gmail.com>

Ditto.

And we will keep you in our prayers.

Best,
Erik
[Quoted text hidden]

# EXHIBIT 69

Gmail Zach Wishart <zachwishart@gmail.com>

# Tennessee Religious Charter

6 messages

**Zachary Wishart** <zachwishart@gmail.com> Fri, Sep 12, 2025 at 6:06 PM
To: Erik Twist <etwist@arcadiaed.com>, David Denton <ddenton@arcadiaed.com>

Erik & David,

I hope you guys had a great week! Is there a time next Friday, September 19, that we can connect and discuss next steps on forming a charter application?

Thank you!

Zach Wishart
865-257-6105

---

**David Denton** <ddenton@arcadiaed.com> Fri, Sep 12, 2025 at 7:09 PM
To: Zachary Wishart <zachwishart@gmail.com>, Erik Twist <etwist@arcadiaed.com>

Hi Zach,

Looking forward to it!  Would 10am CT work for you?
[Quoted text hidden]

---

**Zachary Wishart** <zachwishart@gmail.com> Fri, Sep 12, 2025 at 7:44 PM
To: David Denton <ddenton@arcadiaed.com>
Cc: Erik Twist <etwist@arcadiaed.com>

That works!

> On Sep 12, 2025, at 7:09 PM, David Denton <ddenton@arcadiaed.com> wrote:
>
> Hi Zach,

[Quoted text hidden]

---

**David Denton** <ddenton@arcadiaed.com> Fri, Sep 12, 2025 at 8:39 PM
To: Zachary Wishart <zachwishart@gmail.com>
Cc: Erik Twist <etwist@arcadiaed.com>

Great, let me get confirmation from Erik and we're all set.
[Quoted text hidden]

---

**Erik Twist** <etwist@arcadiaed.com> Mon, Sep 15, 2025 at 11:53 AM
To: David Denton <ddenton@arcadiaed.com>, Zachary Wishart <zachwishart@gmail.com>

Works for me, as well.
[Quoted text hidden]

---

**David Denton** <ddenton@arcadiaed.com> Mon, Sep 15, 2025 at 2:50 PM
To: Erik Twist <etwist@arcadiaed.com>, Zachary Wishart <zachwishart@gmail.com>

Great, I'll send the invite.

[Quoted text hidden]

# EXHIBIT 70

Gmail Zach Wishart <zachwishart@gmail.com>

# Checking In

7 messages

**Erik Twist** <etwist@arcadiaed.com> Fri, Oct 3, 2025 at 3:59 PM
To: Zachary Wishart <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>

Zach,

Just wanted to see how things were shaping up on your end. If you need anything as you look at next steps, please don't hesitate to reach out. Happy to talk anything through.

Best,
Erik

**Zachary Wishart** <zachwishart@gmail.com> Tue, Oct 7, 2025 at 12:07 PM
To: Erik Twist <etwist@arcadiaed.com>
Cc: David Denton <ddenton@arcadiaed.com>

Erik,

Thanks for checking in. We have a board meeting on Tuesday October 14, I'll be in touch soon after that to talk next steps.

Thank you!

Sent from my iPhone

> On Oct 3, 2025, at 3:59 PM, Erik Twist <etwist@arcadiaed.com> wrote:
>
> [Quoted text hidden]

**Erik Twist** <etwist@arcadiaed.com> Tue, Oct 7, 2025 at 12:44 PM
To: Zachary Wishart <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>

Sounds Good, Zach.

If you need anything as you prepare for that mtg, let us know.

Best,

Erik

---

**From:** Zachary Wishart <zachwishart@gmail.com>
**Sent:** Tuesday, October 7, 2025 9:07:21 AM
**To:** Erik Twist <etwist@arcadiaed.com>
**Cc:** David Denton <ddenton@arcadiaed.com>
**Subject:** Re: Checking In

[Quoted text hidden]

---

**Zach Wishart** <zachwishart@gmail.com> Tue, Oct 21, 2025 at 1:23 PM
To: Erik Twist <etwist@arcadiaed.com>
Cc: David Denton <ddenton@arcadiaed.com>

Erik,

Can you provide a proposal with a cost for the charter application? Basically, we are writing the academic plan internally but would need everything else for a Tennessee application to be completed by your team, which is mostly the operational plan/staffing model/budget, etc.. We can connect again on a call to cover all the details that you need to have a proposal put together. We would like to have the application complete by January 30.

Thank you!

[Quoted text hidden]

---

**Erik Twist** <etwist@arcadiaed.com> Tue, Oct 21, 2025 at 1:44 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>, Ben Lindquist <blindquist@arcadiaed.com>

Thanks, Zach.

Exciting times. I'm adding our colleague Ben Lindquist here as he would be the lead for Arcadia on the more technical aspects of the application deliverables you will need.

Quick questions: Who will the authorizer be that you will be seeking? And can you send us the link to the charter application? I think we have it but want to make sure we have the right one.

On top of that, let's schedule time next week to connect on the details so we can get a good proposal off to you asap. Let us know what might work.

Blessings,
Erik

[Quoted text hidden]

---

**Zach Wishart** <zachwishart@gmail.com> Tue, Oct 21, 2025 at 1:59 PM
To: Erik Twist <etwist@arcadiaed.com>
Cc: David Denton <ddenton@arcadiaed.com>, Ben Lindquist <blindquist@arcadiaed.com>

The authorizer will be Knox County Schools in Knoxville, TN. Here is the charter application, here is the scoring rubric,

and attached is the budget template.

I can do next Tuesday afternoon, after 12:30 EST, or next Wednesday after 1:30 EST. Do you all have availability after those times next week?

Thank you!

[Quoted text hidden]

**TN-Charter-School-Budget-Template.xlsx**
191K

---

**Erik Twist** <etwist@arcadiaed.com> Tue, Oct 21, 2025 at 3:06 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>, Ben Lindquist <blindquist@arcadiaed.com>

OK. I sent a calendar invite that looks like it will work for everyone.

In the meantime, we will check out the links you sent. Thanks so much.

[Quoted text hidden]

# EXHIBIT 71

Gmail Zach Wishart <zachwishart@gmail.com>

# Review TN Charter Application Project

7 messages

**Erik Twist** <etwist@arcadiaed.com> Tue, Oct 21, 2025 at 3:04 PM
To: "zachwishart@gmail.com" <zachwishart@gmail.com>, Ben Lindquist <blindquist@arcadiaed.com>, David Denton <ddenton@arcadiaed.com>

## Microsoft Teams Need help?

**Join the meeting now**

Meeting ID: 255 768 742 695 5

Passcode: M3RU9K9X

For organizers: Meeting options

**invite.ics**
4K

**Erik Twist** <etwist@arcadiaed.com> Tue, Oct 21, 2025 at 3:05 PM
To: "zachwishart@gmail.com" <zachwishart@gmail.com>, Ben Lindquist <blindquist@arcadiaed.com>, David Denton <ddenton@arcadiaed.com>

[Quoted text hidden]

**invite.ics**
4K

**Zach Wishart** <zachwishart@gmail.com> Tue, Oct 28, 2025 at 12:11 PM
To: Erik Twist <etwist@arcadiaed.com>

Hey Erik, I had today's meeting for 12:00 but there may have been some confusion around time zones. Is that supposed to be 12:00 my time or your time?
[Quoted text hidden]

**Erik Twist** <etwist@arcadiaed.com> Tue, Oct 28, 2025 at 2:28 PM
To: Zach Wishart <zachwishart@gmail.com>, Ben Lindquist <blindquist@arcadiaed.com>

Zach,

Sorry!!!! Just now seeing this. We had scheduled to meet at 11amPT/1pmCT.

When do you want to reschedule?

Again, so sorry.

Erik
[Quoted text hidden]

---

**Zachary Wishart** <zachwishart@gmail.com> Tue, Oct 28, 2025 at 5:14 PM
To: Erik Twist <etwist@arcadiaed.com>
Cc: Ben Lindquist <blindquist@arcadiaed.com>

No worries!

What does next Wednesday, November 5 look like for you? I have an open schedule that day.

Thank you!

Sent from my iPhone

> On Oct 28, 2025, at 2:28 PM, Erik Twist <etwist@arcadiaed.com> wrote:
>
> [Quoted text hidden]

---

**Erik Twist** <etwist@arcadiaed.com> Thu, Oct 30, 2025 at 7:52 AM
To: Zachary Wishart <zachwishart@gmail.com>
Cc: Ben Lindquist <blindquist@arcadiaed.com>, David Denton <ddenton@arcadiaed.com>

Thanks, Zach.

Looks like for our side, any time after 2pm ET will work really well on the 5th. Shall I send a calendar invite?

Best,
Erik
[Quoted text hidden]

---

**Zachary Wishart** <zachwishart@gmail.com> Thu, Oct 30, 2025 at 8:06 AM
To: Erik Twist <etwist@arcadiaed.com>
Cc: Ben Lindquist <blindquist@arcadiaed.com>, David Denton <ddenton@arcadiaed.com>

Yes sir, that will be great!

Thank you!

Zach

On Oct 30, 2025, at 7:52 AM, Erik Twist <etwist@arcadiaed.com> wrote:

[Quoted text hidden]

# EXHIBIT 72

Gmail Zach Wishart <zachwishart@gmail.com>

# Review TN Charter Application Project Support

2 messages

**Erik Twist** <etwist@arcadiaed.com> Thu, Oct 30, 2025 at 8:25 AM
To: Ben Lindquist <blindquist@arcadiaed.com>, David Denton <ddenton@arcadiaed.com>, Zachary Wishart <zachwishart@gmail.com>

**invite.ics**
2K

**Zach Wishart** <zachwishart@gmail.com> Wed, Nov 5, 2025 at 2:01 PM
To: Erik Twist <etwist@arcadiaed.com>
Cc: Ben Lindquist <blindquist@arcadiaed.com>, David Denton <ddenton@arcadiaed.com>

Erik - Are we using the same link as last time? I didn't see a new one sent.

On Thu, Oct 30, 2025 at 8:25 AM Erik Twist <etwist@arcadiaed.com> wrote:

# EXHIBIT 73

Gmail

Zach Wishart <zachwishart@gmail.com>

# Re: Review TN Charter Application Project Support

1 message

**Erik Twist** <etwist@arcadiaed.com> Wed, Nov 5, 2025 at 1:59 PM
To: Zachary Wishart <zachwishart@gmail.com>, Ben Lindquist <blindquist@arcadiaed.com>, David Denton <ddenton@arcadiaed.com>

Just updated the invite to include the Teams link. Sorry that wasn't there originally.

---

**From:** etwist@arcadiaed.com
**When:** 12:00 PM - 12:45 PM November 5, 2025
**Subject:** Review TN Charter Application Project Support
**Location:** Microsoft Teams Meeting

Microsoft Teams

Help: https://aka.ms/JoinTeamsMeeting?omkt=en-US

Join the meeting now: https://teams.microsoft.com/l/meetup-join/19%3ameeting_MjJiMTg4MDAtMDk5YS00YWJhLWE0MDEtZDNkYzNiMTFiYmM4%40thread.v2/0?context=%7b%22Tid%22%3a%227e088ff9-cfed-4c4e-b102-c295864f6d31%22%2c%22Oid%22%3a%227c317b62-afa4-4b87-9625-bf0827129a1d%22%7d

Meeting ID: 250 401 541 938 20
Passcode: Xt7Qd3rs

For organisers
Meeting options: https://teams.microsoft.com/meetingOptions/?organizerId=7c317b62-afa4-4b87-9625-bf0827129a1d&tenantId=7e088ff9-cfed-4c4e-b102-c295864f6d31&threadId=19_meeting_MjJiMTg4MDAtMDk5YS00YWJhLWE0MDEtZDNkYzNiMTFiYmM4@thread.v2&messageId=0&language=en-US

# EXHIBIT 74

Gmail Zach Wishart <zachwishart@gmail.com>

# Charter Application Support Proposal

8 messages

**David Denton** <ddenton@arcadiaed.com> Fri, Nov 7, 2025 at 5:55 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: Erik Twist <etwist@arcadiaed.com>, Ben Lindquist <blindquist@arcadiaed.com>

Dear Zach,

Please find our proposal attached. We are looking forward to the road ahead!

Sincerely,

**David Denton**

Sr. Managing Consultant

ARCADIA EDUCATION

**C:** (214) 543-6003

www.arcadiaed.com

**Arcadia_Wilberforce_TN Charter App Support_Proposal 2025-26.pdf**
235K

**Zach Wishart** <zachwishart@gmail.com> Mon, Nov 10, 2025 at 4:00 PM
To: David Denton <ddenton@arcadiaed.com>
Cc: Erik Twist <etwist@arcadiaed.com>, Ben Lindquist <blindquist@arcadiaed.com>

David,

Thank you for this. We have another proposal we are waiting on that should be in later in the week. I will reach back out as soon as I have additional information about the path forward.

Thank you!

[Quoted text hidden]

---

**David Denton** <ddenton@arcadiaed.com> Wed, Nov 12, 2025 at 3:01 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: Erik Twist <etwist@arcadiaed.com>, Ben Lindquist <blindquist@arcadiaed.com>

Hi Zach,

Sounds good! We're happy to connect in the meantime as needed. Talk to you soon!

David

[Quoted text hidden]

---

**David Denton** <ddenton@arcadiaed.com> Tue, Nov 18, 2025 at 5:08 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: Erik Twist <etwist@arcadiaed.com>, Ben Lindquist <blindquist@arcadiaed.com>

Hi Zach!

I know the clock is ticking. I'm circling back to see how the conversation is developing on your end.

Best,

David

---

**From:** David Denton
**Sent:** Friday, November 7, 2025 4:55 PM
**To:** Zach Wishart <zachwishart@gmail.com>
**Cc:** Erik Twist <etwist@arcadiaed.com>; Ben Lindquist <blindquist@arcadiaed.com>

[Quoted text hidden]

[Quoted text hidden]

---

**Zach Wishart** <zachwishart@gmail.com> Tue, Nov 18, 2025 at 7:11 PM
To: David Denton <ddenton@arcadiaed.com>
Cc: Erik Twist <etwist@arcadiaed.com>, Ben Lindquist <blindquist@arcadiaed.com>

David,

Would you be willing to update the proposal to reflect what you all would be able to do for $75k? We unfortunately can't get to $194k. We would love to partner with Arcadia on what will certainly be a historic first but due to other financial obligations involving launching this particular school, we aren't able to exceed the original $75k budgeted. While we have spoken to some vendors who would be able to complete the project at the budgeted amount, our desire is to use Arcadia because of the deep values alignment with the project.

If it helps, we are interested in being a Hillsdale Curriculum School which would provide us with curriculum lists, pacing guides, etc.

Thank you,

Zach

On Nov 18, 2025, at 5:08 PM, David Denton <ddenton@arcadiaed.com> wrote:

Hi Zach!

I know the clock is ticking.  I'm circling back to see how the conversation is developing on your end.

Best,

David

---

**From:** David Denton
**Sent:** Friday, November 7, 2025 4:55 PM
**To:** Zach Wishart <zachwishart@gmail.com>
**Cc:** Erik Twist <etwist@arcadiaed.com>; Ben Lindquist <blindquist@arcadiaed.com>
**Subject:** Charter Application Support Proposal

Dear Zach,

Please find our proposal attached. We are looking forward to the road ahead!

Sincerely,

**David Denton**

Sr. Managing Consultant

<image001.png>

**C:** (214) 543-6003

www.arcadiaed.com

---

**David Denton** <ddenton@arcadiaed.com> Tue, Nov 18, 2025 at 11:22 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: Erik Twist <etwist@arcadiaed.com>, Ben Lindquist <blindquist@arcadiaed.com>

Hi Zach!

Great question – and thank you for the vote of confidence. Can we find time tomorrow to meet to talk through what this could look like?

I can be free any time tomorrow after 9 am (save 1 mtg from 11-12 CST), and I can clear my schedule Th until 2pm CST. Let me know what time works best for you and I'll send the invite.

We love what you're doing and want this plan to succeed.

Best,

David

Get Outlook for iOS

---

**From:** Zach Wishart <zachwishart@gmail.com>
**Sent:** Tuesday, November 18, 2025 6:11:40 PM
**To:** David Denton <ddenton@arcadiaed.com>
**Cc:** Erik Twist <etwist@arcadiaed.com>; Ben Lindquist <blindquist@arcadiaed.com>
**Subject:** Re: Charter Application Support Proposal

David,

[Quoted text hidden]

---

**Zachary Wishart** <zachwishart@gmail.com> Wed, Nov 19, 2025 at 6:47 AM
To: David Denton <ddenton@arcadiaed.com>
Cc: Erik Twist <etwist@arcadiaed.com>, Ben Lindquist <blindquist@arcadiaed.com>

Absolutely.

How about today at 2:00 EST/1:00 CST? I can do later if needed.

Thank you!

Sent from my iPhone
[Quoted text hidden]

---

**David Denton** <ddenton@arcadiaed.com> Wed, Nov 19, 2025 at 9:30 AM
To: Zachary Wishart <zachwishart@gmail.com>
Cc: Erik Twist <etwist@arcadiaed.com>, Ben Lindquist <blindquist@arcadiaed.com>

Perfect, I'll send the invite here shortly.

Get Outlook for iOS

---

**From:** Zachary Wishart <zachwishart@gmail.com>
**Sent:** Wednesday, November 19, 2025 5:47:09 AM
[Quoted text hidden]

[Quoted text hidden]

# EXHIBIT 75

**November 15, 2025**

Dear Zach,

Thanks for inviting Arcadia to walk with you on Wilberforce. We're genuinely excited about the vision and grateful to be considered a key partner. You need a best-in-class, authorizer-ready Tennessee charter application by January 15, 2026, and we're prepared to deliver it on that timeline.

We'll approach this as one integrated build anchored by two Arcadia teams. The Academy Operations team, led by David Denton, will own the full K–8 academic program and the operational backbone that supports it—model and schedules, standards-aligned scope and sequence, assessment and $RTI^2$, SPED/EL plans, culture and discipline, staffing and professional development, facilities and student services, and submission packaging. Day to day, Joy Lambrecht would serve as project manager under David's direction to keep decisions, drafts, and approvals moving on a tight cadence. In parallel, the Strategic Business Planning team, directed by Ben Lindquist, will lead the business element design, TISA-based financial modeling, vendor strategy, the state budget workbook and narrative, and rubric-level quality assurance; Ben will direct his colleague Cody Bendix, who will run point for the business-planning workstream and coordinate cross-team integration.

Our scope covers every element the application requires. We will draft the academic and operational narratives, complete the state budget workbook, prepare the budget and controls narrative, compile all required attachments and any necessary addenda, and produce an accessible, submission-compliant package. We will also prepare a capacity-interview binder and run rehearsals so your team is ready for authorizer questions. To keep the work crisp and coherent, we'll hold weekly stand-ups and schedule two deeper working sessions in Weeks 3 and 7, with formal "coherence gates" where we reconcile schedule, staffing, and budget and then complete rubric QA ahead of final packaging.

To move efficiently, we'll ask for a single point of contact empowered to resolve comments within forty-eight hours, along with the board dossier and corporate documents, enrollment targets by grade for Years 1–5, any facility leads and constraints, an insurance broker contact for the required letter, and any program preferences you want reflected from the start. We'll manage the master documents, version control, and trackers, and we'll surface decisions early so we don't lose time in December and early January.

The engagement is a fixed fee of $196,000, with 50% due at signing and 50% due at completion upon delivery of the submission-ready package. We are ready to begin on November 15 and carry the work through to January 15. If the approach and terms look right, we can put a formal agreement together, schedule the kickoff, and open the workspace.

Grateful to partner with you on this and eager to build something excellent for families.

With appreciation,

Erik
President, Arcadia Education

*on behalf of*
Ben Lindquist, Executive Partner, Strategic Business Planning — with Cody Bendix running point
David Denton, Managing Director, Academy Operations — with Joy Lambrecht, Project Manager

# Executive Summary

Wilberforce seeks an authorizer-ready Tennessee charter application by **January 15, 2026**. Arcadia will lead the end-to-end build. We will write directly to Tennessee's required application and scoring rubric, ensure alignment between the schedule, staffing plan, and budget, and produce a polished, accessible, compliant, and submission-ready package.

To accomplish this, two Arcadia teams will operate simultaneously and in partnership under the direction of David Denton to complete the five workstreams contained within the application: Educational Program, Operations, Budget/Finance, Required Attachments & Addenda (as applicable), and Submission Packaging & Interview Prep.

Our Academy Operations team, managed by Joy Lambrecht, will drive completion of the first workstream, while our Strategic Business Planning team, managed by Cody Bendix, will drive completion of the Budget & Finance workstream. The two teams will work jointly to subdivide and complete the remaining three workstreams.

# Scope of Work (mapped to the TN Application)

This Scope of Work is organized to mirror the Tennessee charter application and its scoring rubric so that every requirement is addressed plainly and scored cleanly. It is structured in five integrated workstreams. The plan is milestone-driven but sequence-flexible so that we can resequence priorities as new information emerges. This section concludes with quality assurance, accessibility and file-naming compliance, and capacity-interview preparation so the application is not only complete but authorizer-ready.

Arcadia will draft, integrate, and produce every element required for an authorizer-ready submission. *Client collaboration points are flagged as* ***[Wilberforce input]***. NB - Throughout the engagement, our project teams will rely upon prompt input and meeting engagement with the appropriate members of the Wilberforce Team.

### General Application Materials

- The Wilberforce Team will submit the letter of intent by Dec. 3, 2025
- The Arcadia Team will be responsible for generating the following:
  - Cover sheet, General Information, Statement of Assurances. **[Wilberforce input]** for signatures and legal names.
  - Optional **Waivers** list and justifications (if pursued), aligned to statutory boundaries. **[Wilberforce input]**

### Application Workstreams for Feb. 1, 2026 Submission Deadline

## 1. Educational Program Design & Capacity (Full K–8 build)

### Vision & Model

- Mission and graduate profile written for public-school appropriateness while reflecting Wilberforce's classical emphasis.
- Enrollment plan (Y1–Y5) with attendance-zone rationale. **[Wilberforce input]** to confirm targets.

### Curriculum & Instruction

- K–8 **master schedules** (daily/weekly) by grade bands; minutes allocation for core and specials.
- Standards-aligned **Scope & Sequence** frameworks (ELA, Math, Science, Social Studies) with classical integrations (literature sequence, narration, recitation/oral expression, logic foundations in upper grades).
- Two **unit exemplars** (one ELA; one STEM/History) with teacher-facing plans & assessments.
- **Latin/World Language** plan (grades served; proficiency targets) and electives rationale.

### Assessment & RTI²

- Annual/state testing plan; interim assessment calendar; data cycles; tiered supports; decision rules for intervention/exit.

### Special Populations

- **SPED/504** service model (child-find, IEP implementation, staffing, related services, procedural safeguards).
- **English Learners (EL)** identification, LIEP model, staffing, monitoring, and exit criteria.
- Dyslexia/Unique Learning Needs supports and documentation.

### School Culture & Discipline

- Culture framework and code of conduct (attendance strategy; behavior philosophy; restorative practices; due process).
- Student safety alignment and supervision protocols.

### Family & Community Engagement

- Pre-opening outreach plan; ongoing partnership calendar; translation and access supports. **[Wilberforce input]** to confirm community partners.

### PD & Talent Development

- Annual PD calendar (pre-service + ongoing), observation/coaching cycle, curriculum onboarding, leadership development pathways.

**Educational Program Capacity**

- Team résumés/bios; role clarity; capacity to execute; external partners. **[Wilberforce input]** for résumés and references.

## 2. Operations Plan & Capacity

**Governance**

- Board powers/duties matrix (reserved vs. delegated); parent-representative onboarding plan; board–leader oversight & evaluation cycle.
- Open meetings/records posture; **Conflict-of-Interest** and **Complaints** policies; committee charters. **[Wilberforce input]** for board roster and corporate documents.

**Staffing & HR**

- Y0–Y5 staffing model (FTE by role, grade expansion ladder); compensation & benefits ranges vs. local market; recruiting/retention strategy; performance management system; PD structures.

**Facilities**

- Space program by grade/model; ADA/egress/traffic notes; site search narrative (status, brokers/owners); fallback scenario; critical dates and decision gates. **[Wilberforce input]** broker and site contacts.

**Student Services**

- Transportation model (including IEP transportation compliance) or rationale with barrier-mitigation plan.
- Health & Safety posture (nursing/medical services; emergency planning timeline and owner).
- **Insurance**: secure an insurer letter with required clauses; Arcadia drafts language, **[Wilberforce/Broker]** secures the executed letter.
- **Food Service**: program model (self-op vs. vendor), procurement path, and budget alignment.

**Start-Up Plan**

- Pre-opening critical path (enrollment, hiring, facility, vendors, compliance), owners, dates, and contingencies.

**Operations Capacity**

- Named operating team, external vendors, gap-fill plan; board **organizational-health dashboard** and intervention triggers.

## 3. Budget & Finance (TISA-based)

### Operating Budget

- State workbook completion: **Y0 monthly cash plan; Y1–Y5 two scenarios**.
- **TISA** revenue modeling (base + weights + direct allocations + outcomes funding) tied to enrollment and student mix; local share assumptions.
- Staffing and facilities/operations expense modeling; sensitivity analysis.

### Budget Narrative & Controls

- Assumptions and drivers; minimum enrollment to open; Y1 cash-flow contingency; deficit-year playbook.
- Internal controls; purchasing; travel; audit plan; segregation of duties; oversight of any back-office services.
- **Board financial-health dashboard** and intervention thresholds.

## 4. Required Attachments (1–14) — compiled & templated by Arcadia

1. Evidence of Community Engagement — template + guidance **[Wilberforce input]** (meeting artifacts).
2. School-based Team Résumés — collection & formatting **[Wilberforce input]**.
3. Board Member Résumés — collection & formatting **[Wilberforce input]**.
4. Organization Chart — Y1 and at capacity.
5. Articles of Incorporation — **[Wilberforce input]**.
6. Proof of Nonprofit and Tax-Exempt Status — **[Wilberforce input]**.
7. Governing Board Bylaws — **[Wilberforce input]** (Arcadia can revise).
8. Letter of Insurance Coverage — Arcadia drafts required language; [Wilberforce/Broker] provides executed letter.
9. Operating Budget Template (state Excel) — completed by Arcadia.
10. Network Budget — if Addendum B; Arcadia prepares if applicable.
11. Network Org Chart — if Addendum B.
12. ESP Contract — if Addendum C (Arcadia can template business terms; counsel to review).
13. Evidence of Support for Conversion — if Addendum E.
14. Residential Facility Documentation — if Addendum F.

## 5. Packaging & Submission; Capacity Interview

- 508-compliant, numbered, and properly named PDFs; separate Excel budget files; cross-referenced table of contents; attachment cover sheets.
- Rubric crosswalk appendix (each response mapped to "Meets Standard").
- Capacity-interview binder (one-page answers and exhibits) and rehearsal.

## Collaboration & Decision Cadence

***(areas requiring input or decisions from Wilberforce)***

- **Single Point of Contact** empowered to resolve comments within 48 hours.
- **Board & Corporate Dossier:** roster, bios/résumés, articles, bylaws, nonprofit letter/receipt.
- **Enrollment by Grade (Y1–Y5)** and attendance-zone choice.
- **Program Preferences:** calendar length, electives, uniforms, after-school. Arcadia to choose as directed.
- **Facility Leads:** sites/brokers/owners, constraints.
- **Vendors & Partners:** transportation/food/payroll/audit; community partners.
- **Insurance Broker Contact** to secure Attachment 8.
- **Weekly Reviews:** 60-minute stand-up; two longer working sessions (Weeks 3 and 7).
- **Document Exchange:** Shared drive with version control; Arcadia manages master.

# Initial Project Timeline (Nov 15 to Jan 15)

The initial project timeline must be understood a flexible organization of the workflow to allow for new information to come to light.

**Week of Nov 17 - Kick off, frame the work**

**Top priorities:** launch the project, fix scope and enrollment.

**Completed by Friday:** project timeline; document tracker and file structure; model statement draft; initial staffing table; initial TISA revenue skeleton; facility and vendor lead lists.

**Week of Nov 24 - Build the academic and ops backbone (holiday buffer)**

**Top priorities**: shape the academic spine and the core operations posture.

**Completed by Friday:** academics v1 (Model, schedules, S&S scaffolds); governance packet v1; staffing model v1; services posture memo; budget shell populated.

**Week of Dec 1 - Add depth and chart the pre-opening path**

**Top priorities:** deepen academics; define assessment/RTI²; map start-up.

**Completed by Friday:** unit exemplar #1; RTI² & assessment plan v1; start-up Gantt v1; facilities needs brief; vendor call notes.

**Week of Dec 8 - Coherence Gate #1 (align program, people, and dollars)**

**Top priorities:** make schedules, staffing, and budget tell one story.

**Completed by Friday:** aligned staffing table; SPED/EL summaries v1; budget v1 (Y0 monthlies, Y1–Y5 scenarios); unit exemplar #2.

**Week of Dec 15 - Full draft pass across all sections**

**Top priorities:** complete narrative drafts and start attachments.

**Completed by Friday:** full Educational Program draft; full Operations draft; attachments 1–7 compiled; budget narrative v1.

**Week of Dec 22 - Christmas**

**Week of Dec 29 - Polish and evidence (holiday window)**

**Top priorities:** lock facilities and services; secure insurance letter; close gaps.

**Completed by Friday:** services & facilities finals; insurance letter on file; red-team memo with resolved items.

**Week of Jan 5 — QA, accessibility, and packaging**

**Top priorities:** make the package clean, compliant, and easy to score.

**Completed by Friday:** submission package v1 (clean PDFs + Excel budget); rubric crosswalk; addenda drafts (if applicable).

**Week of Jan 12 —final edits and delivery**

**Top priorities:** finish, verify, and hand off..

**Completed by Thursday (Jan 15):** submission-ready package delivered; submission checklist; project closeout notes.

# Quality & Compliance Standards

- Each section drafted to "**Meets Standard**" descriptors and explicitly mapped to the rubric.
- Coherence checks at two gates; cross-walked tables to resolve any mismatch across Academics, Operations, and Budget.

- 508 accessibility, page limits, numbering, naming, and attachment cover sheets; Excel budget filed separately as required.
- Capacity-interview prep with concise evidence-based talking points.

## Fee & Terms

- **Fixed Fee: $196,000** for the full scope above.
- **Payment: 50% at signing; 50% at completion** (delivery of submission-ready package).
- **Out-of-Pocket Costs:** Authorizer fees, printing/mailing, travel (if requested) billed at cost with pre-approval.
- **Change Control:** Material scope changes (e.g., adding ESP/Network/Multi-School/Conversion/Opportunity addenda, or major facility redesigns) will be estimated and approved in writing before work proceeds. The base commitment above remains fixed.

# EXHIBIT 76

Gmail

# Wilberforce Letter of Intent

**Zach Wishart** <zachwishart@gmail.com> Wed, Nov 19, 2025 at 2:21 PM
To: David Denton <ddenton@arcadiaed.com>

David,

Here is the letter of intent.

Thank you!

**Wilberforce LOI & Executive Summary.pdf**
86K

**David Denton** <ddenton@arcadiaed.com> Wed, Nov 19, 2025 at 7:51 PM
To: Zach Wishart <zachwishart@gmail.com>

Got it, thanks Zach!

Also, I was able to connect with my colleague Ben and we are good to go on our end at the price discussed.

**Zachary Wishart** <zachwishart@gmail.com> Wed, Nov 19, 2025 at 7:58 PM
To: David Denton <ddenton@arcadiaed.com>

Great, I spoke to our funders this evening and it appears we are good on our end as well. Can you send me an updated proposal and contract?

Thank you!

On Nov 19, 2025, at 7:51 PM, David Denton <ddenton@arcadiaed.com> wrote:

---

**David Denton** <ddenton@arcadiaed.com> Wed, Nov 19, 2025 at 8:24 PM
To: Zachary Wishart <zachwishart@gmail.com>

Awesome!

I'll aim to have the new proposal and contract to you by EOD tomorrow.

---

**David Denton** <ddenton@arcadiaed.com> Thu, Nov 20, 2025 at 12:54 PM
To: Zachary Wishart <zachwishart@gmail.com>

Hey Zach,

I need a few pieces of information for the contract:
Who will be signing the contract for Wilberforce? I need their full name and email address.
Also, what is the name of the entity we are entering into an agreement with? Wilberforce Academies, Wilberforce, LLC?
And what is the physical address of this entity?

feel free to give me a quick call at 214-543-6003 if that's easier.

David

Get Outlook for iOS

---

**From:** Zachary Wishart <zachwishart@gmail.com>
**Sent:** Wednesday, November 19, 2025 6:58:01 PM
**To:** David Denton <ddenton@arcadiaed.com>
**Subject:** Re: Wilberforce Letter of Intent

---

**Zach Wishart** <zachwishart@gmail.com> Thu, Nov 20, 2025 at 1:05 PM
To: David Denton <ddenton@arcadiaed.com>

I will be signing the contract.
Zachary Wishart, zachwishart@gmail.com

Entity name: Wilberforce Academy of Knoxville
Address: 448 N. Cedar Bluff Road, Ste. 404

Payment will come through Wilberforce.

---

**David Denton** <ddenton@arcadiaed.com> Thu, Nov 20, 2025 at 1:14 PM
To: Zach Wishart <zachwishart@gmail.com>

Perfect, and one more I forgot: what is your position in Wilberforce? (executive director, headmaster, something else?)

Get Outlook for iOS

---

**From:** Zach Wishart <zachwishart@gmail.com>
**Sent:** Thursday, November 20, 2025 12:05:01 PM

---

**Zach Wishart** <zachwishart@gmail.com> Thu, Nov 20, 2025 at 1:23 PM
To: David Denton <ddenton@arcadiaed.com>

Executive Director

---

**David Denton** <ddenton@arcadiaed.com> Fri, Nov 21, 2025 at 12:12 PM
To: Zach Wishart <zachwishart@gmail.com>

Hi Zach,

Just reaching out to check on timing of your team's final decision and when I could plan to hear back. Please forgive me for "gently" applying pressure, we just want to be able to hit the ground running on Dec. 1! The (potential) team is quickly taking shape on my end and excited about this project!

Best,

---

**Zach Wishart** <zachwishart@gmail.com> Fri, Nov 21, 2025 at 12:29 PM
To: David Denton <ddenton@arcadiaed.com>

Hey David,

We are moving forward and we should have a signed contract on Monday, Tuesday at the latest. Our primary funder just wants to make sure we get the letter of intent submitted before signing the contract. The attorneys are making some adjustments to the letter of intent and executive summary so that is part of the hold up, in addition to getting the bank account for the organization squared away. They have already reviewed the contract and proposal and have approved so we are so close to signing!

App.2054

I am really looking forward to working with you and your team!

---

**David Denton** <ddenton@arcadiaed.com> Fri, Nov 21, 2025 at 1:20 PM
To: Zach Wishart <zachwishart@gmail.com>

I love it! This is super helpful, thank you. Please send me a copy of the LOI once it's submitted, that will be helpful context for us.

My Next Steps:

1. I'll ask Morganne to send the Docusign version to you over the weekend (she's away today) so that you have it ready to sign when you get the thumbs up.
2. I'll work to set up a meeting for my project lead team with you either on Monday or Tuesday morning (let me know what you prefer)

---

**Zach Wishart** <zachwishart@gmail.com> Mon, Nov 24, 2025 at 8:17 AM
To: David Denton <ddenton@arcadiaed.com>

David,

I am available any time after 1:00 EST tomorrow. The Letter of Intent will be submitted tomorrow, however, it is attached to this email for you to view in advance. The contract with Arcadia will also be signed tomorrow!

Thank you,

---

**2 attachments**

**Wilberforce LOI & Executive Summary.pdf**
86K

**TN-Charter-School-LOI.pdf**
172K


WILB-ACAD-0748

# EXHIBIT 77

App.2056

Gmail Zach Wishart <zachwishart@gmail.com>

## Arcadia_Wilberforce_TN Charter App Support_Contract 2025-26

1 message

**David Denton** <ddenton@arcadiaed.com> Thu, Nov 20, 2025 at 2:32 PM
To: Zachary Wishart <zachwishart@gmail.com>
Cc: Ben Lindquist <blindquist@arcadiaed.com>, Erik Twist <etwist@arcadiaed.com>, Morganne Shelley <mshelley@arcadiaed.com>

Dear Zach,

Please find the revised proposal and contract attached, along with a profile of our firm and core employees. If this looks good, send us the thumbs up and Morganne send the Docusign version.

Assuming we move forward together, I'd like to schedule a meeting on Monday with you and my team leads for the project to map out the first two weeks after Thanksgiving. Any time before 11am or after 2pm works for me. If you could send me a similar set of windows of availability that day I'll work to see when we are all available and send out the invite.

We're excited for the road ahead!

David

**David Denton**

Sr. Managing Consultant

ARCADIA EDUCATION

**C:** (214) 543-6003

www.arcadiaed.com



WILB-ACAD-0749

Arcadia_Wilberforce_TN Charter App Support_Contract 2025-26.pdf
394K

# EXHIBIT 78

Gmail

Zach Wishart <zachwishart@gmail.com>

# The Wilberforce Academy of Knoxville

**Zach Wishart** <zachwishart@gmail.com> Wed, Nov 26, 2025 at 10:55 AM
To: David Denton <ddenton@arcadiaed.com>

David,

Below you will find additional requested information.

Here is the application for an approved Hillsdale affiliated charter school in Tennessee, American Classical Academy, Rutherford: https://4.files.edl.io/22ba/05/15/23/150810-160c4526-3537-4034-b240-28b999f36d3c.pdf

Here is a classical school that was approved by the charter commission and is well regarded in the state, Nashville Classical: https://www.tn.gov/content/dam/tn/tn-public-charter-school-commission/documents/charter-school-appeals/new-start-appeals/2021-nashville-classical/NC%20II%20Amended%20Application_VF.pdf

Here is Valor Collegiate Academy which is the top charter school in the state: https://valorcollegiate.org/wp-content/uploads/2015/08/Valor-Voyager-Academy-Final-Charter-App.pdf

I have attached Knox Prep's charter application, one of the two charter schools in Knoxville. Here is the link to the other approved charter school's approved application: https://static1.squarespace.com/static/63694da009f27e52f05c5ea8/t/64f0d330227b583b2c61c7cd/1693504315433/EmeraldAcademyCharterSchoolApplication.pdf

Also attached is the letter of intent and executive summary, the board by-laws, the purpose and mission statement as well as an application with some notes with some initial thoughts on it. Additionally, here is a link to a blank charter application and the scoring rubric: https://www.tn.gov/sbe/charter-schools/charter-school-applications.html

The last attachment is the NDA.

Let me know if there is any additional information that you need!

Zach

KPS Charter App Final (2).pdf

**5 attachments**

**Wilberforce LOI & Executive Summary.pdf**
86K

**Bylaws.2025.docx.pdf**
229K

**Wilberforce Purpose & Mission.pdf**
43K

**Wilberforce copy.pdf**
563K

**Nondisclosure Agreement.pdf**
142K

---

**David Denton** <ddenton@arcadiaed.com> Mon, Dec 1, 2025 at 10:44 AM
To: Zach Wishart <zachwishart@gmail.com>

Zach,

Thank you for getting these over to us. They've been disseminated to my team. Talk to you soon.

# EXHIBIT 79

**David Denton**

| | |
|---|---|
| **From:** | Erik Twist |
| **Sent:** | Wednesday, December 3, 2025 8:11 AM |
| **To:** | Zach Wishart |
| **Cc:** | David Denton |
| **Subject:** | Inerrancy |

Zach,

Is this what you are going for?

"The inerrancy of scripture is the belief that the Bible is without error in its original writings, containing no factual, historical, or scientific errors. This doctrine is rooted in the belief that scripture is divinely inspired by God and reflects God's own truthfulness. Adherents see the Bible as completely trustworthy and the final authority on matters of faith and practice."

Best,
Erik

# EXHIBIT 80

App.2064

Gmail Zach Wishart <zachwishart@gmail.com>

# Arcadia meeting request

2 messages

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Wed, Dec 3, 2025 at 3:35 PM
To: "zachwishart@gmail.com" <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>

Hello Zach,

It's been a pleasure getting acquainted with you and Wilberforce so far! Our lead team is meeting next Tuesday (12/9) to align on progress and next steps. Could you join the call for 15 minutes (12:45-1:00 EST) to help us calendarize the next two weeks of meetings? It will be easier than coordinating schedules over email!

Kind regards,
Joy

**Joy Lambrecht**
Academy Operations Consultant

ARCADIA EDUCATION

**C:** (740) 877-2535
PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**
13K

**Zach Wishart** <zachwishart@gmail.com> Wed, Dec 3, 2025 at 10:08 PM
To: Joy Lambrecht <jlambrecht@arcadiaed.com>
Cc: David Denton <ddenton@arcadiaed.com>

Absolutely.

Thank you Joy!

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**


WILB-ACAD-0762

13K

# EXHIBIT 81

**David Denton**

---

**From:** Joy Lambrecht
**Sent:** Thursday, December 4, 2025 12:40 PM
**To:** David Denton
**Subject:** Re: Tennessee Physical Education Requirement

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Thanks — created a state law folder and added it.

**Joy Lambrecht**
Academy Operations Consultant

ARCADIA EDUCATION
**C:** (740) 877-2535
PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com

---

**From:** David Denton <ddenton@arcadiaed.com>
**Date:** Thursday, December 4, 2025 at 1:36 PM
**To:** Joy Lambrecht <jlambrecht@arcadiaed.com>
**Subject:** FW: Tennessee Physical Education Requirement

Also for the files.

---

**From:** Zach Wishart <zachwishart@gmail.com>
**Sent:** Thursday, December 4, 2025 9:35 AM
**To:** David Denton <ddenton@arcadiaed.com>
**Subject:** Tennessee Physical Education Requirement

https://www.capitol.tn.gov/Bills/114/Bill/HB0085.pdf

# EXHIBIT 82

Gmail Zach Wishart <zachwishart@gmail.com>

# Wilberforce curriculum meeting

3 messages

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Fri, Dec 5, 2025 at 11:15 AM
To: Zach Wishart <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>

Hi Zach,

I'm reaching out to schedule our conversation about the Wilberforce curriculum. My colleagues Courtney and Brittany are helping draft that section of the application, so they'll join us on the call.

Would one of these times work for you?

Monday, 5-6pm EST
Wednesday, 1:30-2:30pm EST

Sincerely,
Joy

**Joy Lambrecht**
Academy Operations Consultant

ARCADIA EDUCATION

**C:** (740) 877-2535
PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**
13K

**Zach Wishart** <zachwishart@gmail.com> Fri, Dec 5, 2025 at 3:08 PM
To: Joy Lambrecht <jlambrecht@arcadiaed.com>
Cc: David Denton <ddenton@arcadiaed.com>

Joy,

Let's do Monday from 5 to 6.

Have a great weekend!

---

img-98829aca-9ec4-40f4-8fae-0d09cb33f440
13K

---

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Fri, Dec 5, 2025 at 3:16 PM
To: Zach Wishart <zachwishart@gmail.com>

Thanks, Zach! Have a great weekend as well!

Joy

**Joy Lambrecht**
Academy Operations Consultant

ARCADIA EDUCATION

**C:** (740) 877-2535
PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com

---

img-98829aca-9ec4-40f4-8fae-0d09cb33f440
13K

# EXHIBIT 83

Gmail Zach Wishart <zachwishart@gmail.com>

# Wilberforce Curriculum Meeting

1 message

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Fri, Dec 5, 2025 at 3:42 PM
To: David Denton <ddenton@arcadiaed.com>, Courtney Gunn <cgunn@arcadiaed.com>, Brittany Trevino <btrevino@arcadiaed.com>, Zach Wishart <zachwishart@gmail.com>

---

## Microsoft Teams Need help?

### Join the meeting now

Meeting ID: 284 031 068 594 39

Passcode: Ju92Nw2o

For organizers: Meeting options

---

**invite.ics**
4K

# EXHIBIT 84

**David Denton**

**From:** Zach Wishart <zachwishart@gmail.com>
**Sent:** Tuesday, December 9, 2025 12:07 PM
**To:** Joy Lambrecht
**Cc:** David Denton
**Subject:** Re: Wilberforce facilities information
**Attachments:** img-98829aca-9ec4-40f4-8fae-0d09cb33f440

Joy,

Because we are in a lawsuit with the district, we don't expect they will be friendly towards negotiating the preschool space so we are looking at some other options. Parker and I are meeting on Friday to discuss some additional options for facilities. I will give you an update as soon as I have additional information after talking to Parker!

Thank you!

On Mon, Dec 8, 2025 at 7:42 PM Joy Lambrecht <jlambrecht@arcadiaed.com> wrote:

> Hi Zach,
>
> Our team has been discussing the school's needs regarding facilities, and in order to prepare a thorough application, we think it would be best to include a few different options for buildings that could house the school. Based on those possibilities, Ben and Amy can create different budget scenarios for the pro formas.
>
> I am attaching here an example from the Valor Collegiate charter application so you can see the level of detail the authorizers expect. Since we don't know for sure if the Cedar Bluff Preschool building will be available to you, we think it would be best to include a few other options as well.
>
> Could you ask Parker to come up with a few different options with the associated costs?
>
> If Cedar Bluff Preschool is available, will you be charged a rental or leasing fee? Do you foresee any buildout costs for that option?
>
> The more detailed costs we can get, the better our budgeting will be, and the more thorough the application will be. Of course, it probably goes without saying, but the sooner we can get those numbers, the better off we'll be, since many of the other application items depend on the budgetary outcomes.
>
> Thank you so much!
>
> Sincerely,
> Joy

# EXHIBIT 85

Gmail Zach Wishart <zachwishart@gmail.com>

## Wilberforce Culture, Discipline, & Instruction

1 message

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Tue, Dec 9, 2025 at 12:55 PM
To: David Denton <ddenton@arcadiaed.com>, Zach Wishart <zachwishart@gmail.com>
Cc: Mary Kathryn Boucher <marykathryn.boucher@gmail.com>

---

# Microsoft Teams [Need help?]

## [Join the meeting now]

Meeting ID: 240 146 683 585 38

Passcode: gX7Ry94u

For organizers: [Meeting options]

---

invite.ics
4K

# EXHIBIT 86

Gmail Zach Wishart <zachwishart@gmail.com>

## Wilberforce Special Pops and Family Engagement

1 message

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Tue, Dec 9, 2025 at 12:56 PM
To: Mary Kathryn Boucher <marykathryn.boucher@gmail.com>, Zach Wishart <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>

---

# Microsoft Teams [Need help?]

## [Join the meeting now]

Meeting ID: 264 295 379 586 79

Passcode: wB3bb6fy

For organizers: [Meeting options]

---

**invite.ics**
**4K**

# EXHIBIT 87

Gmail

Zach Wishart <zachwishart@gmail.com>

## Wilberforce Budget Meeting

1 message

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Tue, Dec 9, 2025 at 12:58 PM
To: Amy Frank <afrank@arcadiaed.com>, Zach Wishart <zachwishart@gmail.com>, Ben Lindquist <blindquist@arcadiaed.com>
Cc: David Denton <ddenton@arcadiaed.com>

---

**Microsoft Teams** Need help?

**Join the meeting now**

Meeting ID: 250 919 163 157 72

Passcode: 68Sh63kn

For organizers: Meeting options

---

invite.ics
4K

# EXHIBIT 88

Gmail Zach Wishart <zachwishart@gmail.com>

# Wilberforce Kindergarten

1 message

**Zach Wishart** <zachwishart@gmail.com> Thu, Dec 11, 2025 at 9:55 AM
To: David Denton <ddenton@arcadiaed.com>, Joy Lambrecht <jlambrecht@arcadiaed.com>

David & Joy,

I have a concept I want to toss out as an idea but I am not sure if the numbers would work on it. Tennessee allows for kindergarten classes to operate on a half day schedule, 4 hours per day. Quite a few private schools offer both a full and half day kindergarten and it would be interesting to offer this at Wilberforce. What if there were 3 kindergarten classes, two full day and one half day class?

I am not certain the demand and interest would be there but it would be neat to offer if the demand is present and the numbers work. My initial thought is that in this scenario we would have 3 kindergarten classes of roughly 17-18 kids, two full day and one half day. I am wondering if the budget could handle it if the full funding amount is available for the half day students but the teacher is paid less for the shorter day. You may know off the bat if that is even remotely possible or not.

Let me know what you think.

Thanks!

# EXHIBIT 89

**David Denton**

**From:** Zach Wishart <zachwishart@gmail.com>
**Sent:** Friday, December 12, 2025 11:45 AM
**To:** David Denton
**Subject:** Charter Performance Review Knox County

David,

Here are two recent charter review reports from Knox County.

https://destinyhosted.com/agenda_publish.cfm?id=56697&mt=ALL&vl=true&get_month=12&get_year=2025&dsp=agm&seq=9498&rev=0&ag=801&ln=19595&nseq=9499&nrev=0&pseq=9497&prev=0&vl=true#ReturnTo19595

https://destinyhosted.com/agenda_publish.cfm?id=56697&mt=ALL&vl=true&get_month=12&get_year=2025&ds

Thank you!

Zach

# EXHIBIT 90

Gmail

Zach Wishart <zachwishart@gmail.com>

# Connection

**Erik Twist** <etwist@arcadiaed.com> Mon, Dec 15, 2025 at 5:38 PM
To: Zachary Wishart <zachwishart@gmail.com>
Cc: Kathleen O'Toole <kotoole@hillsdale.edu>, David Denton <ddenton@arcadiaed.com>

Zach,

I'm happy to connect you here with Dr. O'Toole, the AVP of K12 at Hillsdale. I know you know who Dr. O'Toole is and that here reputation precedes her. She, as you know, is a friend in the fight. Unsurprisingly, she is interested in what you are working towards and would like to learn more.

I hope you can find some time to connect before too long.

Blessings,
Erik

---

**Zach Wishart** <zachwishart@gmail.com> Tue, Dec 16, 2025 at 12:31 PM
To: Erik Twist <etwist@arcadiaed.com>
Cc: Kathleen O'Toole <kotoole@hillsdale.edu>, David Denton <ddenton@arcadiaed.com>

Erik - Thank you for connecting us!

Dr. O'Toole - I would love to connect and talk further about our vision for Wilberforce Academy as well as hear more about the wonderful work at Hillsdale. Do you have availability the first of next week to connect on a phone or zoom call?

Thank you!

---

**Kathleen O'Toole** <kotoole@hillsdale.edu> Thu, Dec 18, 2025 at 4:33 PM
To: Zach Wishart <zachwishart@gmail.com>, Erik Twist <etwist@arcadiaed.com>
Cc: David Denton <ddenton@arcadiaed.com>, Michelle Schebor <mschebor@hillsdale.edu>

Zach, wonderful to be in touch. Michelle, copied here, can help us get our schedules coordinated.

Thank you, Erik and David!

Katy

Dr. Kathleen O'Toole
Associate Vice President for K-12 Education
Hillsdale College

---

**Zachary Wishart** <zachwishart@gmail.com> Sun, Dec 21, 2025 at 4:56 PM
To: mschebor@hillsdale.edu

Michele,

It looks like I accidently sent you an incomplete email below, I apologize.

Is Dr. O'Toole available at any time on Monday, January 5?

Merry Christmas!

Zach Wishart

> On Dec 19, 2025, at 1:00 PM, Zach Wishart <zachwishart@gmail.com> wrote:
>
> Michele,

---

**Michelle Schebor** <mschebor@hillsdale.edu> Mon, Dec 29, 2025 at 11:49 AM
To: Zachary Wishart <zachwishart@gmail.com>

Merry Christmas, Zach!

The first week of January is super tight.
Would you be available Tuesday, 1/13 at 9am EST?
If that doesn't work we could also do that same day at 3:30.
Please let me know if we need to keep looking or if I can send a Zoom for either of those times.

Thank you,

Michelle

**Michelle Schebor**
**Executive Secretary to the Associate Vice President for K-12 Education**

Hillsdale College | K-12 Education Office

*An American Classical Education*

**mschebor@hillsdale.edu|** (517) 607-2893

careers.hillsdale.edu

---

**Zachary Wishart** <zachwishart@gmail.com> Mon, Dec 29, 2025 at 12:33 PM
To: Michelle Schebor <mschebor@hillsdale.edu>

Tuesday, 1/13 at 3:30 would be great!

Thank you, Michelle!

> On Dec 29, 2025, at 11:49 AM, Michelle Schebor <mschebor@hillsdale.edu> wrote:

# EXHIBIT 91

App.2090

Gmail Zach Wishart <zachwishart@gmail.com>

# Zach's Christmas Present

**David Denton** <ddenton@arcadiaed.com> Fri, Dec 19, 2025 at 6:42 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: Joy Lambrecht <jlambrecht@arcadiaed.com>, Mary Kathryn Boucher <marykathryn.boucher@gmail.com>, Amy Frank <afrank@arcadiaed.com>, Ben Lindquist <blindquist@arcadiaed.com>

Dear Zach,

As promised, please find our current drafts attached. 27 of the 62 questions have been drafted (to varying degrees). This is roughly 6 questions ahead of schedule.

As I said, we typically don't share incomplete work with clients, but given our timeline, this is the most expedient and therefore necessary way to align the document, vision, and reality. I don't want to box you in on your method, but the review/comment feature likely the most efficient way to track your comments, questions, and any other notes. **What is important at this phase is your feedback on content**, don't waste a moment copyediting. We'll sic our editors on it in due time.

Here is a guide to the 12-19-25 Draft document:

- Polished Drafts: 1-2, 6-8, 19-20, 22-24, 27, 46-47
- Rough Drafts: 3-5, 9-10, 14-15, 18, 21, 26, 41, 48-49, 59 (#59 is the budget attachment)

The polished vs rough draft distinction means what you think it means. They are all drafts and in need of further work, but the polished drafts have generally been edited by another person already where the rough drafts have not and are often works still in progress.

Would love to receive your feedback by Jan 5.

Merry Christmas!!

David

PS – don't hesitate to call if you have any questions or thoughts for me.

**3 attachments**

**12-19-25 Budget Draft.xlsx**
217K

**12-19-25 Draft.docx**


WILB-ACAD-0774

**3 attachments**

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**
13K

**12-19-25 Budget Draft.xlsx**
217K

**12-19-25 Draft.docx**
8857K

---

**Zach Wishart** <zachwishart@gmail.com> Sat, Jan 3, 2026 at 11:46 AM
To: David Denton <ddenton@arcadiaed.com>
Cc: Joy Lambrecht <jlambrecht@arcadiaed.com>, Mary Kathryn Boucher <marykathryn.boucher@gmail.com>, Amy Frank <afrank@arcadiaed.com>, Ben Lindquist <blindquist@arcadiaed.com>

David and Team,

Wow! I am thrilled and so excited with everything that has been written so far! OUTSTANDING! I have included a few observations below:

Page 1. When referring to the school, while we will be open to all, we would prefer to just use the term 'charter school' vs. 'public charter school'.

Page 1. When referencing 'social studies' we would prefer to use 'history'. We will meet 'social studies' standards in all 'history' class times/classes.

Page 6. Under section 4, Knoxville is at the crossroads of I-40 and I-75. U.S. Route 221 does not go through Knoxville.

Page 6. We are having a bit of a challenge finding a facility immediately in the Cedar Bluff community. The general vicinity, within a 15 minute/7 to 8 mile radius, will still be the chosen area. How should we word this? Should it be worded like 'the Cedar Bluff and immediate surrounding communities'? The focus for selecting a location remains accessibility to the majority of kids/parents in the county. The references to Cedar Bluff on pages 9 and 10 are broad enough that it should already encompass the surrounding areas.

Page 8. For after school clubs, the entrepreneurship curriculum will be a unit in the civic class in each grade rather than an after school club.

Page 10. A reference to I-40 should say I-40 and I-75.

Page 26. "Community organizations that will be engaged upon approval"

- Hope Resource Center
- Knoxville Inner City Kids Outreach
- Knox County Church Network

Page 31. For narrative on classical network footnote, is there anything in the Classical Christian School Association Good Soil report that would be useful here?

Page 38. This page references grades 7 and 8 having 30 students per grade level. With 75 students in each of these grade levels, won't there be 3 sections of 25 per grade level?

Page 39. The term Headmaster is used, this should be executive director.

Page 53. NWEA Map Growth is grade 3-8 rather than K-8.

Page 54. DIBELS in K-2.

Thank you all so much!

Zach

---

**David Denton** <ddenton@arcadiaed.com> Sat, Jan 3, 2026 at 2:56 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: Joy Lambrecht <jlambrecht@arcadiaed.com>, Mary Kathryn Boucher <marykathryn.boucher@gmail.com>, Amy Frank <afrank@arcadiaed.com>, Ben Lindquist <blindquist@arcadiaed.com>

Zach,

I'm so glad to hear that what we are penning is already strongly aligned with your vision and sensibilities! Thank you for taking the time to read through the document and provide us the detailed feedback we need (the positive feedback is also appreciated!). We will work to incorporate these edits in the week ahead and into our future writing where applicable.

Best,

# EXHIBIT 92

**David Denton**

---

| | |
|---|---|
| **Subject:** | Arcadia Check-in |
| **Location:** | Microsoft Teams Meeting |
| **Start:** | Mon 1/5/2026 1:15 PM |
| **End:** | Mon 1/5/2026 2:00 PM |
| **Recurrence:** | (none) |
| **Meeting Status:** | Meeting organizer |
| **Organizer:** | David Denton |
| **Required Attendees:** | Amy Frank; Zach Wishart |
| **Optional Attendees:** | Ben Lindquist |

________________________________________________________________________________

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 288 791 728 049 03

Passcode: Q6yo6Jd2

---

For organizers: Meeting options

________________________________________________________________________________

# EXHIBIT 93

Gmail

# Wilberforce Information

**Zach Wishart** <zachwishart@gmail.com> Wed, Jan 7, 2026 at 2:30 PM
To: David Denton <ddenton@arcadiaed.com>, Joy Lambrecht <jlambrecht@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher [redacted]r@gmail.com>, Ben Lindquist <blindquist@arcadiaed.com>

Arcadia Team,

I have answered a couple of emails below in one. You will see responses to Amy's inquiry about facilities, as well as some of the documents that David requested on Monday's call. Additionally, I provided some additional information about Parker leading the building expansion at River's Edge.

Thank you!

1. The name and location of a potential rentable space for the first couple of years. It would probably need to be a minimum of 30,000 square feet to allow for full enrollment through Year 2. This does not have to be definite, of course, just possible.

Here is one property that we have looked at, although it is just 28,000 sq ft. It is for sale and not lease, however. Here are further details about it: https://www.loopnet.com/Listing/2010-Castaic-Ln-Knoxville-TN/35430107/

Here is another option, a shopping center, but this isn't ideal because it would require a big investment in renovations and still likely only be a temporary space. I am having a hard time imagining how this would work with things like pickup-dismissal. Here is that property: https://www.loopnet.com/Listing/109-297-N-Seven-Oaks-Dr-Knoxville-TN/37053883/

This property is further west and would be seen as a little outside of our service region: https://www.propertyshark.com/cre/commercial-property/us/tn/knoxville/farragut-point-4/

Here is one more option, although we prefer to be on the other side of the interstate: https://www.propertyshark.com/cre/commercial-property/us/tn/knoxville/former-american-freight-available-for-lease/

2. Some cost estimates for rental space in the areas you are looking (per square foot)

Most of the spaces, the better one, are between $21-$25 per sq ft.

3. The names of people who are involved in this real estate search. I know you've mentioned Parker Bartholomew, but if there are others we can include in the application — including any other real estate broker you are working with — that would be good.

Parker is a licensed real estate broker so he has been leading all aspects of the search. David Colquitt, our board treasurer, and Laura Beaman, board member, are assisting Parker and I in the search. David has made large real estate purchases (hotels) and Laura Beaman has vast experience as a landlord. All of these individuals are well versed in real estate.

Parker Experience Summary:

Parker served as the project manager on the River's Edge Christian Academy expansion plan. Parker oversaw a

project to add 12 classrooms to the River's Edge campus which required compliance with education occupancy laws as well as additional city and state building codes. Additionally, Parker maintained a tight budget and compliance with grant reporting as the funds that were provided to build this expansion were a grant from the State of Tennessee via federal covid funds.

---

**4 attachments**

**Wilberforce Board of Directors.pdf**
113K

**Wilberforce_Bylaws.pdf**
241K

**Action of Directors.2025.doc.pdf**
220K

**Charter.SOS.2025.pdf**
997K

# EXHIBIT 94

**David Denton**

**From:** Zach Wishart <zachwishart@gmail.com>
**Sent:** Saturday, January 10, 2026 10:21 AM
**To:** David Denton
**Cc:** Joy Lambrecht
**Subject:** Re: Questions

David,

Great questions. I actually was thinking about lunch supervision this week because Tennessee law requires teachers to have a personal duty free lunch. In the early years, especially year one and two, one option could be that the special areas teachers supervise lunch unless the timing wouldn't work with their schedules.

The most simple solution is probably to have a part time teaching assistant or lunchroom aide who supervises lunches as well as a part time lunch aide that comes in for a few hours each day to oversee distribution of school lunches. I know the budget would work for it in later years but it will be tighter in the earlier years. I feel pretty confident we can close the gaps with philanthropy in early years to help with these types of needs.

I am working with an insurance company, Bob Johnson Insurance, in Knoxville that is working on getting all of the insurance information together for me.

Almost there! Thank you so much for all of the work on this!

Zach

On Fri, Jan 9, 2026 at 9:07 PM David Denton <ddenton@arcadiaed.com> wrote:

> Hi Zach!
>
> We are cranking away. Thank you for the responsiveness and all the documentation you've sent our way over the past week! (and forgive me if I didn't say thank you sooner!)
>
> Here is a new batch of operational questions for you (I'm pasting them in without updating the pronouns):

1. what is Zach's vision for the distribution of school meals? Will he hire a part time lunch aide to oversee this as well as playground supervision? Previously I have had a member of my office staff run the arrival and distribution of meals each day but have also hired on someone part time.
2. What is his plan for monitoring lunch/recess? Will teachers do it? Will he hire someone part time? If so, wondering if we should add that expense to the food service budget.
3. Reminder to send me the coverage letter from the insurance company that: lists the types and corresponding amounts of insurance coverage; states that the company will provide the required coverage upon approval of the charter; and includes provisions for assuring that the insurance provider will notify the Tennessee Department of Education within ten days of the cancellation of any insurance it carries on the charter school.

Our goal is to reach 90+% completion of rubric passing responses by Friday of next week. The sooner you can send these the better.

Thanks,

David

**David Denton**

Sr. Managing Consultant

ARCADIA EDUCATION

**C:** (214) 543-6003

www.arcadiaed.com

**David Denton**

**From:** Zach Wishart <zachwishart@gmail.com>
**Sent:** Wednesday, January 7, 2026 5:06 PM
**To:** David Denton
**Subject:** Re: Resumes
**Attachments:** Zach_Wishart_Resume_8.pdf

David,

Mine was incomplete. I was rushing through to try to get them to you but it should be good now.

Thanks!

On Wed, Jan 7, 2026 at 1:21 PM Zach Wishart <zachwishart@gmail.com> wrote:

> David,
>
> Here are the requested resumes, including mine. We are still missing one board member but I will get that to you as soon as I receive it.
>
> Thank you!

**David Denton**

| | |
|---|---|
| **From:** | Zach Wishart <zachwishart@gmail.com> |
| **Sent:** | Wednesday, January 7, 2026 1:31 PM |
| **To:** | David Denton; Joy Lambrecht; Amy Frank; Mary Kathryn Boucher; Ben Lindquist |
| **Subject:** | Wilberforce Information |
| **Attachments:** | Wilberforce Board of Directors.pdf; Wilberforce_Bylaws.pdf; Action of Directors.2025.doc.pdf; Charter.SOS.2025.pdf |

Arcadia Team,

I have answered a couple of emails below in one. You will see responses to Amy's inquiry about facilities, as well as some of the documents that David requested on Monday's call. Additionally, I provided some additional information about Parker leading the building expansion at River's Edge.

Thank you!

1. The name and location of a potential rentable space for the first couple of years. It would probably need to be a minimum of 30,000 square feet to allow for full enrollment through Year 2. This does not have to be definite, of course, just possible.

Here is one property that we have looked at, although it is just 28,000 sq ft. It is for sale and not lease, however. Here are further details about it: https://www.loopnet.com/Listing/2010-Castaic-Ln-Knoxville-TN/35430107/

Here is another option, a shopping center, but this isn't ideal because it would require a big investment in renovations and still likely only be a temporary space. I am having a hard time imagining how this would work with things like pickup-dismissal. Here is that property: https://www.loopnet.com/Listing/109-297-N-Seven-Oaks-Dr-Knoxville-TN/37053883/

This property is further west and would be seen as a little outside of our service region: https://www.propertyshark.com/cre/commercial-property/us/tn/knoxville/farragut-point-4/

Here is one more option, although we prefer to be on the other side of the interstate: https://www.propertyshark.com/cre/commercial-property/us/tn/knoxville/former-american-freight-available-for-lease/

2. Some cost estimates for rental space in the areas you are looking (per square foot)

Most of the spaces, the better one, are between $21-$25 per sq ft.

3. The names of people who are involved in this real estate search. I know you've mentioned Parker Bartholomew, but if there are others we can include in the application — including any other real estate broker you are working with — that would be good.

Parker is a licensed real estate broker so he has been leading all aspects of the search. David Colquitt, our board treasurer, and Laura Beaman, board member, are assisting Parker and I in the

search. David has made large real estate purchases (hotels) and Laura Beaman has vast experience as a landlord. All of these individuals are well versed in real estate.

Parker Experience Summary:

Parker served as the project manager on the River's Edge Christian Academy expansion plan. Parker oversaw a project to add 12 classrooms to the River's Edge campus which required compliance with education occupancy laws as well as additional city and state building codes. Additionally, Parker maintained a tight budget and compliance with grant reporting as the funds that were provided to build this expansion were a grant from the State of Tennessee via federal covid funds.

**David Denton**

**From:** Zach Wishart <zachwishart@gmail.com>
**Sent:** Wednesday, January 7, 2026 12:21 PM
**To:** David Denton
**Subject:** Resumes
**Attachments:** David Colquitt Bio 3.docx; Parker Bartholomew.pdf; Doug Harris resume 2014.doc; Resume - Arcadia.pdf

David,

Here are the requested resumes, including mine. We are still missing one board member but I will get that to you as soon as I receive it.

Thank you!

**David Denton**

**From:** Zachary Wishart <zachwishart@gmail.com>
**Sent:** Saturday, January 3, 2026 2:38 PM
**To:** David Denton
**Cc:** Amy Frank; Ben Lindquist
**Subject:** Re: Follow up on facility question

After 11:00 EST I am flexible, so anytime after that I am good with just let me know what is best for you.

Sent from my iPhone

> On Jan 3, 2026, at 2:58 PM, David Denton <ddenton@arcadiaed.com> wrote:
>
> Hi Zach,
>
> Do you have time this Monday afternoon to connect with Amy and me on the facility budget and donor question you raised? I think a phone call is fine if that helps. Just let us know a time, or a better day and time if not.
>
> -David

# EXHIBIT 95

Gmail

## Next stack of question

**David Denton** <ddenton@arcadiaed.com> Mon, Jan 12, 2026 at 3:36 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: Joy Lambrecht <jlambrecht@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>

Hi Zach!

Each question gets us closer...

Could you provide:

1. Documentation about your relationship with Pinnacle Bank (e.g. would the school be pre-approved for a line of credit? etc.)
2. Documentation (any you can get) that indicates that individuals or organizations are able and ready to donate specific amounts to the school. For context, at present it appears that you will need the following amounts (approximate) in philanthropy or loans each year to avoid budget shortfalls:

   Year 0: $200,000

   Year 1: $450,000 (if opens with minimum enrollment)

   Year 2: $150,000 (if still at minimum enrollment)

   We need to show how they will make up those deficits if they were to materialize.

3. It would be helpful to get an estimate from Two Roads Accounting for how much they would charge for financial, accounting, and payroll services per year, but if we don't get that, we'll just come up with an estimate.

Many thanks,

**David Denton**

Sr. Managing Consultant

ARCADIA EDUCATION

**C:** (214) 543-6003

www.arcadiaed.com

---

**Zach Wishart** <zachwishart@gmail.com> Tue, Jan 13, 2026 at 12:55 PM
To: David Denton <ddenton@arcadiaed.com>
Cc: Joy Lambrecht <jlambrecht@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>

David,

We don't currently have a line of credit with Pinnacle.

We will have a letter from the Colquitt Foundation that will state specific coverage on the potential deficits.

I am following up on the accounting quote today!

Thank you!

---

**David Denton** <ddenton@arcadiaed.com> Tue, Jan 13, 2026 at 12:56 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: Joy Lambrecht <jlambrecht@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>

Roger that!

Get Outlook for iOS

---

**From:** Zach Wishart <zachwishart@gmail.com>
**Sent:** Tuesday, January 13, 2026 11:55:27 AM
**To:** David Denton <ddenton@arcadiaed.com>
**Cc:** Joy Lambrecht <jlambrecht@arcadiaed.com>; Amy Frank <afrank@arcadiaed.com>; Mary Kathryn Boucher <mboucher@arcadiaed.com>
**Subject:** Re: Next stack of question

---

**Zach Wishart** <zachwishart@gmail.com> Tue, Jan 13, 2026 at 2:11 PM
To: David Denton <ddenton@arcadiaed.com>
Cc: Joy Lambrecht <jlambrecht@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>

David,

I am still awaiting information from Two Roads, however, my current school budget for accounting is $35,000. The operating budget is comparable to the first couple of years of Wilberforce, could we use that number for now?

Thanks!

---

**David Denton** <ddenton@arcadiaed.com> Tue, Jan 13, 2026 at 2:30 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: Amy Frank <afrank@arcadiaed.com>

I'll let Amy respond on this one.

---

**Amy Frank** <afrank@arcadiaed.com> Tue, Jan 13, 2026 at 3:07 PM
To: David Denton <ddenton@arcadiaed.com>, Zach Wishart <zachwishart@gmail.com>

That's great, Zach.
Thanks!

Amy

Get Outlook for Android

---

**From:** David Denton <ddenton@arcadiaed.com>
**Sent:** Tuesday, January 13, 2026 2:30:14 PM
**To:** Zach Wishart <zachwishart@gmail.com>
**Cc:** Amy Frank <afrank@arcadiaed.com>
**Subject:** RE: Next stack of question

# EXHIBIT 96

**David Denton**

**From:** Zach Wishart <zachwishart@gmail.com>
**Sent:** Tuesday, January 13, 2026 11:54 AM
**To:** David Denton
**Cc:** Mary Kathryn Boucher; Joy Lambrecht
**Subject:** Re: Waivers and engagement evidence

David,

If Mary Kathryn could build a list that would be great. We will want to include the media/library waiver since we may not have a library in the early years, a waiver on principal licensure and a waiver on state approved textbooks and instructional materials. There is another one around teacher career ladder pay that we will also want a waiver for as well as others that Mary Kathryn recommends.

We are supposed to have ads running this week on social media to try to get community support lists, I will keep you posted on that. I am awaiting some support letters.

Thank you!

On Tue, Jan 13, 2026 at 12:21 PM David Denton <ddenton@arcadiaed.com> wrote:

> Hi Zach,
>
> T minus 19 days and counting to deadline!
>
> We're at 200 pages towards the 250 cap.
>
> 1. Any progress on waivers? If not, Mary Kathrybn can build a comprehensive starting list for you and legal to review
> 2. Also, when should we expect to receive "evidence of engagement" with families and the community?
>     a. Community letters of support
>     b. Parent emails or letters of support
>     c. Interest list sign ups
>
> Thanks!
>
> **David Denton**
>
> Sr. Managing Consultant

ARCADIA EDUCATION

**C:** (214) 543-6003

www.arcadiaed.com

# EXHIBIT 97

## David Denton

**From:** Mary Kathryn Boucher <marykathryn.boucher@gmail.com>
**Sent:** Tuesday, January 13, 2026 12:32 PM
**To:** David Denton
**Cc:** Zach Wishart; Joy Lambrecht
**Subject:** Re: Waivers and engagement evidence

Hi Zach,

Thank you for an early list of waivers you will be looking for. I will get a compiled list for you asap.

Have a wonderful week!

On Tue, Jan 13, 2026 at 10:59 AM David Denton <ddenton@arcadiaed.com> wrote:

> Gotcha. Let's plan to check in early next week. I assume you've already mobilized your early adopters and galvanizers to drive interest and signups. Let's pray they bring in a 100fold harvest.
>
> Get Outlook for iOS
>
> ---
>
> **From:** Zach Wishart <zachwishart@gmail.com>
> **Sent:** Tuesday, January 13, 2026 11:54:03 AM
> **To:** David Denton <ddenton@arcadiaed.com>
> **Cc:** Mary Kathryn Boucher <marykathryn.boucher@gmail.com>; Joy Lambrecht <jlambrecht@arcadiaed.com>
> **Subject:** Re: Waivers and engagement evidence
>
> David,
>
> If Mary Kathryn could build a list that would be great. We will want to include the media/library waiver since we may not have a library in the early years, a waiver on principal licensure and a waiver on state approved textbooks and instructional materials. There is another one around teacher career ladder pay that we will also want a waiver for as well as others that Mary Kathryn recommends.
>
> We are supposed to have ads running this week on social media to try to get community support lists, I will keep you posted on that. I am awaiting some support letters.
>
> Thank you!
>
> On Tue, Jan 13, 2026 at 12:21 PM David Denton <ddenton@arcadiaed.com> wrote:
>
>> Hi Zach,
>>
>> T minus 19 days and counting to deadline!

We're at 200 pages towards the 250 cap.

1. Any progress on waivers? If not, Mary Kathrybn can build a comprehensive starting list [redacted]
2. Also, when should we expect to receive "evidence of engagement" with families and the community?
    a. Community letters of support
    b. Parent emails or letters of support
    c. Interest list sign ups

Thanks!

**David Denton**

Sr. Managing Consultant

ARCADIA EDUCATION

**C:** (214) 543-6003

www.arcadiaed.com

# EXHIBIT 98

Gmail Zach Wishart <zachwishart@gmail.com>

# Contingency planning

**Amy Frank** <afrank@arcadiaed.com>
To: Zach Wishart <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>
Thu, Jan 15, 2026 at 5:10 PM

Hello Zach --

I hope your week is going well. I wanted to follow up on some budgeting/ contingency planning that we're working on to see if we can get your help. As you know, we want to demonstrate that Wilberforce is well-positioned to handle various scenarios as a start-up, so we've been thinking through what the possible "worst-case" could look like. From the authorizer's perspective, they may like to see what would happen if enrollment is quite low at the beginning.

Although we do not anticipate this ever happening, we'd like to show a scenario where enrollment was only 75% of the target in Year 1, and then slightly more than that in Year 2. As we have everything modeled at the moment, it appears the **budget deficits** after accounting only for the TISA and federal revenues would be:

Year 0: $450,000
Year 1: $1,100,000
Year 2: $400,000

Hopefully, the CSP grant would cover $250,000 of each year's deficit, but since it's not guaranteed, we should probably indicate what you would do even without that — again, worst case scenario.

I know you're working on obtaining a letter from the Colquitt Foundation. Could you see what the maximum amount is they're willing to discuss for that? Or, if you have any other donors that we could list as pretty certain, that would be good. We will also specify that a shortfall could be made up with a loan from Pinnacle Bank, but that would strain future years' budgets, too, so it's not ideal.

Thanks,
Amy

**Amy Frank**

Consultant

ARCADIA EDUCATION

**C:** (704) 609-4279

PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com

---

**Zach Wishart** <zachwishart@gmail.com> Fri, Jan 16, 2026 at 11:37 AM
To: Amy Frank <afrank@arcadiaed.com>
Cc: David Denton <ddenton@arcadiaed.com>

Amy,

Great question. The Colquitt Foundation is supposed to give me a letter of commitment today for up to two million dollars to be given as needed for the first pre-operating through first three years of operation. That will cover our budget shortfalls. I will get that to you as soon as I have it!

Thank you!

---

**Amy Frank** <afrank@arcadiaed.com> Fri, Jan 16, 2026 at 11:38 AM
To: Zach Wishart <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>

Wonderful! That is very good news!

Thanks,
Amy

---

**From:** Zach Wishart <zachwishart@gmail.com>
**Sent:** Friday, January 16, 2026 11:37 AM
**To:** Amy Frank <afrank@arcadiaed.com>
**Cc:** David Denton <ddenton@arcadiaed.com>
**Subject:** Re: Contingency planning

# EXHIBIT 99

**David Denton**

**From:** Zach Wishart <zachwishart@gmail.com>
**Sent:** Friday, January 16, 2026 10:30 AM
**To:** David Denton
**Cc:** Joy Lambrecht
**Subject:** Re: Plan for the next 2 weeks

David,

This is exciting! What if we did 3:45 on Wednesday, Thursday and Friday of next week?

On Thu, Jan 15, 2026 at 8:43 PM David Denton <ddenton@arcadiaed.com> wrote:

> Good Evening, Zach,
>
> We are closing in on completion of the initial draft (current page count is ~230). Our plan is to send the draft to you for review with your legal team by EOD Tuesday, January 20. We request that you respond to us by EOD Friday, January 23 with your (complete) list of needed additions, corrections, questions, or other revisions. There are a number of ways that you can do this. This is a tight turnaround, but we'll need time on the back end to complete revisions. Better still will be to send us actionable feedback each day.
>
> I recommend that we schedule a 20-30 min daily check-in call from Wednesday through Friday to maintain progress on our end and align on process. Afternoons will likely be best.
>
> I know that is a lot. Please let us know soon if this plan won't work and let's figure out and alternate timeline together.
>
> Also, we need to connect soon on the details of our plan for submission- who does what by when. We could do that next week.
>
> Thank you!
>
> **David Denton**
>
> Sr. Managing Consultant

ARCADIA EDUCATION

**C:** (214) 543-6003

www.arcadiaed.com

**David Denton**

**From:** Zach Wishart <zachwishart@gmail.com>
**Sent:** Thursday, January 15, 2026 11:36 AM
**To:** David Denton
**Subject:** Re: 2 more questions
**Attachments:** Laura Beaman.pdf

David,

I have attached what Laura sent me.

Yes, that is all on the applicant team.

[redacted]

Thank you!

On Wed, Jan 14, 2026 at 11:17 PM David Denton <ddenton@arcadiaed.com> wrote:

1. We still need a resume for Laura Beaman. (It would check a box if you could tell me her current title and employer (other than RECA board member), but we will still need her resume to attach)
2. At present I only have the following people for the list of all school-based staff, board members, and members of the applicant team
   a. Zach Wishart
   b. Doug Harris
   c. David Colquitt
   d. Parker Bartholomew
   e. Laura Beaman

Who is missing?

3. (see below)

**From:** David Denton
**Sent:** Wednesday, January 14, 2026 9:37 PM
**To:** Zach Wishart <zachwishart@gmail.com>
**Cc:** Joy Lambrecht <jlambrecht@arcadiaed.com>
**Subject:** proof of non-profit status

Hey Zach,

He’s the question from today:

We need to show proof of your non-profit status. It looks like beyond the articles of incorporation (I believe this was the document title Charter) this requires a determination letter from the IRS that recognizes WA as a 501c3 and provides your tax exempt effective date. Has this been received and would you send it our way?

Thank you,

**David Denton**

Sr. Managing Consultant

ARCADIA EDUCATION

**C:** (214) 543-6003

www.arcadiaed.com

# EXHIBIT 100

Gmail Zach Wishart <zachwishart@gmail.com>

## Wilberforce Synch

1 message

**David Denton** <ddenton@arcadiaed.com> Fri, Jan 16, 2026 at 2:29 PM
To: Zach Wishart <zachwishart@gmail.com>, Joy Lambrecht <jlambrecht@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>
Cc: Ben Lindquist <blindquist@arcadiaed.com>, Brittany Trevino <btrevino@arcadiaed.com>

Zach,

Please fwd this to this invite to the appropriate members of your team.

Best,

David

---

**Microsoft Teams** Need help?

**Join the meeting now**

Meeting ID: 291 373 215 017 56

Passcode: u8bE7bU3

---

For organizers: Meeting options

---

**invite.ics**
4K

# EXHIBIT 101

Gmail

Zach Wishart <zachwishart@gmail.com>

# TN-Charter-School-Budget-Template 1_14_26.xlsx

**David Denton** <ddenton@arcadiaed.com> Fri, Jan 16, 2026 at 6:31 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: Amy Frank <afrank@arcadiaed.com>, Ben Lindquist <blindquist@arcadiaed.com>, Joy Lambrecht <jlambrecht@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>

Hi Zach,

We're going to send the budget over now in the interest of time. The rest of the application needs to be aligned to the budget, so it would be good to secure final approvals on this first.

A few framing comments:

1. This budget is built around your input and our understanding, experience, and assumptions/recommendations.
2. The goal is for this budget to be aligned to your vision, fiscal reality, and authorizer requirements. Please catalogue and/or reach out with any and all questions, changes, or clarifications you surface.
3. We'll work through your feedback with you, starting Monday, aiming for final approval from you, at which point we will make any revisions necessary throughout the rest of the doc.

Have a great weekend!

**TN-Charter-School-Budget-Template 1_14_26.xlsx**
221K

# EXHIBIT 102

**David Denton**

---

**From:** Amy Frank
**Sent:** Friday, January 16, 2026 8:01 PM
**To:** Zach Wishart
**Cc:** David Denton; Joy Lambrecht; Mary Kathryn Boucher; Ben Lindquist
**Subject:** Budget Narrative
**Attachments:** Budget Narrative 1_16_25.docx

Zach --

Along with the budget, we've realized it would probably be helpful for you to see our working draft of the "budget narrative" as well, so you can see what our thinking was behind some of the numbers.

This is not yet in final form; we welcome your thoughts and feedback and are happy to make any changes.

I hope you have a good weekend!

Amy

**Amy Frank**
Consultant

ARCADIA EDUCATION
**C:** (704) 609-4279
PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com

# EXHIBIT 103

App.2131

Gmail Zach Wishart <zachwishart@gmail.com>

# Budget Narrative

1 message

**Amy Frank** <afrank@arcadiaed.com> Fri, Jan 16, 2026 at 9:00 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>, Joy Lambrecht <jlambrecht@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>, Ben Lindquist <blindquist@arcadiaed.com>

Zach --

Along with the budget, we've realized it would probably be helpful for you to see our working draft of the "budget narrative" as well, so you can see what our thinking was behind some of the numbers.

This is not yet in final form; we welcome your thoughts and feedback and are happy to make any changes.

I hope you have a good weekend!

Amy


**Amy Frank**

Consultant

ARCADIA EDUCATION

**C:** (704) 609-4279

PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com


---

**Budget Narrative 1_16_25.docx**


WILB-ACAD-0824

56K

---

**Zach Wishart** <zachwishart@gmail.com> Sat, Jan 17, 2026 at 9:16 AM
To: Amy Frank <afrank@arcadiaed.com>
Cc: David Denton <ddenton@arcadiaed.com>, Joy Lambrecht <jlambrecht@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>, Ben Lindquist <blindquist@arcadiaed.com>

Amy,

This is great! I love the conservative projections and the thorough narrative.

Just two things from me.

1. I think Two Roads Accounting was trying to delay getting a letter to me because they are nervous about being listed in the application or being associated publicly. Could we make that line a little more vague without referencing them specifically?

2. The land costs are going to be quite a bit higher than projected in the budget narrative. We would be looking for land between 7 and 10 acres in our target service area, which is less than described in the narrative but still more expensive than what is budgeted. There is only one piece of land that meets the location and size criteria currently listed and it is listed as $950,000 for 7.5 acres. Parker says that is high and a better budget is around $100,000 per acre. So, for a land purchase, we are looking at likely somewhere between $700,000 and $1,000.000.

Thank you!

---

**Amy Frank** <afrank@arcadiaed.com> Sat, Jan 17, 2026 at 3:22 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>, Joy Lambrecht <jlambrecht@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>, Ben Lindquist <blindquist@arcadiaed.com>

Thank you, Zach! We appreciate you taking the time to review all this on a weekend.

Your two notes make perfect sense, and I will make those changes in both the workbook and the narrative.

Thanks,
Amy

---

**From:** Zach Wishart <zachwishart@gmail.com>
**Sent:** Saturday, January 17, 2026 9:16 AM
**To:** Amy Frank <afrank@arcadiaed.com>
**Cc:** David Denton <ddenton@arcadiaed.com>; Joy Lambrecht <jlambrecht@arcadiaed.com>; Mary Kathryn Boucher <mboucher@arcadiaed.com>; Ben Lindquist <blindquist@arcadiaed.com>
**Subject:** Re: Budget Narrative

# EXHIBIT 104

Gmail

## Wilberforce Academic Program

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Sun, Jan 18, 2026 at 9:56 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>

Good evening Zach,

We're pleased to share another substantial piece of the application for your review: Questions 18 and 21 in the Curriculum and Instruction section. Question 18 is the academic program overview, and question 21 is the curriculum overview.

We'd love to get your honest feedback and critiques of this section. We're hoping it will spark productive conversation to help us align on core language and framing throughout the application.

Kind regards,
Joy

**Joy Lambrecht**
Academy Operations Consultant

ARCADIA EDUCATION

**C:** (740) 877-2535
PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com

**2 attachments**

**1:18 Draft of #18, #21.docx**
70K

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**
13K

**Zachary Wishart** <zachwishart@gmail.com> Mon, Jan 19, 2026 at 9:44 AM

To: Joy Lambrecht <jlambrecht@arcadiaed.com>
Cc: David Denton <ddenton@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>

Joy,

I apologize, that was a draft of notes I was making last night when I began to read it over it and just realized it sent. I am going to finish reading today but I am so excited about all that I have read about so far!

Zach

On Jan 18, 2026, at 10:18 PM, Zach Wishart <zachwishart@gmail.com> wrote:

Page 5 - 5th grade is left out in the relational learning section. That should be grouped in with the 6th-8th grade description on looping, so 5th-8th grade.

On Sun, Jan 18, 2026 at 9:56 PM Joy Lambrecht <jlambrecht@arcadiaed.com> wrote:

Good evening Zach,

We're pleased to share another substantial piece of the application for your review: Questions 18 and 21 in the Curriculum and Instruction section. Question 18 is the academic program overview, and question 21 is the curriculum overview.

We'd love to get your honest feedback and critiques of this section. We're hoping it will spark productive conversation to help us align on core language and framing throughout the application.

Kind regards,
Joy

**Joy Lambrecht**
Academy Operations Consultant

<img-98829aca-9ec4-40f4-8fae-0d09cb33f440>

---

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Mon, Jan 19, 2026 at 9:48 AM
To: Zachary Wishart <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>

Zach,

No need to apologize! I look forward to receiving your full feedback!

Best,
Joy

**Joy Lambrecht**
Academy Operations Consultant

ARCADIA EDUCATION

**C:** (740) 877-2535
PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**
13K

---

**Zach Wishart** <zachwishart@gmail.com> Mon, Jan 19, 2026 at 12:27 PM
To: Joy Lambrecht <jlambrecht@arcadiaed.com>
Cc: David Denton <ddenton@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>

Joy,

This is phenomenal! I love the consistent and common language that is used throughout. Only two things from me.

1. Page 5 - 5th grade is left out in the relational learning section. That should be grouped in with the 6th-8th grade description on looping, so 5th-8th grade.

2. This is rather small, tiny actually, but under relational learning can we remove the bullet point that says "emphasizing belonging over individualism"? While I understand the premise behind it and agree, it reminded me of Mamdani's speech about the warmth of collectivism.

This is truly fantastic Joy, I am thrilled with it and I am eager to share this with other Wilberforce stakeholders.

Thank you!

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**
13K

---

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Mon, Jan 19, 2026 at 3:14 PM
To: Zach Wishart <zachwishart@gmail.com>

Cc: David Denton <ddenton@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>

Thank you, Zach! I will make both of those edits!

Sincerely,
Joy

**Joy Lambrecht**
Academy Operations Consultant

ARCADIA EDUCATION

**C:** (740) 877-2535
PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**
13K

# EXHIBIT 105

Gmail

# Colquitt Foundation Letter

**Zach Wishart** <zachwishart@gmail.com> Tue, Jan 20, 2026 at 12:41 PM
To: David Denton <ddenton@arcadiaed.com>, Joy Lambrecht <jlambrecht@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>

David, Amy and Joy,

I have attached a letter from the Colquitt Foundation stating their intended donation to Wilberforce.

Thank you!

**2026.01.20 Ltr to Wishart re Wilberforce.pdf**
371K

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Tue, Jan 20, 2026 at 12:44 PM
To: Zach Wishart <zachwishart@gmail.com>, David Denton <ddenton@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>

Zach,

Thank you for sharing! Amy will put those numbers to use!

Best,
Joy

**Joy Lambrecht**
Academy Operations Consultant

ARCADIA EDUCATION

**C:** (740) 877-2535
PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com

img-98829aca-9ec4-40f4-8fae-0d09cb33f440
13K

---

**Zachary Wishart** <zachwishart@gmail.com> Tue, Jan 20, 2026 at 1:03 PM
To: Joy Lambrecht <jlambrecht@arcadiaed.com>

Thank you Joy! Do you expect the full draft to still be sent today?

> On Jan 20, 2026, at 12:44 PM, Joy Lambrecht <jlambrecht@arcadiaed.com> wrote:
>
> Zach,
>
> Thank you for sharing! Amy will put those numbers to use!
>
> Best,
> Joy
>
> **Joy Lambrecht**
> Academy Operations Consultant
>
> <img-98829aca-9ec4-40f4-8fae-0d09cb33f440>
>
> **C:** (740) 877-2535
> PO Box 80041, Phoenix, AZ 85060
>
> www.arcadiaed.com

---

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Tue, Jan 20, 2026 at 1:04 PM
To: Zachary Wishart <zachwishart@gmail.com>

Yes! We will be sending it over this afternoon!

**Joy Lambrecht**
Academy Operations Consultant

ARCADIA EDUCATION

**C:** (740) 877-2535
PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com

---

img-98829aca-9ec4-40f4-8fae-0d09cb33f440
13K

# EXHIBIT 106

App.2143

Gmail

# Wilberforce attachments

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Thu, Jan 22, 2026 at 7:30 AM
To: Zach Wishart <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>

Zach,

Here's a recap the items we'll need to collect from you!

1. Evidence of community engagement (letters of support, copy of the interest form, number of responses, QR code or link to the ad, and any other pieces of evidence you can provide us)
2. Laura Beaman's résumé
3. Proof of nonprofit/tax-exempt status, when possible
4. Letter of insurance coverage
5. Your address, primary phone number, and alternative phone number
6. A digital image of your signature, if you have it

Thank you,
Joy

**Joy Lambrecht**
Academy Operations Consultant

ARCADIA EDUCATION

**C:** (740) 877-2535
PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**
13K

**Zach Wishart** <zachwishart@gmail.com> Thu, Jan 22, 2026 at 11:14 AM
To: Joy Lambrecht <jlambrecht@arcadiaed.com>


WILB-ACAD-0840

Cc: David Denton <ddenton@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>

Joy,

I am working on getting all of this together!

My address: 8840 Keenberg Lane, Knoxville, TN 37931 865-257-6105. I don't have alternative phone number unfortunately.

I don't have a digital image of my signature. Should I just sign, scan back and send you signed copies of what needs to be signed?

Thank you!

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**
13K

---

**Zach Wishart** <zachwishart@gmail.com> Thu, Jan 22, 2026 at 12:32 PM
To: Joy Lambrecht <jlambrecht@arcadiaed.com>
Cc: David Denton <ddenton@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>

Joy,

When I opened the document as a google doc to make edits, it changed the page numbers. I can still go in and make edits but wasn't sure if I should since it re-formatted the original page numbers and had several blank pages at the beginning. As you will see almost all of the changes are just terminology changes.

Here are the revisions!

Page 12: Private options are oversubscribed,
and unaffordable (add: for many without, without the addition of truly universal school choice legislation)

Page 13: "repeatedly cited overcrowding as the reason for conversations around new school construction. In the past 5 years, no new schools have been built in Knox County, despite the increasing population" This isn't correct, once school has been built and two are currently under construction. Two of those are new schools and zones for the district.

Page 13: "A couple of new K-8 schools have recently been approved, but it will be several years before they are ready to open, and they still will not be sufficient for the demand for new seats." One K-8 school is being built that is merging several elementary schools but new seats for middle school.

Pages 25 and 27: Bible for 5-8 Grade will use Foundations Worldview curriculum

Page 35: Change social-emotional learning and behavioral support to just emotional and behavioral support.

Page 36: Remove reference to SEL lessons.

Page 36: Remove Knoxville Inner City Kids reference. While they are a group we will engage after approval, we have not had conversations with them yet.

Page 47: Trade the word 'equity' with 'equal access'.

Page 49: “Letters of Support: Families have submitted letters of support expressing a desire for a school that intentionally cultivates virtue, academic rigor, and a culture of joy and structure—while remaining accessible to a broad range of families.” Families have signed up on our website to receive updates about the school (50 so far!) but those aren’t letters of support.

Page 50: “Public Charter Model: Community concerns about affordability and access solidified the decision to pursue a tuition-free public charter model, ensuring families from a range of socioeconomic backgrounds can access a high-quality, mission-driven education.” Let’s remove the word ‘public’ here. Just Charter Model and ‘tuition-free charter model’.

Page 71 Change Equity, Trauma-Informed Practice and Legal Compliance to Appropriate and Fair Support Practices, Trauma-Informed Practice, and Legal Compliance or some variation of that.

Thank you!

---

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**
13K

---

**Mary Kathryn Boucher** <mboucher@arcadiaed.com> Thu, Jan 22, 2026 at 12:34 PM
To: Zach Wishart <zachwishart@gmail.com>, Joy Lambrecht <jlambrecht@arcadiaed.com>
Cc: David Denton <ddenton@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>

Hi Zach,

I can make you a digital signature if you just want to sign a blank piece of paper, take a picture of it and send the picture over. Then you will always have one! It always came in handy for me when I was a principal.

**Mary Kathryn Boucher**
Consultant
ARCADIA EDUCATION
**C:** (714) 393-9276
PO Box 80041, Phoenix, AZ 85060
www.arcadiaed.com

---

**From:** Zach Wishart <zachwishart@gmail.com>
**Sent:** Thursday, January 22, 2026 9:14 AM
**To:** Joy Lambrecht <jlambrecht@arcadiaed.com>
**Cc:** David Denton <ddenton@arcadiaed.com>; Amy Frank <afrank@arcadiaed.com>; Mary Kathryn Boucher <mboucher@arcadiaed.com>
**Subject:** Re: Wilberforce attachments

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**
13K

---

**Zach Wishart** <zachwishart@gmail.com> Thu, Jan 22, 2026 at 2:43 PM
To: Mary Kathryn Boucher <mboucher@arcadiaed.com>
Cc: Joy Lambrecht <jlambrecht@arcadiaed.com>, David Denton <ddenton@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>

Thank you Mary Kathryn, that is very kind! I will send a signed paper over! Thank you!

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**
13K

# EXHIBIT 107

Gmail

# Today's Wilberforce Meeting

**Zach Wishart** <zachwishart@gmail.com> Thu, Jan 22, 2026 at 2:45 PM
To: Joy Lambrecht <jlambrecht@arcadiaed.com>

Joy,

I don't know why I didn't catch this earlier. We have an in school basketball game and 8th grade recognition night that starts 15 minutes into today's meeting.

I can still hop on for a brief call. I don't have anything from my end but am happy to still be on the call if needed!

Thank you!

---

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Thu, Jan 22, 2026 at 8:43 PM
To: Zach Wishart <zachwishart@gmail.com>

Hi, Zach!

My email's been acting up a little today and I didn't get your note until just a few minutes ago! Apologies for not seeing it before we met! Thanks for joining the call anyway!

Your feedback was very helpful and encouraging! Thank you for reading the document so quickly and attentively.

One week to completion!

Sincerely,
Joy

**Joy Lambrecht**
Academy Operations Consultant

ARCADIA EDUCATION

**C:** (740) 877-2535
PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com

---

img-98829aca-9ec4-40f4-8fae-0d09cb33f440
13K

# EXHIBIT 108

Gmail Zach Wishart <zachwishart@gmail.com>

## Wilberforce Insurance Letter

2 messages

**Zach Wishart** <zachwishart@gmail.com> Fri, Jan 23, 2026 at 3:17 PM
To: Joy Lambrecht <jlambrecht@arcadiaed.com>

Joy,

I have attached an insurance letter to this email.

Thank you!

**Wilberforce Academy of Knoxville - Insurability Letter.pdf**
223K

---

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Fri, Jan 23, 2026 at 3:58 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>

Received! Thanks, Zach!

**Joy Lambrecht**
Academy Operations Consultant

ARCADIA EDUCATION

**C:** (740) 877-2535
PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**
13K

# EXHIBIT 109

Gmail

## Remaining Items

**Zach Wishart** <zachwishart@gmail.com> Thu, Jan 29, 2026 at 11:50 AM
To: Joy Lambrecht <jlambrecht@arcadiaed.com>

Joy,

I have attached an updated letter with minor changes to go in the IRS section. Will you make sure that any identifying information such as credit card numbers or addresses are marked out on the page that showed the transaction to register to organization with the IRS?

I have also included a letter from Clayton Wood with Thrive for community engagement.

Thank you!

---

**2 attachments**

**Wilberforce Letter.pdf**
106K

**ltr.Wishart.2026.pdf**
152K

---

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Thu, Jan 29, 2026 at 11:54 AM
To: Zach Wishart <zachwishart@gmail.com>

Thank you, Zach! Yes, I will do that!

Kind regards,
Joy

**Joy Lambrecht**
Academy Operations Consultant

ARCADIA EDUCATION

**C:** (740) 877-2535
PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com

img-98829aca-9ec4-40f4-8fae-0d09cb33f440
13K

---

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Thu, Jan 29, 2026 at 12:01 PM
To: Zach Wishart <zachwishart@gmail.com>

Zach,

The letter regarding IRS filing says "Generally, if you file Form 1023 within 27 months after the end of the month…" Is this correct, or should it read "days" instead of "months"?

Best,
Joy


**Joy Lambrecht**
Academy Operations Consultant

ARCADIA EDUCATION

**C:** (740) 877-2535
PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com


**From:** Zach Wishart <zachwishart@gmail.com>
**Date:** Thursday, January 29, 2026 at 11:50 AM
**To:** Joy Lambrecht <jlambrecht@arcadiaed.com>
**Subject:** Remaining Items

img-98829aca-9ec4-40f4-8fae-0d09cb33f440
13K

---

**Zach Wishart** <zachwishart@gmail.com> Thu, Jan 29, 2026 at 12:08 PM
To: Joy Lambrecht <jlambrecht@arcadiaed.com>

I just double checked, that is correct!

img-98829aca-9ec4-40f4-8fae-0d09cb33f440

13K

---

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Thu, Jan 29, 2026 at 12:22 PM
To: Zach Wishart <zachwishart@gmail.com>

Ok, thanks!

---

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**
13K

# EXHIBIT 110

App.2157

Gmail

# Wilberforce Application

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Thu, Jan 29, 2026 at 2:32 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>

Zach,

On behalf of the Arcadia team, I'm pleased to deliver Wilberforce Academy's completed charter application! We're grateful for the trust and confidence you bestowed on us, and for the privilege of supporting your work.

If you look over the document and find anything you'd like us to change or correct before submission, please notify us and we will make those changes promptly!

Sincerely,
Joy

**Joy Lambrecht**
Academy Operations Consultant

ARCADIA EDUCATION

**C:** (740) 877-2535
PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com

**3 attachments**

**Charter School Application -- Wilberforce Academy of Knoxville.pdf**
8529K

**Wilberforce Academy of Knoxville -- Attachment 9_ Operating Budget.xlsx**
210K

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**
13K



WILB-ACAD-0853

---

**Zach Wishart** <zachwishart@gmail.com> Thu, Jan 29, 2026 at 2:42 PM
To: Joy Lambrecht <jlambrecht@arcadiaed.com>
Cc: David Denton <ddenton@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>

Joy,

I am thrilled to receive this and I am so thankful for all of the team's work on making this happen. Arcadia is phenomenal! I will keep everyone updated as we move forward and make this school a reality!

Thank you, thank you, thank you!

---

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**
13K

---

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Thu, Jan 29, 2026 at 2:50 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>

You're very welcome, Zach!! It was truly a pleasure. We will wait with bated breath for WAK updates! 🙂

Joy

**Joy Lambrecht**
Academy Operations Consultant

ARCADIA EDUCATION

**C:** (740) 877-2535
PO Box 80041, Phoenix, AZ 85060

www.arcadiaed.com

---

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**
13K

---

**Zach Wishart** <zachwishart@gmail.com> Thu, Jan 29, 2026 at 2:53 PM

To: Joy Lambrecht <jlambrecht@arcadiaed.com>
Cc: David Denton <ddenton@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>

Joy,

One small change, I sent over an updated resume for myself but it looks like it got missed in this. I had some incorrect dates in the previous one and this is a little more expanded.

So sorry!

---

**2 attachments**

**Zach_Wishart_Resume_8.pdf**
116K

**img-98829aca-9ec4-40f4-8fae-0d09cb33f440**
13K

---

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Thu, Jan 29, 2026 at 3:08 PM
To: Zach Wishart <zachwishart@gmail.com>
Cc: David Denton <ddenton@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>

No problem! Here's the corrected version!

---

**Charter School Application -- Wilberforce Academy of Knoxville.pdf**
8578K

# EXHIBIT 111

Gmail Zach Wishart <zachwishart@gmail.com>

# Wilberforce Check-In

**Joy Lambrecht** <jlambrecht@arcadiaed.com> Thu, Jan 29, 2026 at 4:20 PM
To: Zach Wishart <zachwishart@gmail.com>, David Denton <ddenton@arcadiaed.com>, Amy Frank <afrank@arcadiaed.com>, Mary Kathryn Boucher <mboucher@arcadiaed.com>, Courtney Gunn <cgunn@arcadiaed.com>

## Microsoft Teams meeting

**Join:** https://teams.microsoft.com/meet/28192978739375?p=dRhQkOOKLyWJHc2zk7

Meeting ID: 281 929 787 393 75

Passcode: xF3FQ3ux

Need help? | System reference

For organizers: Meeting options

**invite.ics**
5K

# EXHIBIT 112

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

**Request for Production No. 1:**

Documents sufficient to show Arcadia's engagement, retention, or provision of services for Wilberforce, including any agreements, statements of work, proposals, invoices, billing records, and documents Concerning the scope, nature, and timing of Arcadia's work.

**OBJECTION:**

This request is overly broad, unduly burdensome, and disproportionate to the needs of the case. This request seeks documents that are irrelevant and/or will not lead to the discovery of relevant documents, communications, or information. On information and belief, the requested communications are already in Coble Intervenor-Defendants' possession based on prior discovery in this case. Further, the subject materials are readily accessible to the Coble Intervenor-Defendants through other means of discovery without having to subpoena or involve third-party(ies) and/or Arcadia—namely, by serving written discovery on Wilberforce, the plaintiff.

This request contains no qualification for privilege or protected materials. It improperly seeks documents that are protected by the attorney-client privilege and/or the attorney-work product doctrine.

This request is vague and ambiguous. The request asks for "Documents sufficient to show Arcadia's engagement, retention, or provision of services for Wilberforce," but does not define "sufficient," "show," "engagement," "retention," "provision," or "services." The request also asks for "documents Concerning the scope, nature, and timing of Arcadia's work," but "scope," "nature," "timing," and "Arcadia's work" are not defined.

This request is improperly compound. Requesting "Documents sufficient to show Arcadia's engagement, retention, or provision of services for Wilberforce" and "documents Concerning the scope, nature, and timing of Arcadia's work" is a request for at least 6

distinct classes of documents—notwithstanding the insufficient definitions provided, which render the requests vague and ambiguous, as noted above.

Without waiving, forfeiting, and/or in any way conceding any of the foregoing objections, apart from materials protected by privilege(s) and/or the work-product doctrine, including but not limited to ARCADIA007470–ARCADIA007505, Arcadia withholds no documents based on the foregoing objections and responds to this request as follows:

ARCADIA000001–ARCADIA007469.

**Request for Production No. 2:**

All Communications exchanged between Arcadia and Wilberforce Concerning Arcadia's work for Wilberforce.

**OBJECTION:**

This request is overly broad, unduly burdensome, and disproportionate to the needs of the case. This request seeks communications that are irrelevant and/or will not lead to the discovery of relevant documents, communications, or information. On information and belief, the requested communications are already in Coble Intervenor-Defendants' possession based on prior discovery in this case. Further, the subject materials are readily accessible to the Coble Intervenor-Defendants through other means of discovery without having to subpoena or involve third-party(ies) and/or Arcadia—namely, by serving written discovery on Wilberforce, the plaintiff.

This request contains no qualification for privilege or protected materials. It improperly seeks communications that are protected by the attorney-client privilege and/or the attorney-work product doctrine.

This request is vague and ambiguous. "Work" is never defined.

Without waiving, forfeiting, and/or in any way conceding any of the foregoing objections, apart from materials protected by privilege(s) and/or the work-product doctrine,

including but not limited to ARCADIA007470–ARCADIA007505, Arcadia withholds no documents based on the foregoing objections and responds to this request as follows:

ARCADIA000001–ARCADIA007469.

**Request for Production No. 3:**

All Documents and Communications Concerning any work, analysis, research, investigation, advice, findings, opinions, conclusions, recommendations, or deliverables prepared, performed, provided, or considered by Arcadia for Wilberforce.

**OBJECTION:**

This request is overly broad, unduly burdensome, and disproportionate to the needs of the case. This request seeks documents and communications that are irrelevant and/or will not lead to the discovery of relevant documents, communications, or information. On information and belief, the requested documents and communications are already in Coble Intervenor-Defendants' possession based on prior discovery in this case. Further, the subject materials are readily accessible to the Coble Intervenor-Defendants through other means of discovery without having to subpoena or involve third-party(ies) and/or Arcadia—namely, by serving written discovery on Wilberforce, the plaintiff.

This request contains no qualification for privilege or protected materials. It improperly seeks documents and communications that are protected by the attorney-client privilege and/or the attorney-work product doctrine.

This request is vague and ambiguous. The request asks for "Documents and Communications Concerning work, analysis, research, investigation, advice, findings, opinions, conclusions, recommendations, or deliverables prepared, performed, provided, or considered by Arcadia for Wilberforce," but the request does not define "work," "analysis," "research," "investigation," "advice," "findings," "opinions," "conclusions,"

"recommendations," "deliverables," "prepared," "performed," "provided," or "considered."

This request is improperly compound. Requesting "Documents" and "Communications"—distinct classes of materials per the definitions provided—"Concerning work, analysis, research, investigation, advice, findings, opinions, conclusions, recommendations, or deliverables prepared, performed, provided, or considered by Arcadia for Wilberforce" constitutes a request for at least ***80*** distinct classes of materials—notwithstanding the insufficient definitions provided, which render the requests vague and ambiguous, as noted above.

Without waiving, forfeiting, and/or in any way conceding any of the foregoing objections, apart from materials protected by privilege(s) and/or the work-product doctrine, including but not limited to ARCADIA007470–ARCADIA007505, Arcadia withholds no documents based on the foregoing objections and responds to this request as follows:

ARCADIA000001–ARCADIA007469.

**Request for Production No. 4:**

All Documents, data, information, materials, assumptions, inputs, sources, drafts, notes, work papers, analyses, models, summaries, presentations, and other materials received by Arcadia from Wilberforce.

**OBJECTION:**

This request is overly broad, unduly burdensome, and disproportionate to the needs of the case. This request seeks materials that are irrelevant and/or will not lead to the discovery of relevant documents, communications, or information. On information and belief, the requested materials are already in Coble Intervenor-Defendants' possession based on prior discovery in this case. Further, the subject materials are readily accessible to the Coble Intervenor-Defendants through other means of discovery without having to

subpoena or involve third-party(ies) and/or Arcadia—namely, by serving written discovery on Wilberforce, the plaintiff.

This request contains no qualification for privilege or protected materials. It improperly seeks materials that are protected by the attorney-client privilege and/or the attorney-work product doctrine.

This request is vague and ambiguous. The request seeks "data," "information," "materials," "assumptions," "inputs," "sources," "drafts," "notes," "work papers," "analyses," "models," "summaries," "presentations," and "other materials"—but none of those terms are defined.

This request is improperly compound. Requesting "Documents, data, information, materials, assumptions, inputs, sources, drafts, notes, work papers, analyses, models, summaries, presentations, and other materials" is a request for at least 15 distinct classes of materials—notwithstanding the insufficient definitions provided, which render the requests vague and ambiguous, as noted above.

Without waiving, forfeiting, and/or in any way conceding any of the foregoing objections, apart from materials protected by privilege(s) and/or the work-product doctrine, including but not limited to ARCADIA007470–ARCADIA007505, Arcadia withholds no documents based on the foregoing objections and responds to this request as follows:

ARCADIA000001–ARCADIA007469.

# EXHIBIT 113

Gmail

Zach Wishart <zachwishart@gmail.com>

# Wilberforce Property

1 message

**Parker B** <prb101@gmail.com> Sat, Jan 3, 2026 at 6:18 PM
To: zachwishart@gmail.com

Zach,

The budget estimates 80sq ft per student. The last three schools built by Knox County TN have around 100-110 sqft per student and all were elementary schools. So we need to increase the estimated square footage per student.

These three schools cost $193/ft in 2020, $211/ft in 2021, and $303/ft in 2025.

If we use $250/ft and 600 students we are looking at 60,000 sqft and $15,000,000

I use this spreadsheet for investments so it may not be the best for this situation but it will allow you to see how much in rent and/or mortgage payments would be.

The yellow cells are the ones that can be modified.

C57 = cost
F57 = downpayment, which most banks want to be 20% to finance the project.

G5 and G6 are loan rates and terms respectively.

I used a conservative interest rate and a typical commerical term.

With being a religious non-profit I assumed no property taxes.

What you sent me shows a yearly budget of $600,000 for facilities cost. Assuming we could find a lease, which there is currently nothing available, the $600,000 is equal to $10 per foot. This rent rate does not include the remodel costs.

Based on our build costs and comparables for rent rates we should double the budget for facilities.

Now the good news is that the required cash on hand if we get a loan is much lower than if we have to pay cash up front. To show viability, a letter from a bank could be provided to show availablity for the $15M, and then once the loan is in place our yearly cash needs are only the mortgage payments. So…we do not need the $15M up front. Best case scenario we will need 20%…however since this is a new school and the building would be difficult to repurpose I could see a bank requiring more than 20% down.

Thanks

**Wilberforce Academy Model.xls**
91K

# EXHIBIT 114

**Rental Property Analysis**

**SECTION I - DATA**

| | | | |
|---|---|---|---|
| Borrower | Wilberforce Academy | LOAN INFORMATION | |
| Property Address | | Interest Rate | 6.50% |
| Sales Price | $15,000,000.00 | Term of Loan | 20 |
| Current Market Value | $15,000,000.00 | Principal Balance | $12,000,000.00 |
| Number of Units | | | |
| Special Features | | Needed Appraisal | $15,000,000.00 |
| Utilities Provided | | Monthly Payment | ($89,468.78) |

| UNIT # | RENT MONTHLY | TERM | START DATE | SQUARE FOOTAGE | RENT PER FOOT | ANNUAL RENT |
|---|---|---|---|---|---|---|
| | $120,000.00 | | | | #DIV/0! | $1,440,000.00 |
| | $0.00 | | | | #DIV/0! | $0.00 |
| | $0.00 | | | | #DIV/0! | $0.00 |
| | | | | | #DIV/0! | $0.00 |
| | | | | | #DIV/0! | $0.00 |
| | | | | | #DIV/0! | $0.00 |
| | | | | | #DIV/0! | $0.00 |
| | | | | | #DIV/0! | $0.00 |
| | | | | | #DIV/0! | $0.00 |
| | | | | | #DIV/0! | $0.00 |
| CAM | $0.00 | | | | #DIV/0! | $0.00 |
| Totals | $120,000.00 | | | **0.00** | **#DIV/0!** | **1,440,000.00** |

**SECTION II - OPERATING INCOME**

| | | | | | |
|---|---|---|---|---|---|
| Gross Income | | | | | 1,440,000.00 |
| Less: Vacancy/Owner's Space | | | | 0.00% | 0.00 |
| Effective Gross Income (EGI) | | | | | 1,440,000.00 |
| Less : Expenses | County | City | | | |
| Taxes | $0.00 | $0.00 | - | | |
| Insurance | | | 150,000 | | |
| Repairs | | | | | |
| Management | 2.00% | | 28,800 | 0 | |
| Janitorial | | | - | | |
| s Maintenance | | | 25,000 | 0 | |
| ilities Expense | | | 110,000 | 0 | |
| Trash Removal | | | 6,000 | 0 | |
| Other | | | | | |
| ment Reserves | 3.00% | | 43,200 | | |
| otal Expenses | | | 363,000 | | |
| **Net Operating Income (NOI)** | | | | | **1,077,000.00** |

**SECTION III - INVESTMENT ANALYSIS**

| | | | |
|---|---|---|---|
| Over PITI (monthly) | $18,031.22 | Net Operating Income | $1,077,000.00 |
| Net Cash Flow | $281.22 | Debt Service | ($1,073,625.32) |
| Cash on Cash Return | 0.11% | Net Cash Flow | $3,374.68 |
| Cap Rate | 7.18% | Debt Coverage Ratio | 1.00 |

**SECTION IV - FINANCING PACKAGE**

| | | | | |
|---|---|---|---|---|
| Sales Price | $15,000,000.00 | Down Payment | 3000000 | 20.00% |
| Closing Costs | | Paid Closing Costs | | |
| Cash-out at Closing | $0.00 | | | |
| **DUE AT CLOSING** | **$15,000,000.00** | **Principal Balance** | | **$12,000,000.00** |




| | | |
|---|---|---|
| 1 | 18.16 | |
| 2 | 16.43 | 1.73 |
| 3 | 14.82 | 1.61 |
| 4 | 13.33 | 1.49 |

**One Year**

| | |
|---|---|
| Market Value | $15,000,000.00 |
| Loan Balance | $11,697,467.16 |
| Owners' Equity | $3,302,532.84 |
| 80% Cashout | $302,532.84 |
| Return on Equity | 10.08% |

**Five Year**

| | |
|---|---|
| Market Value | $15,000,000.00 |
| Loan Balance | $10,304,348.49 |
| Owners' Equity | $4,695,651.51 |
| 80% Cashout | $1,695,651.51 |
| Return on Equity | 11.30% |

**Three Year**

| | |
|---|---|
| Market Value | $15,000,000.00 |
| Loan Balance | $11,059,823.03 |
| Owners' Equity | $3,940,176.97 |
| 80% Cashout | $940,176.97 |
| Return on Equity | 10.45% |

**Ten Year**

| | |
|---|---|
| Market Value | $15,000,000.00 |
| Loan Balance | $7,925,917.95 |
| Owners' Equity | $7,074,082.05 |
| 80% Cashout | $4,074,082.05 |
| Return on Equity | 13.58% |

# Mortgage Amortization

| Inputs | |
|---|---|
| Loan principal amount | ######### |
| Annual interest rate | 6.500% |
| Loan period in years | 20 |
| Base year of loan | 2026 |
| Base month of loan | feb |

| Key Figures | |
|---|---|
| Annual loan payments | $1,073,625.36 |
| Monthly payments | $89,468.78 |
| Interest in first calendar year | $707,590.59 |
| Interest over term of loan | $9,472,507.20 |
| Sum of all payments | $21,472,507.20 |

**Payments in First 12 Months**

| Year | Month | Beginning Balance | Payment | Principal | Interest | Cumulative Principal | Cumulative Interest | Ending Balance |
|---|---|---|---|---|---|---|---|---|
| | Feb | $12,000,000.00 | $89,468.78 | $24,468.78 | $65,000.00 | $24,468.78 | $65,000.00 | $11,975,531.22 |
| | Mar | $11,975,531.22 | $89,468.78 | $24,601.32 | $64,867.46 | $49,070.10 | $129,867.46 | $11,950,929.90 |
| | Apr | $11,950,929.90 | $89,468.78 | $24,734.58 | $64,734.20 | $73,804.68 | $194,601.66 | $11,926,195.32 |
| | May | $11,926,195.32 | $89,468.78 | $24,868.56 | $64,600.22 | $98,673.24 | $259,201.88 | $11,901,326.76 |
| | Jun | $11,901,326.76 | $89,468.78 | $25,003.26 | $64,465.52 | $123,676.50 | $323,667.40 | $11,876,323.50 |
| | Jul | $11,876,323.50 | $89,468.78 | $25,138.69 | $64,330.09 | $148,815.19 | $387,997.49 | $11,851,184.81 |
| | Aug | $11,851,184.81 | $89,468.78 | $25,274.86 | $64,193.92 | $174,090.05 | $452,191.41 | $11,825,909.95 |
| | Sep | $11,825,909.95 | $89,468.78 | $25,411.77 | $64,057.01 | $199,501.82 | $516,248.42 | $11,800,498.18 |
| | Oct | $11,800,498.18 | $89,468.78 | $25,549.41 | $63,919.37 | $225,051.23 | $580,167.79 | $11,774,948.77 |
| | Nov | $11,774,948.77 | $89,468.78 | $25,687.81 | $63,780.97 | $250,739.04 | $643,948.76 | $11,749,260.96 |
| | Dec | $11,749,260.96 | $89,468.78 | $25,826.95 | $63,641.83 | $276,565.99 | $707,590.59 | $11,723,434.01 |
| 2027 | Jan | $11,723,434.01 | $89,468.78 | $25,966.85 | $63,501.93 | $302,532.84 | $771,092.52 | $11,697,467.16 |

**Yearly Schedule of Balances and Payments**

| Year | Beginning Balance | Payment | Principal | Interest | Cumulative Principal | Cumulative Interest | Ending Balance |
|---|---|---|---|---|---|---|---|
| 2027 | $11,723,434.01 | $1,073,625.36 | $321,054.40 | $752,570.96 | $597,620.39 | $1,460,161.55 | $11,402,379.61 |
| 2028 | $11,402,379.61 | $1,073,625.36 | $342,556.58 | $731,068.78 | $940,176.97 | $2,191,230.33 | $11,059,823.03 |
| 2029 | $11,059,823.03 | $1,073,625.36 | $365,498.23 | $708,127.13 | $1,305,675.19 | $2,899,357.47 | $10,694,324.81 |
| 2030 | $10,694,324.81 | $1,073,625.36 | $389,976.32 | $683,649.04 | $1,695,651.51 | $3,583,006.51 | $10,304,348.49 |
| 2031 | $10,304,348.49 | $1,073,625.36 | $416,093.76 | $657,531.60 | $2,111,745.27 | $4,240,538.11 | $9,888,254.73 |
| 2032 | $9,888,254.73 | $1,073,625.36 | $443,960.32 | $629,665.04 | $2,555,705.59 | $4,870,203.15 | $9,444,294.41 |
| 2033 | $9,444,294.41 | $1,073,625.36 | $473,693.17 | $599,932.19 | $3,029,398.76 | $5,470,135.34 | $8,970,601.24 |
| 2034 | $8,970,601.24 | $1,073,625.36 | $505,417.28 | $568,208.08 | $3,534,816.04 | $6,038,343.42 | $8,465,183.96 |
| 2035 | $8,465,183.96 | $1,073,625.36 | $539,266.01 | $534,359.35 | $4,074,082.05 | $6,572,702.77 | $7,925,917.95 |
| 2036 | $7,925,917.95 | $1,073,625.36 | $575,381.65 | $498,243.71 | $4,649,463.70 | $7,070,946.48 | $7,350,536.30 |
| 2037 | $7,350,536.30 | $1,073,625.36 | $613,916.03 | $459,709.33 | $5,263,379.73 | $7,530,655.81 | $6,736,620.27 |
| 2038 | $6,736,620.27 | $1,073,625.36 | $655,031.12 | $418,594.24 | $5,918,410.85 | $7,949,250.05 | $6,081,589.15 |
| 2039 | $6,081,589.15 | $1,073,625.36 | $698,899.77 | $374,725.59 | $6,617,310.62 | $8,323,975.64 | $5,382,689.38 |
| 2040 | $5,382,689.38 | $1,073,625.36 | $745,706.38 | $327,918.98 | $7,363,017.00 | $8,651,894.62 | $4,636,983.00 |
| 2041 | $4,636,983.00 | $1,073,625.36 | $795,647.72 | $277,977.64 | $8,158,664.72 | $8,929,872.26 | $3,841,335.28 |
| 2042 | $3,841,335.28 | $1,073,625.36 | $848,933.72 | $224,691.64 | $9,007,598.44 | $9,154,563.90 | $2,992,401.56 |
| 2043 | $2,992,401.56 | $1,073,625.36 | $905,788.38 | $167,836.98 | $9,913,386.82 | $9,322,400.88 | $2,086,613.18 |
| 2044 | $2,086,613.18 | $1,073,625.36 | $966,450.71 | $107,174.65 | $10,879,837.53 | $9,429,575.53 | $1,120,162.47 |
| 2045 | $1,120,162.47 | $1,073,625.36 | $1,031,175.70 | $42,449.66 | $11,911,013.23 | $9,472,025.19 | $88,986.77 |
| 2046 | $88,986.77 | $89,468.78 | $88,986.77 | $482.01 | $12,000,000.00 | $9,472,507.20 | $0.00 |

| | |
|---|---|
| Current Market Value | ########### |
| Annual Appreciation | 0.00% |

| Year | Future Property Value | Future Loan Balance | Spread/Equity |
|---|---|---|---|
| 1 | $15,000,000.00 | $11,697,467.16 | ########### |
| 2 | $15,000,000.00 | $11,402,379.61 | ########### |
| 3 | $15,000,000.00 | $11,059,823.03 | ########### |
| 4 | $15,000,000.00 | $10,694,324.81 | ########### |
| 5 | $15,000,000.00 | $10,304,348.49 | ########### |
| 6 | $15,000,000.00 | $9,888,254.73 | ########### |
| 7 | $15,000,000.00 | $9,444,294.41 | ########### |
| 8 | $15,000,000.00 | $8,970,601.24 | ########### |
| 9 | $15,000,000.00 | $8,465,183.96 | ########### |
| 10 | $15,000,000.00 | $7,925,917.95 | ########### |
| 11 | $15,000,000.00 | $7,350,536.30 | ########### |
| 12 | $15,000,000.00 | $6,736,620.27 | ########### |
| 13 | $15,000,000.00 | $6,081,589.15 | ########### |
| 14 | $15,000,000.00 | $5,382,689.38 | ########### |
| 15 | $15,000,000.00 | $4,636,983.00 | ########### |
| 16 | $15,000,000.00 | $3,841,335.28 | ########### |
| 17 | $15,000,000.00 | $2,992,401.56 | ########### |
| 18 | $15,000,000.00 | $2,086,613.18 | ########### |
| 19 | $15,000,000.00 | $1,120,162.47 | ########### |
| 20 | $15,000,000.00 | $88,986.77 | ########### |

# EXHIBIT 115

BILL LEE
GOVERNOR
STATE OF TENNESSEE

August 11, 2026

Mr. Zach Wishart
8840 Keenberg Lane
Knoxville, TN 37931-3767

Dear Zach,

Today, it is my distinct pleasure to confirm your appointment to the Advisory Council for the Education of Students With Disabilities as a representative of Tennessee Private Schools. In the thorough, aggressive search for candidates, your individual characteristics and professional qualifications were exceptional among the number of nominees who expressed interest. This appointment is effective immediately and runs through June 5, 2029.

I consider it very important to ensure that Tennessee's boards and commissions are filled with the most dedicated and qualified citizens. I believe that your participation is certain to leave a positive impact on this board and the work it does.

Thank you for your interest in state government and for your willingness to serve your fellow citizens of Tennessee in this way. Please accept my very best wishes. I look forward to working with you and all Tennesseans to make our great state an even better place to live, work, and raise a family.

Warmest regards,

Bill Lee

Bill Lee
Governor

# EXHIBIT 116

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION (KNOXVILLE)

Case No. 3:25-cv-584 (CEA)(DCP)

THE WILBERFORCE ACADEMY OF KNOXVILLE,

Plaintiff,

v.

KNOX COUNTY BOARD OF EDUCATION and JOHN BUTLER, ANNE TEMPLETON, PATRICIA FONTENOT-RIDLEY, KATHERINE BIKE, LAUREN MORGAN, BETSY HENDERSON, STEVE TRIPLETT, TRAVIS WRIGHT, and KRISTI KRISTY, all in their official capacities as members of the Knox County School Board of Education,

Defendants,

REV. DR. RICHARD COBLE, AMANDA COLLINS, KERRY DOOLEY, ELIZABETH PORTER, and REV. KATINA SHARP,

Intervenor-Defendants,

ADRIENNE CARROLL, CIARA CRUTCHER, TIFFANY NASH, EVELYN HENDERSON, SHAKEITHIA RICE, and HOLLY SLATER,

Intervenor-Defendants.

VIDEOGRAPHED DEPOSITION OF ZACHARY WISHART

JUNE 4, 2026



APPEARANCES:

FOR WILBERFORCE ACADEMY OF KNOXVILLE:

Cameron T. Norris
Ryan M. Proctor
CONSOVOY McCARTHY, PLLC
1600 Wilson Road, Suite 700
Arlington, Virginia 22209
(703)243-9423

FOR INTERVENOR-DEFENDANTS REV. DR. RICHARD COBLE, AMANDA COLLINS, KERRY DOOLEY, ELIZABETH PORTER, and REV. DR. KATINA SHARP:

Mitchell E. Feldman
Wanqian Zhang
MORRISON FOERSTER, LLP
200 Clarendon Street, Floor 21
Boston, MA 02116
(617)648-4759

FOR DEFENDANTS KNOX COUNTY:

Jessica Jernigan-Johnson
DEPUTY LAW DIRECTOR
400 Main Street, Suite 612
Knoxville, Tennessee 37902
(865)215-2327

FOR INTERVENOR-DEFENDANTS ADRIENNE CARROLL, et al:

David D. Ayliffe
Thomas H. Jarvis
BAKER DONELSON, P.C.
265 Brookview Centre Way, Suite 600
Knoxville, Tennessee 37919
(865)549-7132



APPEARANCES CONTINUED:

Luke Anderson
Americans United for Separation of Church and State
1310 L Street NW, Suite 200
Washington, DC 20005
(202)466-3234

Sophia Mire Hill
Southern Poverty Law Center
150 E. Ponce de Leon, Suite 340
Decatur, Georgia 30030
(504)457-1553

ALSO PRESENT:

David Jenkins, Videographer



INDEX OF EXAMINATIONS


| | Page No. |
|---|---|
| By Mr. Feldman | 8 |
| By Mr. Ayliffe | 323 |
| By Ms. Jernigan-Johnson | 339 |
| By Mr. Norris | 346 |
| By Mr. Feldman | 366 |


INDEX OF EXHIBITS


| Exhibit | | Page No. |
|---|---|---|
| CID-1 | Notice of Deposition | 12 |
| CID-2 | Application Documents; WILB-ACAD-0280 - WILB-ACAD-0347 | 39 |
| CID-3 | Letter of Intent to Apply to Open a Tennessee Public Charter School (Exhibit B) | 64 |
| CID-4 | Emails regarding Wilberforce Academy Letter of Intent (Exhibit 2) | 83 |
| CID-5 | Supplemental Declaration of Zachary Wishart | 99 |
| CID-6 | Knox County Schools Organizational Chart | 108 |
| CID-7 | Resolution (Exhibit 3) | 115 |

Page 165

BY MR. FELDMAN:
Q. Take your time. When you're ready.
A. Okay.
Q. What is this document?
A. This is an email from Parker Bartholomew to me.
Q. And I think we were just talking about this, but the first line says, "The last three schools built by Knox County, Tennessee, have around 100 to 110 square feet per student and all were elementary schools."
Did I read that right?
A. Yes.
Q. Okay.
And he goes on to say, "These three schools cost $193 a foot in 2020, $211 a foot in 2021, and $303 a foot in 2025."
Do you see that?
A. Yes.
Q. And is it fair to say that Mr. Bartholomew was talking about square feet?
A. Yes.
Q. And he says, "If we use $250 per square foot and 600 students, we're looking at 60,000 square feet and $15 million." Right?

Page 166

A. Yes.
Q. Does Wilberforce currently have a loan for $15 million?
A. No.
Q. Has Wilberforce sought a loan for $15 million?
A. We don't have an approved charter application.
Q. Have you had conversations with any banks about whether they would be willing to loan $15 million?
A. So my understanding is that banks would engage in conversations but only once that there is an approved charter application.
Q. What is that understanding based on?
A. I believe that that -- I'm not certain, but I believe that I had a conversation with Arcadia about that at one point.
Q. Was that conversation in writing?
A. Probably over Zoom. We engaged in frequent and long Zoom calls.
Q. Who gave you that advice?
A. It might have been David Denton. I'm not certain.
Q. But you never sought out from a bank

Page 167

on whether they would be willing to loan $15 million, right?
A. No.
Q. And so according to Mr. Bartholomew, as we discussed, he's estimating around 60,000 square feet, right?
A. In his modeling of 600 students, yes.
Q. Well, will Wilberforce ever reach 600 students?
A. Our new enrollment in the application is 693.
Q. 693, right?
A. Yes.
Q. Okay.
So based on that enrollment figure, 60,000 is slightly below what Wilberforce would need, right?
A. Correct.
Q. Okay. And then down below -- sorry. Scratch that.
Beyond seeking a loan for $15 million, let's just talk about lines of credit. Does Wilberforce have any other lines of credit with a bank?

Page 168

A. No.
Q. Has Wilberforce sought any lines of credit with a bank?
A. No.
Q. No other forms of loans?
A. No.
Q. Okay.
Besides Mr. Colquitt's funding Wilberforce, does Wilberforce have any other funding committed to Wilberforce?
A. No committed funding.
Q. How about expected funding?
A. I think it's reasonable to say that there's a lot of people that would love to contribute to a high quality school that provides a free Christian education. So there's a lot of donor prospects.
Q. Have you spoken with those donor prospects?
A. No.
Q. There's nothing in writing from those donor prospects?
A. No.
Q. And we just talked about the Colquitt Foundation has committed up to $2.2 million

Q. Okay. And those special education teachers would work within the school, right?
A. Correct.
Q. And how about psychologists? Does that person need any special type of license?
A. Yes, there's an education psychologist's license in the state of Tennessee.
Q. And would that person work within the school?
A. So we have two options there. We can either hire that person internally or we could contract with the district or another service provider. So like Emerald contracts through Riverview Health for their education psychologists.
Q. Okay. But Wilberforce would need to have at least some option for a licensed psychologist, right?
A. Yes.
Q. Okay. We can set this aside for now.
So you understand that Wilberforce is projecting approximately 10 percent of students with disabilities, right?
A. Yes.
///



Q. Okay. So for year one, under the minimum enrollment, that would be about 24 students, right?
MR. NORRIS: What page was that again? Was it 860?
MR. FELDMAN: Yeah, it's 860. It's on the fourth page, Student Enrollment Summary Minimum chart.
THE WITNESS: Yes.
BY MR. FELDMAN:
Q. All right.
If you turn one page over. See at the top here, it says, personal accounts minimum? Personnel Accounts Minimum, excuse me.
A. Yes.
Q. And if you go down to instructional staff. Do you see that?
A. Yes.
Q. And we have teachers, special education. Do you see that?
A. Yes.
Q. How many special education teachers are listed in year one?
A. Zero are listed in year one.
Q. Okay. And how about aides in year



one?
A. Zero.
Q. Therapists and counselors, that's also zero?
A. Yes, zero.
Q. Okay. So among the school, who will be responsible for maintaining the 24 students' IEPs?
A. That will be the director of specialized services.
Q. Okay. Will the director of specialized services also be responsible for educating the 24 students?
A. Yes. In the early years of the school, the director of specialized services will be both the instructor as well as the, you know, program lead.
Q. Okay. And then let's look down. You see noninstructional staff: Nurse, year one, zero. Do you see that?
A. Yes.
Q. So if students with IEPs that require medication administration enroll in the school, how will Wilberforce administer those medications with no nurse on staff?



A. That's a great question. So we'll be in compliance with all IEPs. So if there are specific requirements that a student has one-on-one support that cannot be provided by an intervention level special education teacher, those services would be provided for that student. We would in compliance with IEPs.
A lot of times you will have administration aid in the administration of medications in smaller schools. Even in Knox County Schools, until rather recently, a lot of these schools did not have -- Knox County Schools didn't all even have full-time nurses at their -- at their schools. But we'll continue to comply with all laws concerning individualized education plans and 504 plans that may include medical staff.
Q. But that would require special licensing from a member of the administration staff, right?
A. What would require special licensing?
Q. Administering medications, right?
A. I'm not sure.
Q. Okay.
And so right now it's your testimony

Page 193

that year one, with 24 students with disabilities, you'll have a single instructor facilitating the IEPs for all 24 of those students?

MR. NORRIS: Objection. Mischaracterizes the testimony.

THE WITNESS: So I think one thing -- one important context is that Wilberforce will follow what the special education advocates have named as best practices, which is an inclusion education. So all of our students will primarily be educated in the traditional classroom environment, and then intervention services will be provided for those students as identified in their IEP.

So what you won't have is a student with an IEP -- or a teacher with 24 students with an IEP in the same classroom all at once. You may have a teacher -- a student's IEP could say that, you know, they have 15 minutes of small group reading instruction three times per week. Right? So it would be a busy schedule for that teacher, for the director in year one, but a caseload of 24 students for a special education teacher is not an abnormally

Page 194

high caseload, including in Knox County Schools.

BY MR. FELDMAN:

Q. But you could theoretically have a student that requires one-on-one instruction all day, right?

A. So, once again, best practices go for inclusion as much as possible. And so some of that may look like, you know, a teaching assistant that goes into -- does push in with a kid, you know, in class for part of the day.

So as I said before, these are our -- charter applications are meant to give the overall program design. But pivots and needs arise, right? And so we are firmly committed to being a model special education school and making sure that every kid is receiving a great education and we are in full compliance with their IEP.

Q. So if you have a student who transfers into Wilberforce with an IEP, you're aware that it's your obligation under state law to provide comparable services, right?

A. Correct.

Q. And if that IEP requires one-on-one instruction, full day of school, you will provide

Page 195

that, right?

A. Correct.

Q. And so that will require you to hire additional staff, right?

A. Yes.

Q. So in order to comply under the scenario where you would have to provide comparable services, you would have to reallocate budget. You would have to add additional budget, right?

A. Correct.

Q. Is there a line item on the minimum enrollment budget for additional needs related to special education?

A. Sorry, say again.

Q. Is there a line item on the minimum budget that accounts for additional educator needs to provide special education services?

A. No.

MR. NORRIS: Mitch, do you want to go through like this document and then take a break? Does that make sense to you?

MR. FELDMAN: Yeah. I'm going to be on this document for quite a bit, so why don't we take a break just in a few minutes.

MR. NORRIS: Okay.

Page 196

BY MR. FELDMAN:

Q. Was the board of Wilberforce presented with an analysis of the risks of hiring no special education teachers?

A. Well, I think that's inaccurate to say that we're not hiring any special education teachers. We have a director of specialized services who will function in providing those special education services year one.

Q. And will that person also provide English Language Learning services as well?

A. It depends on the certification of the individual.

Q. Okay. So you might have to hire another person as well?

A. Correct.

Q. Okay.

Was the board presented with an analysis of only hiring a director of special education services as opposed to separate special education teachers?

A. No. These are based on the recommendations of our consulting firm.

Q. Did anyone raise a concern about not hiring special education teachers besides the

Page 209

their tier and their individual needs.
BY MR. FELDMAN:
Q. For at least some students, it would be required to have ESL services for all core content areas, right?
MR. NORRIS: Same objections.
THE WITNESS: The same with special-ed in that students are in the -- in the central classroom throughout the day and will receive pull-out services, so they're not excluded from the rest of their peers for the entirety of the day.
BY MR. FELDMAN:
Q. So there's no scenario where you would have a student who would require ESL instruction for all core content areas?
A. So under inclusion practices, no, I don't believe so. We would have students that participate with their peers in the traditional classroom as well and will receive pull-out services for ELL instruction.
Q. Do you specifically know whether that complies with state and federal law about providing ESL services to English Language Learners?
MR. NORRIS: Objection, form.

Page 210

Objection, calls for legal conclusions.
THE WITNESS: I -- I believe that it is compliant.
BY MR. FELDMAN:
Q. What is that belief based off of?
A. My belief is based on the fact that practices of even Knox County Schools did not have comprehensive ELL classrooms. Students even in Knox County are part of the traditional classroom, and then receive pull-out services as their individual plans state that they need to.
Q. If there's an individual plan that requires ESL education for all core content areas, would Wilberforce have the capability to administer that individual plan?
A. If we were given a plan that was required to do that, then we would -- we would make that happen. However, I don't think that an educator is going to tell you that there are scenarios that even students who don't have a base knowledge of the English language still are part of their, you know, standard classroom as well throughout the day. So there are not -- yeah.
Q. But -- yeah, so but if you were given an individual plan that required that, you

Page 211

would comply with that individual plan, right?
A. Yes, just as we would comply with special-ed. You know, we'll be compliant with special-ed, but -- not "but." We will be compliant with special-ed. I don't think that -- in my experience also working in public schools with a school that had a high ELL population, that students are in an exclusive environment to only ELL students for the majority or even half of the day.
Q. Remind me, what school was that?
A. Mooreland Heights Elementary.
Q. When was that?
A. 2017 to 2019.
Q. Okay. Were you responsible for the ELL program?
A. No.
Q. Were you responsible for the special-ed services program?
A. No.
Q. And again my question is, it's at least possible that you would encounter a student with an individualized plan that would require them to have ESL services for all core academic areas, right?
A. Sure.

Page 212

Q. And Wilberforce would comply with that, right?
A. We would most definitely comply.
Q. But Wilberforce would likely need to allocate additional budgeting towards English Language teachers, right?
A. If that there was a need where the student had to have a full-day service, then yes.
Q. Wilberforce hasn't signed a -- scratch that.
Switching topics, just so that I can flag for you to Wilberforce's proposed facilities. Wilberforce hasn't signed a binding written contract securing a facility, right?
MR. NORRIS: Objection to the extent that calls for a legal conclusion.
THE WITNESS: Correct.
BY MR. FELDMAN:
Q. Wilberforce hasn't obtained any form of right to occupy any building for the school, right?
MR. NORRIS: Objection, vague, and a legal objection.
THE WITNESS: Correct. But we -- no charter school is going to engage in a

contract without already an approved charter application.

BY MR. FELDMAN:

Q. Okay. But you -- Wilberforce has made an effort to identify potential locations, right?

A. Yes.

Q. And Wilberforce believes that those locations are actual viable locations for the school?

A. So, yes, there are a couple of options. Yes, the State of Tennessee actually passed legislation that would require for underutilized spaces to -- underutilized school buildings to also be permitted to use -- for charter schools to use underutilized public school buildings as well. And so had we had an approval, one additional temporary plan would have been to -- if the opportunity arose, to share space with a current Knox County school.

Q. Have you identified any of those underutilized spaces?

A. Knox County was not -- in their report about the underutilized facilities, they were not -- they didn't include all facilities in their



report that they have to give to the State. But they did identify that Cedar Bluff Middle School was underutilized. But to the extent of how many classrooms and what kind of the day-to-day operation of that would look like was unfounded. We weren't sure yet. So that was also on the table as a possibility.

Q. It was a possibility, but you didn't include it in your charter application because you didn't have enough information, right?

A. Correct.

MR. NORRIS: Objection. Form.

Sorry. Objection to form.

Sorry, I interrupted the witness.

THE WITNESS: No, you're good.

Correct. It would have been a bit premature and something that we could have negotiated with the district or discussed with the district upon approval of the application before we were to settle on another space.

BY MR. FELDMAN:

Q. Okay. And sitting here today, the only potential space under that program is Cedar Bluff Middle School, right?

A. No. In our -- there are a number



spaces on that report that showed that there are a number of buildings in Knox County Schools that are underutilized, including some that only used, you know, 25 to 30 percent of the space.

One of our commitments, and the reason Cedar Bluff is identified, is proximity to a large portion of Knox County and transportation to where a lot of people could get to the Cedar Bluff location from across town, downtown, and north and west Knoxville, all around. And so had the application been approved, we would have engaged in those conversations with the district to see what might be underutilized that we could use.

The district left off on their report Cedar Bluff Preschool, which is a former elementary school, which sits in front of Cedar Bluff Middle School and High School.

Interestingly, they left it off despite the fact that the entire top floor of that building is not utilized for education space, which is required by state law. And so that building would probably be a prospect for us to look at, at least for temporary space as well.

Q. But none of those spaces are included in your charter application, right?



A. Correct.

Q. The one that you intended to submit to the Knox County Board of Education, right?

A. Correct.

Q. Okay. And during the drafting process you identified a handful of proposed locations, right?

A. Yes.

MR. FELDMAN: Wan, can you hand up Tab 32, please?

(Exhibit CID-14, 1/7/2026 Email from Zachary Wishart to the Arcadia Team; WILB-ACAD-0795 - 0796, marked for identification.)

BY MR. FELDMAN:

Q. What is this document, Mr. Wishart?

A. This is an email to the Arcadia Consulting Group.

Q. And this is dated January 7, 2026, right?

A. Yes.

Q. And this email concerns potential locations for Wilberforce Academy, correct?

A. Yes.

Q. You identified a few locations in

A. No.
Q. Does the Bible teach that women are prohibited from exercising over men?
A. In what capacity?
Q. How about in the religious community?
MR. NORRIS: Object to the extent he's not a biblical scholar. You can ask about his own views or Wilberforce's own views.
You can answer.
THE WITNESS: I don't foresee as a nondenominational school when we would engage in conversations comparing complementarian versus egalitarian beliefs in the church.
BY MR. FELDMAN:
Q. So that's a no?
A. Yeah, that's a no.
Q. Will women be allowed to hold positions of power over men at Wilberforce?
MR. NORRIS: Objection. Vague as to "positions of power."
THE WITNESS: Absolutely. I mean, yes, including if I was incapacitated as school director.



BY MR. FELDMAN:
Q. The Bible teaches that God created the earth in six literal days, right?
A. Yes.
MR. NORRIS: Objection, foundation. Objection, not a biblical scholar. You're not asking about his own beliefs -- or, sorry, the nonprofit's beliefs.
BY MR. FELDMAN:
Q. Will students at Wilberforce learn that God created the earth in six literal days?
A. Yes.
Q. Will students learn of any other form of science that contradicts that?
A. Students will be taught the different perspectives in science, yes.
Q. Will students be taught that the Bible is objective fact?
A. Yes.
Q. Will students be taught that the Bible is fact over creationism, for example?
MR. NORRIS: Objection. "Creationism" is vague.
THE WITNESS: Will we teach creationism as fact?



BY MR. FELDMAN:
Q. Excuse me. Yes.
A. Yes.
Q. Will students at Wilberforce ever use the Bible as a standalone source of historical fact?
A. Yes.
Q. So students at Wilberforce will be taught perspectives of science, but taught that the Bible is the only true factual statement of history, right?
MR. NORRIS: Objection. Form.
THE WITNESS: Yes.
BY MR. FELDMAN:
Q. Wilberforce intends to use readings from Christian authors like R.C. Sproul, C.S. Lewis, John Piper, and Kevin Deon, right?
A. Yes.
Q. How did Wilberforce choose those authors?
A. During the process of forming the application, I shared with Arcadia, you know, some authors that I have found to be high quality authors that I would like for the kids to read.
Q. And those authors have each



expressed the religious view that women should not exercise authority over men, right?
A. Each of those individuals would be classified as complementarian, which would say that God has ordained the office of pastor, pastor elder for men, but that doesn't include positions as CEO and President of the United States and anything else.
Q. Will students be taught complementarianism?
A. No.
MR. FELDMAN: Sorry to ask again, I am closing in pretty quickly on the end. I just want to organize my thoughts and figure out what else we need to go over.
MR. NORRIS: Would you like a break?
MR. FELDMAN: Yeah, can we just do another quick break?
MR. NORRIS: Yeah. Is five enough, or do you want ten?
MR. FELDMAN: Let's do ten.
VIDEOGRAPHER: We are off record at 5:10.
(Whereupon, a recess took place.)
VIDEOGRAPHER: We are back on record

Page 373

MR. FELDMAN: Okay. No further questions.

MR. NORRIS: Okay. Great.

MR. FELDMAN: We're going to leave it open. You objected and instructed the witness not to answer on a few items, so we're going to leave the record open.

MR. NORRIS: Okay, we object to it being held open or this deposition occurring on any other day or time.

VIDEOGRAPHER: We are off record. The time is 7:29 p.m.

(Whereupon, the deposition suspended at 7:29 p.m.)

Page 374

C E R T I F I C A T E

STATE OF TENNESSEE:
COUNTY OF KNOX:

I, LORA R. BOATMAN, Licensed Court Reporter, in and for the State of Tennessee, do hereby certify that the above videographed deposition was reported by me and that the foregoing pages of the transcript is a true and accurate record to the best of my knowledge, skills, and ability.

I further certify that I am not related to nor an employee of counsel or any of the parties to the action, nor am I in any way financially interested in the outcome of this case.

I further certify that I am licensed by the State of Tennessee as a Licensed Court Reporter as evidenced by the LCR number and expiration date following my name below.

IN WITNESS WHEREOF, I have hereunto set my hand this the 9th day of June, 2026.



______________________________
LORA R. BOATMAN, LCR No. 106.
Expiration Date: 6/30/2028.

Page 375

ERRATA SHEET

Deposition of: ______________________
Date Taken: ______________________

Page No.____ Line No. ____ Change to:_____________
Reason for change:________________________________
Page No.____ Line No. ____ Change to:_____________
Reason for change: _______________________________
Page No.____ Line No. ____ Change to:_____________
Reason for change:________________________________
Page No.____ Line No. ____ Change to:_____________
Reason for change:________________________________
Page No.____ Line No. ____ Change to:_____________
Reason for change: _______________________________
Page No.____ Line No. ____ Change to:_____________
Reason for change:________________________________
Page No.____ Line No. ____ Change to:_____________
Reason for change: _______________________________
Page No.____ Line No. ____ Change to:_____________
Reason for change: _______________________________
Page No.____ Line No. ____ Change to:_____________
Reason for change:________________________________

SIGNATURE:_________________________ Date:_________
PRINT WITNESS NAME:_______________________________

Page 376

ERRATA SHEET

Page No.____ Line No. ____ Change to:_____________
Reason for change:________________________________
Page No.____ Line No. ____ Change to:_____________
Reason for change: _______________________________
Page No.____ Line No. ____ Change to:_____________
Reason for change:________________________________
Page No.____ Line No. ____ Change to:_____________
Reason for change:________________________________
Page No.____ Line No. ____ Change to:_____________
Reason for change: _______________________________
Page No.____ Line No. ____ Change to:_____________
Reason for change:________________________________
Page No.____ Line No. ____ Change to:_____________
Reason for change: _______________________________
Page No.____ Line No. ____ Change to:_____________
Reason for change: _______________________________
Page No.____ Line No. ____ Change to:_____________
Reason for change:________________________________
Page No.____ Line No. ____ Change to:_____________
Reason for change: _______________________________

SIGNATURE:_________________________ Date:_________
PRINT WITNESS NAME:_______________________________

# EXHIBIT 117

# When you are laboring for others, let it be with the same zeal as if it were for yourself. -Confucius



## Our Story

Nashville Classical Charter School began as the brainstorm of dedicated community activists and experienced urban educators. As they

App.2188

studied the city's public schools, they realized that 75% of Nashville third graders were behind in reading. Knowing that elementary literacy predicts college performance, their vision was a school—free, public, and open to all children—that would achieve a different result. Today, for 550 children, our vision is a reality.

## Our Pillars

Everything about our culture and curriculum prepares scholars for school and life. Nashville Classical Charter Schools offer families, staff, and scholars an education based on our five unique pillars, each of which is proven to pave a college path in kindergarten.

### 01 A DIVERSE COMMUNITY

02 **JOYFUL, RIGOROUS CURRICULUM**

03 **STRUCTURED, INTENTIONAL CULTURE**

NASHVILLE CLASSICAL ABOUT CAREERS CURRENT FAMILIES

**OF KNOWLEDGE**

OUR STORY

05 **HABITS FOR HIGH SCHOOL, COLLEGE, AND LIFE**

OUR PILLARS

CLASSICAL

EDUCATION

# Classical Education

At Nashville Classical Charter Schools our day-to-day aligns with our mission and our values. Ultimately, our entire school boils down to three simple statements that guide everything we do.

## READ THE CLASSICS AND WRITE THE FUTURE.

There is no better time for classical education than now. Today, literacy is everything. Literacy is the ability to read, to think and to discuss. Literacy is the spine of all subjects—from foreign language to physical science—and the foundation of every scholar's education. Frederick Douglass said "Once you learn to read, you will be forever free." Indeed, today, literacy means we have the power to read

another's life story and the power to write our own.

## EVERY SCHOLAR COLLEGE BOUND.

We believe every scholar deserves the option of a college future. In the words of the philosopher Plato, "The direction in which education starts a man determines his future in life." At Nashville Classical, scholars build the knowledge, skills, and character essential to being on the path to college. With this start, their futures are limitless.

## CHARACTER AND ACADEMICS BOTH COME F.I.R.S.T.

What does college preparation look like in a K-8 school? At Nashville Classical Charter Schools, it means we put both character and academics first. Our classical values—Focus, Integrity, Resilience, Scholarship, and Team—teach scholars to set goals, to live honestly, to show determination,

to learn with joy, and to care for others. To call Nashville Classical a college prep school only scratches the surface of what we do. We take the Chinese proverb, "Educating people is the only way to plan for a lifetime" to heart.



## A Day In The Life

See what looks like to work hard, have fun, and make history!



## Teach With Us

Want to make history? Apply to join our

# EXHIBIT 118

App.2194

Libertas
SCHOOL OF MEMPHIS



# MONTESSORI EDUCATION






## MONTESSORI LEARNING



*Our method of education was developed by Dr. Maria Montessori*. One of the first women to earn a medical doctorate in Italy, Dr. Montessori refined her method through scientific observation of children.

When a classroom was organized with excellent materials, she noticed that:

- Children freely engage in deep concentration, problem solving, and practice;
- Teachers observe and serve as guides, introducing children to challenging new material when they are ready;
- Children of different ages work together and help each other;
- Long, uninterrupted periods of time foster concentration.

App.2196

Since her first school opened for children with special needs in a poor neighborhood of Rome in 1907, her method has expanded to serve all kinds of children in thousands of programs across the world.

As public schools in the US have become much more standardized, Montessori is more prevalent in private schools. We started Libertas so that the “best for the smallest” would be available as a free public school here in Frayser.






If you would like to learn more about how to develop the whole child in the Montessori method, you can start by reviewing these in-depth professional development videos:

- Care of Self (https://vimeo.com/334016621/063a5e66f5)
- Grace and Courtesy (https://vimeo.com/334017736/157685ab07)
- Spoken Language (https://vimeo.com/334018895/940753dfd4)
- Care of (Classroom) Environment (https://vimeo.com/334020628/73522f28de)

CULTIVATING MINDS, HANDS, AND HEARTS FOR LIVES OF WONDER, WORK, AND LOVE

## CONTACT

Libertas School of Memphis
3777 Edenburg Drive
Memphis, TN 38127

(901) 609-3611 (tel:+19016093611)
info@libertasmemphis.org

## ABOUT

Our School (https://www.libertasmemphis.org/our-school)
Join Our Team (https://www.libertasmemphis.org/join-our-team)
Our Classrooms (https://www.libertasmemphis.org/a-day-in-our-classrooms)
Montessori (https://www.libertasmemphis.org/montessori-education)
Enrichment (https://www.libertasmemphis.org/curriculum-enrichment)
Governance (https://www.libertasmemphis.org/governance)
Information for Enrolled Families (https://www.libertasmemphis.org/families)

## JOIN

Our Students (https://www.libertasmemphis.org/enroll)
Our Faculty (https://www.libertasmemphis.org/join-our-team)
Our Supporters (https://libertasmemphis.networkforgood.com)

Accessibility (/accessibility)

# EXHIBIT 119

Search this site

# Memphis School of Excellence

## Mission & Vision

Mission & Vision

Executive Director Message

Achievements

School Brochure

SCS School Performance Framework

Donate to MSE

F.A.Q

MSE Digital Security Tools

***Memphis School of Excellence Mission and Vision***

**VISION:** Our students choose ambitious paths, persist and thrive in their choices, and strengthen their local and global communities.

**MISSION:** Each student is empowered to succeed in college and career by:

- Mastering a rigorous, STEM-focused curriculum,
- Experiencing a safe, welcoming, and inclusive environment,
- Receiving individual academic, social, and emotional support,
- Working alongside families and community partners.

Colors: Blue, Red, White l Mascot: Eagle l Motto: Soaring to Excellence
S: Service l O: Opportunity l A: Achievement l R: Responsibility

Have que:

Board Approved Policies

Title 1 Federal Programs

Have que:

# EXHIBIT 120

App.2202

# PREPARING STUDENTS FOR COLLEGE AND LIFE SUCCESS

## AN ACADEMICALLY RIGOROUS, MUSIC-RICH ENVIRONMENT

ENROLL NOW FOR 2026-27 SCHOOL YEAR
(HTTPS://ENROLLMENT.POWERSCHOOL.COM/FAMILY/GOSNAP.ASPX?ACTION=200005987&CULTURE=EN)

ABOUT APPLY (HTTPS://SOULSVILLECHARTERSCHOOL.ORG/)

App.2203



## OUR SCHOOL

The Soulsville Charter School is a public, tuition-free charter school founded in 2005 with sixty 6th graders, the school has grown to a full 6th to 12th-grade middle and high school serving more than 650 students. Since our first graduating class of 2012, 100 percent of seniors have been accepted to college and/or post-secondary educational institutions. Students are ushered through college admissions, scholarship applications, financial aid, and matriculation processes. Even after they graduate high school, all TSCS alumni receive support from TSCS in successfully completing their chosen postsecondary pathway.

## OUR MISSION

Our mission is to prepare students for success in college and life in an academically rigorous, music-rich environment. Our core values are Community, Respect, Integrity, Scholarship, and Empathy.

We believe that “As a Community, we RISE” (Respect, Integrity, Scholarship, and Empathy). The Soulsville Charter School is fully accredited by the Southern Association of Colleges and Schools and is authorized by Memphis-Shelby County Schools through the Tennessee Department of Education.

### OUR CORE VALUES

# COMMUNITY
# RESPECT
# INTEGRITY
# SCHOLARSHIP
# EMPATHY

### "AS A COMMUNITY, WE RISE"

App.2205

## PARTNERSHIP WITH SOULSVILLE FOUNDATION

The Soulsville Charter School is located in South Memphis, within the neighborhood known as Soulsville, USA. The campus is vibrant and engaging, sharing several city blocks with the Stax Museum of American Soul Music and the Stax Music Academy.

While the main focus of The Soulsville Charter School is on traditional core academics, we also provide intensive music education. Our offerings are based on proof that musical education greatly enhances general education. All students have access to the following music focus areas: String Orchestra, Band, Choir, Music Theory and History. Some students choose to participate in multiple Soulsville music classes.

Our partnership with the Memphis Symphony Orchestra has afforded students special opportunities, including receiving small group instruction, playing alongside the professionals on stage, performing for former First Lady Laura Bush and R&B icon John Legend, and attending rehearsals and concerts with world-renowned musicians such as Yo-Yo Ma.

App.2206

LEARN MORE ABOUT

# THE SOULSVILLE FOUNDATION

LEARN MORE
(HTTPS://SOULSVILLEFOUNDATION.ORG/)

App.2207

(https://soulsvillecharterschool.org)

The Soulsville Charter School is a public, tuition-free charter school founded in 2005 with sixty 6th graders, the school has grown to a full 6th to 12th-grade.

1115 College St.,
Memphis, Tennessee 38106

Get Directions (https://goo.gl/maps/31KibdWdft2a4H4ZA)

Contact Us (https://soulsvillecharterschool.org/contact-us/)

(https://www.instagram.com/thesoulsvillecharterschool/)

(https://goo.gl/maps/31KibdWdft2a4H4ZA)

## CONNECT

Contact Us (https://soulsvillecharterschool.org/contact-us/)

News (https://soulsvillecharterschool.org/news/)

Our Team (https://soulsvillecharterschool.org/our-team/)

Enroll (https://docs.google.com/forms/d/e/1FAIpQLSdEav4GGRGS2GO2O5zg16XMC

Join Our Team (https://secure.entertimeonline.com/ta/SOULS.careers?CareersSearch=&lang=EN)

Privacy Policy (https://soulsvillecharterschool.org/docs/privacy-policy/)

## QUICKLINKS

Location (https://soulsvillecharterschool.org/contact-

Apply (https://soulsvillecharterschool.org/apply/)

Academics (https://soulsvillecharterschool.org/academics/)

Extra Curricular Activities (https://soulsvillecharterschool.org/extra-curricular/)

College & Alumni Support (https://soulsvillecharterschool.org/college-alumni-support/)

## ACADEMICS

Middle School (https://soulsvillecharterschool.org/tscs-middle-school-course-offe

High School (https://soulsvillecharterschool.org/tscs-high-school-course-offe

Graduation Requirements (https://soulsvillecharterschool.org/graduation-requiremen

Music Education (https://soulsvillecharterschool.org/music-education/)

©2026 Soulsville Charter School | All Rights Reserved

Website by New Urban Media

# EXHIBIT 121



# INNOVATIVE CAREER EDUCATION

Providing innovative, world-ready education at 4775 American Way in the Parkway Village/Oakhaven area in Memphis, Tennessee

# WELCOME TO TENNESSEE CAREER ACADEMY:
## YOUR PATHWAY TO SUCCESS

At Tennessee Career Academy (TCA), we believe in empowering students to create a successful future. With our innovative Career and Technical Education (CTE) program for grades 6-12, we are bridging the gap between education and the workforce in Memphis and Tennessee.



Board and Minutes FAQs 2026-27 School Calendar Call Us APPLY

In today's rapidly evolving job market, traditional education methods are not enough. Our

school will provide a unique blend



of foundational core curriculum and hands-on CTE experiences, aligning with the workforce demands and providing students with real-world learning opportunities.

TCA focuses on four key pathways: Business & Communications (e.g., web designer, cybersecurity expert), Engineering & Advanced Manufacturing (e.g., industrial maintenance technician, machinist), Health & Human Services (e.g., teacher assistant, nurse), and Skilled Trades (e.g., HVAC technician, plumber) Our offerings range from cybersecurity and web design to nursing services and mechanical, electrical, and plumbing systems.

Business & Communications

(e.g., web designer, cybersecurity expert)

Health & Human Services

(e.g., teacher assistant, nurse)

Engineering & Advanced Manufacturing

(e.g., industrial maintenance technician, machinist)

Skilled Trades

(e.g., HVAC technician, plumber)

# Stay in the Loop

Name*

Email*

Submit

# OUR LEADERSHIP TEAM

## Dr. Meah King

Founder & Head of School

meah_king@tncareeracademy.org
(901) 250-1700

## Dr. John Barker

Founder & Executive Director

john_barker@tncareeracademy.org
(901) 250-1700

Ms. Meah King is

Founding Head …

Show More

A native of

Humboldt, …

Show More

© 2025 Tennessee Career Academy. All rights reserved.

# EXHIBIT 122

App.2216

Home Enrollment About News Careers Donate Portals English




# Mission

In partnership with families, ChattAcademy Community School supports all 6th – 12th grade learners in pursuing curiosity, growing in global competence through bilingual studies, impacting their communities, and developing authentic character in order to be prepared to excel in the postsecondary opportunities of their choice.

### Core Beliefs



App.2217





Curiosity. Relevant Contexts. Competence through Communication. C

## Innovative Features

**Two-Way Immersion Language Program**

All CACS students will graduate bilingual in Spanish and English.

**Problem and Place-Based Learning**

Rigorous, college prep curriculum grounded in local problems and places.

**Critical Service-Learning Program**

Serving the community through curricular projects that analyze *why* needs exist in the community.

**Comprehensive Character Development**

Character Development Plans designed in collaboration with a student's entire village.

901 Woodmore Lane, Chattanooga, TN 37411 | (423) - 287 - 6690 | info@chattacademy.org

# EXHIBIT 123

**Video Exhibit**

JMCSS Special Called Board Meeting.mp4

# EXHIBIT 124

# CHARTER AGREEMENT

This Charter Agreement is entered into this, the 18th day of June 2021, by and between the Hamilton County Board of Education (the "Chartering Authority"), and Ivy Academy's Skillern Elementary (the "Sponsor"), a Tennessee non-profit corporation (collectively, the "Parties").

RECITALS:

WHEREAS, the State of Tennessee enacted the Tennessee Public Charter Schools Act of 2002 (TENN. CODE ANN. § 49-13-101 et seq.) (hereinafter referred to as "Act"), as amended, authorizing the establishment of independent, publicly supported schools known as public Charter Schools; and

WHEREAS, the Act was enacted for the following purposes:

(1) Improve learning for all students and close the achievement gap between high and low performing students;

(2) Provide options for parents to meet educational needs of students in high priority schools;

(3) Encourage the use of different and innovative teaching methods, and provide greater decision-making authority to schools and teachers in exchange for greater responsibility for student performance;

(4) Measure performance of students and faculty, and ensure that children have the opportunity to reach proficiency on state academic assessments;

(5) Create new professional opportunities for teachers; and

(6) Afford parents substantial meaningful opportunities to participate in the education of their children;

and

WHEREAS, pursuant to the Act, the Chartering Authority is authorized upon receipt of a public charter school application from a sponsor seeking to establish a public charter school, as defined in the Act, to approve new public charter schools and to enter into a charter agreement, as defined in the Act; and

WHEREAS, the Sponsor has duly submitted a public charter school application (hereinafter referred to as "Application") in accordance with the Act, which Application has been reviewed and approved by the Hamilton County Board of Education for the establishment of the Ivy Academy's Skillern Elementary School (hereinafter, "the Charter School") as a public charter school within Hamilton County, Tennessee under the Act; and

WHEREAS, the Charter School has been organized with its sole purpose being the operation of a public charter school; and

WHEREAS, the Sponsor has set forth in the Application each of the following provisions which shall govern and be binding upon the Charter School with respect to the establishment and operation of the Charter School:

a. The statement defining the mission and goals of the Charter School;

b. The instructional goals and methods for the Charter School, which include, at a minimum, teaching and classroom instruction methods that will be used to provide students with knowledge, proficiency and skills needed to reach the goals of the Charter School;

c. The plan for evaluating student academic achievement at the Charter School and the procedures for remedial action that will be used by the Charter School when the academic achievement of a student falls below acceptable standards as promulgated by the Tennessee Department of Education;

d. The operating budget based on anticipated enrollment of the Charter School;

e. The method for conducting annual audits of the financial, administrative and program operations of the Charter School;

f. The timetable for commencing operation as a public charter school which provides for a minimum number of academic instruction days, which shall not be fewer than those required by statute;

g. The rules and policies for the governance and operation of the Charter School;

h. The names and addresses of the initial members of the Governing Body of the Charter School;

i. The description of the anticipated student enrollment and the nondiscriminatory admission policies;

j. The code of behavior and discipline of the Charter School;

k. The plan for compliance with all applicable health and safety laws and regulations of the federal government and the laws of the State of Tennessee;

l. The qualifications required of employees of the Charter School;

m. The identification of the individuals and entities sponsoring the Charter School, including their names and addresses;

n. The procedures governing the deposit and investment of idle funds, purchasing procedures, and comprehensive travel regulations;

o. The plan for the management and administration of the Charter School;

p. A copy of the by-laws of the Governing Body of the Charter School;

q. The statement of assurance of liability by the Governing Body of the Charter School;

r. Types and amounts of insurance coverage to be held either by the Charter School or approved by Chartering Authority, including provisions for assuring that the insurance provider will notify the Chartering Authority within ten (10) days of the cancellation of any insurance it carries on the Charter School;

s. The plan for transportation for the students attending the Charter School; and

t. Information regarding the financing commitments available to operate the Charter School on an ongoing and sound financial basis,

and

WHEREAS, based upon and in reliance upon the information and representations of the Sponsor in the Application, the Hamilton County Board of Education has approved the Application to operate the Charter School as a public charter school within the local school district of Hamilton County, Tennessee, in accordance with the Act and pursuant to the terms and provisions of this Agreement; and

WHEREAS, the Charter School and Chartering Authority desire to enter into this Agreement as the Charter Agreement (hereinafter referred to as "Charter") for the Charter School, which sets forth the terms and conditions of the charter of the Charter School in writing, binding upon the Charter School, and the Governing Body of the Charter School (hereinafter referred to as "Governing Body"), in accordance with the Act; and

WHEREAS, in acknowledgement and agreement that the terms and provisions hereof are binding upon the Charter School and the Governing Body, the Charter School, with full approval and agreement of the Governing Body, has entered into this agreement by signature of its respective duly authorized officer;

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

1. Definitions and General Provisions

1.1 Definitions

Capitalized terms used herein not otherwise defined herein shall have the meaning set forth in the Act. Whenever the term "Chartering Authority" is used herein, such term shall mean the Hamilton County Board of Education and the Hamilton County Schools ("HCS") as an agent to carry out and implement the policies of the Chartering Authority. The terms "charter," "Charter Agreement," "Agreement" and "Charter School Agreement" are used interchangeably herein and have the meaning set forth in the Act for "Charter Agreement."

All defined terms used in this Charter Agreement shall be deemed to refer to the masculine, feminine, neuter, singular and/or plural, in each instance as the context and/or particular facts may require. Use of the terms "hereunder," "herein," "hereby," and similar terms refer to this Charter Agreement.

1.2 Recitals

The recitals to this Charter Agreement are incorporated herein by reference and made a part hereof.

1.3 Governing Body

The Governing Body shall ensure that the Charter School's activities are conducted in compliance with this Charter Agreement and all applicable law, including specifically TENN. CODE ANN. § 49-13-111. The Governing Body shall report and be accountable to the Sponsor for the implementation of this Charter Agreement and the achievement of the performance objectives and goals stated in this Charter Agreement.

The Governing Body has conducted, or will have conducted within ninety (90) days of the Effective Date, national, state and local criminal background checks on each current member of the Governing Body. Any person who has been convicted of the following acts shall be prohibited from serving on the Governing Body, unless such prohibition is expressly waived by the Chartering Authority in writing: any felony or any criminal offense involving dishonesty, fraud or moral turpitude.

The Governing Body will conduct, or will have conducted, at least fourteen (14) days prior to the approval of any new member, national, state and local criminal background checks on the prospective member. Any person who has been convicted of the following shall be prohibited from serving on the Governing Body, unless such prohibition is expressly waived by the Chartering Authority in writing: any felony or any criminal offense involving dishonesty, fraud or moral turpitude.

As required by TENN. CODE ANN. § 49-13-111(f), the Governing Body shall be subject to the conflict of interest provisions contained in TENN. CODE ANN. § 12-4-101 and TENN. CODE ANN. § 12-4-102 and to the ethics policy of the Chartering Authority.

The Governing Body shall carry out its roles and responsibilities as detailed in this Charter Agreement, in a professional and responsible manner. The Governing Body will use reasonable, good faith efforts to manage the activities of the Charter School and oversee the operation of the Charter School and the implementation of this Charter Agreement

1.4 Charter School

Under supervision, governance and oversight of the Governing Body, the Charter School shall ensure that the faculty, staff and administration successfully implement the terms of this Charter Agreement.

The Charter School shall carry out its roles and responsibilities as detailed in this Charter Agreement in a professional and responsible manner. The Charter School will use reasonable, good faith efforts to educate children and demonstrate progress in achieving the goals and objectives outlined in this Charter Agreement.

1.5 Chartering Authority

Pursuant to TENN. CODE ANN. § 49-2-203 in general and TENN. CODE ANN. § 49-13-143(b) in particular, the Chartering Authority will establish a performance framework to evaluate the academic and operational performance of the Charter School. The Charter School will adhere to the performance framework.

From time to time, and upon reasonable notice, the Chartering Authority will also develop administrative procedures setting forth how it will oversee and assess the Charter School's compliance with the performance framework. The Charter School will cooperate fully with these administrative procedures in order to facilitate an ongoing assessment of its performance.

In addition to the ongoing performance assessments the Chartering Authority will provide to the Charter School, pursuant to TENN. CODE ANN. § 49-13-121(k), the Chartering Authority will conduct a detailed interim review of the Charter School's operations in the fifth year of this Charter.

The Chartering Authority shall allocate to the Charter School the state and local funds described in TENN. CODE ANN. § 49-13-112 in accordance with policies and procedures developed by the Tennessee Department of Education.

2. Grant of Charter

2.1 Grant and Issuance of Charter

Pursuant to the Act, and based on and in reliance upon the information and representations of the Sponsor in the Application, the Chartering Authority hereby grants and issues to Charter School a Charter for the creation, maintenance, and operation of a public charter school known as Ivy Academy's Skillern Elementary School. The operation of the Charter School by the Governing Body shall be subject to the terms and conditions of this Charter Agreement and the Act. As required by TENN. CODE ANN. § 49-13-110, this Charter Agreement includes all components of the Sponsor's Application, which is incorporated herein by reference and attached hereto as Appendix 1.

This Charter is granted subject to the express understanding that the Charter School will be fully operational on July 1, 2022. The Chartering Authority may terminate this Charter Agreement if it believes, in good faith, that the Charter School will be unable to commence operations on this date at its specified location. If the Chartering Authority elects to terminate, it must do so in writing and give the Charter School the opportunity to cure any deficiency within thirty (30) days from such notice.

In no event will the Charter School be allowed to operate if it does not have a certificate of occupancy dated before August 1, 2022 provided, however, that the Charter School may commence operations at an alternative site if, and only if, the Chartering Authority shall approve this proposed alternate site before the start of the school year.

2.2 Type of Charter

The Chartering Authority authorizes the Governing Body to form the Charter School pursuant to TENN. CODE ANN. § 49-13-106(f)(1).

2.3 Student Population and Enrollment

Enrollment in the Charter School, however, shall be open to any eligible Hamilton County student who submits a timely application (see TENN. CODE ANN. § 49-13-113(d)(1)), and is of the age/grades served by the Charter School.

The Charter School will not under any circumstances refuse, burden, or discourage enrollment of any student on the basis of race, religion, color, national origin, ethnicity, socio-economic status, disability, or other criteria. The Charter School shall not establish any admission policy or limit student admissions in any manner in which a public charter school is not permitted to establish admission polices or limit student admissions, except as provided for in TENN. CODE ANN. § 49-13-113 and this Agreement. The Charter School shall not admit students whose parents or guardians are not residents of Hamilton County.

The Charter School will not vary from the planned capacity set forth in its Application without the approval of the Charting Authority.

If applications for open seats exceed the planned capacity of the Charter School, enrollment shall be determined on the basis of a lottery. The lottery process must open and transparent and subject to audit in accordance with TENN. CODE ANN. §49-13-113(d)(4).

Subject to the foregoing, preference in enrollment and admissions may be afforded to students from an affiliated school; siblings of students already enrolled in the Charter School; and students residing within Hamilton County who were enrolled in the Hamilton County Schools the previous year, in that order. The Charter School may also give preference to the children of teachers and members of the Governing Body, not to exceed ten percent (10%) of total enrollment or twenty-five (25) students, whichever is less. Further selection within such groups, if necessary, will be by lottery.

The Charter School shall not charge tuition to any student.

3. General Terms and Conditions of the Charter Agreement

3.1 The Application

The Application, as attached hereto as Appendix 1, sets forth the overall goals, standards, and general operational policies relating to the Charter School. The Application is not a complete statement of each detail of the operation of the Charter School. To the extent that the Governing Body or Charter School desires to implement specific policies, procedures, or other specific terms of operation that supplement those set forth in the Application, they shall be permitted to implement such policies, procedures, and specific terms of operation; provided, that such policies, procedures, and terms of operation (i) are not otherwise prohibited or circumscribed by applicable law or this Charter Agreement, and (ii) are not materially different from those set forth in the Application.

To the extent there is a conflict between the terms of this Charter Agreement and the Application, the terms of this Charter Agreement shall govern.

Neither this Charter Agreement nor the Application may be amended without prior written approval of the Chartering Authority, except that, pursuant to TENN. CODE ANN. § 49-13-112(a), the Governing Body may revise the budget submitted in this Charter Agreement, subject to the requirements of state and federal law. If the Governing Body seeks to amend this Charter Agreement or the Application, it shall petition the Chartering Authority as set forth in TENN. CODE ANN. § 49-13-110(d).

3.2 Nonsectarian, Non-Religious, and Non-Cyber Based

The Governing Body shall ensure that the Charter School is nonsectarian and non-religious in its curriculum, programs, admission policies, employment practices, governance, and all other operations. The Governing Body shall comply with the requirements of the United States and Tennessee Constitutions, including those provided by the establishment clause of the First Amendment of the United States Constitution. The Governing Body shall not use any of the funds to operate the Charter School for the benefit of any religious or theological institution. The Charter School shall not be cyber-based.

3.3 Compliance With Applicable Laws and Regulations

By signing this Charter Agreement, the Governing Body warrants that it has made a detailed review of the Act, and that it has specific knowledge of its rights and responsibilities under the Act. Further, Governing Body warrants that the Charter School shall comply with all federal and state laws and regulations applicable to the provision of public education. The Governing Body understands and agrees that the Chartering Authority will hold the Governing Body and the Charter School accountable for adhering to these laws and regulations.

3.4 Monitoring, Inspection and Certification of Records

Consistent with Section 1.5, the Chartering Authority may designate a representative or representatives to enter the premises of the Charter School at reasonable times with reasonable notice to observe and inquire into the academic instruction, operation, and finances of the Charter School. The Charter School will cooperate fully with the representatives of the Chartering Authority, making available classrooms, faculty, staff, students, parents, records, and the like. The Chartering Authority's representatives will endeavor not to interfere unreasonably with the operation of the Charter School during these observations and inquiries.

The Governing Body shall ensure that the following information is maintained at the Charter School and make such information available to the Chartering Authority or its representative upon request no later than the seventh (7th) business day following such request: (1) the Charter School's Articles of Incorporation; (2) the Charter School's bylaws; (3) the enrollment and admissions process for the Charter School; (4) a list of all formerly and currently enrolled students and, for each student, the following information: full legal name, student identification number (for purposes of state testing), birth date, address, local school zone in which the student resides, names and address of legal guardians; required documentation relevant to the student's special needs status (if applicable); results on assessments required by applicable law and the Application, and documentation of a student's suspension or expulsion (if applicable); (5) list of all former and current staff members and teachers who work at the Charter School and, for each one, the following information: name, birth date, address, and compensation; (6) evidence of insurance; (7) leases; (8) documentation of loans and other debt related to the Charter School; (9) detailed accounting of school expenditures and sources of income received that are current through the preceding month, within twenty (20) days after the last day of such month; and (10) copies of all required certifications, and health and safety-related permits for occupancy of the physical plant for the purposes of the Charter School. Such information shall be used by the Chartering Authority to evaluate whether the Charter School is meeting its goals under this Agreement, the Application and the Act. The Sponsor shall ensure that copies of these records are maintained for the amount of time required by applicable law, but in no event less than two (2) years after the expiration, non-renewal, or revocation of the Charter Agreement, during which period, the Governing Body shall make such records available to the Chartering Authority upon request no later than the fifth (5th) business day following such request.

3.5 Regulatory and Statutory Requirements

The Governing Body acknowledges the regulatory and/or statutory requirements listed in TENN. CODE ANN. § 49-13-111, which cannot be waived. The Governing Body shall ensure

that these requirements are met.

3.6 Reporting

3.6.1 Annual Progress Report

Pursuant to TENN. CODE ANN. § 49-13-120, the Governing Body is required to make at least an annual progress report to the Chartering Authority and the Commissioner of Education. The Governing Body shall ensure that this annual report is made by September 1 of each year of this Agreement and that the report meets the requirements of TENN. CODE ANN. § 49-13-120.

3.6.2 Annual Financial Report

Pursuant to TENN. CODE ANN. § 49-13-111(m), the Charter School is required to prepare and publish an annual financial report each year of this Agreement that encompasses all funds. The Governing Body shall ensure that this annual financial report is made and that the report meets the requirements of TENN. CODE ANN. § 49-13-111(m).

3.6.3 Charter School Reports

The Charter School shall immediately submit to the Chartering Authority a report of:

a. Any student who withdraws from the Charter School;

b. Any non-compliance by Governing Body or Charter School with the Charter or applicable law, in connection with the operation of the Charter School; and

c. Discovery of any conflict-of-interest issues and the resolution of such issues, if any;

d. Resignations from and/or hiring to leadership positions in the operation of the Charter School.

The Charter School shall submit a report to the Chartering Authority quarterly a report of:

a. Changes in (i) the Governing Body's certificate of occupancy for the Charter School's physical plant or (ii) other health and safety-related certifications or permits;

b. Applications, filings, or Internal Revenue Service determinations made during the prior month related to seeking and maintaining the Sponsor's or

the Charter School's tax-exempt status;

c. Applications, filings or state determinations made related to seeking and maintaining the Charter School's not-for-profit corporation status;

d. Individuals leaving or joining the Charter School's Governing Body during the prior month.

3.6.4 Projections

The Charter School shall also provide the following projections:

a. The projected budget for each school year no later than May 31 of the proceeding school year;

b. The projected student enrollment no later than June 1 prior to the commencement date of the upcoming school year, specifying expected number of students by grade level; and

c. Documentation of the Charter School's recruiting and admission process for the upcoming school year, no later than two (2) months prior to any student admission lottery.

3.6.5 Enrollment

The Parties understand and appreciate that the Chartering Authority must regularly report the average daily membership for students in Hamilton County Schools to the Tennessee State Department of Education. The Parties understand and appreciate that the Chartering Authority's report must include the average daily membership for the Charter School. To assist the Chartering Authority in complying with its reporting requirements, the Chartering Authority shall establish and communicate to the Charter School ten (10) dates for reporting average daily membership. By each date established by the Chartering Authority for this purpose, the Charter School shall submit to the Chartering Authority, the following information:

a. The number of students enrolled in the Charter School; and

b. The name and legal residence of each student.

The Charter School shall ensure that student enrollment count records are maintained electronically on a system that is mutually acceptable to the Sponsor and the Chartering Authority.

The Charter School shall incorporate into the enrollment agreement it signs with the parents or guardians of each of its students a provision in which the parents or guardians acknowledge that they are enrolling the student in the Charter School for an entire school

year and that, absent extraordinary circumstances, the student may not withdraw from the Charter School during the year. During the course of a school year, the Chartering Authority will not accept reenrollment of a student whose parents or guardians have signed a Charter School enrollment agreement unless, after consultation with the Governing Body of the Charter School, it determines that reenrollment would be appropriate.

3.7 Curriculum, Instruction, and Benchmarks

The curriculum and instructional methods used at the Charter School shall be as described in the Application, this Charter Agreement and any reports submitted under the terms of the Charter.

The benchmarks and indicators of performance for measuring academic progress of students attending the Charter School shall be as described in the Application, this Charter Agreement and any reports submitted under the terms of the Charter.

3.7.1 Students with Disabilities

The Parties understand and agree that the Charter School is responsible for providing education services to its students regardless of their need for special education or accommodation for disabilities. The Charter School shall be solely responsible for providing all special education services to any eligible student attending the school. Furthermore, the Charter School shall be solely responsible for removing any barriers that might impede otherwise qualified students from accessing any educational opportunities at the Charter School.

On a case by case basis, the Charter School and the Chartering Authority may contract for the Chartering Authority to provide services to a student, but the ultimate responsibility, financial or otherwise, to provide such services remains upon the Charter School.

3.7.2 English Language Learners

The Parties understand and agree that the Charter School is responsible for providing education services to its students regardless of their status as English language learners. The Charter School shall be solely responsible for providing all ELL support to any eligible student attending the school. Furthermore, the Charter School shall be solely responsible for removing any barriers that might impede otherwise qualified students from accessing any educational opportunities at the Charter School.

3.7.3 Legal Obligation to Serve

The Charter School understands and agrees that failure to serve students with disabilities or students who require ELL support could expose the Chartering Authority to liability under state and federal law. In the event of an administrative complaint, a complaint for due process, or legal action alleging in whole or in part that the Charter

School has failed to serve such students, the Chartering Authority will assume the defense of any such claim per Section 3.15, and the Charter School will cooperate fully.

The Charter School additionally recognizes that a breach of its duty to serve these students could warrant the immediate revocation of the Charter by the Chartering Authority.

3.8 School Calendar

The Charter School will develop a school calendar each year subject to approval by the Tennessee Department of Education.

3.9 Staff Responsibilities and Personnel Plan

3.9.1 Employee Benefits and Retirement

Subject to the terms of a separately executed memorandum of understanding, the Chartering Authority will make available to the Charter School those specific benefits required by Title 8, Chapter 27, Part 3 of the TENNESSEE CODE. It is expressly understood and agreed between the Chartering Authority and the Charter School, however, that the Chartering Authority is assuming no obligation to provide benefits not otherwise required by Title 8, Chapter 27, Part 3 of the TENNESSEE CODE to the Charter School and will not accept any increase in its own costs, whether from experience ratings or other causes, resulting from the Charter School's participation in these additional benefits.

The Charter School does hereby agree to protect, defend, indemnify and hold the Chartering Authority harmless against any and all claims arising out of or related to the administration of benefits for the Charter School employees except for any such errors or omissions that result solely from the negligence of the Chartering Authority or its employees

3.9.2 Non-Teacher Licensing

Any individual who provides a service at the Charter School that is a non-teaching service, and for which a license is required under Tennessee law, shall have the appropriate license to provide the service in Tennessee.

3.9.3 Employment Applications

All applicants for employment with the Charter School shall be required to submit employment applications on a form that complies with all applicable law. The Governing Body shall conduct or have conducted criminal background checks to the extent permitted under applicable law on all current and prospective employees of the Charter School.

3.9.4 Contractors and Sub-contractors

The Governing Body shall require proof that all contractors or sub-contractors of the Charter School have conducted criminal background checks to the extent permitted under applicable law on their current and prospective employees who have or will have contact with children within the scope of the individual's employment.

3.10 Physical Plant

The Charter School shall ensure the Charter School's grounds and facilities comply with applicable health and safety laws, including the Americans with Disabilities Act, state fire marshal codes and state and local zoning and land use codes.

The Charter School may not commence instruction prior to completion of applicable inspections and receipt of a completed Pre-Opening Checklist to be provided by the Chartering Authority.

At least four (4) months prior to commencement of any given school year, the Charter School shall propose for Chartering Authority's reasonable approval any different physical plant to be used by and for the Charter School[MG1].

3.11 Discipline Program

The Governing Body shall ensure that the Behavioral Expectations and Disciplinary Strategies described in the Application are implemented at the Charter School. The Governing Body shall develop, implement, and maintain a school safety plan to provide for a safe learning environment at the Charter School for students, staff; volunteers, and visitors.

No student shall be suspended, expelled, or transferred involuntarily from the Charter School except in accordance with TENN. CODE ANN. § 49-6-3401 and the policies of the Hamilton County Board of Education governing the suspension and expulsion of students. Any student appealing such disciplinary action may do so to the Hamilton County Board of Education's Disciplinary Hearing Authority.

3.12 Financial Matters

3.12.1 Audits; Procedures; Timing

Audits of the Charter School shall be made in compliance with TENN. CODE ANN. § 49-13-127.

3.12.2 Tuition

The Charter School shall not charge tuition for any student.

3.12.3 Extraordinary Expenditures

At least fourteen (14) days prior to making an expenditure of more than fifty thousand dollars ($50,000) for any purpose outside the ordinary course of operation of the Charter School, the Governing Body shall provide notice to the Chartering Authority regarding the payee, the amount, and the nature and purpose of such expenditure. An expenditure for a purpose "outside the ordinary course of operation" shall not include reasonable, good faith budgeted expenses, including start-up costs related to the procurement and modification of land, facilities, and equipment for the Charter School or expenditures funded by Sponsor. If Charter School must make an immediate expenditure in excess of fifty thousand dollars ($50,000) due to an unforeseeable emergency that could result in harm to any person or property or that poses health or safety concerns, which expenditure is outside the ordinary course of operation of the Charter School, the Governing Body shall notify the Chartering Authority as soon as practicable, regarding the payee, the amount, and the nature and purpose of such emergency expenditure.

3.13 Insurance

The Charter School shall maintain the following insurance:

a. General Liability/Automobile Liability Policy: must be equal to or greater than $5,000,000. This insurance shall be primary insurance. The policy must name Hamilton County Schools as an additional insured and be a certificate holder. The policy must cover contractual liability. Automobile coverage shall cover vehicles owned, hired, and non-owned.

b. Professional Liability Policies: Directors and Officers Policy equal to or greater than $1,000,000. Teachers Professional Liability Policy equal to or greater than $1,000,000.

c. Workers Compensation and Employers Liability Policy. The Charter School will carry workers compensation insurance with coverage and limits as required by law. The Charter School will carry EPL insurance with limits of not less than $1,000,000.

Certificates of insurance, in a form satisfactory to the Chartering Authority, evidencing coverage shall be provided to the Chartering Authority prior to commencement of performance of this Charter Agreement. Throughout the term of this Charter Agreement, Charter School shall provide updated certificates of insurance upon expiration of the current certificates.

3.14 Survival of Representations and Warranties

All representations and warranties hereunder shall be deemed to be material and relied upon by the Parties with or to whom the same were made, notwithstanding any investigation or inspection made by or on behalf of such Party or Parties. The representations and warranties covered in this Agreement will survive the termination or expiration of this Agreement.

3.15 Indemnification and Hold Harmless

The Governing Body and the Charter School shall indemnify and hold harmless the Chartering Authority, its officers, agents and employees from:

a. Any claims, damages, costs and attorney fees for losses, injuries or damages arising, in part or in whole, from the negligent or intentional acts or omissions of the Sponsor, the Governing Body or the Charter School, their officers, employees and/or agents, including their sub or independent contractors, in connection with the performance of this Charter Agreement, and,

b. Any claims, damages, penalties, costs and attorney fees arising from any failure of the Sponsor, the Governing Body or the Charter School, their officers, employees and/or agents, including their sub or independent contractors, to observe applicable laws, including, but not limited to, labor laws and minimum wage laws.

c. The Governing Body and/or the Charter School shall pay the Chartering Authority any expenses incurred as a result of the Sponsor's failure to fulfill any obligation in a professional and timely manner under this Charter Agreement.

d. The Chartering Authority will not indemnify, defend or hold harmless in any fashion the Sponsor, the Governing Body, or the Charter School from any claims whatsoever.

e. In the event the Chartering Authority is named in an administrative complaint or other complaint along with the Sponsor, Governing Body, or the Charter School, the Chartering Authority shall have the right to assume the defense of the matter or to delegate the defense to the Governing Body and Charter School. The Chartering Authority's election shall in no way limit the obligation of the Governing Body and the Charter School to indemnify or to hold the Chartering Authority harmless against any and all losses or costs, including the costs of defense, per this Section 3.15.

3.16 Attorneys Fees

The Sponsor agrees that, in the event either party deems it necessary to take legal action to enforce any provision of the contract, and in the event the Chartering Authority prevails, the Sponsor shall pay all expenses of such action including the Chartering Authority's reasonable attorney fees and costs at all stages of the litigation. The Chartering Authority agrees that, in the event either party deems it necessary to take legal action to enforce any provision of the contract, and in the event the Sponsor prevails, the Chartering Authority shall pay all expenses of such action including the Sponsor's reasonable attorney fees and costs at all stages of the litigation.

3.17 Transportation

If Charter School provides transportation for its pupils, it shall do so in a manner approved by the Chartering Authority, and Chartering Authority shall allocate state and local funds to Charter School from state and local funds Chartering Authority receives for transportation on a per pupil basis in the same manner as such funds are allocated to Chartering Authority as provided in Section 9 hereof in accordance with TENN. CODE ANN. § 49-13-114.

3.18 Food Service

The Charter School shall be responsible for arranging appropriate food service for its students. Any such food service must comply with all appropriate state and federal regulations governing the provision of food to students. The Parties reserve the right to enter into an agreement whereby the Chartering Authority would provide food service to the Charter School's students.

4. Representations and Warranties

4.1 The Charter School and Sponsor

4.1.1 Organization

The Charter School is, and at all times during the Term of this Charter Agreement shall be, duly organized, properly existing, and in good standing in the State of Tennessee. Sponsor is, and at all times during the term shall be, a non-profit organization and shall not be, a for-profit corporation.

4.1.2 Tax-Exempt, Non-Profit Status

The Charter School has received exemption from federal taxation under IRC § 501(c)(3). The Charter School shall immediately inform the Chartering Authority if its tax-exempt status is questioned, modified, or revoked by the Internal Revenue Service or if its or its Sponsor's non-profit status is questioned, modified, or revoked by the State of Tennessee.

4.1.3 Authority

The Charter School warrants that it has all requisite power and authority to execute and deliver this Charter Agreement, to perform its obligations hereunder, and to otherwise consummate the agreements contemplated hereby and thereby. This Charter Agreement constitutes a valid and binding obligation of the Charter School, enforceable against the Charter School and its Governing Body in accordance with its terms.

4.1.4 Litigation

There is no suit, claim, action or proceeding now pending or threatened before any court, grand jury, administrative or regulatory body, Government agency, arbitration or

mediation panel or similar body to which the Charter School is a party or which may result in any judgment, order, decree, liability, award or other determination which will or may reasonably be expected to have an adverse effect upon the Charter School. No such judgment, order, decree or award has been entered against the Charter School nor has any liability been incurred which has, or may reasonably be expected to have, such effect. There is no claim, action or proceeding now pending or threatened before any court, grand jury, administrative or regulatory body, government agency, arbitration or mediation panel or similar body involving the Charter School which will or may reasonably be expected to prevent or hamper the consummation of the agreements contemplated by this Agreement.

4.1.5 Full Disclosure

No representation or warranty of the Sponsor, Governing Body or the Charter School herein and no statement, information or certificate furnished or to be furnished by the Sponsor, Governing Body or the Charter School pursuant hereto or in connection with the agreement contemplated hereby contains any untrue statement of a material fact or omits or will omit to state a material fact necessary in order to make the statements contained herein or therein not misleading.

4.1.6 Reputation of Officers, Directors and Employees

No member of the Sponsor's Board of Directors, officer of the Sponsor, member of the Governing Body, officer or employee of the Charter School has been convicted of any felony or any other criminal offense involving dishonesty, fraud or moral turpitude.

No person may continue to be a member of the Governing Body, an officer or employee of the Charter School if that person is convicted of any felony or any other criminal offense involving dishonesty, fraud or moral turpitude.

4.1.7 Conduct of Sponsor and the Governing Body

The Charter School and the Governing Body have complied, and at all times during the life of this Charter will comply, with all local, state and federal laws and regulations that are applicable to the Sponsor, the Charter School and the Governing Body, which may include, but are not limited to the Internal Revenue Code, the non-profit corporation law of the State of Tennessee, and the open records and public meetings laws of the State. The Governing Body has maintained and will maintain adequate records of the activities and decisions of each party to ensure and document compliance with all such laws and regulations. The Governing Body agrees to provide Chartering Authority with copies of all such records.

4.1.8 Due Authorization

Upon execution of the Charter Agreement by the Charter School and the Chartering Authority, the Charter School will be vested with all powers necessary to carry out the educational program outlined in the Charter Agreement.

4.2 Of Chartering Authority

4.2.1 Organization

Chartering Authority is a local board of education under the laws of the State of Tennessee, with the purpose and legal ability to grant and issue this Charter Agreement pursuant to the provisions of the Act.

4.2.2 Authority

Chartering Authority has all requisite power and authority to execute and deliver this Charter Agreement, to perform its obligations hereunder, and to otherwise consummate the transactions contemplated hereby. This Agreement constitutes a valid and binding obligation of Chartering Authority, enforceable against Chartering Authority in accordance with its terms.

4.2.3 Litigation

There is no claim, action or proceeding now pending or threatened before any court, grand jury, administrative or regulatory body, Government agency, arbitration or mediation panel or similar body involving the Chartering Authority which will or may reasonably be expected to prevent or hamper the consummation of the agreements contemplated by this Charter Agreement.

4.2.4 Full Disclosure

No representation or warranty of Chartering Authority herein and no statement, information or certificate furnished or to be furnished by Chartering Authority pursuant hereto or in connection with the transactions contemplated hereby contains any untrue statement of a material fact or omits or will omit to state a material fact necessary in order to make the statements contained herein or therein not misleading.

5. Term; Post-Term Events

5.1 Term

The initial term (the "Initial Term") of the Charter shall be deemed to have commenced on July 1, 2021 and will end on June 30, 2032. No later than April 1 of the tenth year of the Initial Term, the Governing Body shall submit a renewal application to the Chartering Authority pursuant to TENN. CODE ANN. § 49-13-121. If this application is approved, then the Charter School shall continue to operate for another ten academic years following the expiration of the Initial Term (the "Renewal Term"). The Charter School may apply for additional renewals in the ninth year of any given Renewal Term.

During the sixth year (the fifth academic year) of the Initial Term, the Chartering Authority

shall conduct an interim review of the Charter School's operations in accordance with guidelines developed by the Tennessee State Department of Education.

5.2 Events Following Non-Renewal, Revocation, or Expiration

Events following the dissolution of the Charter School shall be as described in the Act.

6. Termination; Revocation; Non-renewal and Intermediate Sanctions

Any action taken to terminate the Charter, revoke the Charter, or impose intermediate sanctions on the Sponsor shall be undertaken in accordance with all applicable law and this Charter Agreement. In the event of a condition or circumstance that poses an immediate threat to the health or safety of students or staff of the Charter School, either Party may require the Charter School to suspend operations until appropriate corrective action(s) can be undertaken.

6.1 Termination, Revocation, Non-renewal

The Chartering Authority may elect not to renew this Charter Agreement pursuant to TENN. CODE ANN. § 49-13-121. The Chartering Authority may revoke or terminate this Charter Agreement for any reason set forth in TENN. CODE ANN. § 49-13-122, and/or for breach of any of the terms and conditions of this Charter Agreement.

If the Chartering Authority determines that any grounds for revocation, termination or non-renewal exist, it may revoke, terminate or non-renew this Charter Agreement according to the procedures set forth in TENN. CODE ANN. § 49-13-121 and TENN. CODE ANN. § 49-13-122.

6.2 Intermediate Sanctions

In the event the Chartering Authority determines that the Governing Body or Charter School is not complying with the terms of this Charter Agreement and/or the Act, and such non-compliance does not pose any immediate risk to the heath or safety of any students at the Charter School, then the Chartering Authority shall provide notice to the Governing Body or Charter School of the non-compliance and direct that the non-compliance be cured within what the Charter Authority determines to be a reasonable time. In the event the Governing Body or the Charter School fail to cure the non-compliance within the time directed by the Chartering Authority, then the Chartering Authority may institute termination proceedings pursuant to TENN. CODE ANN. § 49-13-121 and TENN. CODE ANN. § 49-13-122.

7. General Provisions

7.1 Governing Law and Venue

The validity, construction and effect of this Charter Agreement and any and all extensions and/or modifications thereof shall be governed by the laws of the State of Tennessee. Tennessee law shall govern regardless of any language in the Agreement, any attachment or any other document that the Sponsor may provide. Any action between the parties arising from this

Agreement shall be maintained in the courts of Hamilton County, Tennessee.

7.2 Waiver

No waiver of any provision of this Charter Agreement shall affect the right of any Party thereafter to enforce such provision or to exercise any right or remedy available, to it in the event of any other default.

7.3 No Third Party Beneficiary Rights

No third party, whether a constituent of the Charter School, a member of the community, a student or parent/guardian of a student of the Charter School or otherwise, may enforce or rely upon any obligation of, or the exercise of or failure to exercise any right of the Charter School or the Chartering Authority in this Charter Agreement. This Charter Agreement is not intended to create any rights of a third party beneficiary.

7.4 Delegation of Authority

The Charter School acknowledges that: (a) Chartering Authority's obligations and responsibilities with respect to the Charter School are limited to those obligations and responsibilities set forth in the Act and as set forth herein; (b) Governing Body and the Charter School, including their respective directors, officers and employees, do not have authority to act as an agent for Chartering Authority or to enter into any contracts with third parties that purport to impose any obligations or responsibilities on Chartering Authority or which otherwise bind Chartering Authority in any manner whatsoever; and (c) by agreeing to authorize the Charter School, Chartering Authority does not assume any obligation with respect to any director, employee, agent, patent, guardian, student, or independent contractor of the Charter School, or the Governing Body.

The Chartering Authority acknowledges that Chartering Authority including its directors, officers and employees, do not have authority to act as an agent for Charter School or to enter into any contracts with third parties that purport to impose any obligations or responsibilities on Governing Body or the Charter School or which otherwise bind Governing Body or the Charter School in any manner whatsoever.

7.5 Notices

All notices, consents and other communications ("Notices") which either Party may be required or desire to give the other Party shall be in writing and shall be hand-delivered or given by telecopy, by electronic transmission, or nationally recognized overnight courier service (in each case where an acknowledgment of delivery is obtained) to the other Party at its respective address or telecopy telephone number set forth below:

The Chartering Authority:
The Hamilton County Schools
3074 Hickory Valley Road

Chattanooga, TN 37421

The Governing Body and/or Charter School:
Ivy Academy's Skillern Elementary
8520 Dayton Pike
Soddy-Daisy, TN 37379

Notices shall be deemed delivered upon receipt of the Party receiving such notice. The Parties agree to ensure that any notice provided under the Agreement is done in a manner that will allow the delivering Party to establish the date of delivery to the receiving Party. Physical and electronic addresses and telecopy numbers may be changed upon notice to the other parties.

7.6 Section Headings

The headings in this Charter Agreement are for the convenience of the Parties only and shall have no effect on the construction or interpretation of this Charter Agreement and are not part of this Charter Agreement.

7.7 Appendices and Schedules, Attachments and Addenda

Each appendix, schedule, attachment, and addenda to this Charter Agreement to which reference is made in this Agreement is hereby incorporated in this Charter Agreement as an integral part thereof. In the event of a conflict between the terms and provisions of this Charter Agreement and the terms and provisions of any appendices, attachments, addenda or schedules, the terms and provisions of this Charter Agreement, absent the appendices, schedules, attachments and addenda, shall control.

7.8 Entire Agreement

This Charter Agreement and the Application and Appendices incorporated herein by reference set forth the entire agreement between the Parties with respect to the subject matter hereof and shall govern the respective duties and obligations of the Parties. Any and all prior understandings and agreements, expressed or implied, written or oral, between the Parties are superseded hereby.

7.9 Modifications and Amendments

This Agreement may be modified only by-written amendment executed by all parties and their signatories hereto.

7.10 Assignment

The provisions of this Agreement shall inure to the benefit of and shall be binding upon the respective successors and assignees of the parties hereto. Neither this Charter Agreement nor any of the rights and obligations of the Charter School hereunder shall be assigned or transferred in whole or in part without the prior written consent of the Chartering Authority. Any such

assignment or transfer shall not release the Sponsor from its obligations hereunder.

7.11 Counterparts

This Agreement may be executed in Counterparts, each of which shall be deemed to be an original and both together shall be deemed to be one and the same Agreement.

7.12 No Partnership/Joint Venture

Nothing herein shall in any way be construed or intended to create a partnership or joint venture between the Parties or to create the relationship of principal and agent between the Parties. None of the Parties hereto shall hold itself out in a manner contrary to the terms of this paragraph. No Party shall become liable for any representation, act or omission of any other party contrary to the terms of this paragraph.

7.13 Severability

Should any provision of this Charter Agreement be declared to be invalid by any court of competent jurisdiction, such provision shall be severed and shall not affect the validity of the remaining provisions of this Charter Agreement.

7.14 Negotiated Agreement

The provisions of this Charter Agreement were negotiated by the Parties, and this Charter Agreement shall be deemed to have been drafted by the Parties, notwithstanding any presumptions at law to the contrary.

7.15 Chartering Authority Property

Any Chartering Authority property, including but not limited to books, records and equipment, that is in the Charter School's possession shall be maintained by the Charter School in good condition and repair, normal wear and tear excepted, and shall be returned to the Chartering Authority by the Charter School upon termination of this Charter Agreement.

7.16 Employment

The Sponsor and the Governing Body shall not subscribe to any personnel policy which permits or allows for the promotion, demotion, employment, dismissal or laying off of any individual due to race, creed, color, national origin, age, sex, or which is in violation of applicable laws concerning the employment of individuals with disabilities.

7.17 Non-Discrimination

It is the policy of the Chartering Authority not to discriminate on the basis of age, race, sex, color, national origin, or disability in its hiring and employment practices, and not to discriminate on the basis of age, race, sex, color, national origin, or disability in admission to,

access to, or operation of its programs, services, and activities. With regard to all aspects of this Charter Agreement, the Sponsor certifies and warrants it will comply with this policy.

No person shall be excluded from participation in, be denied benefits of, be discriminated against in the admission or access to, or be discriminated against in treatment in the programs or activities that are the subject of this Charter Agreement, on the grounds of handicap and/or disability, age, race, sex, color, religion, national origin, or any other classification protected by federal or Tennessee State Constitutional or statutory law, nor shall they be excluded from participation in, be denied benefits of, or be otherwise subjected to discrimination in the performance of contracts with the Sponsor or in the employment practices of the Sponsor's contractors. Accordingly, the Sponsor shall, upon request, be required to show proof of such nondiscrimination and to post in conspicuous places that are available to all employees and applicants, notices of nondiscrimination.

7.18 Contingency Fees

The Sponsor and Governing Body hereby represent that they have not been retained or retained any persons to solicit or secure this Agreement with the Chartering Authority upon an agreement or understanding for a contingent commission, percentage, or brokerage fee. Breach of the provisions of this paragraph is, in addition to a breach of this Charter Agreement, a breach of ethical standards which may result in civil or criminal sanction and/or termination of this Charter Agreement.

7.19 Effective Date

This Agreement shall not be binding upon the parties until it has been signed first by the Sponsor and Charter School and then by the authorized representatives of the Chartering Authority and has been filed in the office of the Hamilton County Schools. When it has been so signed and filed, this Agreement shall be effective as of execution hereof.

**IN WITNESS WHEREOF**, we have set our hands on behalf of the Chartering Authority, the Hamilton County Board of Education, in accordance with a public vote on the 6/17/21.

Dated: 5/17/21

Dr. Bryan Johnson
Superintendent of Hamilton County Schools

Dated: 5/17/21

Joseph Wingate,
Chairman, Hamilton County Board of Education

**IN WITNESS WHEREOF**, we have set our hands on behalf of Ivy Academy's Skillern Elementary in accordance with duly authorized action by its Governing Body on the 7/13/21.

Dated: 6/23/21

Angie Markum

# EXHIBIT 125



# PURPOSE STATEMENT

Glorifying God by **preparing students' hearts and minds** for God's use in His world and His work.

# MISSION STATEMENT

River's Edge Christian Academy's mission is to work in partnership with parents to produce Christ-centered, lifelong learners by **combining the best of both home and traditional Christian classroom education**, infusing a biblical worldview, focusing on character, and supplying college and career-worthy academics.

We offer an innovative educational approach that mirrors a university structure, with students spending three days in the central classroom and two days in their "satellite classroom" at home. Both classrooms are under the supervision of a professional educator. **We strive to train students academically and spiritually**. Our unique format allows more opportunities for families to strengthen relationships and provide specialized education in an encouraging yet challenging atmosphere.

Students attend classes on campus only three days per week – Mondays, Wednesdays, and Thursdays. Students complete supervised coursework at home two days per week – Tuesdays and Fridays, designated as satellite days. On the two satellite days, parents and students follow lesson plans provided by the classroom teacher, reinforcing the classroom concepts and learning new concepts as needed.

# STATEMENT OF FAITH

Giving our children a Christian worldview is seen as a priority. All true wisdom and knowledge comes from God. Therefore, **all subjects are taught from the viewpoint that God created this knowledge**. In addition, prayer, scripture reading, and devotion times are part of the daily schedule. Here is our school's statement of faith (Adapted from the Association of Christian Schools International):

We believe the Bible to be the inspired, the only infallible, authoritative, inerrant Word of God (2 Timothy 3:14-17; 2 Peter 1:20-21).

We believe there is one God, eternally existent in three persons – Father, Son, and Holy Spirit (Genesis 1:1-2; Matthew 3:16-17, 28:19; John 10:27-33).

We believe in:

- The deity of Christ (John 10:33; Colossians 2:9)
- His virgin birth (Isaiah 7:14; Matthew 1:23; Luke 1:35)

App.2249

- His sinless life (Hebrews 4:15; Hebrews 7:26; 2 Corinthians 5:21; 1 Peter 2:21-22)
- His miracles (John 2:11; 5:19-23)
- His vicarious and atoning death (1 Corinthians 15:3; Ephesians 1:7; Hebrews 2:9; 2 Corinthians 15:3-4)
- His resurrection (John 11:25; 1 Corinthians 15:3-4; Romans 10:9-10)
- His Ascension to the right hand of the Father (Mark 16:19; Ephesians 4:8-10)
- His personal return in power and glory (Mark 13:24-27; Acts 1:11; Revelation 19:11-14)



We believe in the absolute necessity of regeneration by the Holy Spirit for salvation because of the exceeding sinfulness of human nature, and that men are justified on the single ground of faith in the shed blood of Christ and that only by God's grace and through faith alone are we saved and are kept by the power of God unto eternal salvation (Genesis 6:5, 8:21; John 3:16-19, 3:36, 5:24; Romans 3:23, 5:8-9; Ephesians 2:1-10; Titus 3:4-5).

We believe in the resurrection of both the saved and the lost: they that are saved unto the resurrection of life, and they that are lost unto the resurrection of damnation (John 5:28-29).

We believe in the spiritual unity of believers in our Lord Jesus Christ (Romans 8:9; 1 Corinthians 12:12-13; Galatians 3:26-28).

We believe in the present ministry of the Holy Spirit, by whose indwelling the Christian is enabled to live a godly life (Romans 8:13-14; 1 Corinthians 3:16, 6:19-20; Galatians 5:16-26; Ephesians 4:30, 5:18).




# STATEMENT OF INSTITUTIONAL BELIEFS

We believe in the literal Biblical account of creation in accordance with Genesis 1 and 2.

We believe the church is essential for the spiritual growth and maturity of a believer (Matthew 18:15-17; Ephesians 4:11-13;
1 Corinthians 12:14-27; Hebrews 10:24-25).

We affirm the following non-denominational statements:

1. The 1987 Danvers Statement on Biblical Manhood and Womanhood
2. The 2017 Nashville Statement on Biblical Sexuality
3. The 2018 Statement on Social Justice and the Gospel

# STATEMENTS ON MARRIAGE, GENDER & SEXUALITY, AND

App.2251

# THE SANCTITY OF HUMAN LIFE

We believe in the biblical definition of marriage as the uniting of one man and one woman in a single, exclusive union for life (Genesis 2:18-25) and that God intends sexual intimacy to occur only between a man and a woman who are married to each other (1 Corinthians 6:18, 7:2-5; Hebrews 13:4). We believe marriage is between one man and one woman for life and that it uniquely reflects Christ's relationship with His Church (Eph. 5:21-33). We believe that marriage also serves as the foundational unit of a stable society (1 Cor. 7:2). We believe that any form of sexual immorality, as Biblically defined, is sinful and offensive to God (Matt.15:18-20; 1 Cor. 6:9-10).

We believe that mankind is woven together by God in the womb and that they are fearfully and wonderfully made by Him (Psalm 139:13-14). We believe God creates each person as male (man) or female (woman). These two distinct, complementary genders together reflect the image and nature of God (Genesis 1:26-27). We believe that since each person is made in the image of God, every person has value and must be afforded compassion, love, kindness, respect, and dignity (Col. 3:12-14; Luke 6:31). We affirm the 2017 Nashville Statement on Biblical Sexuality.

We believe all human life is sacred and created by God in His image. Human life is of inestimable worth in all its dimensions, born and unborn. We are therefore called to defend, protect, and value all human life (Psalm 139; Jeremiah 1:5).



App.2252

# STATEMENT OF NON-AFFILIATION

RECA neither supports nor endorses any world, national, or regional organization that gives Christian recognition to unbelievers or which advocates cooperation with different religions (Amos 3:3, 2 Corinthians 6:14-17). Because RECA is a Protestant Christian school exalting the deity of Christ and salvation by grace alone through faith, we will not accept students whose family church ascribes to beliefs or practices that are incompatible with our statements.

# STATEMENT OF NON-DENOMINATIONAL POSITION

RECA does not promote or endorse any particular denomination, but we resolutely affirm biblical and theological truth. We stand firm on our Statement of Faith and believe that ultimate authority rests with the Word of God. In situations where biblical doctrine is discussed and there is disagreement, we encourage those involved to study what the Bible says on the matter (2 Timothy 2:14-15). Furthermore, we require conversations on



topics and beliefs that carry denominational significance for certain individuals to be conducted with gentleness and reverence (1 Peter 3:15). Our desire is to remain united in our common salvation, love of Christ, and Statement of Faith, holding fast to historic and clear biblical teaching (Philippians 2:16), while avoiding the dissension often brought about by certain denominational distinctives.

# STATEMENT OF FINAL AUTHORITY FOR MATTERS OF BELIEF AND CONDUCT

River's Edge Statement of Faith does not exhaust the extent of our beliefs. The Bible itself, as the inspired and infallible Word of God that speaks with final authority concerning truth, morality, and the proper conduct of mankind, is the sole and final source of all that we believe. For purposes of

## Contact Us

**Mailing Address**
P.O. Box 31829
Knoxville, TN 37930

**Office**
(865) 212-5575

**Information Line**
(865) 201-1192

## Quick Links

Admissions
myRECA
Calendar
Giving
Careers
Privacy Policy

## Proudly Accredited by

## and Certified as

App.2254

**Fax**
(888) 317-2443

BEST CHRISTIAN workplaces CERTIFIED 2026

UNIVERSITY-MODEL SCHOOLS INTERNATIONAL
High School

# EXHIBIT 126

App.2256

(/) English

Links (https://help.knoxschools.org/en_US/apps-websites/website-directory)

KCS Help

Staff Login (https://help.knoxschools.org/dashboard)

Search the Knowledge Base

IN THIS ARTICLE:
Students
Faculty
Visitor

NEW FAMILIES (/EN_US/NEW-FAMILIES)

# Meal Prices

| Students | Prices |
|---|---|
| Breakfast, Reduced | $0.30 |
| Breakfast, Paid | $2.25 |
| Lunch, Reduced | $0.40 |
| Lunch, Paid ES | $3.25 |
| Lunch, Paid MS/HS | $3.50 |
| **Faculty** | Prices |

App.2257

| | |
|---|---|
| Breakfast | $3.00 |
| Lunch | $5.00 |
| **Visitor** | Prices |
| Breakfast | $3.00 |
| Lunch | $5.00 |

(/)
English
Links (https://help.knoxschools.org/en_US/apps-websites/website-directory)
(https://help.knoxschools.org/dashboard)

**IN THIS ARTICLE:**
Students
Faculty
Visitor

Was this article helpful?

## Related Articles

**Bus Safety (/en_US/transportation/bus-safety)**

Safety, especially school bus safety, is a shared responsibility. We are each res...

**Bus Stop Locator (/en_US/transportation/bus-stop-locator)**

Knox County Schools provides free bus transportation to your child's school. The ...

App.2258

(/)

English

Links (https://help.knoxschools.org/en_US/apps-websites/website-directory)

(https://help.knoxschools.org/dashboard)

[Edulog Parent Portal FAQ (/en_US/transportation/edulog-parent-portal-faq)]

General Q: What is Edulog's Parent Portal? How do I sign up to use it? A: The Par...

**IN THIS ARTICLE:**

Students

Faculty

Visitor

[Free & Reduced Applications (/en_US/new-families/free-reduced-applications)]

We are slowly moving away from paper applications for Free & Reduced. We wi...

**Knowledge Base Software powered by Helpjuice (https://helpjuice.com/?utm_campaign=customer_kb)**

# EXHIBIT 127

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| THE WILBERFORCE ACADEMY OF KNOXVILLE,<br><br>Plaintiff,<br><br>v.<br><br>KNOX COUNTY BOARD OF EDUCATION AND JOHN BUTLER, ANNE TEMPLETON, PATRICIA FONTENOT-RIDLEY, KATHERINE BIKE, LAUREN MORGAN, BETSY HENDERSON, STEVE TRIPLETT, TRAVIS WRIGHT AND KRISTI KRISTY, in their official capacities as Members of the Knox County Board of Education,<br><br>Defendants. | ) | No. 3:25-cv-584-CEA-CCP |

**DEFENDANTS' INITIAL DISCLOSURES**

As a preliminary matter, discovery has not been conducted as of this time. The Defendants therefore reserve the right to supplement this information as additional witnesses or documents are discovered or determined to be relevant to the subject matter of this action. These initial disclosures should not be construed as prejudicing or in any way limiting the Defendants with respect to future discovery, research, analysis, or proof. The Defendants reserve the right to supplement the following initial disclosures as this case is currently in the early stages of discovery.

Subject to these objections and reservations, pursuant to Fed. R. Civ. P. 26(a)(1), the Defendants hereby make the following initial disclosures:

(A) Persons likely to have discoverable information in support of defenses:

1. Zach Wishart, Executive Director of Wilberforce Academy. He has knowledge regarding Wilberforce Academy's public charter school application process,

Wilberforce Academy's public charter school application, and Wilberforce Academy's proposed operations.

2. Theresa Nixon, Executive Director for Academic Supports, Knox County Schools and chairs the Knox County Schools Charter School Application Review Committee. She is available through the office of the undersigned counsel. She has knowledge regarding the charter school application process, approval process, Tennessee standards for public charter schools, and personal knowledge about the communications between KCS and Wilberforce Academy.

3. Katie Wheeler, Innovative Schools Coordinator, Knox County Schools. She is available through the office of the undersigned counsel. She has personal knowledge regarding the charter school application process, Tennessee standards for public charter schools, and the approval process for public charter schools.

4. Members of the Tennessee Public Charter School Commission. 500 James Robertson Parkway, 8th Floor, Davy Crockett Tower, Nashville, Tennessee 37243. Members will have knowledge regarding the charter school application form and process, the charter school application scoring rubric, the charter school waiver request and approval process, and the charter school rules and regulations. Members will also have knowledge regarding the appeal process available to public charter school applicants.

5. All persons named in Plaintiff's initial disclosures.

6. All persons named in Defendant-Intervenor's initial disclosures.

(B) Documents in support of defenses:

1. Email correspondence between KCS and Wilberforce Academy regarding Wilberforce Academy's public charter school application.

2. Documents relating to Plaintiff's public charter school application.

3. Documents relating to Plaintiff's public charter school operations.

4. Documents and communications relating to the approval or denial of public charter school applications.

5. Documents and communications relating to the appeal process available to a public charter school applicant.

6. Documents and communications relating to Plaintiff's § 501(c)(3) status and communications with the IRS.

7. All documents listed in the Plaintiff's initial disclosures.

8. All documents listed in the Defendant-Intervenors' initial disclosures.

(C) Damages:

Defendants do not seek damages. If, however, the Defendants prevail, they may seek attorney's fees under 42 U.S.C. § 1988 or other applicable law.

(D) Insurance:
Knox County and the Knox County Board of Education are self-insured governmental entities and provide defense and indemnity to their employees under the terms, conditions and provisions of Knox County Ordinance 2-286.

Respectfully submitted.

*s/Jessica Jernigan-Johnson*
David M. Sanders (BPR # 016885)
Senior Deputy Law Director
Jessica Jernigan-Johnson (BPR #032192)
Deputy Law Director
Knox County Law Director's Office
400 Main Street, Suite 612
Knoxville, TN 37902
(865) 215-2327
david.sanders@knoxcounty.org
jessica.johnson@knoxcounty.org

**CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2026, a copy of the foregoing Initial Disclosures was served via email.

*s/Jessica Jernigan-Johnson*
JESSICA JERNIGAN-JOHNSON

# EXHIBIT 128

# Knox County Schools
# Charter School Application Protocol

## Purpose

The purpose of this document is to guide potential charter school applicants, to clearly articulate the priorities of Knox County Schools (KCS), and to outline the application process. It is strongly recommended that applicants review this document and use it in conjunction with the guidance and templates from the State Board of Education (SBE) to develop their charter application. The KCS Charter Review Committee will use the evaluation and review guidance provided by the SBE to assess the quality of proposals.

## Overview of Knox County Schools

The Knox County Board of Education (KCBOE) is composed of nine elected members. Their constituency includes residents from the City of Knoxville, Knox County, and the Town of Farragut. This body provides direction and oversight for all public schools within the county. The KCBOE appoints the Superintendent, who serves as the chief executive officer of KCS.

The Knox County Schools' Academics Division, in partnership with the KCBOE, has appointed a Charter Review Committee, which will review applications as submitted and offer a recommendation to the KCBOE. Additional details about Knox County Schools can be found on our website (www.knoxschools.org) and specifically on the KCS Charter Office webpage.

KCS is looking for charter schools that specifically address an innovative approach to the following priorities, as identified in the KCS Strategic Plan.

- **Excellence in Foundational Skills:** Increase student academic achievement and growth for all students, particularly in high-poverty and high-needs populations, to ensure that all students receive a high-quality education in strong learning environments.

- **Great Educators in Every School:** Ensure the school is staffed with a cadre of highly effective educators who are continually working collaboratively to improve their craft to benefit students.
- **Career Empowerment & Preparation:** Engage families and school community meaningfully in the education process to ensure that every student has individualized plans for the next step in their education/life.
- **Success for Every Student:** Develop an infrastructure and use of evidence-based strategies that enable, facilitate, support, and accelerate student learning and success.
- **Communication & Engagement**: Engage and communicate in a meaningful and intentional way with stakeholders and KCS to enhance the student experience.

## Letter of Intent Submission

According to T.C.A. §49-13-107, a prospective charter school sponsor that plans to submit a charter application to KCS must submit a Letter of Intent (LOI) at least sixty (60) calendar days before the application deadline of February 1. Therefore, this letter must be delivered no later than December 3 at 11:59 PM CT. *If December 3 falls on a Saturday, Sunday, or state-observed holiday, the LOI is due on the next business day.*

An electronic copy of the LOI must be converted to a PDF file and submitted to the KCBOE office and the Tennessee Public Charter School Commission (Charter Commission). The LOI should be submitted to the KCBOE via email at charteringauthority@knoxschools.org. Forms and additional information about the LOI and the application process can be found on the Charter School Applications page of the State Board of Education website. Please note there are two versions of the form. Applicants should carefully review and select the appropriate form to complete.

Within ten (10) business days of receipt of a letter of intent, KCS will confirm receipt of the letter and share the most up-to-date per-pupil estimate of combined state and local funding for use in submitting the budget component of the application. Additional application assistance will be provided by training from the State Board staff, followed by a technical assistance workshop provided by the KCS charter office.

Knox County Schools invites charter school applicants to contact the Knox County Board of Education Office to consult with the KCS Charter Office (charteringauthority@knoxschools.org) prior to submitting your letter of intent. All letters of intent become public record after submission and will be posted on KCS charter webpage.

**<u>Potential applicants who do not submit an LOI by the deadline will not be eligible to have their proposals considered for this charter application cycle.</u>**

## General Application Submission

The full application, including a budget, may be submitted no earlier than 60 days after submission of the LOI or no later than February 1 at 11:59 pm CT. *If this date falls on a weekend or state state-observed holiday, then the submission date is moved to the next business day.* All submitted applications to KCBOE must include a check for $2,500.00 made out to the Knox County Schools (KCS).

When submitting an application, the sponsor should provide KCBOE **one (1) electronic copy and five (5) hard copies** of the application. Applications to KCBOE should be submitted via email (charteringauthority@knoxschools.org). Hard copies should be submitted via one of the two methods below. All applications become public record after submission and will be posted on KCS charter webpage.

| In-person delivery | Mailing Address |
|---|---|
| Knox County Schools<br>Office of Academic Supports<br>Attn: Theresa Nixon<br>UT Tower #435<br>400 W Summit Hill Drive<br>Knoxville, TN 37902<br>***SUBMISSION DUE on specified date, by 4:30 PM ET.*** | Knox County Schools<br>Office of Academic Supports<br>Attn: Theresa Nixon<br>505 Summer Place<br>UT Tower #435<br>Knoxville, TN 37902<br>***SUBMISSION must be received by the specified date.*** |

A technical assistance workshop will be offered by KCS. Details for this workshop will be shared directly with each applicant sponsor after the LOI is submitted.. Additionally, KCS is willing to clarify any questions that the applicant should seek to answer. This guidance, if requested, should be considered carefully in crafting the final application. All communication should occur via the charterauthority@knoxschools.org email account.

Each application will be reviewed by the KCS Charter Review Committee using the rubric provided by the SBE. Applications will be reviewed for academic, operational, and financial capacity. Strong applications outline the capability of the sponsor to open and sustain a long-term and high-quality learning environment for students in Knox County.

It is the practice of the charter office to conduct due diligence in the review of applications, which will include all application materials submitted and an assessment of the capacity of the sponsor throughout the entirety of the review period. All information will be included in the recommendation submitted to the KCBOE.

## Application Decisions

Authorizers must rule by resolution no later than 90 calendar days after receiving the application. If KCS fails to approve or deny a public charter school application within this timeframe, the public charter school application will be considered approved.

If the initial charter school application is denied, the sponsor will have 30 calendar days from receipt of the grounds for denial to submit an amended application using the same application form to correct the deficiencies. The KCS Charter Review Committee will provide a recommendation to the KCBOE, which will have 60 days to approve/deny the amended application. If a decision is not made within the 60 days, the amended application will be considered approved.

A sponsor can appeal an authorizer's decision for a denied charter school application to the Charter Commission no later than 10 days after receiving the authorizer's denial decision. The Charter Commission will either approve or deny an application within 75 days. The Charter Commission's decision is final and not subject to appeal.

## Timeline Overview

| Timeline | Action |
|---|---|
| by December 3* | ● Electronically submit the completed LOI form to both KCS and the Charter Commission. |
| by February 1* | ● Submit 1 electronic and 5 paper copies of the application materials (narrative, attachments, and addenda) to KCS.<br>● A $2500 application must accompany all submissions. |
| within 90 days | ● Authorizers will determine if the application is complete and will notify the sponsor following SBE Rule 0520-14-01-.01.<br>● The Charter Review Committee will complete an analysis of the application.<br>● A capacity interview will be completed.<br>● The Charter Review Committee will develop consensus on the rubric.<br>● The KCS charter office will prepare a recommendation report for the KCBOE.<br>● The KCBOE will rule by resolution to approve or deny the application. |

| | |
|---|---|
| within 30 days | • If the application is denied, the charter school sponsor may submit an amended application to correct the deficiencies. |
| within 60 days | • If an amended application is submitted, the Charter Review Committee will complete an analysis of the amended application.<br>• The Charter Review Committee will develop consensus on the rubric.<br>• The KCS charter office will prepare a recommendation report for the KCBOE.<br>• The KCBOE will rule by resolution to approve or deny the application. |
| within 10 days | • If the amended application is denied, the charter school sponsor can submit an appeal to the Charter Commission. |
| within 75 days | • The Charter Commission will approve or deny the public charter school application. Their decision is final and not subject to appeal. |

# EXHIBIT 129

**REGULAR SESSION**
**OF THE**
**KNOX COUNTY BOARD OF EDUCATION**
**December 1st, 2010**

**MINUTES**

The Knox County Board of Education met in Regular Session, Wednesday, December 1st, 2010, at 5:00 p.m. in the Main Assembly Room of the City-County Building, 400 W. Main Street, Knoxville, Tennessee. The following members were in attendance:

Indya Kincannon, Chair
Karen Carson, Vice-Chair
Gloria Deathridge
Cindy Buttry
Lynne Fugate
Kim Sepesi
Mike McMillan
Pam Trainor
Hester Lam, Student Representative
Absent: Thomas Deakins (out of town)

***Chair Kincannon presiding***

1. A moment of silence was held followed by the Pledge of Allegiance to the Flag, led by Ms. Deathridge.

2. Announcements: Indya Kincannon, Chair

   - Thomas Deakins was absent due to an out of town trip.
   - Chair Kincannon welcomed Mayor Tim Burchett and Knox County Commissioners David Wright and Jeff Ownby.

3. There were no changes to the agenda.

4. On motion made by Ms. Buttry, seconded by Ms. Fugate, the Board approved the Agenda.

5. The Bearden High School Orchestra Ensemble Quintet performed two selections from the upcoming Bearden High Orchestra concert, *"Rhythmic Snapshots of Christmas"*, and *"Little Saint Nick"*. Members of the Quintet are Winode Handagama, Mackenzie Ridley, Brittany Stephens, Ben Rogers and Emma Slaymaker. They were accompanied by their teacher, Ms. Katie Middleton.

6. Special Recognition was given to William Anderson III and Dennis Webster, KCS Facilities Department employees; and to Mike Pollard, Maintenance and Operations Department employee for their participation in and completion of certification in Educational Facilities Management through a joint process between the University of Tennessee and the Tennessee School Plant Management Association. Mr. Bill Parton, Executive Director of the Tennessee School Plant Management Association presented the certificates.

7. As recommended by the Superintendent and on motion made by Ms. Buttry, seconded by Ms. Carson, the Board approved the Consent Agenda:

A. Approved Payment of Bills

B. Approved Minutes of Meetings:
November 1st, 2010 Work Session Minutes
November 2nd, 2010 Regular Session Minutes
November 22nd, 2010 Midmonth Work Session Minutes

C. Ratified Executive Committee Action:
1. Approved acceptance of the intent to fund the Voluntary Pre-K for Tennessee program by grant award for Knox County Schools for 2010-11 for $1,773,590.21
2. Release from Compulsory Attendance:
0010AE05
0010BH03
0010BH04
0010FH01
0010HA02
0010KH01
0010WH02

D. Approved Items/Contracts:
1. Granted approval for contract between Knox County Schools and Rodefer Moss and Company for $108,500.00 to provide financial and compliance audit services for 2010-11
2. Granted approval for contract between Knox County Schools and Strategic Equipment & Supply (Bid #317) for $29,260.00 for commercial dishwashers at Beaumont and Spring Hill Elementary Schools, funded through the Knox County Schools Nutrition Program Budget
3. Granted approval for contracts between Knox County Schools and Quality Machine and Welding and United Service (Bid #315) to provide welding and fabricating services for up to $75,000.00
4. Granted approval for contract between Knox County Schools and Johnson Controls, Inc. and Knox Bradley Mechanical Contractors, Inc. (Bid #311) for repairs and equipment replacement for HVAC systems for $25,000.00
5. Granted approval for contract between Knox County Schools and Home Choice Flooring LLC (Bid #324) for floor tile installation for $125,000.00
6. Granted approval for contract between Knox County Schools and Finchum Sports Floors (Bid #429) for $80,000.00
7. Granted approval for easement at Brown Gap Road (Adrian Burnett Elementary School property) for approximately 229 square feet to AT&T Tennessee for $2,500.00 payable to Knox County Schools
8. Granted approval for contract between Knox County Schools and Carr Rehab, Inc. (Bid #379) for equipment for the Knox County Schools Occupational Therapy/Physical Therapy Department for $39,500.00
9. Granted approval for A.L. Lotts Elementary to purchase an Apple MacBook, ActivBoards and cameras for $14,995,34, funded by coupon book sales
10. Granted approval for Amherst Elementary School to purchase Apple MacBooks and Activ Boards for $10,580.02 funded by coupon book sales
11. Granted approval for Bearden Elementary School to purchase Apple iMacs, ActivBoard and ActivExpression for $25,989.84, funded by coupon book sales, parent donations, PTSO donations, Day Care account funds and BEP funds
12. Granted approval for Bearden Elementary School to purchase Apple iMacs, ActivBoards and ActivExpression for $25,989.84, funded by coupon book sales, parent donations, PTSO donations, Day Care Account funds and BEP funds
13. Granted approval for Bearden High School to purchase PC laptops, ActivBoard, iPads for $36,139.88, funded by U.S. Cellular and general school funds

14. Granted approval for Bluegrass Elementary to purchase AppleMacBooks, ActivBoards and printers for $19,230.83, funded by coupon book sales
15. Granted approval for Brickey-McCloud Elementary School to purchase an Apple iMac, MacBooks and projectors for $26,342.83, funded by coupon book sales
16. Granted approval for Cedar Bluff Primary School to purchase Apple iMacs, iPads, iPods and ActivSlates for $22,884.40, funded by coupon book sales, school funds, BEP funds, Kindergarten and Instruction budget funds
17. Granted approval for Cedar Bluff Middle School to purchase Apple iMacs and ActivBoards for $14,124.00, funded by coupon book sales
18. Granted approval for Corryton Elementary School to purchase Apple iMacs and Activboards for $14,227.00 funded by coupon book sales and school budget funds
19. Granted approval for East Knox County Elementary School to purchase Apple MacBooks and ActivBoards for $25,442.20 funded by PTO donations, coupon book sales and general school funds
20. Granted approval for Farragut Intermediate School to purchase Apple iMacs, MacBooks, ActivBoards and ActivExpressions for $25,414.53, funded by coupon book sales
21. Granted approval for Gibbs Elementary to purchase AppleMacBooks and ActivBoards for $13,812.54, funded by coupon book sales, PTA donations and general school funds
22. Granted approval for Green Magnet to purchase ActivBoards and Document Cameras for $12,021.29, funded by coupon book sales, Magnet School funds and fee waiver funds
23. Granted approval for Gresham Middle School to purchase Apple iMacs, MacBooks, ActivExpressions and a projector for $15,202.24, funded by Social Studies account funds and coupon book sales
24. Granted approval for Halls Elementary School to purchase AppleMacBooks and ActivBoards for $10,809.37, funded by incentive funds, parent donations and a Walmart donation
25. Granted approval for Hardin Valley Elementary School to purchase Apple MacBooks and ActivBoards for $40,286.40, funded by coupon book sales
26. Granted approval for Powell Elementary to purchase Apple iMacs, MacBook and ActivBoards for $31,695.29, funded by coupon book sales
27. Granted approval for Ritta Elementary to purchase Apple iMacs and document cameras for $12,546.40, funded by general school funds and coupon book sales
28. Granted approval for Rocky Hill Elementary to purchase Apple iMacs for $38,800.80, funded by coupon book sales and PTO donations
29. Granted approval for Sarah Moore Greene Elementary School to purchase Apple MacBooks, ActivBoards and printers for $18,168.64, funded by Magnet School budget funds
30. Granted approval for Sequoyah Elementary School to purchase Apple iMacs for$24,423.00, funded by the Sequoyah Foundation
31. Granted approval for Shannondale Elementary to purchase Apple iMacs, MacBooks, iPads, ActivVotes and printers for $17,261.36, funded by coupon book sales, BEP funds and donations
32. Granted approval for Vine Middle Magnet School to purchase Apple iMacs and a MacBook for $10,102.69, funded by general school funds
33. Granted approval for West Hills Elementary School to purchase PC laptops, ActivBoards and printers for $18,547.65, funded by general school funds

**8. <u>Board Policies</u>**

*A.* As recommended by the Superintendent and on motion made by Ms. Buttry, seconded by Ms. Carson, the Board approved the first reading of Knox County Board of Education policy GF, *"Third Party Funded Positions".*

*Mr. Todd Moore, President of the Shannondale Elementary Foundation, addressed the Board regarding the Shannondale Foundation and in support of the policy.*

B. As recommended by the Superintendent and on motion made by Ms. Buttry, seconded by Ms. Carson, the Board approved the second reading of Knox County Board of Education policy BC, *'School Board Meetings"* as amended.

*Ms. Carson proposed an amendment to the policy to remove the sentence "Such meetings will be open to the public" on Line 22 under the heading "Non-Voting Meetings". She clarified that all Board meetings with the exception of Executive Sessions were open to the public and the reason for removing the sentence was because it was stated at the beginning of the policy.*

C. As recommended by the Superintendent and on motion made by Ms. Buttry, seconded by Ms. Deathridge, the Board approved second reading of Knox County Board of Education policy JT, *"Service Animals"*.

**9. Regular Agenda Items:**

A. As recommended by the Superintendent and on motion made by Ms. Buttry, seconded by Ms. Deathridge, the Board approved the deadlines *(100 calendar days prior to retiring or notification by September 1st for employees retiring at the end of the semester or February 1st for employees retiring at the end of the school year)* for retirement notification to receive the early notification incentive ($100.00/day for accrued sick days).

B. On motion made by Ms. Buttry, seconded by Ms. Fugate, the Board approved the Charter School Agreement for the Knoxville Charter Academy as amended.

*The Board recessed at 5:23 p.m. and reconvened at 5:34 p.m. to allow Board Members time to review the draft copy of the Charter School Agreement which specifically addressed deficiencies in the application identified by the Knox County Schools Charter School Review Team and Superintendent McIntyre. The Knoxville Charter Academy's operations would be subject to the terms and conditions of the Charter School Agreement and the Tennessee Public Charter Schools Act of 2002. Ms. Susan Mertyurek, President of the Knoxville Charter Academy Board of Directors, was present and addressed questions from Board members.*

*Chair Kincannon asked Ms. Mertyurek if it was Knoxville Charter Academy's intent to open by August 2011; Ms. Mertyurek stated that it was, but if for some reason it would not be feasible to open by August 2011, asked to have the right to delay the opening a year to open by August 2012. Ms. Deathridge asked for clarification on the outcome if stipulations outlined in the agreement were not acceptable to the Knoxville Charter Academy Board; and Ms. McCampbell explained that if the Board approved the Charter School Agreement, it would stand as written and the Knoxville Charter Academy would have to abide by the agreement.*

*After discussion between Board Members, Superintendent McIntyre, Ms. Mertyurek and Marty McCampbell, Deputy Law Director regarding enrollment/recruitment and timelines for site location and school implementation, the Charter School Agreement was amended to include the following changes:*

- *Page 3: Section 1.3, Student Population and Enrollment: add, "Student enrollment not to exceed 600 students."*
- *Page 14: Section 3.17, Location: add: "location to be identified by April 1st prior to the year the school intends to open"*
- *Page 14: Insert appropriate language where applicable: "Charter School will open by August 2011 or August 2012 or Charter School Agreement will expire"*

C. On motion made by Ms. Carson, seconded by Ms. Buttry, the Knox County Board of Education authorized the Law Director to draft legislation on their behalf that would enable the Board of Education to enter into public-private build-leaseback arrangements to construct new school buildings. The Board of Education will review and approve the draft legislation prior to submitting it to the General Assembly.

*Ms. Fugate requested information from the Law Director regarding the State Law as currently written and the implication/legal ramification of proposed changes to the legislation. Mayor Burchett spoke to the Board regarding the proposed legislative changes; and agreed to meet with the Board regarding the proposed legislation prior to the vote by the Legislature.*

On motion made by Ms. Carson, seconded by Ms. Sepesi, the Knox County Board of Education supported the development of a Request for Proposals (RFP) for a public-private build-leaseback arrangement to potentially support the construction of a new Carter Elementary School as suggested by Mayor Tim Burchett, pending a legislative change to permit the Board of Education to enter into such an arrangement under Tennessee law. Such an RFP would be developed by the Knox County Schools staff in collaboration with the Knox County Purchasing Department. The Board of Education supported moving forward with development of the RFP with the understanding that if the Board of Education decided to use that mechanism to build a new Carter Elementary School, Mayor Burchett and Knox County Government would be committed to fully fund such an arrangement so that there would be no impact on the current or future Knox County Schools operating or capital budgets.

*Ms. Fugate asked for clarification if the Board voted to support the motion to proceed with the RFP, the vote would not be binding to authorize the construction of a new Carter Elementary School. Chair Kincannon stated that it would not be a binding vote, but would allow authorization (pending approved legislation changes) for the Mayor to develop an RFP and to allow the Board to review the results.*

*The original motion included the language "through the refinancing of Knox County bonds" after the word "arrangement" in the second motion. Mayor Burchett asked the Board to consider removing the phrase "through the refinancing of Knox County bonds" from the motion so it would not limit the financing options for the County. Ms. Carson stated that her intent was to make sure that there would not be a budgetary impact for the school system if the Board chose to build a new school under the Mayor's proposal. Mayor Burchett stated that it was his intent and promise to the Board that it would not have a negative impact on the KCS budget. After some discussion, Ms. Carson stated her intent for proposing the motion was to allow the Board to go through the RFP process and use the results for comparative cost analysis for future projects.*

*On motion made by Ms. Buttry, seconded by Mr. McMillan, the Board approved an amendment to the original motion made by Ms. Carson to remove the language "through the refinancing of Knox County bonds" from the original motion.*

**10. <u>Public Forum</u>**

- *Ms. Sandra Rowcliffe, 1215 Raintree Road, Knoxville, Tennessee, 37923, Second Vice-President of the Knox County PTA Council, addressed the Board on behalf of the Knox County PTA in recognition of the Teacher Supply Depot and appreciation of the Superintendent and staff members who contributed to the move of the Teacher Supply Depot to the Cedar Bluff location.*

The meeting was adjourned at 6:53 p.m.

**Approved:** 01/12/2011

Chair: [signature]

Secretary: ______

# EXHIBIT 130

**From:** Chartering Authority <charteringauthority@knoxschools.org>
**Sent:** Friday, January 16, 2026 3:18 PM
**To:** Zach Wishart
**Subject:** [External]KCS Charter Application Technical Assistance Workshop
**Attachments:** 2026-Charter Application Technical Assistance-KCS.pdf; 2026-Application Assistance Guide-KCS.pdf

**Importance:** High

KCS | KNOX COUNTY SCHOOLS

Dear Charter School Sponsor:

Thank you for participating in the ***Charter Application Technical Assistance Workshop*** for Knox County Schools that occurred on Friday, January 16, 2026. Attached to this email please find the *Application Assistance Guide* and a copy of the presentation. The recorded video has been shared with you directly and is also linked here. If you have any issues accessing the information or have additional questions, please feel free to let us know.

Theresa Nixon
Knox County Schools
Office of Academic Supports

**>>>CAUTION<<<**
**This message originates outside of the Knox County email system. Use caution if this message contains attachments, links or requests for information.**

# EXHIBIT 131

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| THE WILBERFORCE ACADEMY OF KNOXVILLE<br><br>*Plaintiff*,<br><br>v.<br><br>KNOX COUNTY BOARD OF EDUCATION, *et al.*,<br><br>*Defendants*. | ) | No. 3:25-cv-00584 |

**CARROLL INTERVENOR-DEFENDANTS' ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33 and for the purposes of the above action only, Intervenors Adrienne Carroll, Ciara Crutcher, Tiffany Nash, Evelyn Henderson, Shakeithia Rice, and Holly Slater ("Tennessee Families"), by and through undersigned counsel, respond as follows to Plaintiff's Second Set of Interrogatories propounded by The Wilberforce Academy of Knoxville ("Plaintiff") to Tennessee Families.

**GENERAL OBJECTIONS**

1. Tennessee Families object generally to these interrogatories to the extent the requests seek information and documents subject to the attorney-client privilege, the work-product doctrine, and/or the joint defense or common interest privilege or any other applicable privilege or doctrine. None of Tennessee Families' responses are intended to be, or should be construed as, a waiver or relinquishment of the protections afforded by these privileges or doctrines nor is the relevancy of any such matter conceded, and to the extent any of these responses contain or refer to matters protected from discovery by such privileges or doctrines Tennessee Families reserve the

Rules, or any Order of this Court.

Subject to Tennessee Families' general and specific objections and to Tennessee Families' reservation of rights set forth above and without waiving any general or specific objections or reservations, Tennessee Families responds to Plaintiff's individual interrogatories as set forth below:

**INTERROGATORIES**

3. Identify and fully describe all provisions of law (including Tennessee statutes, federal statutes, Tennessee regulations, federal regulations, Knox County ordinances, Knox County regulations, the Tennessee Constitution, and the U.S. Constitution) that prohibit Wilberforce Academy, because it is a religious organization, from sponsoring or operating a charter school that is "nonsectarian" and "nonreligious" under Tenn. Code §49-13-111(a)(2). Limit your response to provisions of law that remain in effect after the enactment of Pub. Ch. 1128, 114th Gen. Assem. (Tenn. 2026) (SB2318).

**ANSWER:** Tennessee Families object to this interrogatory as overbroad, unduly burdensome, disproportionate to the needs of the case and, therefore, outside the scope of permissible discovery under the Federal Rules of Civil Procedure because it is an improper contention interrogatory to the extent it (1) relies on the use of the omnibus term "all"; (2) seeks a detailed narrative response of Tennessee Families' entire case; (3) raises pure legal questions unrelated to the facts of the case; and/or (4) seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. *See* Fed. R. Civ. P. 33 advisory committee's note (1970) ("[I]nterrogatories may not extend to issue of 'pure law,' *i.e.*, legal issues unrelated to the facts of the case."); *Stein v. U.S. Xpress Enters., Inc.*, No. 1:19-CV-00098, 2022 WL 17661094, at *2 (E.D. Tenn. May 20, 2022) (discovery requests that use omnibus terms are overbroad and

disproportionate to the needs of the case); *Knox Trailers, Inc. v. Clark*, No. 3:20-CV-137-TRM-DCP, 2022 WL 831432, at *12 (E.D. Tenn. Mar. 18, 2022) (discovery request relying on the omnibus term "all" is "too broad"); *United States v. Life Care Centers of Am., Inc.*, No. 1:08-CV-251, 2016 WL 3198032, at *1 (E.D. Tenn. Mar. 24, 2016) ("Interrogatories, however, are not intended to be used to elicit a narrative response of the opposing party's entire case."); *Transamerica Life Ins. Co. v. Moore*, 274 F.R.D. 602, 609 (E.D. Ky. 2011) (discovery request relying on the omnibus term "all" is unduly burdensome).

Subject to these and to all of Tennessee Families' general and specific objections and reservations of rights, and without waiving any of them, Tennessee Families identifies the following which speak for themselves and provide the best evidence of their contents:

**U.S. Const. art. III, § 2; U.S. Const. amend. I; U.S. Const. amend. XIV, § 1; Tenn. Const. art. XI, § 12; Tennessee Public Charter Schools Act of 2002, as amended, Tenn. Code. Ann. §§ 49-13-101 to 147; Tenn. Comp. R. & Regs. Chp. 0520-14-01.**

4. Identify and fully describe Holly Slater's qualifications to testify as an expert witness.

**ANSWER:** Tennessee Families object to this interrogatory as improper under the Federal Rules of Civil Procedure because (1) as a non-retained witness, Ms. Slater is not subject to the report requirements for retained witnesses under Rule 26(a)(2)(B); (2) Rule 26(a)(2)(C) establishes the disclosure requirements for non-retained witnesses such as Ms. Slater, and in full compliance with Rule 26(a)(2)(C), Ms. Slater's disclosure states the subject matter of her anticipated testimony and a summary of the facts and opinions to which she is expected to testify; and (3) interrogatories may not be used to expand the reporting obligations of a witness who is not subject to the report requirements of Rule 26(a)(2)(B). *See* Fed. R. Civ. P. 26(a)(2)(C); *D.G. v. Henry*, No. 08-CV-74-

GKF-FHM, 2011 WL 2746180, at *2 (N.D. Okla. July 13, 2011) (rejecting attempt to "use interrogatories to expand the reporting obligations of a witness not subject to Rule (a)(2)(B) report requirements"); *Phillip M. Adams & Assocs., L.L.C. v. Fujitsu Ltd.*, No. 1:05-CV-64 TS, 2010 WL 1330002, at *5 (D. Utah Mar. 29, 2010) (interrogatories may not be used "to overcome the lack of a requirement in Rule 26 for" and a non-retained expert "to produce an expert report"); *see also CMI Roadbuilding, Inc. v. SpecSys, Inc.*, No. CIV-18-1245-G, 2021 WL 2188245, at *6 (W.D. Okla. May 28, 2021) (concluding that it is impermissible to "use an ancillary discovery mechanism to force the production of documents that are required only for retained experts").

Subject to these and to all of Tennessee Families' general and specific objections and reservations of rights, and without waiving any of them, Tennessee Families state:

**Ms. Slater's qualifications are based on her personal knowledge and practical experience as well as on her background training and education, all of which are fully described in Ms. Slater's declaration (Doc. 60-6) and in her May 26, 2026 Rule 26(a)(2)(C) disclosure (Doc.90-1). *See, e.g.*, *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 293–94 (6th Cir. 2007) (expert's "background and experience leaves him well-positioned to 'assist the trier of fact'" and qualified to testify); *First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 332–34 (6th Cir. 2001) (affirming district court's conclusion that expert's "practical experience" qualified him to offer opinion testimony under Rule 702); *Mem'l Hall Museum, Inc. v. Cunningham*, 455 F. Supp. 3d 347, 366–67 (W.D. Ky. 2020) (Rule 26(a)(2)(C) expert's qualifications based on "personal knowledge and experience" sufficient to satisfy the requirements of Rule 702).**

5. List all publications Holly Slater has authored in the previous ten years.

**ANSWER:** Tennessee Families object to this interrogatory as improper under the Federal

Rules of Civil Procedure because (1) as a non-retained witness, Ms. Slater is not subject to the report requirements for retained witnesses under Rule 26(a)(2)(B); (2) Rule 26(a)(2)(C) establishes the disclosure requirements for non-retained witnesses such as Ms. Slater, and in full compliance with Rule 26(a)(2)(C), Ms. Slater's disclosure states the subject matter of her anticipated testimony and a summary of the facts and opinions to which she is expected to testify; and (3) interrogatories may not be used to expand the reporting obligations of a witness who is not subject to the report requirements of Rule 26(a)(2)(B). *See* Fed. R. Civ. P. 26(a)(2)(C); *D.G. v. Henry*, No. 08-CV-74-GKF-FHM, 2011 WL 2746180, at *2 (N.D. Okla. July 13, 2011) (rejecting attempt to "use interrogatories to expand the reporting obligations of a witness not subject to Rule (a)(2)(B) report requirements"); *Phillip M. Adams & Assocs., L.L.C. v. Fujitsu Ltd.*, No. 1:05-CV-64 TS, 2010 WL 1330002, at *5 (D. Utah Mar. 29, 2010) (interrogatories may not be used "to overcome the lack of a requirement in Rule 26 for" and a non-retained expert "to produce an expert report"); *see also CMI Roadbuilding, Inc. v. SpecSys, Inc.*, No. CIV-18-1245-G, 2021 WL 2188245, at *6 (W.D. Okla. May 28, 2021) (concluding that it is impermissible to "use an ancillary discovery mechanism to force the production of documents that are required only for retained experts").

Subject to these and to all of Tennessee Families' general and specific objections and reservations of rights, and without waiving any of them, Tennessee Families state:

**Ms. Slater has not authored any publications in the previous 10 years.**

6. List all other cases in which, during the previous four years, Holly Slater testified as an expert at trial or by deposition.

**ANSWER:** Tennessee Families object to this interrogatory as improper under the Federal Rules of Civil Procedure because (1) as a non-retained witness, Ms. Slater is not subject to the report requirements for retained witnesses under Rule 26(a)(2)(B); (2) Rule 26(a)(2)(C) establishes

the disclosure requirements for non-retained witnesses such as Ms. Slater, and in full compliance with Rule 26(a)(2)(C), Ms. Slater's disclosure states the subject matter of her anticipated testimony and a summary of the facts and opinions to which she is expected to testify; and (3) interrogatories may not be used to expand the reporting obligations of a witness who is not subject to the report requirements of Rule 26(a)(2)(B). *See* Fed. R. Civ. P. 26(a)(2)(C); *D.G. v. Henry*, No. 08-CV-74-GKF-FHM, 2011 WL 2746180, at *2 (N.D. Okla. July 13, 2011) (rejecting attempt to "use interrogatories to expand the reporting obligations of a witness not subject to Rule (a)(2)(B) report requirements"); *Phillip M. Adams & Assocs., L.L.C. v. Fujitsu Ltd.*, No. 1:05-CV-64 TS, 2010 WL 1330002, at *5 (D. Utah Mar. 29, 2010) (interrogatories may not be used "to overcome the lack of a requirement in Rule 26 for" and a non-retained expert "to produce an expert report"); *see also CMI Roadbuilding, Inc. v. SpecSys, Inc.*, No. CIV-18-1245-G, 2021 WL 2188245, at *6 (W.D. Okla. May 28, 2021) (concluding that it is impermissible to "use an ancillary discovery mechanism to force the production of documents that are required only for retained experts").

Subject to these and to all of Tennessee Families' general and specific objections and reservations of rights, and without waiving any of them, Tennessee Families state:

**Ms. Slater has not testified as an expert at trial or by deposition in any cases during the previous four years.**

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

*s/ David D. Ayliffe*
David D. Ayliffe (BPR #024297)
Thomas H. Jarvis (BPR #036835)
Erika L. Hughes (BPR #035755)
265 Brookview Centre Way, Suite 600
Knoxville, Tennessee 37919
(865) 549-7000
dayliffe@bakerdonelson.com
tjarvis@bakerdonelson.com
ehughes@bakerdonelson.com

*Attorneys for Adrienne Carroll, Ciara Crutcher, Tiffany Nash, Evelyn Henderson, Shakeithia Rice, and Holly Slater*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2026, a copy of the foregoing document was served by sending it via electronic mail to the counsel listed below:

Cameron T. Norris
Ryan M. Proctor*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com
ryan@consovoymccarthy.com
*admitted pro hac vice

*Attorneys for Plaintiff*

David M. Sanders
Senior Deputy Law Director
Jessica Jernigan-Johnson
Deputy Law Director
Knox County Law Director's Office
400 Main Street, Suite 612
Knoxville, TN 37902
(865) 215-2327
david.sanders@knoxcounty.org
jessica.johnson@knoxcounty.org

*Attorneys for Defendants*

Adam J. Hunt*
Morrison Foerster LLP
250 West 55th Street
New York, NY 10019-9601
Telephone: 212.468.8000
Facsimile: 212.468.7900
Email: adamhunt@mofo.com

Wanqian Zhang*
Morrison Foerster LLP
425 Market Street
San Francisco, CA 91105
Telephone: 415.268.7108
Email: wzhang@mofo.com

Jonathan James McNeal*
Morrison Foerster LLP
12531 High Bluff Dr. #100
San Diego, CA 92130
Telephone: 858.720.5100
Email: jmcneal@mofo.com

Mitchell E. Feldman*
Morrison Foerster LLP
200 Clarendon Street, Floor 21
Boston, MA 02116
Telephone: 617.648.4759
Facsimile: 617.830.0142
Email: mfeldman@mofo.com

Lucas Cameron-Vaughn
American Civil Liberties Union Foundation
of Tennessee
P.O. Box 120160
Nashville, TN 37212
Telephone: 615.645.5067
Email: lucas@aclu-tn.org

Alex J. Luchenitser*
Luke Anderson*
Americans United for Separation of Church
and State
1310 L Street NW, Suite 200
Washington, DC 20005
Telephone: 202.466.3234
Facsimile: 202.217.3783

Email: luchenitser@au.org
Email: anderson@au.org

Daniel Mach*
Heather L. Weaver*
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
Telephone: 202.675.2330
Facsimile: 202.546.0738
Email: dmach@aclu.org
Email: hweaver@aclu.org

Sophia Mire Hill
Sam Boyd*
Neil Ranu*
Lauren Winkler*
Michael Tafelski*
Southern Poverty Law Center
150 E. Ponce de Leon, Suite 340
Decatur, GA 30030
Telephone: 504.457.1553
Email: sophia.mire@splcenter.org
Email: sam.boyd@splcenter.org
Email: neil.ranu@splcenter.org
Email: lauren.winkler@splcenter.org
Email: michael.tafelski@splcenter.org

Jessica Levin*
Wendy Lecker*
Patrick Cremin*
Katrina Reichert*
Education Law Center
60 Park Place, Suite 300
Newark, NJ 07102
Telephone: 973.624.1815
Facsimile: 973.624.7339
Email: jlevin@edlawcenter.org
Email: wlecker@edlawcenter.org
Email: pcremin@edlawcenter.org
Email: kreichert@edlawcenter.org

Samuel T. Grover*
Kyle J. Steinberg*
Freedom from Religion Foundation, Inc.
10 N. Henry St.

Madison, WI 53703
Telephone: 608.256.8900
Email: sam@ffrf.org
Email: steinbergk@ffrf.org
* Admitted pro hac vice.

*Attorneys for Intervenor-Defendants Rev. Dr. Richard Coble, Amanda Collins, Kerry Dooley, Elizabeth Porter, and Rev. Dr. Katina Sharp*

*s/ David D. Ayliffe*
*Attorney for Adrienne Carroll, Ciara Crutcher, Tiffany Nash, Evelyn Henderson, Shakeithia Rice, and Holly Slater*

# VERIFICATION

STATE OF TENNESSEE:

COUNTY OF HAMILTON:

I, Holly Slater, execute the foregoing Answers to Plaintiff's Second Set of Interrogatories. The information in such Answers is personally known to me, and, to the best of my information and belief, the matters set forth in the Answers are true and correct.

The Answers are made without in any way waiving or intending to waive any objections that Carroll Intervenors may have with respect to the subsequent use of the Answers, and Carroll Intervenors specifically reserve (a) all questions as to the competency, privilege, relevancy, materiality, and admissibility of any and all of the Answers, in whole or in part, or the subject matter thereof; (b) the right to object to the use of any of the Answers in whole or in part, or the subject matter covered thereby, in any subsequent step or proceeding in this action, on any or all of the foregoing grounds or on any proper grounds whether or not enumerated above; and (c) the right to object on any and all grounds, at any time, to any interrogatories or other discovery procedures involving or related to the subject matter of the Interrogatories at any time, upon proper showing, to revise, correct, or clarify any of the Answers.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 18 day of 6, 2026.

_______________________
Holly Slater

## VERIFICATION

STATE OF TENNESSEE:

COUNTY OF Shelby:

I, Adrienne Carroll, execute the foregoing Answers to Plaintiff's Second Set of Interrogatories. The information in such Answers is personally known to me, and, to the best of my information and belief, the matters set forth in the Answers are true and correct.

The Answers are made without in any way waiving or intending to waive any objections that Carroll Intervenors may have with respect to the subsequent use of the Answers, and Carroll Intervenors specifically reserve (a) all questions as to the competency, privilege, relevancy, materiality, and admissibility of any and all of the Answers, in whole or in part, or the subject matter thereof; (b) the right to object to the use of any of the Answers in whole or in part, or the subject matter covered thereby, in any subsequent step or proceeding in this action, on any or all of the foregoing grounds or on any proper grounds whether or not enumerated above; and (c) the right to object on any and all grounds, at any time, to any interrogatories or other discovery procedures involving or related to the subject matter of the Interrogatories at any time, upon proper showing, to revise, correct, or clarify any of the Answers.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 2 day of July, 2026.

[signature]

Adrienne Carroll

# VERIFICATION

STATE OF TENNESSEE:

COUNTY OF Davidson :

I, Shakeithia Rice, execute the foregoing Answers to Plaintiff's Second Set of Interrogatories. The information in such Answers is personally known to me, and, to the best of my information and belief, the matters set forth in the Answers are true and correct.

The Answers are made without in any way waiving or intending to waive any objections that Carroll Intervenors may have with respect to the subsequent use of the Answers, and Carroll Intervenors specifically reserve (a) all questions as to the competency, privilege, relevancy, materiality, and admissibility of any and all of the Answers, in whole or in part, or the subject matter thereof; (b) the right to object to the use of any of the Answers in whole or in part, or the subject matter covered thereby, in any subsequent step or proceeding in this action, on any or all of the foregoing grounds or on any proper grounds whether or not enumerated above; and (c) the right to object on any and all grounds, at any time, to any interrogatories or other discovery procedures involving or related to the subject matter of the Interrogatories at any time, upon proper showing, to revise, correct, or clarify any of the Answers.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 28th day of July, 2026.

Shakeithia Rice

Shakeithia Rice

# EXHIBIT 132

App.2293

Ray Domanico

# Tennessee's Religious Charter School Test

State approval of a Christian charter school could become the next landmark Supreme Court case on religion and public education.

Photo: Drazen Zigic/iStock/Getty Images Plus via Getty Images

/ Eye on the News

Listen 0:00

In late April, the Jackson–Madison County School System Board in Tennessee approved a charter for Union Academy, a "faith-based Christian college preparatory" institution. The decision will likely give the Supreme Court another chance to rule on the constitutionality of religious charter schools, currently prohibited nationwide. An earlier challenge to Oklahoma's ban on religious charters made it to the Court, which split 4–4 on the issue after Justice Amy Coney Barrett recused herself because of a possible conflict of interest. This left the Oklahoma law standing. The federal constitutional issues, as explained by Manhattan Institute's Ilya Shapiro, remain ripe for review.

No legal challenge to the opening of Union Academy has yet to be filed, though some national or state-level advocacy group will likely step in. This is a line-in-the-sand issue for many charter school advocates and those opposed to the use of public money to support religious instruction.

The Union Academy story has some unique features. First, the charter was not proposed by an interest group or private actor. Rather, the superintendent of the Jackson–Madison County School District, Marlon King, solicited the proposal from Union University, a private Christian College in Jackson, Tennessee, and the county's democratically elected county school board approved it. Tennessee's Charter School Law allows local boards to approve "a waiver of any state board rule or statute that inhibits or hinders the charter school's ability

to meets its goals or comply with its mission statement." The approved charter application cites numerous instances of state law and regulations prohibiting the exercise of religion in publicly supported schools and the rationale for waiving those prohibitions.

What, exactly, is the school proposing to do, and why did the superintendent and school board solicit and approve this proposal? The school is unambiguously Christian. Religious values and materials are not an add-on to its program—they are at the core of it. Its application declares:

> Union Academy will be a Christ-centered, academically rigorous public charter school designed to serve families in Jackson, Tennessee and the surrounding communities who are seeking a high quality, tuition-free education grounded in Christian values. The school's mission is to provide Christ-centered education that promotes excellence and character development in service to Church and society.
>
> Union Academy will deliver a strong academic program to K-12 students with an emphasis on literacy, mathematics, science, critical thinking, and great texts of the Western tradition interconnected with Biblical worldview.

The school's program is academically rigorous. Its application commits the school to compliance with high academic standards, ongoing assessment of student progress, and curricula such as language arts, Singapore math, and a high school program including Algebra I & II, geometry, pre-calculus, biology, chemistry, and physics. Its high school approach is committed to developing "students' research, writing, and critical thinking skills while ensuring alignment with Tennessee Academic Standards, End-of-Course exams, ACT assessments, and college readiness expectations."

The charter application points to the relatively low performance of students in local public schools compared with Tennessee as a whole, with the county lagging the state by 12 percentage points in reading and 13 points in math. In 2025, only 35 percent of the county's students scored at or approaching expectations in ELA, and 18 percent did so in math.

App.2295

The plan is for Union Academy to open in August 2027, with 320 students in grades kindergarten through five. It will grow by one grade and 60 students per year, eventually serving 780 students in grades K-12 by 2034.

Some will oppose Union Academy and similar schools because they believe, erroneously, that nonreligious public education is fundamental to the American experiment. Our Founders would be surprised to hear that, since there were no public schools in the early American republic, and religious institutions provided much of the social services, a role overtaken by the public sector in the twentieth century. Nearly 200 years ago, Alexis de Tocqueville observed that voluntary associations were central to American democracy, filling civic space through seminaries, churches, hospitals, prisons, and schools. The U.S. Constitution enshrined a ban on both congressional establishment of a national religion as well as government interference with an individual's right to exercise his religious beliefs. For some families, religious schooling is integral to education. Whether such instruction occurs at Union Academy or some other religious charter school, the Supreme Court will eventually have to consider the constitutionality of state bans on religious charter schools.

---

*Ray Domanico is a senior fellow at the Manhattan Institute.*