**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**NORTHERN DIVISION (KNOXVILLE)**

| | |
|---|---|
| THE WILBERFORCE ACADEMY OF KNOXVILLE,<br>Plaintiff,<br>v.<br>KNOX COUNTY BOARD OF EDUCATION, et al.,<br>Defendants,<br>RICHARD COBLE, et al.,<br>Intervenor-Defendants,<br>ADRIENNE CARROLL, et al.,<br>Intervenor-Defendants. | Case No. 3:25-cv-584-CEA-DCP<br>District Judge Charles E. Atchley<br>Magistrate Judge Debra C. Poplin |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DEREK BLACK**

This Court can likely reserve judgment on Plaintiff's *Daubert* motion against Derek Black. All four sets of parties have filed motions for summary judgment because they realize, correctly, that this case turns on undisputed facts and questions of law. Docs.99, 109, 110, 115. So there likely won't be a bench trial. And though the Coble intervenors finally make a half-hearted, one-page attempt to contend there are factual disputes, Coble-MSJ-Opp. (Doc.139) 25, none of their supposed disputes even purports to turn on the expert testimony of Black. This Court can therefore simply ignore *Daubert* for now, grant summary judgment without relying on Black's opinions, and then deny this *Daubert* motion as moot. *E.g., Cogan Imports v. Dharod*, 2019 WL 3536000, at *6 (W.D. Ky. Aug. 2) ("Because the Court did not rely on the opinions of the challenged expert witness in ruling on the summary judgment motions, the Court will deny [the Daubert] motion as moot.").

One problem remains, however. The Coble intervenors *do* rely on Black to support their legal argument that charter schools are state actors, citing him to support their reading of the Tennessee charter laws, their conclusion that charter schools are public in character, and their view that charter

schools perform an exclusive governmental function. Coble-MSJ-Opp.16-18, 23. To be clear, Plaintiff has no objection to the Court treating Black's testimony like an amicus brief or a law-review article, consulting the materials he cites to the extent they help the Court in conducting its own independent legal analysis. But to treat his testimony *as testimony*, and to purport to make findings of *fact* or to *defer* to Black's supposed expertise on the history and nature of public education, would be to "outsource to 'experts' [the Court's] Article III duty to decide questions of law." *Nathan v. Alamo Heights Indep. Sch. Dist.*, 173 F.4th 576, 607 (5th Cir. 2026) (en banc).

Plaintiff therefore repeats its main request: If this Court thinks Black's expert testimony is a reason to deny Plaintiff summary judgment, then it should first decide whether that testimony is admissible. *See* Mot. (Doc.111) 1 (citing *Wilson v. Summit TreeStands*, 2021 WL 5281601, at *1 (E.D. Tenn. Mar. 19)). And it should rule that Black's expert opinions are not admissible.

## ARGUMENT

Black's testimony remains inadmissible because he offers irrelevant testimony about an improper subject, on which he is not qualified, in an unreliable manner.

### I. Black's expert testimony is irrelevant.

Black's testimony is not relevant because it is keyed to the wrong legal standard. Mot.2-5. Black opines on whether free education open to all is a traditional and exclusive government function. But the relevant question under the state-action doctrine is whether "education" generally has traditionally "been reserved to the state," to which the answer is "obviously" not. *Logiodice v. Me. Cent. Inst.*, 296 F.3d 22, 26 (1st Cir. 2002).

This disputed merits question bears on the relevance of Black's testimony. *Cf.* Opp.3-5. To be relevant, Black's testimony must be "of consequence in determining the action." Fed. R. Evid. 401(b). And whether that's true turns on "the substantive law" governing the case. *McCormick on Evidence* §185.1 (9th ed. 2025). If Plaintiff is right about the state-action doctrine, none of Black's opinions, even if true, will make Plaintiff a state actor.

The intervenors can't deny that adjectives like "free" and "open to all" appear nowhere in the controlling precedent's discussion of the public-function test. *Cf.* Opp.5-6. They are not to be found in any of the ten distinct functions listed in *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809-10 (2019). Nor do they appear in *Rendell-Baker v. Kohn*, even though the New Perspective School *was* free and open to all "maladjusted adolescents" identified by the government. 457 U.S. 830, 836 (1982); *see* Mot.4. The intervenors quibble that *Rendell-Baker* defined the function at issue as educating maladjusted youth, not education in general. But nothing in *Rendell-Baker* turned on that distinction; the New Perspective School would have been private either way. And other cases have defined the relevant function as education generally. *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 354 n.9 (1974); Mot.4. At most, *Rendell-Baker* would show that the definition here should be slightly narrower—K-12 education rather than education generally. But *Rendell-Baker* positively excludes the definition intervenors gave Black—"provid[ing] a free education to all children." 457 U.S. at 849 (Marshall, J., dissenting).

The intervenors conclude otherwise by conflating two distinct state-action concepts—the "specific conduct" at issue and the "function" the actor is performing. Opp.5. The "specific conduct" at issue is the action "which the claimants complain" is unlawful. *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 283 (6th Cir. 2023) (cleaned up). The actor's specific conduct is relevant because, if the government "coerced or participated in" the conduct, it qualifies as state action. *Id.* Private discrimination, for instance, generally is not state action, but if state law requires a private entity to discriminate, that coerced conduct is state action. *See Peterson v. Greenville*, 373 U.S. 244, 248 (1963) (restaurant required by state law to racially segregate customers is state actor). The public-function inquiry asks whether a private entity is a state actor because, regardless of whether its conduct is coerced, it is performing a job that traditionally only the government does. *Halleck*, 587 U.S. at 809.

Accordingly, for state-action purposes, an entity's "specific conduct" and the "function" it performs, are different things. Consider *Ciraci*, where plaintiffs brought a free-exercise claim against

their employer, a jam-making company, for denying them a religious exemption to the company's vaccination requirement. 62 F,4th at 279. The "specific conduct" at issue was "the denial of their religious exemptions." *Id.* at 283. Since "the federal government never required Smucker's to vaccinate the claimants," there was no state action under a coercion theory. *Id.* But when the Court applied the public-function test, the relevant function was "[m]aking jam," not compulsory vaccination. *Id.* at 282. So too with *Rendell-Baker*. The specific conduct at issue was the school's "decisions to discharge the petitioners" from their positions as teachers. 457 U.S. at 841. But the "function" at issue was "the education of maladjusted high school students," not managing or firing teachers. *Id.* at 842.

In short, intervenors' focus on the "specific conduct" language in the caselaw is a red herring. That language is talking about the specific "decisions" the actor made. *Id.* at 841. It is not an instruction to define the "function" at issue in the public-function test at a low level of generality. In any event, focusing on "specific conduct" does not get intervenors where they want to go. Here, the specific "decisio[n]" Wilberforce has made is to apply to enter into an agreement with Knox County to open a charter school. *Id.* That is a decision made almost exclusively by private nonprofits. *See* Tenn. Code §49-13-111(a)(1). When the government wants to open a public school, it just opens a school; it doesn't need to apply to itself to enter into an agreement with itself to do so.

## II. Black's expert testimony impermissibly opines on law.

The intervenors agree that Black cannot testify about the law. Opp.8. As they admit, only the Court can "determine the contours of the state-action doctrine, identify the legally relevant function, and decide whether Tennessee charter schools satisfy the governing test." Opp.9.

In their summary-judgment opposition, however, the intervenors *do* use Black to opine on the law.

- They rely on Black's inference that Tennessee charter schools are public based on his reading of Tennessee's charter statutes. Coble-MSJ-Opp. (Doc.139) 16.

- They cite Black alongside state statutes to establish how charter schools are funded. Coble-MSJ-Opp.16, 23.
- They cite Black in a string cite of cases and statutes for the legal conclusions that providing free education open to all is a traditional and exclusive government function and that charter schools exercise a delegated constitutional duty. Coble-MSJ-Opp.17-18.

And even in their opposition to this motion, the intervenors represent that they seek to use Black's testimony "to support their" purely legal "argument that Tennessee charter schools are state actors because they perform the traditional and exclusive public function of providing education that is free and open to all." Opp.1. And the intervenors don't contest that, by using the language of state-action caselaw, Black has framed his opinions in specialized legal language. Mot.7-8.

Experts cannot testify to any "legal conclusion," not just ultimate issues. *Berry v. Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994); *cf.* Opp.9-10. That rule follows from the text of Rule 702(a), which limits the expert's role to assisting the "trier of fact." Otherwise virtually every legal issue in this case—Wilberforce's standing, the meaning of Tennessee's charter statute, whether strict scrutiny is triggered, whether a compelling interest supports the ban on religious charter schools, and whether the ban is narrowly tailored—could become the subject of dueling expert testimony. The language in *Berry* on which intervenors rely concerns separating "legal conclusion[s]" ("the defendant was guilty") from questions of "fact" ("the defendant's fingerprint was the only one on the murder weapon") when applying a legal standard to adjudicative facts. 25 F.3d at 1353. Yet Black's testimony is law all the way down. His testimony surveys the legal rules governing Tennessee charter schools and, from there, opines that they meet one of the legal standards for constituting state action.

Black's testimony cannot be defended as simply concerning "facts" relevant to the Court's legal inquiry. *Cf.* Opp.8. To begin, much of Black's testimony can't even be characterized as legislative facts. How charter schools are funded is a question of state statutory interpretation. *See* Coble-MSJ-Opp.16. Concluding from Tennessee's charter statute that charter schools are "public" in character

is drawing a federal-law inference from an analysis of a state-law regulatory regime. Coble-MSJ-Opp.16.

Black's analysis of the history of public schooling is his only testimony on anything resembling a factual issue, and that testimony concerns issues of core legislative fact for the Court to resolve, not to outsource to an expert. Mot.6-7. This case is not one where a legal question turns on some highly technical issue of fact with which judges are unfamiliar. *Cf.* Opp.11. This state-action issue is about policing the "constitutional boundary between the governmental and the private" to "protec[t] a robust sphere of individual liberty." *Halleck*, 587 U.S. at 808. Judges cannot outsource that responsibility without abdicating their duties to "say what the law is" and to uphold the basic values underlying our Constitution. Hence why courts routinely examine history independently in state-action cases without a second thought, *e.g.*, *id.* at 810-11, and why the intervenors can find no case relying on expert testimony to decide a state-action issue, despite the thousands of cases applying the doctrine. And though the intervenors condemn the Fifth Circuit's similar conclusion as "at odds with the weight of authority," Opp.11 (citing *Nathan v. Alamo Heights Independent School District*, 173 F.4th 576 (5th Cir. 2026)), their counsel's cert petition in *Nathan* tellingly does not seek review of the Fifth Circuit's ruling on the admissibility of expert testimony. *See* Cert.-Pet. at i, No. 26-221 (filed Aug. 20, 2026) (challenging only the merits of the Fifth Circuit's First Amendment analysis).

The lack of a jury in this case does not eliminate the harm of allowing Black's purely legal testimony. *Cf.* Opp.2. For one thing, it is wasteful to prolong trial with legal issues that are more thoroughly and efficiently resolved through briefing. For another, allowing testimony on legal issues risks blurring the distinction between law and fact. It would allow the intervenors to argue that any merits ruling against Plaintiff on the scope of the First and Fourteenth Amendments is a factual finding "insulated by clear-error review on appeal," depriving Plaintiff of a fair hearing in higher courts of the important constitutional questions this case presents. *Nathan*, 173 F.4th at 608; *see* Green-Opp.

(Doc.129) 5 & n.3 (anticipating this scenario). Black should not be allowed to testify on issues of pure constitutional law.

## III. Black is unqualified and uses an unreliable methodology, resulting in unreliable opinions.

Black's testimony is also inadmissible because he is unqualified, lacks a reliable methodology, and has unreliable opinions. Mot.8-13. Four points in particular bear emphasis.

*First*, Black has no historical expertise apart from his legal expertise, which is not a legitimate basis for expert testimony. Mot.8-10. The intervenors never would have dreamed of presenting Black as an expert historian if his qualifications were simply taking a few undergraduate courses as a political science and African-American studies major, or if he were an autodidact who simply read a lot of history in his spare time. *Cf.* Opp.15-16. They are instead relying on his status as a law professor and labeling that legal expertise historical expertise. That's not to say that law professors are ignorant of history. But judges and litigators also learn history in the course of their careers. Some judges have even used their experience to write insightful books about American history. *E.g.*, Rehnquist, *All the Laws But One: Civil Liberties in Wartime* (1998). But, obviously, it would not be appropriate to put forth a retired judge as an expert witness because the practice of judging made him an expert in the history underlying the Fourteenth Amendment. The same goes for constitutional "law professors" whose legal scholarship has a historical dimension. *Nathan*, 173 F.4th at 607. When the law incorporates history, history is the work of courts and lawyers. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 25 n.6 (2022). Courts and lawyers can't outsource their work to another legal professional under the guise of providing historical expertise.

Black's purported expertise in "education policy" cannot salvage his testimony. *Cf.* Opp.18-19. This label is yet another way to mask what is really legal expertise. Black calls this "expertise" knowledge of the *legal* relationships between schools, the federal government, States, counties, and labor unions, as defined by statutes, regulations, contracts, and other *legal* documents. Tr. (Doc.130-

2) 28-31. In other words, he knows education law very well. Black only primarily relied on his "policy" expertise for his second question presented—that Tennessee charter schools are part of the State's system of free education open to all. Tr.28-29. And that analysis is clearly legal too, consisting of analyzing Tennessee's charter statutes and making inferences from them about how "public" charter schools are. Black-Rep. (Doc.111-1) ¶¶74-91.

*Second*, Black performed little to no research on the relevant historical question, which is the *national* history of education. Mot.10-11. The intervenors' response confirms this. They acknowledge that Black "did not conduct any *new* national-level research" in preparing his report, and they do not identify any scholarship where Black has previously surveyed whether private entities have provided free education open to all nationwide. Opp.20 & n.8. Though he put 60 total hours into his report, Opp. 20 n.8, Black spent less than five and possible less than three hours considering the national history of education. Tr.24-25.

*Third*, Black failed to address contrary evidence establishing that private schools have provided free education open to all. Mot.11. He did not deny that Maine, New Hampshire, and Vermont have all allowed local schools districts to contract with local school districts to provide free education to all children living in the district. *See* Mot.11; *Logiodice v. Me. Cent. Inst.*, 296 F.3d 22, 27 (1st Cir. 2002). The intervenors don't deny this history either, but claim it's limited to New England "with no analogous history in Tennessee." Opp.21-22. But three States would be enough to show that free education open to all is not a function that the government "exclusively" performs under our national Constitution. *Halleck*, 587 U.S. at 809. And Tennessee, too, had a very similar system for over half a century. Tennessee laws from 1873 and 1926 allowed local governments to contract with private schools to serve as the "free" "public schools" for the community. Gabel, *Public Funds for Church and Private Schools* 647-48 (1937) (App.2323-24). As of 1891, "many private schools" performed this function. *Id.*; Garrett, *Annual Report of the State Superintendent of Public Instruction for Tennessee* 39 (1892) (App.2336). Black's

ignorance of, or failure to take seriously, this extensive evidence fatally undermines his opinions' reliability.

*Fourth*, Black adjusted his definition of "open to all" as needed to make sure public schools and charter schools were always in and private schools were always out. Mot.11-12. And try as they might, the intervenors cannot make the inconsistencies in Black's testimony disappear. Opp.22-23. *Compare* Black-Rep. ¶87 (deeming charter schools "open to all" because an individual charter school "must accept all students who seek to enroll"), *with* Tr.267-68 ("one [private] school that happens to be free" would not provide "free education open to all" because it would not be a "system of free schools"). But if the intervenors were correct that Black consistently took a "systemic" definition of "free and open to all," then his testimony is only more irrelevant. No state-action case has ever held that a function is the exclusive prerogative of the government unless private entities systematically perform the function for everyone at a statewide level.

## CONCLUSION

This Court should "deny this motion as moot" after it does "not rely on the opinions of the challenged expert witness in ruling on the summary judgment motions." *Cogan*, 2019 WL 3536000, at *6. But if the Court thinks Black's expert opinions cannot be ignored at summary judgment, then it should grant this motion and exclude him as an expert.

Dated: August 25, 2026

Respectfully submitted,


*/s/ Cameron T. Norris*
Cameron T. Norris (TN Bar No. 33467)
Ryan M. Proctor*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com
ryan@consovoymccarthy.com

**admitted pro hac vice*